# EXHIBIT AAA

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

## SAFT (Simple Agreement for Farmed Tokens)

In light of the upcoming launch of the Mirror Protocol (the *"Protocol"*) and the affiliated Mirror Governance Token (the "*Token*"), Terraform Labs LIMITED, a British Virgin Islands corporation (the *"Vendor"*) intends to participate in the Protocol to mine Tokens.

THIS CERTIFIES THAT in exchange for the payment by Coinbase Global, Inc. (the *"Purchaser"*) of the Purchase Consideration outlined on Schedule 1, the Vendor hereby agrees to the Purchaser the right to certain units of the Tokens, subject to the terms set forth below (the *"Agreement"*).

1. **Definitions**

1.1. *"Network Launch"* means the event when the Mirror Governance Tokens, the characteristics of which is described in Schedule 3, are first distributed to the Protocol users.

1.2. *"Token Farming"* means the activity of participating in protocol defined functions that results in the programmatic disbursement of Token rewards.

1.3. "*Purchaser Tokens*" shall have the meaning ascribed to it in Schedule 1.

1.4. "*Purchaser Tokens Receiving Address*" shall have the meaning ascribed to it in Schedule 1.

1.5. "*Purchase Consideration*" shall have the meaning ascribed to it in Schedule 1.

1.6. "*EOY1 Token Supply*" shall have the meaning ascribed to it in Schedule 1.

1.7. "*TFL Monthly Farming Revenue*" means the total amount of Tokens Terraform Labs Limited earns as a result of its Token Farming Operations.

1.8. "*Accepted Digital Asset*" means such Digital Asset-type(s) as set out in Schedule 1.

1.9. "*Settlement Date*" shall have the meaning ascribed to it in Schedule 1.

1.10. "*Token Delivery Dates*" shall have the meaning ascribed to it in Schedule 1.

1.11. "*Final Token Delivery Date*" shall have the meaning ascribed to it in Schedule 1.

2. **SALE OF PURCHASER TOKENS**

2.1. <u>Sale and distribution of Purchaser Tokens</u>. Subject to Clause 2.2 and Vendor's receipt of Purchaser's payment of the Purchase Consideration and the Purchaser's compliance with the terms of this Agreement, the Vendor shall deliver to the Purchaser such number of Purchaser Tokens at the Purchaser Tokens Receiving Address on or before the applicable Token Delivery Dates set out in and in accordance with Schedule 1 (the "*Token Sale*").

2.2. <u>Settlement of Purchase Consideration</u>. Subject to the terms and conditions set forth in Clause 5, the Purchase Consideration shall be paid by Purchaser to Vendor on or before the Settlement Date, in Accepted Digital Asset, at the Vendor's election, which shall be notified Purchaser in writing at least five (5) days prior to the Settlement Date. Purchaser shall transfer the Purchase Consideration (as determined based on the Applicable Exchange Rate as at the date of such transfer) to a wallet designated by the Vendor.

2.3. <u>Obligation of Purchaser to provide information</u>. To the extent that the Vendor determines in its sole and absolute discretion that it is reasonably necessary to obtain certain information about Purchaser in order to comply with any applicable Law or regulations in connection with the Agreement, Purchaser shall provide Vendor with such information promptly upon such reasonable request, and acknowledges and accepts that Vendor may refuse to proceed with the Token Sale or withhold delivery of the Purchaser Tokens to Purchaser until such requested

**FOIA CONFIDENTIAL TREATMENT**
**REQUESTED BY COINBASE**

**CB_MIRROR_00000001**

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

        information has been provided to the reasonable satisfaction of Vendor. Notwithstanding the foregoing, Purchaser shall not be required to provide highly confidential information, as determined by Purchaser in its sole discretion.

2.4.    <u>Reliance</u>. Each of the parties acknowledges that it has entered into this Agreement in reliance upon the other party's representations and warranties being true, accurate, complete, and non-misleading in all respects. Save to the extent set out in this Agreement, no party makes any other representations or warranties, express or implied, to the other party and each party acknowledges to the other party that it has not relied on or been induced by any other warranties or representations made by the other party to enter into this Agreement.

