UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD. and DO HYEONG KWON,<br><br>        Defendants. | Civil Action No. 1:23-cv-01346-JSR<br><br>Hon. Jed S. Rakoff |

## **DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

  Defendants[1] respectfully submit this supplemental memorandum to bring to the Court's attention recently released materials that further support their Motion to Dismiss the AC, ECF No. 32. These materials, which were published after the filing of Defendants' Reply, support Defendants' arguments that the major questions doctrine bars the SEC's claims, that the SEC understands it has chosen to forego notice-and-comment rulemaking in favor of enforcement (and that other district judges are beginning to question that approach), and that the SEC's current position on what constitutes a security (and how to apply the test set forth in *SEC v. W.J. Howey, Co.*, 328 U.S. 293 (1946), is an about-face from its previously held positions.

  *First*, with respect to the major questions doctrine, Congress is not only engaging in robust debate over how crypto assets should be regulated, it is asking the SEC to wait for Congress to act. Just this week, another hearing was held to discuss proposed legislation for new statutory frameworks for digital asset regulation and stablecoin issuance.[2] During this hearing, the House Financial Services Committee specifically recognized that the "inconsistent positions" of the SEC and CFTC's recent enforcement actions asserting the same digital assets are commodities and

---

[1] Capitalized terms not defined herein have the meanings set forth in Defendants' opening Memorandum of Law ("OB," ECF No. 29).

[2] Hearing: The Future of Digital Assets: Providing Clarity for the Digital Asset Ecosystem (June 13, 2023, 2:00 PM), https://bit.ly/3PhihJp.

securities "demonstrate the necessity and urgency of congressional action."[3] That same day, the same Committee expressed concerns that about the SEC's proposed amendment to the SEC rule defining an "Exchange."[4] The Committee criticized the SEC for exhibiting "hostility towards technology that is not perfectly compatible with the rules and regulations that exist today" and "[r]ather than create rules that would meet the SEC's mission of consumer protection and protecting financial markets," SEC was attempting to "shoehorn technology that operates fundamentally different into decades old rules for those traditional platforms."[5] The Committee further accused the SEC of proposing amendments "on a topic that it is still seeking to understand without direction from Congress" and appeared to be "attempting to front-run Congress by promulgating a rule to regulate the digital asset ecosystem when the House Financial Services Committee and House Agriculture Committee are actively working on legislation to establish a market structure for digital assets."[6] This is direct evidence that *Congress* thinks that the SEC is acting outside the boundaries set in the '33 and '34 Acts and "attempting to work around the legislative process to resolve for itself a question of great political significance." *Brown v. U.S. Dep't of Educ.*, No. 4:22-CV-0908-P, 2022 WL 16858525, at *12 (N.D. Tex. Nov. 10, 2022). And in an internal email related to the drafting of the Hinman speech, the SEC's Office of General Counsel recognized a "regulatory gap" in whether crypto assets constitute securities, which is

---

[3] Memorandum from House Financial Services Committee Hearing Entitled: "The Future of Digital Assets: Providing Clarity for the Digital Asset Ecosystem" at 2 (June 13, 2023), https://bit.ly/43JnhuM ("[T]he SEC and CFTC have attempted to resolve the legal question of whether a digital asset is a security or a commodity through enforcement actions. However, the agencies have not always agreed on which digital assets are considered securities and which digital assets are considered commodities. For example, last month, the CFTC brought an enforcement action against the trading platform Binance, asserting Binance's BUSD stablecoin, bitcoin, ether, and litecoin are commodities. However, Chair Gensler has stated that he considers all digital assets other than bitcoin to be securities. Last week, in the charges brought against Binance and Founder Changpeng Zhao, the SEC alleged that certain digital assets offered and sold as "securities"... . These inconsistent positions demonstrate the necessity and urgency of congressional action.").

[4] Letter from House Committee on Financial Services to Ms. Vanessa Countryman, Secretary of the SEC at 3 (June 13, 2023), https://bit.ly/3NtFTIv.

[5] *Id.*

[6] *Id.*

consistent with Chair Gensler's initial statement that additional authority from Congress was needed (OB 8).[7]

*Second*, on June 13, 2023, Judge Amy Berman Jackson held a hearing to consider the SEC's request for a temporary restraining order in *SEC v. Binance Holdings Ltd., et al.*, No. 1:23-cv-1599 (D.D.C.). During this hearing, Judge Jackson questioned whether it was "prudent" for the SEC to regulate crypto assets through enforcement when multiple district courts could come to contrary conclusions—specifically noting that "[i]t seems like an inefficient and cumbersome way to establish a national, consistent, understandable policy for the regulation of trading in crypto assets."[8] Indeed, when questioned by Judge Jackson about what digital assets it deems to be securities, the SEC took no position and reserved the right to assert that any digital asset is a security at a later time, conceding that it was doing so to get past a motion to dismiss.[9] On the same day, the SEC responded to a *sua sponte* order issued by the United States Court of Appeals for the Third Circuit in the Coinbase mandamus proceeding to tell the Third Circuit whether it had resolved Coinbase's rulemaking petition (Ex. 2) by questioning the Third Circuit's authority to ask it that question (Ex. 3).

*Third* (and also on June 13, 2023), a set of internal SEC emails were unsealed in *SEC v. Ripple Labs Inc. et al.*, No. 1:20-cv-10832-AT-SN (S.D.N.Y.). Those emails provide insight into

---

[7] Ex. 9 at 10 of 15 ("The fact that tokens on a sufficiently decentralized network are no longer securities – and no longer are required to register, with all the benefits to investors of registration seems to point out what might be considered the 'regulatory gap' that exists in this space.").

