# EXHIBIT 3



**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
**100 F Street, N.E.**
**Washington, D.C. 20549**

**OFFICE OF THE**
**GENERAL COUNSEL**

June 13, 2023

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

*Via ECF*

**Re:** *In re Coinbase, Inc.*, No. 23-1779

Dear Ms. Dodszuweit,

Counsel for the Securities and Exchange Commission submit this letter in response to the Court's June 6, 2023 order.

### Introduction

There is no merit to Coinbase's extraordinary request for a writ of mandamus to compel the Commission to act on Coinbase's wide-ranging rulemaking petition within seven days. The Commission has not decided what action to take on that petition in whole or in part—which is entirely reasonable given the breadth of the rulemaking petition and the fact that it was filed just months ago and supplemented by Coinbase more recently. Perhaps recognizing the weakness of its claim, in its reply brief Coinbase now urges the Court to retain

jurisdiction and require the Commission to state when it will act on Coinbase's rulemaking petition and regularly update the Court on its progress.  There is similarly no basis for Coinbase's late-breaking request:  while Coinbase might prefer faster action by the Commission, the Commission's ongoing consideration is reasonable under the circumstances.  For all of the reasons discussed in the Commission's response, the mandamus petition should be denied.

Nonetheless, undersigned counsel respond to the Court's order by stating that, given current circumstances, Commission staff anticipate being able to make a recommendation to the Commission regarding Coinbase's rulemaking petition within the next 120 days.  Counsel for the Commission can provide the Court with a status report at the expiration of that period, by October 11, 2023.  The Commission respectfully requests that, if the Court decides not to deny the mandamus petition at this time, the Court take no action on the petition prior to the filing of such a report.

### Background

On July 21, 2022, Coinbase filed a petition requesting that the Commission take a series of discretionary actions—including wide-ranging rulemaking—to replace existing, applicable requirements with a "new regulatory framework" to govern the "offer, sale, registration, and trading" of crypto assets that are securities.  Add. 4.  The rulemaking petition includes 50 "[k]ey questions for the

Commission to consider"—plus 60 separately delineated subquestions—but does not include detailed rule proposals or draft rule text.  Add. 8-29.

In response to Coinbase's rulemaking petition, the Commission's Office of the Secretary opened a file and began accepting public comments.  Coinbase itself has submitted comments as recently as May 2023, even after filing its mandamus petition.  *See* SEC Br. 6 n.4.  And Coinbase met with Commission staff to discuss its rulemaking petition as recently as April 2023.  *See* SEC Br. 6 n.5.

In April 2023—fewer than ten months after filing its rulemaking petition—Coinbase filed its mandamus petition, asking the Court to direct the Commission to act on the rulemaking petition within seven days.  Coinbase erroneously contends that the Commission's enforcement of existing legal requirements, as well as certain statements by the Commission's Chair regarding the application of existing statutes and regulations to crypto assets that are securities, constitute a *sub silentio* decision to deny Coinbase's rulemaking petition.  Coinbase's assertions are baseless, as explained in the Commission's response.  The Commission continues to consider the rulemaking petition in the ordinary course; there is nothing unusual or untoward about the enforcement of existing law during that consideration; and the statements by the Chair that Coinbase cites do not—and cannot—constitute a decision by the Commission on the petition.  *See* SEC Br. 18-25.  Nor is there a

statutory or regulatory deadline for the Commission's consideration of Coinbase's rulemaking petition.  *See* SEC Br. 8-18.

On June 6, 2023, the Court ordered the Commission to submit a letter addressing "(1) whether the SEC has now decided to deny Coinbase's petition for rulemaking; (2) if not, how much additional time the SEC requires to decide whether to grant or deny that petition; and (3) why this Court should not retain jurisdiction and (a) order periodic reports as Coinbase has proposed, and/or (b) establish a deadline by which the Court will rule on Coinbase's Petition for Writ of Mandamus if the SEC has not yet granted or denied the petition for rulemaking."

