UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS PTE LTD. and<br>DO HYEONG KWON,<br><br>Defendants. | No. 1:23-cv-1346 (JSR) |

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff Securities and Exchange Commission respectfully responds to Defendants' submission (ECF No. 47) regarding a summary judgment ruling in a different case pending in this District. In *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900 (S.D.N.Y. July 13, 2023), the court considered whether sales of a crypto asset called "XRP" were sales of "investment contracts" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). The court concluded that Ripple's sales of XRP in so-called "Institutional Sales," *i.e.*, those made "directly to certain counterparties … pursuant to written contracts," were offers and sales of investment contracts, 2023 WL 4507900 at *2, *8-11, but that its "Programmatic Sales" to "less sophisticated" investors "on digital asset exchanges" and certain distributions of XRP for services were not. *Id.* at *2, *11-13.

Contrary to Defendants' assertions, much of the *Ripple* ruling supports the SEC's claims in this case and rejects arguments Defendants have raised here. However, with respect to the Programmatic and other sales, the SEC respectfully avers that *Ripple* conflicts with and adds baseless requirements to *Howey* and its progeny. Respectfully, those portions of *Ripple* were wrongly decided, and this Court should not follow them. SEC staff is considering the various available avenues for further review and intends to recommend that the SEC seek such review.

I.       *Ripple*'s Holding as to Institutional Sales Supports the SEC's Arguments Here.

*Ripple* rejected two arguments Defendants make in their motion to dismiss here.  First, Defendants argue that *Howey* requires that the purchaser of an investment contract have a legal entitlement to share in the profits of the enterprise.  ECF No. 29, at 13-14.  Yet *Ripple* "reject[ed] Defendants' argument that all investment contracts must include post-sale obligations on the promoter and grant the investor a right to share in profits from the promoter's efforts."  2023 WL 4507900, at *6.  Second, Defendants argue that the SEC did not "provide[] Defendants with fair notice of its retroactive interpretation of securities laws it now asserts in this case."  ECF No. 29, at 10-11.  But *Ripple* rejected that defense, finding that "*Howey* sets forth a clear test for determining what constitutes an investment contract."  2023 WL 4507900, at *14-15; *but see id.* at *15 n.20 (not addressing defense regarding Programmatic Sales).

Defendants assert a hodgepodge of purported factual differences between their crypto asset sales and Ripple's Institutional Sales.  *See* ECF No. 47 at 2-3.  But none of those purported factual distinctions are sufficient to distinguish Defendants' sales from Ripple's for purposes of *Howey*, given the Amended Complaint's detailed allegations of statements that led investors to reasonably expect profits from Defendants' efforts.  *See* Opp. to Mot. to Dismiss at 16-28.  And on a motion to dismiss, the Court must draw reasonable inferences in the SEC's favor— including that the institutional buyers in this case, such as trading firms that purchased Defendants' crypto assets with no restrictions on resale, purchased because they viewed the assets as an investment opportunity into Terraform's efforts.  *See e.g.*, Am. Compl. ¶¶ 105-08.[1]

---

[1] Defendants' assertion that the SEC made a "concession at oral argument" regarding the crypto asset securities at issue in this case is baseless.  Counsel made the simple observation that in conducting a *Howey* analysis, courts do not look at crypto assets (or any other asset) in a vacuum, but instead in the context of how the assets were offered and sold.  *See SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 365 (S.D.N.Y. 2020) ("The enterprise and the described

II.  *Ripple*'s Holding as to Programmatic Sales Is Incorrect and Should Not Be Followed.

By contrast, *Ripple*'s analysis of Programmatic Sales cannot be squared with *Howey* and decades of federal securities laws jurisprudence.  This Court should not follow it.

*Ripple* correctly concludes that defendants' extensive public statements promoting XRP created in institutional buyers reasonable expectations of profits from Ripple's efforts.  2023 WL 4507900, at *8-11.  The same result should have followed directly with respect to retail buyers too.  Instead, *Ripple* creates an artificial distinction between the expectations of sophisticated institutional and retail investors, improperly transforms *Howey*'s reasonable investor inquiry into a subjective one, and turns on its head the reasoning underlying *Howey* and other cases.

