UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| Plaintiff, | : | No. 1:23-cv-1346 (JSR) |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| TERRAFORM LABS PTE LTD. and | : | |
| DO HYEONG KWON, | : | |
| | : | |
| Defendants. | : | |
| | X | |

## ANSWER TO SEC'S AMENDED COMPLAINT

Defendants Terraform Labs PTE Ltd. ("TFL") and Kwon Do Hyeong (together, "Defendants"), by their undersigned attorneys, as and for their Answer to the Amended Complaint ("AC") filed by the Securities and Exchange Commission (the "SEC"), state as follows:

### DEFENDANTS' PRELIMINARY STATEMENT

1. The AC is based on unprecedented and ill-conceived legal theories (having neither statutory support nor congressional authorization) that Defendants' alleged distributions of UST, LUNA, wLUNA, and MIR were "investment contract[s]" and thus "securit[ies]" subject to registration under 15 U.S.C. § 77b(a)(1).  That theory ignores, among many other things, that UST, LUNA, wLUNA, and MIR each perform a number of functions that are distinct from the functions of "securities" as the law has understood that term for decades.  For example, UST was a medium of exchange, moving value between jurisdictions and facilitating transactions.  It was not a security and the SEC has no authority to regulate it as one.

2. The SEC filed this Complaint 5 years after the Terra blockchain and ecosystem were first created and after nearly 2 years of investigation (starting with MIR and mAssets). During those periods, the SEC took no steps to prevent parties globally from transacting in UST, LUNA, wLUNA, MIR, and mAssets, took no steps to prevent these ecosystems from growing, and took no steps to prevent or inhibit the creation of new use cases by both TFL and third parties. The SEC's filing, based on a legal theory that has no statutory tether, amounts to picking cryptocurrency winners and losers, given that the SEC has exempted bitcoin and (so far) ether from similar attempts at regulation. As multiple members of Congress and SEC Commissioners have recognized, the SEC lacks power to act in this space and its behavior threatens to damage U.S. competitiveness and innovation.

3. Defendants did not sell or distribute UST, LUNA, wLUNA, or MIR as investment contracts, and did not sell mAssets as securities-based swaps. TFL has never offered or sold UST, LUNA, wLUNA, or MIR as investments, and holders of those tokens did not acquire any claim to the assets of TFL, hold any ownership interest in TFL, or have any entitlement to share in TFL's future profits (to the extent there were any). TFL never performed an initial coin offering, did not offer or contract to sell future tokens as a way to raise money to build an ecosystem, never promised "profits" to any holder of UST, LUNA, wLUNA, MIR, or mAssets, and had no relationship at all with the vast majority of UST, LUNA, wLUNA, MIR, and mAsset holders, nearly all of whom purchased or received those tokens from third parties on the open market or received them programmatically through the use of a protocol.

4. The small number of contracts an affiliate of TFL entered into with sophisticated, institutional counterparties for sales of LUNA and MIR were not investment contracts, but standard purchase and sale agreements with no promise of efforts by TFL or future profits.

Neither TFL nor the subsidiary that sold the LUNA and MIR tokens had any explicit or implicit obligation to any of those counterparties to expend efforts on their behalf; proceeds of LUNA and MIR sales were not pooled in a common enterprise; and holders of LUNA and MIR could not reasonably rely on the efforts of TFL or the selling subsidiary. Indeed, each such contract stated on its cover page that no token should be construed, interpreted, classified, or treated as enabling, or according any opportunity to any purchaser to participate in or receive profits, income, or other payments or returns arising from or in connection with the seller, the project group, the project, the tokens, or the proceeds of the token sale, or to receive sums paid out of such profits, income, or other payments or returns. These agreements also stated that the purchasers were not relying on any representations other than those in the purchase agreements, and the purchase agreements contained no representations regarding the elements of the test set forth in *SEC v. W.J. Howey Co*., 328 U.S. 293 (1946).

5. Although TFL held a large amount of LUNA from its genesis, that does not and cannot render LUNA or wLUNA an investment contract. Many entities own large amounts of commodities and participate heavily in the commodities markets. There is no credible argument that substantial holdings convert those commodities or currencies into securities, nor has any case so held.

