# EXHIBIT 96

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

          v.                            23 CV 1346 (JSR)

DO HYEONG KWON and TERRAFORM
LABS PTE LTD.,

                Defendants.             Oral Argument
------------------------------x
                                        New York, N.Y.
                                        June 15, 2023
                                        2:40 p.m.
Before:

                     HON. JED S. RAKOFF,

                                        District Judge

                         APPEARANCES

DEVON STAREN
JAMES P. CONNOR
LAURA E. MEEHAN
CHRISTOPHER J. CARNEY
     Attorneys for Plaintiff

DENTONS US LLP
     Attorneys for Defendants
BY:  DOUGLAS W. HENKIN
     DAVID L. KORNBLAU
     CHARLES M. FARRELL
     ALYSSA LANDOW
```

1  by Congress in the 1933 and 1934 Acts, exempt from the same
2  investment contract analysis that has been applied across a
3  range of technologies, industries, and businesses since *Howey*
4  was decided in 1946.
5          Your Honor, we do not agree.  The investment contract
6  analysis has been applied to cattle embryos, to basketball
7  NFTs, to certificates of deposits, pay phones, condominiums,
8  supersonic dental products, and whiskey barrel receipts.  There
9  is nothing special about the asset.
10         The question, when you are evaluating whether
11 something is an investment contract, is how it was offered,
12 marketed, promoted, and sold.
13         THE COURT:  All right.  That's what I want to focus on
14 because -- and I don't mean to pass over their important
15 arguments on other matters.  But why is this a contract, let
16 alone an investment contract?
17         MS. STAREN:  Your Honor, we disagree with the
18 defendants.  We don't believe that there is a requirement of a
19 formal contract, as your Honor correctly pointed out.  *Howey*
20 itself expressly applied the investment contract analysis to
21 any contract, transaction, or scheme.  I would also --
22         THE COURT:  Funny use of words, however.  There is
23 that language in *Howey*, but, on the other hand, the actual term
24 in the law is investment contract.  So how can a scheme, for
25 example, be an investment contract unless it's a scheme to

1  promote an investment contract?

2          MS. STAREN:  Your Honor, I think that the -- again,
3  the focus sort of goes back on what is an investment contract.
4  And, again, it goes back to how it is marketed, offered, and
5  sold.  What are the promises, understandings, inducements,
6  expectations, and economic realities that surround the offer of
7  the asset.

8          As I mentioned, the investment contract analysis has
9  been applied to a range of assets.  In every situation, the
10 asset itself is virtually irrelevant.  You can offer gold or
11 coins or cattle embryo, which in and of themselves are not
12 securities.  But when you offer them in conjunction with a
13 promise of the potential for profits, and you offer them as an
14 investment in a common enterprise, and the expectation is that
15 the investors will get their returns from the efforts of the
16 promoters or the efforts of others, then you have an investment
17 contract, and it doesn't really matter.

18         THE COURT:  If I purchase a NST coin for a dollar a
19 coin and all I'm being told immediately in my hypothetical is,
20 we will make sure that it's always kept at a dollar, so you can
21 use it to buy anything you want digitally, and you won't have
22 to worry that it will be worth only 95 cents.  It will be worth
23 a dollar.

24         Is that alone an investment contract?

25         MS. STAREN:  No, your Honor.  I think --

1    THE COURT:  What makes this then an investment
2 contract?
3    MS. STAREN:  What makes UST an investment contract is,
4 again, the way that it was marketed, offered, and sold.  And it
5 was offered and marketed as a way to invest in the Anchor
6 protocol.
7    And, your Honor, the defendants are correct, that the
8 Anchor protocol didn't necessarily exist at the time that the
9 defendants started to market UST together with the Anchor
10 protocol.  But it is a review that that actually doesn't
11 matter.
12    Because when you evaluate an investment contract, what
13 you are evaluating is, what were the promises being made to the
14 purchaser of that asset?  If they were being promised the
15 potential for profits, a reasonable expectation of profits that
16 would derive from the efforts of others, then it is an
17 investment contract at the time that offer is made, even if the
18 ultimate thing doesn't exist.
19    THE COURT:  I hear what you are saying.  Translating
20 it into the facts of this case, are you saying that what made
21 these purchases of crypto coins an investment contract was the
22 promise that you could utilize them to make a profit through
23 the efforts of others by deploying them into other names, for
24 lack of a better word.  Is that the basic argument?  Do I have
25 that right?

1           MS. STAREN: With respect to UST, yes. It was the
2    promise that if you buy UST, you will have an opportunity to
3    stake it in the Anchor protocol and get up to 20 percent
4    returns.
5           THE COURT: I thought you had alleged that that's what
6    most people did, although your adversary seemed to be
7    suggesting some nuance there.
8           MS. STAREN: We did allege, just because you can only
9    pick a number from a particular point in time. We picked the
10   number that existed at the point just before the Terraform
11   market crashed in May of 2022. At that point in time,
12   approximately --
13          THE COURT: Of course on a motion to dismiss I have to
14   take every reasonable inference in your favor, so the inference
15   would be that's what most people did.
16          MS. STAREN: Yes, your Honor. Although, let me just
17   be clear, that the evaluation of what the expectation was is
18   not necessarily based on what any individual investor may have
19   intended at any point in time. We think that's an important
20   data point.
21          THE COURT: That's fair enough. But aren't you also
22   arguing that, nevertheless, the fact that most people did do
23   this showed their understanding from the getgo that this was
24   really an investment?
25          MS. STAREN: Yes, your Honor.

1           THE COURT:  Go ahead.

2           MS. STAREN:  I'd like to go back and talk about the
3    other tokens at issue here.

4           Obviously, UST, we did allege that it was marketed
5    together with the Anchor protocol and could earn up to 20
6    percent returns.  This was actually a huge motivating factor
7    for a number of retail investors.  Countless retail investors
8    bought in and ended up losing the bulk of their investment when
9    the Terraform market crashed in May of 2022.

10          The same analysis applies to LUNA.  LUNA is an
11   investment contract because it involves an investment in a
12   common enterprise with an expectation of profits to be derived
13   from the efforts of others.  Specifically, we would point to
14   statements made by Do Kwon to LUNA holders on Twitter where he
15   tells people that LUNA grows as the ecosystem grows, quote, and
16   that to profit, a LUNA holder could simply, quote, sit back and
17   watch me kick ass.

18          And the same goes for the MIR token.  Defendants told
19   investors that MIR tokens would increase in value as the Mirror
20   protocol increased, and defendants promised investors that they
21   would support and promote the Mirror protocol in order to
22   generate that demand.

23          Moving on to the unregistered offerings, your Honor,
24   we have clearly alleged that the defendants engaged in a public
25   offering of its securities.