3.    **REPRESENTATIONS AND WARRANTIES OF VENDOR**

Vendor hereby represents and warrants to Purchaser, as of the date hereof, as follows:

3.1.    <u>Formation and standing</u>. Vendor is a corporation duly incorporated, validly existing, and in good standing under the laws of Vendor's jurisdiction of incorporation, and has all requisite corporate power and authority to carry on the transactions contemplated of Vendor under this Agreement.

3.2.    <u>Authorisation of Agreement, etc</u>. Vendor has all requisite power and authority to execute and deliver this Agreement and to sell the Purchaser Tokens to Purchaser and to carry out and perform its obligations under this Agreement, and this Agreement will constitute a legal, valid, and binding obligation of Vendor enforceable against Vendor in accordance with its terms, except that such enforceability may be limited by applicable bankruptcy, insolvency, reorganisation, moratorium, and similar Laws of general application relating to or affecting creditors' rights generally and by equitable principles (regardless of whether enforcement is sought in a proceeding in equity or at law).

3.3.    <u>Compliance with Laws and other instruments</u>. The execution of, and performance by Vendor of Vendor's obligations under this Agreement will not result in:

    (a)    any violation of, be in conflict with in any respect, or constitute a default under:

        (i)    any provision of Vendor's Constitutive Documents;

        (ii)    any provision of any permit, licence, judgment, decree or order to which Vendor is a party, by which it is bound, or to which any of its assets are subject;

        (iii)    any contract, obligation, or commitment to which Vendor is a party or by which it is bound; or

        (iv)    any Laws applicable to Vendor; or

    (b)    the creation of any lien, charge or encumbrance upon any assets of Vendor.

3.4.    <u>No consents or approvals</u>. The execution and delivery of, and performance under this Agreement by Vendor requires no approval or other action from any governmental authority or person within Vendor's jurisdiction of incorporation.

4.    **REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser hereby represents, warrants and undertakes to Vendor, as of the date hereof up to and including each Token Delivery Date, as follows:

4.1.    <u>Formation and standing</u>. Purchaser is either an individual or an entity duly incorporated or formed, validly existing, and in good standing under the Laws of Purchaser's jurisdiction of incorporation or formation, and has full right, corporate, partnership, limited liability company or similar (as the case may be) power and authority to enter into and consummate the transactions

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

          contemplated by this Agreement and otherwise to carry out its obligations hereunder and thereunder.

4.2. <u>Authorisation of Agreement, etc.</u> Purchaser has all requisite power and authority to execute and deliver this Agreement and purchase the Purchaser Tokens and to carry out and perform its obligations under this Agreement, and this Agreement will constitute a legal, valid, and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms, except that such enforceability may be limited by applicable bankruptcy, insolvency, reorganisation, moratorium, and similar Laws of general application relating to or affecting creditors' rights generally and by equitable principles (regardless of whether enforcement is sought in a proceeding in equity or at law).

4.3. <u>Compliance with Laws and other instruments</u>. To Purchaser's knowledge, the execution of, and performance by Purchaser of Purchaser's obligations under this Agreement will not result in:

    (a)    any violation of, be in conflict with in any material respect, or constitute a material default under:

        (i)    to the extent that Purchaser is a corporation, any provision of the Purchaser's Constitutive Documents;

    (b)    the creation of any encumbrance upon any material assets of Purchaser.

4.4. <u>No consents or approvals</u>. The execution and delivery of and performance under this Agreement by Purchaser require no approval or other action from any governmental authority or person.

4.5. <u>Evaluation of and ability to bear risks</u>. Purchaser has such knowledge and experience in financial matters, business, and technology, including but not limited to blockchain technology and other considerations relating thereto to be able to evaluate the risks and merits of:

    (a)    this Agreement;

    (b)    the Protocol in such structure or form as it may take from time to time, including any changes, revisions or amendments; and

    (c)    the Purchaser Tokens to be purchased by Purchaser pursuant to this Agreement, and is able to bear such risks.

4.6. <u>Significant risks</u>. Purchaser acknowledges and understands that the Protocol and the creation and distribution of the Tokens (including the Purchaser Tokens) involve significant risks, including, but not limited to, the risk that:

    (a)    the technology associated with the Protocol may not function as intended;

    (b)    the Protocol may fail to attract interest or adoption, either from key stakeholders or the broader community;

    (c)    Vendor may fail to adequately fund their respective operations and/or the Protocol;

    (d)    the Purchaser Tokens may decrease in value over time and/or lose all monetary value, and there is no guarantee as to the price per Purchaser Token purchased by Purchaser being equal or higher than the price per Token determined by the market; and

    (e)    Vendor, the Tokens, and/or the Protocol may be subject to investigation and enforcement actions from governmental authorities, and these governmental authorities may make changes to existing Laws, regulations, and/or rules that will affect cryptographic tokens, digital assets, blockchain technology and its applications. Further, Purchaser acknowledges that Vendor bears no liability or responsibility to Purchaser with respect to the risks associated with or relating to the purchase of the Purchaser Tokens.