[8] Ex. 1, Tr. of Hearing for TRO, *SEC v. Binance*, at 28:12–:19 ("Why is it prudent, from the Commission's point of view, to assign the determination that would have such far-reaching affects in a billion dollar industry to a lone federal district judge, especially when there's another lone federal district judge in a parallel action who could rule the other way? It seems like an inefficient and cumbersome way to establish a national, consistent, understandable policy for the regulation of trading in crypto assets.").

[9] *Id.* at 11:22–12:25 ("THE COURT: The others that you say they're trading in that you're not saying are securities, because you're not saying all of the ones they're trading in are securities, correct? MR. SCARLATO: We -- at this time, Your Honor, we're reserving our rights, just given we're at the pleading stage we have to get into discovery where we can make a full assessment. But our position, Your Honor, is that if one of these coins are a security, we've won. . . . THE COURT: So I'm asking you, the ones that you are not putting in the securities category, what are they? Are they commodities? MR. SCARLATO: We are not -- thank you, Your Honor. We are not taking a position at this time. We're at the pleading stage. We are trying to get past, you know, any potential motion to dismiss and satisfying our burden under the rules. So we have, we think, way more than is required under Rule 8. We gave the Court and the parties notice as to – I think the number is 14 total coins, including BNB, which is at issue in the TRO.").

the drafting of the 2018 speech by then-SEC Director Hinman.[10] Exs. 4–9. These emails demonstrate that early drafts of Hinman's speech did not include the language in the final version stating that "offers and sales of Ether are not securities transactions" or that a "token ... all by itself is not a security, just as the orange groves in *Howey* were not."[11] Instead, these statements were added at the request of SEC officials to provide clearer guidance to the markets. For example, comments from SEC officials and staff urged stronger language on the SEC's position as to Ether to provide clear guidance to the cryptocurrency industry—noting that the statement that "regulating Ether as a security does not seem to be warranted" "would provide less, not more, clarify [*sic*] to the industry on the question of whether ether is a security." Ex. 5 at 9 of 12. In another email, former SEC Director of Trading and Markets Brett Redfearn also wrote that then-current draft language that regulating Ether "would not appear to further the policy objectives of the federal securities laws" "appears likely to create more confusion about the status of ETH"[12] and "[i]f you want to make an affirmative statement that it is not a security ... just say it" as "that is a helpful message."[13] In another email, an SEC special counsel agreed that there was no benefit to even regulating Ether.[14] Other internal SEC emails reflect that Defendants' discussion of Hinman's speech and interpretation of *Howey* are consistent with those of the SEC staff at the time. Comments by SEC officials agreed with Defendants characterization of Hinman's speech as

---

[10] Hinman's speech is referenced in Defendants' Reply, ECF 38, at 7–8, n.23.

[11] *Compare* Ex. 4 at 5 of 11 ("Strictly speaking, the token -- or coin or whatever the digital information packet is called all by itself ***may not*** be a security . . . .") (emphasis added) *with* William Hinman, *Digital Asset Transactions:* When *Howey Met Gary (Plastic)*, SEC (June 14, 2018), https://bit.ly/3X7NCjC ("Hinman Speech") ("[T]he token – or coin or whatever the digital information packet is called – all by itself ***is not*** a security.") (emphasis added); *compare* Ex. 4 at 8 of 11 ("[B]ased on our understanding of the present state of Ether and the Ethereum network, regulating Ether as a security does not seem to be warranted.") *with* Hinman Speech ("[T]he Ethereum network and its decentralized structure, current offers and sales of Ether are not securities transactions.").

[12] Ex. 6 at 18 of 22 ("We thought you were going to say that you don't believe ETH is a security. We think that is a helpful message. This statement, on the other hand, appears likely to create more confusion about the status of ETH.").

[13] *Id.* at 2 and 18 of 22.

[14] Ex. 7 at 2 of 22 ("Based on our understanding of the present state of Ether and the Ethereum network and how it operates, regulating the offer and sale of Ether as a security would nor appear to further the policy objectives of the securities laws.").

providing guidance on what is a security.[15] In another email, an attorney with the SEC's Office of General Counsel suggested an edit clarifying that the Court in *Howey* relied on the presence of a contract to find a security.[16]

      Defendants respectfully request that the Court consider this supplemental material in deciding Defendants' Motion to Dismiss the AC.

Date: June 15, 2023

Respectfully submitted,

*/s/Douglas W. Henkin*
**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com
david.kornblau@dentons.com

Mark G. Califano
Matthew A. Lafferman (pro hac vice admission pending)
Nicholas W. Petts
1900 K Street, NW
Washington, DC 20006-1102
Tel: (202) 496-7500
mark.califano@dentons.com
matthew.lafferman@dentons.com
nicholas.petts@dentons.com

Stephen J. Senderowitz (admitted pro hac vice)
233 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 876-8141
stephen.senderowitz@dentons.com

*Counsel for Defendants Terraform Labs Pte. Ltd. and Kwon Do Hyeong*

---

[15] Ex. 8 at 4 of 13 ("As a general overall comment, this speech is what the general public/market participants have been asking for, so we are very supportive of the speech and what it is communicating. The general sentiment of the speech is focused on the 'what is a security' discussion.").

[16] Ex. 9 at 6 of 15 ("The Court found that only the purchase of land and service contract was the purchase of a security (those who bought land only had not purchased a security).").