## Responses to the Court's Questions

**1.    "Whether the SEC has now decided to deny Coinbase's petition for rulemaking"**

The Commission has not decided what action to take on Coinbase's rulemaking petition.  The Court's order refers to Commission enforcement actions and statements by the Commission's Chair, but neither demonstrate a decision to deny Coinbase's rulemaking petition, much less a Commission denial of that petition.

As explained in the Commission's response, agencies regularly enforce existing, applicable law while simultaneously considering whether there are reasonable policy justifications for modifying those regulations going forward.  *See*

4

SEC Br. 20-23.  To find that—as Coinbase contends—consideration of new regulatory action is inherently inconsistent with the enforcement of existing law would be to require agencies to effectively suspend enforcement of the law every time they assess whether to adjust regulatory requirements in light of evolving conditions, either on their own or at the request of regulated parties.  But existing law governs unless or until legal requirements are changed.  And, consistent with that fundamental principle, even were the Commission to grant Coinbase's rulemaking petition and undertake the rulemaking Coinbase envisions, the existing regulatory regime would remain in place until at least the conclusion of the rulemaking process.  In other words, nothing about the Commission's consideration of Coinbase's rulemaking petition undermines the Commission's current enforcement actions.

Nor do the Commission's current actions to enforce the existing regime indicate that it has decided *not* to pursue further regulatory action.  Indeed, while pursuing the enforcement actions Coinbase highlights, which are based on current law, the Commission is actively considering several rules and other proposals that implicate crypto asset securities.  *See* SEC Br. 17-18, 24 n.16.  And courts have recognized that such enforcement and regulatory undertakings can be complementary because enforcement actions may inform the Commission's view of the current regulatory regime and its consideration of potential revisions thereto.

*See* SEC Br. 20-23; *see, e.g.*, *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031, 1062 (D.C. Cir. 1979) ("The SEC may rationally choose to proceed by adjudication for a reasonable period of time, which will provide it with the experience enabling it to determine at a later date whether something other than [the current regulatory regime] is necessary or desirable[.]").

Moreover, that the Commission has now brought an enforcement action against Coinbase itself in no way indicates that the Commission has decided to deny Coinbase's rulemaking petition. There is no inconsistency between the Commission's allegations that Coinbase has violated long-existing regulatory standards and the Commission's consideration of whether the current regime should be augmented or modified. *See SEC v. Coinbase, Inc.*, Case No. 23-cv-04738 (S.D.N.Y. June 6, 2023), ECF No. 1 (complaint alleging violations of the Securities Act of 1933 and the Exchange Act of 1934). Regardless of whether the Commission determines to undertake the rulemaking sought by Coinbase, a decision the Commission has yet to make, Coinbase—like everyone else—is bound by existing law. And Coinbase is free to vigorously assert its position that it has not violated that law in the current enforcement action.

Similarly, the statements by the Commission's Chair referenced in the Court's order do not demonstrate a decision to deny, much less a Commission denial of, Coinbase's rulemaking petition. As an initial matter, as the Commission

explained (SEC Br. 19-20) and Coinbase recognizes (Reply 5), statements by the Chair do not—and could not—constitute Commission action denying Coinbase's rulemaking petition.  The Commission acts on such petitions through a majority vote of a quorum of its Commissioners.  Moreover, for the reasons explained above, the Chair's statements regarding the applicability of the existing regulatory regime to crypto asset securities do not foreclose consideration of potential revisions to that regime.  *See supra* at 4-6.

## 2.  **"How much additional time the SEC requires to decide whether to grant or deny that petition"**

There is no basis for subjecting the Commission's discretionary rulemaking agenda to a specific timeline.  None is mandated by statute or regulation and Coinbase's rulemaking petition has been pending for a relatively short time by any measure.