*First*, what an investor reasonably expects does not depend on whether the investor buys into the investment directly from or communicates directly with the promoter.  The promoter's choice of using intermediaries to sell does not alter reasonable expectations—those who buy indirectly have the same reasonable expectations.  Those expectations arise from the promoters' same public statements and from the same economic reality of the investment (*e.g.*, *Ripple*, 2023 WL 4507900, at *10 (discussing widely available touts of XRP on the internet)), and not from how, mechanically, funds flow to the promoter.  In other words, when investing, even through impersonal transactions, a reasonable investor would have understood that she was buying into the promoter's touted efforts to develop the investment.  Thus, Section 5 expressly proscribes "offer[s] to sell," as well as sales made "directly or indirectly" through intermediaries, 15 U.S.C. § 77e, and courts have found Section 5 violations where unregistered securities transactions occur through the use of intermediaries, showing that *Ripple*'s direct purchase requirement does

---

materials, by the very nature of the operation of the securities laws, must be examined as of the time that the transaction took place, together with the knowledge and the objective intentions and expectations of the parties.") (citations omitted).

not exist. *E.g.*, *Telegram*, 448 F. Supp. 3d at 380-81 (sales through underwriters); *SEC v. LBRY, Inc.*, 2022 WL 16744741, at *3 (D.N.H. Nov. 7, 2022) (sales on platforms).

*Second*, *Ripple* erroneously creates two different "reasonable investor" standards—one for institutional and another for retail investors—but creating *any* such subjective dichotomy is contrary to *Howey*. *Telegram*, 448 F. Supp. 3d at 371. In concluding that the Programmatic Sales did not constitute the offer and sale of an investment contract, *Ripple* considered whether those "generally less sophisticated" investors could properly parse and comprehend the promises made to them. 2023 WL 4507900, at *12. But investors' subjective views are not determinative. *See Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009). And to conclude that the SEC must prove investors' specific knowledge of particular statements would improperly require the SEC to show reliance in its enforcement actions. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1104 (2019).

*Third*, *Ripple* misconstrues the "efforts of others" analysis in other ways. This prong is meant to identify "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *SEC v. Glenn W. Turner Enters, Inc.*, 474 F.2d 476, 482 (9th Cir. 1973). But *Ripple* appears to improperly add requirements to this analysis, including that the seller have made promises *directly* to each investor, that each investor knows that her money was going directly to the promoter, that the *expectations* (as opposed to the *profits*) derive from the issuer's efforts, and that the investor believe that her proceeds would be used directly to undertake the relevant efforts. 2023 WL 4507900, at *11-12. These factors are plainly not a part of the *Howey* analysis. *E.g.*, *LBRY*, 2022 WL 16744741, at *5; *Telegram*, 448 F. Supp. 3d at 371-72.

*Finally*, the underlying logic of the *Ripple* ruling is divorced from the basic principles behind *Howey* and the federal securities laws more broadly. When distinguishing between

4

classes of investors, courts construe the federal securities laws' provisions to provide *more*—not less—protection to retail investors. *SEC v. Ralston Purina & Co.*, 346 U.S. 119, 124 & n.10 (1953). When courts applying *Howey* analyze a market of dispersed retail investors, dispersion makes it *more*, not *less*, likely that the reasonable investor expected profits from someone else's efforts. *E.g.*, *United States v. Leonard*, 529 F.3d 83, 90-91 (2d Cir. 2008) (investors were "lacking in requisite expertise, so numerous, or so dispersed that they become utterly dependent on centralized management"). When courts consider the impersonal nature of securities solicitations in the modern world and securities markets, they reason that drawing distinctions between "'personal' or individualized solicitations" makes "little sense" and would permit sellers to "dodge [Securities Act] liability through [their] choice of communications." *Wildes v. BitConnect*, 25 F.4th 1341, 1345-46 (11th Cir. 2021). When courts construe the federal securities laws, they are generally mindful of the impersonal nature of the secondary trading markets, and *Howey*'s objective standard presumes that investors are aware of all information reasonably available to them. *See SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 353 (1943) (courts look to the "economic inducements held out" in promotional materials and promoters' offerings are "judged as being what they were represented to be"); *Piambino v. Bailey*, 610 F.2d 1306, 1320 (5th Cir. 1980) (looking to "expectations of a 'reasonable investor' as prompted by [promoter]'s standardized presentation"). *Ripple*'s reasoning is impossible to reconcile with all of these fundamental securities laws principles.[2]

---

[2] Even if *Ripple*'s analysis of Programmatic Sales were correct, it still would not support dismissal here. For example, while *Ripple* concluded that retail investors did not necessarily know that they were investing into Ripple's efforts, the Court here can and should reasonably infer on this motion to dismiss that—given Do Kwon's visible and personal offers of securities to investors, and the fact that the crypto assets at issue referred to or directly bore Terraform Lab's or its project's names (*e.g.*, UST/Anchor, MIR, LUNA, and wLUNA), Am. Compl. ¶¶ 43, 54, 82—investors here *did* understand that they were buying into Terraform's efforts.

Dated: July 21, 2023				Respectfully submitted,

/s/ Christopher J. Carney
_____
Jorge G. Tenreiro
Christopher J. Carney
James P. Connor, admitted *pro hac vice*
Laura E. Meehan
Devon L. Staren, admitted *pro hac vice*
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Tel: (212) 336-1100
Email: tenreiroj@sec.gov