6. The theory asserted by the SEC in the AC would read the word "contract" out of "investment contract," and stretch the *Howey* test beyond all sensible recognition. As a matter of economic substance, UST, LUNA, wLUNA, MIR, and mAssets categorically differ from what Congress defined as "securities" and authorized the SEC to regulate.

7.     The AC tries to overcome these legal obstacles by mischaracterizing the record. For example, the AC mischaracterizes all of the transactions involving LUNA and MIR, regardless of their nature, purpose, or manner of execution, as a single "Offering."

8.     The SEC's unbounded zeal to characterize every cryptocurrency company as lawless is exemplified by two aspects of the AC:

   a.     The AC alleges that Chai Corporation worked in a specific way that it alleges was contrary to public disclosures about Chai.  From the beginning of its nearly two-year investigation of Defendants *through now*, the SEC has not examined the source code for the programs that operated Chai's platform:  During a discovery conference, Defendants' counsel asked the SEC's counsel whether they had reviewed any Chai source code, and the SEC's counsel said they had not and did not have copies of it.

   b.     The SEC makes allegations about Defendants' interactions with a Swiss bank that it knew were untrue:  At the time the SEC made the allegations in paragraph 173, it possessed information obtained from the Swiss bank that directly disproved every allegation in that paragraph.  Bank records provided to the SEC and in the SEC's possession when it filed this case showed that Mr. Kwon transferred no cryptocurrency at all to the Swiss Bank after March 2022, that he *never* transferred Bitcoin to the Swiss bank, and that all transfers by TFL were made for the purposes of paying salaries, rent and other ordinary business expenses, legal fees, and into a court registry to moot a Mareva injunction entered in Singapore.

## RESPONSE TO THE SEC'S ALLEGATIONS[1]

### SUMMARY

1.     Defendants deny the allegations in paragraph 1.

2.     Defendants deny the allegations in paragraph 2.

3.     Defendants deny the allegations in paragraph 3.

---

[1] Defendants deny all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs unless otherwise noted.  When a document (or statements, conclusions, or other material referenced therefrom) is referenced in this Answer or the AC, it speaks for itself and Defendants deny any allegations or characterizations based on the document.  Defendants reserve all rights with regard to the existence, authenticity, accuracy, and admissibility of such documents.

4.      Defendants admit that at various times LUNA was one of the ten largest cryptocurrencies by circulating value, that UST was a stablecoin that was algorithmically pegged to the U.S. dollar that in April 2022 had a circulating value of more than $17 billion, and otherwise deny the allegations in paragraph 4.

5.      Defendants deny the allegations in paragraph 5.

6.      Defendants deny the allegations in paragraph 6.

7.      Defendants admit that the price of UST fell below $1 during late May 2021 and then recovered, refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 7.

8.      Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 8, and the allegations are therefore denied.

9.      Defendants admit that there was significant selling pressure on UST and LUNA in May 2022, lack sufficient knowledge to admit or deny the allegations in the penultimate and final sentences in paragraph 9 and those allegations are therefore denied, and otherwise deny the allegations in paragraph 9.

**VIOLATIONS**

10.      Defendants deny the allegations in paragraph 10.

11.      Defendants deny the allegations in paragraph 11.

12.      Defendants deny the allegations in paragraph 12.

**NATURE OF PROCEEDINGS AND RELIEF SOUGHT**

13.      Paragraph 13 states a legal conclusion to which no response is required.

14.      Defendants admit that the SEC seeks the relief described in paragraph 14 but deny that it is entitled to any of the relief sought.

**DEFENDANTS**

15.      TFL admits that it is a private company registered and headquartered in Singapore

and has had employees located in the U.S., states that neither TFL nor cryptocurrencies it

developed were required to be registered with the SEC (and notes that the SEC has never

provided guidance on how cryptocurrencies could be registered even if a developer had wanted

to try to do so), and otherwise denies the allegations in paragraph 15.

16.      Mr. Kwon admits the first, fourth, fifth, and sixth sentences of paragraph 16 and

otherwise denies the allegations in paragraph 16.