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

4.7. <u>Truth and Accuracy</u>. All the documents and information furnished by Purchaser to Vendor pursuant to this Agreement are true, accurate, complete, and non-misleading in all respects, and there is no matter, event, circumstance or any other information which has arisen which would make any documents and information provided misleading or incomplete, or any fact or information the omission of which would make any documents and information provided misleading or incomplete.

5. **DISCLAIMER, LIMITATIONS, AND INDEMNITY**

5.1. <u>No control over Protocol</u>: Purchaser recognizes that Vendor has no special privileges or control over the Protocol, including the ability to change Protocol features, recover lost assets, revise core parameters, or mint Tokens prior to or following network launch.

5.2. <u>No claim, loan or ownership interest</u>. Neither this Agreement nor the purchase of the Purchaser Tokens:

(a) provides Purchaser with any claim whatsoever with respect to Vendor, their respective Affiliates, and/or their respective assets, except as provided herein;

(b) provides Purchaser with any ownership or economic interest whatsoever in Vendor;

(c) provides Purchaser with any rights of a member of Vendor or any right to vote for the election of directors or upon any matter submitted to members at any meeting thereof, or to give or withhold consent to any corporate action or to receive notice of meetings, or to receive subscription rights or otherwise, or to receive any dividend or other distribution from Vendor.

6. **MISCELLANEOUS**

6.1. <u>Termination</u>.

Vendor shall be entitled by notice in writing to Purchaser to terminate this Agreement if:

(i) Vendor becomes aware of any material inaccuracy or misrepresentation (including any omission of which might make any representation misleading) or breach by Purchaser of any of the representations, warranties, covenants or undertakings given by Purchaser under this Agreement;

(ii) the development of the Protocol discontinues before the final Token Delivery, and such development of the Protocol cannot be resumed within three (3) months of such discontinuation;

(iii) prior to the final Token Delivery Date, the creation, distribution or issuance of Tokens is illegal, invalid, prohibited by any government in any jurisdiction, or forced by any applicable Law to cease, or becomes subject to any approval, registration, filing or other statutory procedure or requirement that the Vendor are unable or choose not to meet;

(iv) Vendor ceasing its business prior to the final Token Delivery Date;

(b) Purchaser shall be entitled by notice in writing to Vendor to terminate this Agreement if the Purchaser Tokens are not delivered in full within 540 days from Network Launch;

(c) Upon any such termination pursuant to this Clause 6.1 ("*Termination*") Purchaser shall not be entitled to receive any further Purchaser Tokens beyond such Purchaser Tokens that Vendor has delivered or is obliged under this Agreement to deliver prior to Termination (such delivered tokens shall be called "*Delivered Tokens*"), and the Vendor shall disburse to Purchaser such part of Purchase Consideration ("*Refundable Proceeds*") in accordance with Schedule 1.

(d) In any event, this Agreement shall terminate on the full receipt by the Purchaser of the Purchaser Tokens (or as the case may be, the Refundable Proceeds) whereupon Purchaser shall have no claim to any part of or refund of the Purchase Consideration (or as the case may be, the Purchaser Tokens), **PROVIDED THAT** Clauses 3, 5 and 6 shall survive any Termination

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

        hereof and upon receipt of the Purchaser Tokens (or as the case may be, the Refundable Proceeds) pursuant to this Agreement.

6.2.    <u>Governing Law</u>. This Agreement shall be governed in all respects, including as to validity, interpretation, and effect, by the Laws of the British Virgin Islands, without giving effect to its principles or rules of conflict of laws, to the extent such principles or rules are not mandatorily applicable by statute and would permit or require the application of the Laws of another jurisdiction.