Unlike certain other statutory schemes, there is no provision in the federal securities laws establishing a deadline for the Commission to act on rulemaking petitions like Coinbase's, which seeks discretionary action.  SEC Br. 9 & n.6.  And "absent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable of its proceedings is entitled to considerable deference."  *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up); *see also In re Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 506 (D.C. Cir. 1988) (concluding that where "Congress deemed it unwise to

7

impose a rigid timetable on [agency action,] we are not free to ignore that judgment and rewrite the statute to include a specific timetable"). An agency "alone is cognizant of the many demands on it, its limited resources, and the most effective structuring and timing of proceedings to resolve those competing demands." *Natural Resources Defense Council*, 606 F.2d at 1056. Indeed, the Commission's review of Coinbase's rulemaking petition, like its review of all such petitions, must accommodate the Commission's numerous other regulatory and enforcement undertakings and its limited resources. *See* SEC Br. 8-18.

And, for the reasons discussed in the Commission's brief, Coinbase is not entitled to mandamus imposing a deadline on the Commission's consideration of Coinbase's rulemaking petition. *See* SEC Br. 8-18. Neither this Court's precedent nor that of other circuit courts supports such extraordinary relief on the present record. In particular, Coinbase has identified no unreasonable delay. Coinbase's rulemaking petition is less than one year old (with Coinbase supplementing the record as recently as last month) and proposes significant and wide-ranging changes to numerous aspects of the existing regulatory regime. Tellingly, Coinbase has not identified a single instance in which a court found even remotely analogous circumstances to justify mandamus relief.

For these reasons, the Commission should not be required to bind itself to a specific deadline for a decision on Coinbase's rulemaking petition. Nonetheless,

the staff anticipates being in a position to make a recommendation to the

Commission regarding that petition within 120 days.  *See infra* at 10.

**3.**     **"Why this Court should not retain jurisdiction and (a) order periodic reports as Coinbase has proposed, and/or (b) establish a deadline by which the Court will rule on Coinbase's Petition for Writ of Mandamus if the SEC has not yet granted or denied the petition for rulemaking"**

Coinbase's request for periodic reports is similarly unwarranted.  Coinbase

relies on inapposite authority that reflects circumstances in no way comparable to

those presented by its mandamus petition.

In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70

(D.C. Cir. 1984), the court imposed a reporting requirement only upon finding that

the statutory scheme assumed a need for agency action "within . . . months [or]

occasionally a year or two," the agency had delayed for almost five years (which

the agency conceded was an "unfortunately long time"), and the agency "fail[ed] to

meet its self-declared prior deadlines." *Id.* at 80-81 (cleaned up).  And the court in

*In re United Mine Workers of America International Union*, 190 F.3d 545 (D.C.

Cir. 1999), imposed a reporting requirement only upon finding that the agency's

eight-year-delay "violate[d] the express [90-day-]timetable set forth by Congress."

*Id.* at 546; *see also In re Monroe Commc'ns Corp.*, 840 F.2d 942, 947 (D.C. Cir.

1988) (imposing no reporting requirement despite "the unusual circumstance of an

unrebutted . . . allegation of bad faith" by the agency).  In contrast, Coinbase

claims a need for periodic reports despite identifying no bad faith or unreasonable

delay in the Commission's consideration of Coinbase's petition, much less the violation of any statutory, regulatory, or self-imposed deadline.

In any event, periodic reports are not necessary in this case. Under current circumstances, the staff anticipates that it will be in a position to make a recommendation to the Commission regarding Coinbase's petition within 120 days. Should the Court be disinclined to deny the mandamus petition at this time, counsel for the Commission can provide the Court with a status report at the expiration of that period, by October 11, 2023. And, absent denial, the Commission respectfully asks that the Court not act on the mandamus petition prior to the filing of such a report.

Sincerely,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

DAVID D. LISITZA
Senior Appellate Counsel

*/s/ Ezekiel L. Hill*
EZEKIEL L. HILL
Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202-551-7724 (Hill)
hillez@sec.gov

cc:    Counsel of record (via ECF)