**JURISDICTION AND VENUE**

17.      Paragraph 17 states legal conclusions as to which no response is required.

18.      Defendants deny the allegations in paragraph 18.

19.      Defendants deny the allegations in paragraph 19.

20.      Defendants deny the allegations in paragraph 20.

**STATUTORY AND LEGAL FRAMEWORK**

21.      Paragraph 21 states legal conclusions as to which no response is required.

22.      Paragraph 22 states legal conclusions as to which no response is required.

23.      Paragraph 23 states legal conclusions as to which no response is required.

24.      Paragraph 24 states legal conclusions as to which no response is required.

25.      Paragraph 25 states legal conclusions as to which no response is required.

**BACKGROUND ON CRYPTO ASSETS**

26.      Defendants admit that paragraph 26 states a definition of what the SEC calls

"crypto assets," but deny that it is the sole such definition and note that it is not the term

Defendants used for tokens developed by TFL, and otherwise deny the allegations in paragraph 26.

26.

27.     Defendants admit that some blockchains and distributed ledgers are peer-to-peer databases that operate on networks of computers to record transactions in immutable digital forms and that they generally rely on cryptographic principles and algorithms for multiple aspects of their operations, that blockchains can be used in the operations of smart contracts as that term is generally used in connection with, *inter alia*, cryptocurrencies and decentralized financial applications, and otherwise deny the allegations in paragraph 27.

28.     Defendants admit that many blockchains employ "consensus" mechanisms for various purposes and that cryptocurrencies can be bought and sold on centralized and decentralized markets as well as through peer-to-peer transactions that do not involve any markets, and otherwise deny the allegations in paragraph 28.

29.     Defendants deny the allegations in paragraph 29.

30.     Paragraph 30 states legal conclusions as to which no response is required.

## FACTS

### I.     Defendants Created and Developed the Terraform Ecosystem.

31.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 31.

32.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 32.

33. Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 33.

34. Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 34.

35. Defendants deny the allegations in paragraph 35.

36. Defendants refer to the publicly available information relating to the circulating supply of UST for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 36.

37. Defendants admit that TFL created other cryptocurrency-related products, including the Mirror Protocol, which was introduced to the public in December 2020, that the Mirror Protocol enabled users to programmatically create mAssets that tracked any asset in the world with a continuous price feed, refer to the cited or quoted materials for the content and context thereof, note that those materials speak for themselves, and otherwise deny the allegations in paragraph 37.

38. Defendants admit that the Mirror Protocol programmatically generated MIR tokens, refer to the Mirror Protocol documentation for the context and content thereof, and otherwise deny the allegations in paragraph 38.

II. **Terraform's Crypto Assets Were Offered and Sold As Securities.**

39. Defendants deny the allegations in paragraph 39.

40.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 40.

41.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 41.

42.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 42.

43.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 43.

A.     **LUNA**

1.     ***Investment of Money.***

44.     Defendants deny the allegations in paragraph 44.

2.     ***Common Enterprise.***

45.     Defendants deny the allegations in paragraph 45.

46.     Defendants deny the allegations in paragraph 46.

47.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 47.

48.     Defendants admit the second and third sentences and otherwise deny the allegations of paragraph 48.

### 3. *Reasonable Expectation of Profits From Defendants' Managerial Efforts.*

49.     Defendants deny the allegations in paragraph 49.

50.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 50.

51.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 51.

52.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 52.

53.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 53.

54.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 54.

55.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 55.

56.     Defendants state that the public prices of LUNA during the referenced periods speak for themselves and otherwise deny the allegations in paragraph 56.

57.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 57.

58.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 58.

**B.     "Wrapped" LUNA**

59.     Defendants admit that UST, LUNA, and MIR were minted and transferred on the TFL blockchain, that different blockchains are not always interoperable, that cryptocurrencies on one blockchain are not always transferable to another blockchain, and deny the other allegations in paragraph 60.

60.     Defendants admit that cross-chain and bridge protocols generally permit holders of cryptocurrencies to move those cryptocurrencies from one blockchain to another blockchain, that wLUNA functions through a bridge from the Terra blockchain to the Ethereum blockchain, and otherwise deny the allegations in paragraph 60.