6.3.    <u>Successors and assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns. This Agreement shall not be assignable or otherwise transferable without the prior written consent of the other party, **PROVIDED THAT** Vendor may assign or transfer this Agreement to an Affiliate, and the Purchaser shall sign, execute and deliver any and all deeds, instruments, agreements and/or other documents in connection with such assignment or transfer and do all other acts and things and take all such steps as may be necessary, desirable or expedient to give effect to such assignment or transfer. Purchaser acknowledges and agrees that Vendor shall not be obliged to deliver the Purchaser Tokens unless and until Purchaser complies with its obligations under this provision. Any purported assignment in violation of this provision or in violation of applicable Laws shall be void.

6.4.    <u>Entire agreement</u>. This Agreement constitutes the entire agreement between the parties and supersedes all prior or contemporaneous agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

6.5.    <u>Reasonableness</u>. Each party confirms that it has received independent advice (legal or otherwise) relating to all the matters provided for in this Agreement, and agrees that the provisions of this Agreement (including all documents entered into pursuant to this Agreement) are fair and reasonable.

6.6.    <u>Severability</u>. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, inoperative or unenforceable for any reason, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby be consumed as originally contemplated to the fullest extent possible.

6.7.    <u>Dispute resolution</u>. Purchaser and Vendor shall cooperate in good faith to resolve any dispute or claim arising out of or in any way relating to this Agreement. If the parties are unable to resolve such dispute or claim within ninety (90) days, such dispute or claim shall be finally settled by arbitration, and judgment upon the award may be entered by any court having jurisdiction thereof or having jurisdiction over the relevant party or its assets. The arbitration shall be conducted under the rules of the SIAC. The arbitration tribunal shall consist of a sole arbitrator to be appointed by the President of the SIAC. The seat of the arbitration shall be BVI. The language of the arbitration shall be English. This arbitration agreement shall be governed by BVI law.

6.8.    <u>Electronic communications</u>. Purchaser agrees and acknowledges that all agreements, notices, disclosures and other communications that Vendor provides Purchaser pursuant to this Agreement or in connection with or related to Purchaser's purchase of Purchaser Tokens, including this Agreement, may be provided by Vendor in its sole and absolute discretion to Purchaser, in electronic form.

6.9.    <u>Amendment.</u> No amendment or variation of this Agreement shall be effective unless it is made in writing and signed by or on behalf of each of the Parties.

**FOIA CONFIDENTIAL TREATMENT**
**REQUESTED BY COINBASE**

CB_MIRROR_00000005

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

## SCHEDULE 1
### Particulars of Purchaser / Token Distribution

| # | | |
|---|---|---|
| 1. | Particulars of Purchaser | Name: Coinbase Global, Inc.<br><br>Nationality / Place of Incorporation: Delaware, USA<br><br>Address: 100 Pine Street Suite 1250 San Francisco, CA 94111<br><br>Email: ventures@coinbase.com; corporate@coinbase.com |
| 2. | Purchaser Tokens | The aggregate of such number of Mirror Tokens (rounded up to the nearest Token) as determined as follows (the "*Purchaser Tokens*").<br><br>$$\textit{Purchaser Tokens} = \frac{\textit{Purchase Consideration} \times \textit{EOY1 Token Supply}}{15 \textit{ million USD}}$$ |
| 3. | Purchase Consideration | $ 200,000 USD |
| 4. | Round Cap | $3 million USD |
| 5. | EOY1 Token Supply | The total supply of Tokens on the final Distribution Date, approximately 186.35 million, |
| 6. | Accepted Digital Asset | TerraUSD (UST) or USDC (or such other Digital Asset which the Vendor may agree in writing) |
| 7. | Settlement Date | Within five (5) business days of this Agreement, or such other date as agreed by Vendor in writing. |
| 8. | Token Delivery Dates | The Vendor shall deliver to Purchaser:<br><br>$$50\% \textit{ of TFL Monthly Farming Revenue} \times \frac{\textit{Purchase Consideration}}{\textit{Round Cap}}$$<br><br>At or around every 30 days from Network Launch until the Purchaser Tokens are fully delivered. These delivery dates are together are the "Token Delivery Dates", and the final of these dates is the "Final Token Delivery Date". |
| 9. | Purchaser Tokens Receiving Address | To be designated by Purchaser and notified by Purchaser to Vendor in writing |
| 10. | Refundable Proceeds | (1) Upon Termination, Purchaser shall not be entitled to receive any further Purchaser Tokens beyond Delivered Tokens. Vendor shall promptly return a portion of Purchase Consideration equal to:<br><br>**Purchase Consideration \* (Purchaser Tokens – Delivered Tokens) / Purchaser Tokens**<br><br>Vendor shall promptly return such amount in Settlement Digital Assets to the digital ledger address as may be provided by Purchaser to Vendor in writing.<br><br>(2) For the avoidance of doubt, any reasonable third party administrative costs and expenses (including but not |