61.     Defendants admit that there was a mechanism for moving wLUNA from the Ethereum blockchain to the Terra blockchain and refer to that mechanism for the context and content thereof, and otherwise deny the allegations in paragraph 61.

### 1.     *Investment of Money.*

62.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 62, and the allegations are therefore denied.

### 2.     *Common Enterprise.*

63.     Defendants deny the allegations in paragraph 63.

64.     Defendants deny the allegations in paragraph 64.

### 3. *Reasonable Expectation of Profits from Defendants' Managerial Efforts.*

65.     Defendants deny the allegations in paragraph 65.

66.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 66.

67.     Defendants deny the allegations in paragraph 67.

### 4. *wLuna Is a Receipt for a Security.*

68.     The first sentence of paragraph 68 states a legal conclusion to which no response is required, and Defendants deny the allegations in the remainder of paragraph 68.

## C.    UST

### 1. *Investment of Money.*

69.     Defendants deny the allegations in paragraph 69.

### 2. *Common Enterprise.*

70.     Defendants deny the allegations in paragraph 70.

71.     Defendants deny the allegations in paragraph 71.

72.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 72.

73.     Defendants deny the allegations in paragraph 73.

### 3. *Reasonable Expectation of Profits Based on the Managerial Efforts of Defendants.*

74.     Defendants deny the allegations in paragraph 74.

75.     Defendants deny the allegations in paragraph 75.

76.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 76.

77.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 77.

78.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 78.

79.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 79.

80.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 80.

81.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 81, and the allegations are therefore denied.

82.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 82, and the allegations are therefore denied.

83.     Defendants deny the allegations in paragraph 83.

### 4.     *UST Is a Security Because It Could Be Exchanged for LUNA*

84.     Defendants deny the allegations in paragraph 84.

**D.     MIR Tokens**

### 1.     *Investment of Money.*

85.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 85, and the allegations are therefore denied with the exception of those entities who purchased farmed MIR from TFL through Simple Agreements for Farmed Tokens, and Defendants refer to those purchase agreements for the content and context thereof and otherwise deny the allegations relating to such agreements.

### 2.      *Common Enterprise.*

86.     Defendants deny the allegations in paragraph 86.

87.     Defendants deny the allegations in paragraph 87.

88.     Defendants deny the allegations in paragraph 88.

89.     Defendants admit that TFL farmed some MIR tokens as a service to certain entities that desired to purchase MIR tokens without farming them themselves (and refer to those agreements for the content and context thereof) and otherwise deny the allegations in paragraph 89.

### 3.      *Reasonable Expectation of Profits Based on Defendants' Managerial Efforts.*

90.     Defendants deny the allegations in paragraph 90.

91.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 91.

92.     Defendants deny the allegations in paragraph 92.

93.     Defendants admit that the Mirror Protocol was developed to provide benefits to its users and as an example of a use case for the Terra blockchain, and otherwise deny the allegations in paragraph 93.

94.     Defendants admit that the Mirror Protocol was developed and maintained to provide benefits to its users and as an example of a use case for the Terra blockchain, and otherwise deny the allegations in paragraph 94.

95.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 95.

96.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 96.

97.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 97.

**E.      mAsset Transactions Were Security-Based Swaps**

98.     Defendants deny the allegations in paragraph 98.

99.     Defendants deny the allegations in paragraph 99.

100.      Defendants deny the allegations in paragraph 100.

101.      Defendants deny the allegations in paragraph 101.

102.      The first sentence of paragraph 102 states legal conclusions to which no response is denied.  Defendants deny the allegations in the remainder of paragraph 102.

103.      Paragraph 103 states legal conclusions as to which no response is required.

104.      Paragraph 104 states legal conclusions as to which no response is required.

**III.    Defendants Offered and Sold Crypto Asset Securities in Unregistered Transactions**

105.      Defendants deny the allegations in paragraph 105.

106.     Defendants deny the allegations in paragraph 106.

107.     Defendants deny the allegations in paragraph 107.

108.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 108.

109.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 109.