FOIA CONFIDENTIAL TREATMENT
REQUESTED BY COINBASE

CB_MIRROR_00000006

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

|  |  | to the Network Fees) which may be incurred by Vendor in the course of such disbursement shall be borne by Purchaser. If borne by Purchaser, such administrative costs and expenses shall be deducted from the Refundable Proceeds. |
|---|---|---|

FOIA CONFIDENTIAL TREATMENT
REQUESTED BY COINBASE

CB_MIRROR_00000007

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

## SCHEDULE 2
## Token Characteristics

**Mirror Tokens**

**Token Name**              :    Mirror Token (token symbol : MIRROR)

**Mirror Token functions**:**

The Mirror token has the following features:

- **Trading fees**: Mirror tokens are primarily traded on a dedicated AMM DEX. Similar to Uniswap, 0.3% of the trade is charged as a trading fee. 0.25% goes to the liquidity provider in UST stablecoin or Mirror Asset (depending on the trade direction), and 0.05% gets converted back to MIR (obviously through Mirrorswap) and distributed to Mirror token stakeholders. This creates constant buy pressure on the Mirror token.
- **Position fees**: Holding Mirror tokens incurs a position fee, which at genesis is set to 0% per year.
- **Protocol governance:** The Mirror token can be used to change major parameters in the protocol, such as the trading fee take rate and the position fee. Passing a governance proposal requires a majority approval of Mirror token holders, and takes 1 week(s) to take effect.

The Mirror token will not be premined. Users can farm Mirror tokens by providing liquidity on Mirrorswap.
- **10 Mirror tokens will be created every block**, and equally distributed to stakers of mAsset pools.
- **20 Mirror tokens will be created every block**, and equally distributed to stakers of the Mirror pool.
- For the first 200000 blocks (~2 weeks), the amount of Mirror tokens produced will be **10x**, resulting in **300** Mirror tokens being minted per block. This is to incentivize early farmers and adopters of the protocol.
- Block rewards halve every year until they hit a terminal reward of 10 MIR / block.

Given that Terra mainnet produces ~4.6M blocks per year, the expected total supply at the end of year is **186.3M MIR**. A detailed token release schedule is here.

Mirror token incentives are entirely governed by the Mirror token holders. The weights of each of the pools and the size of the token distribution can be changed via governance.

**FOIA CONFIDENTIAL TREATMENT**
**REQUESTED BY COINBASE**

CB_MIRROR_00000008

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement on September ____, 2020.

**THE VENDOR**

SIGNED by )
**KWON DO HYEONG** )
for and on behalf of )
**TERRAFORM LABS LIMITED**, in its capacity )
as CEO of the **VENDOR** )

DocuSigned by:
*Do kwon*
—4C2CCD053600400...

**THE PURCHASER**

SIGNED by )
)
for and on behalf of )

**FOIA CONFIDENTIAL TREATMENT
REQUESTED BY COINBASE**

**CB_MIRROR_00000009**

DocuSign Envelope ID: FDE116E2-BCA2-4512-B8CE-3E5E0B3A179A

PURCHASE CONSIDERATION: $200,000 USD

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement on October 16, 2020.

**THE VENDOR**

SIGNED by                                              )
**KWON DO HYEONG**                                     )
for and on behalf of                                   )
**TERRAFORM LABS LIMITED**, in its capacity            )
as CEO of the **VENDOR**                               )

**THE PURCHASER**

SIGNED by                                              )
**ALESIA HAAS**                                        )
for and on behalf of                                   )
**COINBASE GLOBAL, INC.**, in its capacity             )
As Chief Financial Officer of the Purchaser

*DocuSigned by:*
*Alesia Haas*
722400DAD0E449E...

Notice address:

100 Pine Street, Suite 1250
San Francisco, CA 94111
Attn: General Counsel

with a copy to: ventures@coinbase.com;
corporate@coinbase.com