110.     Defendants deny the allegations in paragraph 110.

111.     TFL states that it engaged in open market transactions involving LUNA, none of which were on U.S.-based platforms, lacks sufficient knowledge or information relating to which "crypto asset trading platforms" were "available to U.S. investors" and therefore denies those allegations, and otherwise denies the allegations in paragraph 111.

112.     Defendants admit that TFL entered into contracts to farm MIR tokens for certain entities, refer to those contracts for the content and context thereof, note that those contracts speak for themselves, and otherwise deny the allegations in paragraph 112.

113.     Defendants deny the allegations in paragraph 113.

114.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 114.

115.     Defendants admit that the website referenced in the last sentence of paragraph 115 enabled Mirror Protocol users to interact with the Mirror Protocol and otherwise deny the allegations in paragraph 115.

116.     Defendants deny the allegations in paragraph 116.

117.     Defendants deny the allegations in paragraph 117.

**IV.     Terraform and Kwon Misled, Deceived, and Defrauded Investors**

118.     Defendants deny the allegations in paragraph 118.

119.     Defendants deny the allegations in paragraph 119.

120.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 120.

**A.     Terraform and Kwon Deceived Investors About Chai**

121.     Defendants deny the allegations in paragraph 121.

122.     Defendants deny the allegations in paragraph 122.

123.     Defendants admit that Chai was a mobile payment service provider in Korea created by Mr. Kwon and Daniel Shin and otherwise deny the allegations in paragraph 123.

124.     Defendants admit that at various times Chai and TFL shared office space and personnel and that Mr. Kwon was for a time on Chai's board, and otherwise deny the allegations in paragraph 124.

125.     Defendants admit that Messrs. Kwon and Shin separated TFL from Chai, that Mr. Kwon continued as TFL's CEO and moved TFL's offices in Korea, that many TFL employees worked solely for TFL thereafter, and that Mr. Kwon continued as a director of Chai for some period of time.  Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 125.

126.     Defendants deny the allegations in paragraph 126.

127.    Defendants deny the allegations in paragraph 127.

128.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 128.

129.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 129.

130.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 130.

131.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 131.

132.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 132.

133.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 133.

134.    Defendants deny the allegations in paragraph 134.

135.    Defendants deny the allegations in paragraph 135.

136.    Defendants deny the allegations in paragraph 136.

137.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 137.

138.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 138.

139.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 139.

140.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 140.

141.     Defendants deny the allegations in paragraph 141.

142.     Defendants deny the allegations in paragraph 142.

143.     Defendants deny the allegations in paragraph 143.

144.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 144.

145.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 145.

146.     Defendants deny the allegations in paragraph 146.

147.     Defendants deny the allegations in paragraph 147.

148.    Defendants deny the allegations in paragraph 148.

149.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 149.

150.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, lack sufficient knowledge regarding what supposed "U.S.-based retail and institutional investors believed" or "found" "significant" and therefore deny such allegations, and otherwise deny the allegations in paragraph 150.

151.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, lack sufficient knowledge regarding what a supposed "U.S.-based institutional investors believed" or "found" "significant" and therefore deny such allegations, and otherwise deny the allegations in paragraph 151.

152.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 152.

**B.      Terraform and Kwon Mislead Investors about the May 2021 De-peg**

153.    Defendants deny the allegations in paragraph 153.

154.    Defendants deny the allegations in paragraph 154.

155.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 155.

156.    Defendants admit that UST maintained its peg from 2019 through May 2021 and otherwise deny the allegations in paragraph 156.

157.     Defendants admit that the price of UST declined during certain parts of May 2021, that Mr. Kwon was called by an executive of the U.S. Trading Firm on the morning of May 23, 2021 (U.S. Central time) and called that executive during the afternoon of May 23, 2021 (U.S. Central time), and otherwise deny the allegations in paragraph 157.

158.     Defendants deny the allegations in paragraph 158.

159.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 159.

160.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 160.

161.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 161, and the allegations are therefore denied.

162.     Defendants deny the allegations in paragraph 162.

163.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 163.

164.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 164.

165.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 165.

166.     Defendants deny the allegations in paragraph 166.

167.     Defendants deny the allegations in paragraph 167.

168.     Defendants deny the allegations in paragraph 168.

169.     Defendants deny the allegations in paragraph 169.

**C.     May 2022 Collapse of the Terraform Ecosystem**

170.     Defendants admit that UST lost its peg in May 2022 and did not recover despite the publicly discussed efforts of TFL and LFG to retore the peg; state that the cause of the depeg appears to have been concerted action by certain market participants to depress the price of UST; refer to the publicly available price information for UST, LUNA, and MIR for the content and context thereof; and otherwise deny the allegations in paragraph 170.

171.     Defendants admit that UST, LUNA, wLUNA, and MIR lost most of their value in May 2022 due to market events and otherwise deny the allegations in paragraph 171.

172.     Defendants state that no Defendant ever advised anyone to make purchases such as those alleged in paragraph 172.  Defendants lack sufficient knowledge regarding the allegations in paragraph 172, and the allegations are therefore denied.

173.     Defendants deny the allegations in paragraph 173.

**FIRST CLAIM FOR RELIEF**
**Fraud in the Offer of Sale of Securities**
**(Violation of Section 17(a) of the Securities Act)**

174.     Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

175.     Defendants deny the allegations in paragraph 175.

176.     Defendants deny the allegations in paragraph 176.

**SECOND CLAIM FOR RELIEF**
**Fraud in Connection with the Purchase or Sale of Securities**
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

177.     Defendants repeat and reallege their responses to the allegations in paragraphs 1

through 173.

178.     Defendants deny the allegations in paragraph 178.

179.     Defendants deny the allegations in paragraph 179.

## THIRD CLAIM FOR RELIEF
**Control Person Liability under Section 20(a) of the Exchange Act for Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

180.     Defendants repeat and reallege their responses to the allegations in paragraphs 1

through 173.

181.     Mr. Kwon denies the allegations in paragraph 181.

182.     Mr. Kwon denies the allegations in paragraph 182.

## FOURTH CLAIM FOR RELIEF
**Unregistered Offers and Sales of Securities
Violation of Sections 5(a) and 5(c) of the Securities Act**

183.     Defendants repeat and reallege their responses to the allegations in paragraphs 1

through 173.

184.     Defendants deny the allegations in paragraph 184.

185.     Defendants deny the allegations in paragraph 185.

## FIFTH CLAIM FOR RELIEF
**Unregistered Offer of Security-Based Swaps with Non-Eligible Contract Participants
(Violations of Section 5(e) of the Securities Act)**

186.     Defendants repeat and reallege their responses to the allegations in paragraphs 1

through 173.

187.     Defendants deny the allegations in paragraph 187.

188.     Defendants deny the allegations in paragraph 188.

## SIXTH CLAIM FOR RELIEF
**Effecting Transactions in Security-Based Swaps with Non-Eligible Contract Participants**
**(Violations of Section 6(l) of the Exchange Act)**

189.    Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

190.    Defendants deny the allegations in paragraph 190.

191.    Defendants deny the allegations in paragraph 191.

### AFFIRMATIVE DEFENSES

Defendants allege, assert, and state the following defenses as separate and distinct defenses to the AC.  By virtue of asserting these affirmative defenses, Defendants do not assume any burden of proof, persuasion, or production not legally assigned to them.

### FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

The AC fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE: UST, LUNA, WLUNA, MIR, AND MASSETS ARE NOT SECURITIES

Defendants did not violate any provisions of the Securities Act or Securities Exchange Act because (a) UST, LUNA, wLUNA, and MIR are not securities or "investment contracts" and no distributions or sales of UST, LUNA, wLUNA, or MIR were "investment contracts"; (b) mAssets are not security-based swaps and no sales of mAssets were security-based swaps; and (c) neither Defendant could be deemed the "issuer" or a statutory seller of UST, LUNA, wLUNA, MIR, or mAssets.  No registration was required in connection with any distribution or sale of UST, LUNA, wLUNA, MIR, or mAssets.

### THIRD AFFIRMATIVE DEFENSE: NO LIKELIHOOD OF FUTURE VIOLATIONS

The relief requested in the AC is inappropriate, in whole or in part, because the AC fails to allege a reasonable likelihood of future violations by either Defendant.

**FOURTH AFFIRMATIVE DEFENSE: LACK OF DUE PROCESS AND FAIR NOTICE AND VIOLATION OF THE SEPARATION OF POWERS**

Defendants did not have, and the SEC failed to provide, fair notice that Defendants' alleged conduct was in violation of law, in contravention of Defendants' due process rights.  Due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and how to comply with the law.  Here, due to the lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding the SEC's interpretation of the law, Defendants lacked fair notice that their alleged conduct was prohibited.

That lack of fair notice was further exacerbated when, in June 2018, the SEC's then-Director of Corporation Finance told cryptocurrency purchasers that the SEC did not consider bitcoin or ether to be securities and would "put[] aside the fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther."[2]  Defendants and other reasonable observers further reasonably understood those remarks to indicate that the SEC would permit present-day sales of cryptocurrencies given the market conditions for UST, LUNA, wLUNA, MIR, and mAssets during the alleged "Relevant Period."  Indeed, members of the SEC's Office of General Counsel who participated in drafting the Hinman speech commented, in editing that speech, that there was a "regulatory gap" in the SEC's authority.

The SEC's claims also violate the separation of powers guaranteed by the U.S. Constitution and the "major questions doctrine" articulated by the Supreme Court.  Congress did not give the SEC authority to regulate cryptocurrencies in the Securities or Securities Exchange

---

[2] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic), (June 14, 2018), https://www.sec.gov/news/ speech/speech-hinman-061418.

Acts because no one could have conceived of cryptocurrencies then.  This is confirmed by the fact that Congress is presently considering multiple bills that would create, for the first time, a statutory structure for regulating cryptocurrencies; some of those bills would assign some or all of that function to the SEC, but some would leave the SEC mostly out of that structure.

### FIFTH AFFIRMATIVE DEFENSE: EXEMPTION FROM REGISTRATION

Even if the Court were to find that UST, LUNA, wLUNA, or MIR constituted securities or investment contracts within the meaning of the Securities Act or Securities Exchange Act, or that mAssets constituted securities-based swaps, the SEC's claims against Defendants are barred because any distributions or sales of UST, LUNA, wLUNA, MIR, or mAssets were exempt from the registration requirements of the Securities Act and Securities Exchange Act and the regulations promulgated thereunder.

### SIXTH AFFIRMATIVE DEFENSE: LACK OF EXTRATERRITORIAL AUTHORITY

The SEC's attempt to exert authority over most or all of the transactions alleged in the AC is impermissible because those transactions took place outside the U.S. and/or were made on foreign exchanges.

### SEVENTH AFFIRMATIVE DEFENSE: STATUTE OF LIMITATIONS

The SEC's claims and request for civil monetary penalties are barred in whole or in part by an applicable statute of limitations.

### RESERVATION OF RIGHTS

Defendants presently have insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to them, and therefore expressly reserve, in accordance with applicable law, the right to amend or supplement their Answer, defenses and all other pleadings, and the right to assert any and all other additional and

further defenses as appropriate, including defenses that may be revealed by discovery or

otherwise.

## PRAYER FOR RELIEF

WHEREFORE, the Defendants respectfully request that this Court enter a Final

Judgment:

A.      Dismissing all claims in the Amended Complaint with prejudice and

B.      Granting such further relief as the Court deems appropriate.

Dated: New York, New York
       August 14, 2023                        Respectfully submitted,

                                              */s/ Douglas W. Henkin*
                                              **DENTONS US LLP**
                                              Douglas W. Henkin
                                              David L. Kornblau
                                              1221 Avenue of the Americas
                                              New York, New York 10020
                                              Tel: (212) 768-6700
                                              douglas.henkin@dentons.com
                                              david.kornblau@dentons.com

                                              Mark G. Califano
                                              1900 K Street, NW
                                              Washington, DC 20006-1102
                                              Tel: (202) 496-7500
                                              mark.califano@dentons.com

                                              Stephen J. Senderowitz (admitted *pro hac
                                              vice*)
                                              233 S. Wacker Drive
                                              Chicago, Illinois 60606
                                              Tel: (312) 876-8141
                                              stephen.senderowitz@dentons.com