# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>TERRAFORM LABS PTE. LTD. and DO HYEONG KWON,<br><br>        Defendants. | Civil Action No. 23 Civ. 1346 (JSR)<br><br>Hon. Jed S. Rakoff |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE OPINIONS OF RAJ UNNY

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

I.     Mr. Unny is Qualified as a Rebuttal Expert on Payment Systems that Interact with Blockchains........................................................................................................... 6

       A.     Mr. Unny's Extensive Experience with Building and Developing Financial Payment Systems that Interact with Blockchains Qualifies Him as a Rebuttal Expert .......................................................................................................... 7

       B.     Even if the Relevant Topic is "Blockchain Analysis," Mr. Unny is Qualified ...... 8

       C.     The SEC's Arguments for Exclusion Fail ............................................................. 9

II.    Mr. Unny's Opinions are Proper for a Rebuttal Expert ................................................. 12

       A.     Mr. Unny's Opinion that Dr. Edman Failed to Consider the Presence of "Custodial Wallets" is Proper for a Rebuttal Expert ............................................. 14

       B.     Mr. Unny's Opinion that Dr. Edman Failed to Consider that Other Applications Could Have Interacted with the LP Server is Proper for a Rebuttal Expert ......... 16

CONCLUSION.................................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litigation*,
   336 F.R.D. 5 (S.D.N.Y. 2020) .................................................................................6, 11, 12, 13

*Am. Railcar Indus., Inc. v. GyanSys, Inc.*,
   No. 1:14-cv-08533-JSR, 2017 WL 11501888 (S.D.N.Y. Nov. 14, 2017), *aff'd*,
   764 F. App'x 57 (2d Cir. 2019) ......................................................................................13

*Bank of New York Mellon v. WMC Mortg., LLC*,
   2015 WL 4887446 (S.D.N.Y. Aug. 17, 2015) ......................................................................11

*Broadspring, Inc. v. Congoo, LLC*,
   No. 1:13-cv-01866-JMF, 2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014)...............6, 12, 16, 20

*Deutsch v. Novartis Pharm. Corp.*,
   768 F. Supp. 2d 420 (E.D.N.Y. 2011) ............................................................................13, 16

*Faulkner v. Arista Recs., LLC*,
   46 F. Supp. 3d 365 (S.D.N.Y. 2014).....................................................................................6

*Feliciano v. CoreLogic Saferent, LLC*,
   No. 1:17-cv-05507-AKH, 2020 WL 6205689 (S.D.N.Y. June 11, 2020)..............6, 12, 16, 20

*Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*,
   647 F. Supp. 3d 145 (S.D.N.Y. 2022)....................................................................................6

*Henkel v. Wagner*,
   No. 1:12-cv-04098-AJN, 2016 WL 1271062 (S.D.N.Y. Mar. 29, 2016) .........................12, 16

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
   589 F. Supp. 3d 302 (S.D.N.Y. 2022)....................................................................................6

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   No. 1:11-cv-681-KBF, 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ...................................12

*Pac. Life Ins. Co. v. Bank of New York Mellon*,
   571 F. Supp. 3d 106 (S.D.N.Y. 2021)..................................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2022 WL 14862098 (E.D.N.Y. Oct. 8, 2022).......................................................................20

*Matter of Search of One Address in Washington, D.C., Under Rule 41*,
   512 F. Supp. 3d 23 (D.D.C. 2021) .........................................................................................9

**Other Authorities**

Nuria Cordon, What a quarter century of digital transformation at PayPal looks
     like, CIO (Oct. 4, 2023), https://bit.ly/3u9iWnC ...................................................................18

PayPal Developer, *PayPal security guidelines and best practices*,
     https://bit.ly/3QI6xA5 (last accessed November 7, 2023).......................................................18

PayPal, *How do I link a bank account to my PayPal account?*,
     https://bit.ly/3FIRTlL (last accessed November 7, 2023)........................................................18

PayPal, *Send money at the speed of life*, https://bit.ly/3MrwMIh (last accessed
     November 7, 2023) ...................................................................................................................18

Rule 702 of the Federal Rules of Evidence ....................................................................................6

Defendants Terraform Labs Pte. Ltd. ("TFL") and Kwon Do Hyeong respectfully submit this Opposition to the Motion to Exclude the Testimony and Opinions of Raj Unny ("Unny Daubert Mot.") filed by the Securities and Exchange Commission ("SEC").

The SEC's motion ignores Mr. Unny's role as a rebuttal witness tasked with evaluating its expert's opinions; his extensive experience with the design and development of both blockchain applications and financial systems that interact with blockchains (which its proposed expert lacks); and the fact that in each of Mr. Unny's opinions that it challenges, Mr. Unny uses—as rebuttal experts do—his ample expertise and experience to explain the SEC's proposed expert's failure to consider relevant, available evidence, use of inappropriate methodologies, and inconsistent application of those methodologies—much of which its proposed expert has admitted. Because Mr. Unny meets the requirements of a rebuttal expert, the SEC's motion should be denied.

## INTRODUCTION

The SEC's argument that Mr. Unny's opinions should be excluded rests on fundamental misrepresentations of Mr. Unny's experience, role, and opinions. At the outset, the SEC misstates Mr. Unny's experience to argue that he is not qualified to rebut Dr. Edman's opinions. Dr. Edman's opinion that the ████████████████████████████████████████████ ████████████████████████████████████████████████████ on how Chai, a financial payment system, processed and settled transactions and interacted with the Terra blockchain. The SEC ignores this and mischaracterizes the relevant topic as "blockchain analysis" so that it can selectively quote and mischaracterize Mr. Unny's deposition testimony in an effort to claim that Mr. Unny lacks knowledge about blockchain technology. Mr. Unny, however, not only has substantial experience in working with blockchain technology, blockchain applications, and financial payment systems that interact with blockchains—he has actually *built and developed* such applications and systems. Based on that experience, which the SEC's proposed expert lacks, Mr. Unny knows how payment systems that interact with blockchains work and is uniquely qualified to critique Dr. Edman's analysis and opinions about whether the Chai payment system processed and settled transactions on the Terra blockchain.

The SEC also fundamentally misrepresents the role of a rebuttal expert in order to argue that two of Mr. Unny's opinions are unreliable. As a rebuttal expert, Mr. Unny may (and does) criticize and identify flaws in Dr. Edman's analysis based on the data on which Dr. Edman relies and is not required to conduct or offer a competing analysis. Yet the SEC misleadingly characterizes these rebuttal opinions as affirmative opinions in an attempt to shift the burden of proof for the SEC's allegations to Defendants, a wholly inappropriate use of a *Daubert* motion. In any event, Mr. Unny appropriately identifies that Dr. Edman bases his opinions on improperly selected data, flawed and unsupported premises, and inconsistent application of his methodologies that show that Dr. Edman fails to account for alternative explanations when interpreting key facts.

*First*, Mr. Unny observes that Dr. Edman makes an unsupportable leap of reasoning by using his review of code and blockchain activity of just the ██████████████████████ ██████████████████████ to reach far broader conclusions about the Chai payment system, which Dr. Edman never examined. As a result, Mr. Unny asserts that Dr. Edman's fails to consider or review ████████████████████████████████████████, despite Dr. Edman's own admission that █████████████████████████████████████████████████, and that other documents also identify the existence of ██████████████████████.

*Second*, Mr. Unny, who has built and developed payment systems and blockchain applications, points out that Dr. Edman's characterization of the ███████████████████ is based upon a flawed premise, in addition to inconsistently applied analysis that omits relevant evidence.[1] Mr. Unny, who not only has experience with ████████████████ but has actually implemented them, opines that Dr. Edman's characterization that the ████████████ ██████████████████████████████████████████████████████████████ ████████████████████████.

---

[1] As further discussed in Defendants Memorandum in Support of Defendants' Motion to Exclude the Opinions and Testimony of Dr. Matthew Edman ("Edman Daubert Mot."), ECF No. 97, Dr. Edman's opinion that █████████████████████████████████ relies on an unreliable methodology. Dr. Edman initially failed to account for the presence of ████████████ ██████████████████, and later in an attempt to remedy this error changed his methodology in a way that confirms its speculative nature. Edman Daubert Mot., Section II.D.

Importantly, the SEC fails to challenge other aspects of Mr. Unny's opinions. For instance, the SEC does not challenge Mr. Unny's opinion that, despite Dr. Edman's examination of the ███ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████" of Chai transactions, Dr. Edman neither defines ██████████████████████ nor provides a framework to determine the meaning of those terms in the Chai payment system, rendering his opinion inadmissible.

In sum, Mr. Unny opines that Dr. Edman's omission of relevant data, inconsistent application of his methodology, and █████████████████████████████████████, along with his failure to examine the role that the ██████████████████████████████████████, does not provide a sufficient basis to support his opinions. Thus, because Mr. Unny's rebuttal opinions appropriately criticize and identify flawed premises and analyses in Dr. Edman's opinions based upon the data used by Dr. Edman, Mr. Unny's rebuttal opinion is admissible and the SEC's arguments to the contrary fail.

## BACKGROUND

Defendants engaged Mr. Unny as a rebuttal expert to review and assess "██████████ ████████████████████████████████████" Ex. A, Expert Report of Raj Unny ("Unny Report") ¶ 10(a); *see also* Ex. B, October 9, 2023, Dep. Tr. of Raj Unny ("Unny Dep. Tr.") at 92:01–05. Basing his opinions on his review of the materials supporting Dr. Edman's opinion, Unny Dep. Tr. at 235:18–236:02; Unny Report, App. B (identifying that Mr. Unny reviewed the "██████████████" in support of Dr. Edman's report), Mr. Unny offers a rebuttal to Dr. Edman's opinions.

Dr. Edman's opinion centers around the core conclusion ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████" Ex. C, Corrected Expert Report of Dr. Matthew J. Edman ("Edman Report") ¶ 70. This conclusion relies on Dr. Edman's opinion that because "████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████"

Unny Daubert Mot. at 3 (citing Edman Report ¶ 11). Dr. Edman consequently concludes that because " ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ " Edman Report ¶ 11(d).

     In coming to this conclusion, Dr. Edman relies on the ██████████████████

████████████████████████████████████████████████████████████████████

██. *Id.* ¶¶ 29, 41, 49–55, 56. Dr. Edman also identifies that the ███████████████

████████████████████████████████████████████████████████████████████

██████. Edman Report ¶¶ 29, 42; Ex. D, September 20, 2023, Dep. Tr. of Matthew J. Edman

("Edman Dep. Tr.") at 98:05–12. However, Dr. Edman did not review any ████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ ██████████████████████████████████████████████

██████. Edman Dep. Tr. at 99:22–100:06; 125:05–126:05. Indeed, Dr. Edman admits that

because he could not determine █████████████████████████████████████████████

████████████████████████████████████████████████████ arose requires

speculation. *Id.* at 149:12–150:06.

     The SEC seeks to exclude Mr. Unny's opinions based upon his supposed lack of expertise,

but challenges only two of Mr. Unny's opinions—both of which were offered to rebut Dr. Edman's

opinion in Mr. Unny's role as a rebuttal witness. *First*, Mr. Unny opines that Dr. Edman " ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ " Unny

Report ¶ 11(ii) (emphasis added); *see also id.* ¶ 48. In other words, Dr. Edman's observation that

---

[2] Although the SEC suggests that Dr. Edman's failure to review this material is because Defendants failed to produce it, this assertion fails because the SEC has no proven and cannot prove that Defendants had any ability to produce it; at all relevant times, that material belonged to and was in the possession, custody, and control of Chai, not either Defendant.

the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are created and stored in
the ▮▮▮▮▮ is consistent with a custodial wallet system in which the LP Server would hold the
keys on behalf of its users. Unny Dep. Tr. at 158:11–15; Unny Report ¶¶ 19–20, 49–50. Mr. Unny
concludes that Dr. Edman's failure to consider this alternative explanation undermines Dr.
Edman's conclusion that the fact that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
Unny Report ¶ 51. This flawed premise, in turn, undermines Dr. Edman's opinion that the ▮▮
▮▮▮▮▮▮▮▮▮▮ *Id.*

    *Second*, Mr. Unny opines that Dr. Edman's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮" cannot be supported based on "▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* ¶ 11(i). Mr. Unny explains that
financial payment systems require multiple technology and software components to enable them
to operate,[3] Unny Report ¶ 29, and there is evidence that the Chai payment system included
components other than the LP Server. *Id.* ¶¶ 38, 43–46. Specifically, Mr. Unny explains that the
▮▮▮▮▮▮▮▮▮▮▮, which Dr. Edman concedes that the ▮▮▮▮▮▮ requires "▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮. *Id.* ¶ 38; *see also id.* ¶¶ 43–44. Mr. Unny further explains that documents
Dr. Edman cited show the existence of at least two Chai applications that could be part of the
broader Chai payment system, *id.* ¶¶ 45–46, including one document that lists the names of "▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* ¶
46. As a result, Mr. Unny opines that Dr. Edman's failure to consider this evidence, which suggests
that other components were required to both settle and process transactions and interact with the
blockchain, and instead rely only on the ▮▮▮▮▮▮▮▮▮▮ to offer conclusions about

---

[3] These components include: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Unny Report ¶ 29.

the nature of how and to what extent Chai interacted with the blockchain, renders Dr. Edman's conclusions unsupported and untenable. *Id.* ¶¶ 46–47.

## LEGAL STANDARD

The standard for admitting the opinion of a rebuttal expert is different from that of an affirmative expert. "A rebuttal expert, by nature, criticizes the methodology and/or opinions of another" so "[t]here is no requirement that a rebuttal expert himself offer a competing analysis; his opinions may properly concern criticizing that presented by another party." *In re Aluminum Warehousing Antitrust Litigation*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020).[4] Instead, "archetypal rebuttal testimony ... identifies a flawed premise in an expert report that casts doubt on ... that report's conclusions." *Broadspring, Inc. v. Congoo, LLC*, No. 1:13-cv-01866-JMF, 2014 WL 4100615, at *19 (S.D.N.Y. Aug. 20, 2014). In fact, "rebuttal can be properly undertaken by poking holes in another's argument" and "does not require deploying a ground-up analysis of the very same argument." *Feliciano v. CoreLogic Saferent, LLC*, No. 1:17-cv-05507-AKH, 2020 WL 6205689, at *3 (S.D.N.Y. June 11, 2020). As a result, rebuttal experts "have a less demanding task" and need only meet "*Daubert*'s threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony," in addition to relying "on data disclosed to opposing counsel during discovery." *Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 246 (S.D.N.Y. 2022).

## ARGUMENT

I.  **Mr. Unny is Qualified as a Rebuttal Expert on Payment Systems that Interact with Blockchains**

Mr. Unny's ample experience with financial payment systems that interact with blockchains qualifies him to serve as a rebuttal expert here. An expert's qualifications are determined "by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Faulkner v. Arista Recs., LLC*, 46 F. Supp. 3d 365, 375 (S.D.N.Y. 2014). "Even if a proposed expert lacks formal training in a given area, he may still have practical experience or specialized knowledge qualifying him to give

---

[4] (Unless otherwise indicated, internal citations and quotation marks are omitted, and emphasis is in the original.)

opinion testimony under Rule 702." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 328 (S.D.N.Y. 2022).

Given the subject matter of Dr. Edman's testimony, the relevant topic is how Chai, as a financial payment system, processed and settled transactions. In order to opine as to the narrower question of whether or not transactions were processed and settled on the blockchain, an expert would first need to opine to the design and operation of the Chai payment system. Thus, Mr. Unny's substantial experience with building and developing *both* blockchain applications and payment systems that interact with blockchains uniquely qualifies him to offer such a rebuttal opinion in this matter.

### A. Mr. Unny's Extensive Experience with Building and Developing Financial Payment Systems that Interact with Blockchains Qualifies Him as a Rebuttal Expert

To begin with, Mr. Unny has education in finance—holding an MBA with a specialty in international finance. Unny Report ¶ 7. And his experience encompasses work on multiple payment systems that incorporate blockchain technology, including a "███████████ ███████████████████████," *id.* ¶ 5, an "███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ " *Id.* ¶ 6.

And Mr. Unny does not just have prior experience in the field, he has actually *built and developed* payment systems that interact with blockchains. As CEO at Indus Finch Group, Mr. Unny developed both blockchain applications and mobile payment systems. Unny Report, App. A at 1. Notably, during his time as CTO at ft.digital Fintech, Mr. Unny worked with a financial institution to develop a financial payment system that interacted with blockchain technology— specifically, an "███████████████████████████████████████████████ ████████████████████████████████████████████ " *Id.* The blockchain component of this platform facilitated both the transfer of cryptocurrency assets and traditional fiat currency, Unny Dep. Tr. at 34:09–17, 35:02–36:03, permitting customers to buy

cryptocurrencies assets through the financial institution, *id.* at 39:20–40:01, involved the processing and settlement of transactions, *id.* at 37:03–14, and recorded the transaction on the blockchain. *Id.* at 40:24–41:02. Mr. Unny also developed the technology and smart contracts for the platform for the "███████████████████████████████████████████

███████████████████████████████████" on the Ethereum blockchain. Unny Report ¶ 6; Unny Dep. Tr. at 70:25–71:19, 73:01–07. And as Principal Technologist at Nokia, Mr. Unny was "███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████" Unny Report ¶ 6; Unny Report, App. A at 2. This experience in working with and developing financial payment systems that interact with blockchains uniquely qualifies Mr. Unny to serve as a rebuttal expert to Dr. Edman's opinions as to the "processing and settlement" of transactions on the Chai payment system. Dr. Edman has none of this experience.

**B.    Even if the Relevant Topic is "Blockchain Analysis," Mr. Unny is Qualified**

Faced with such an obviously-qualified expert—in contrast to Dr. Edman's lack of experience with financial payment systems[5]—the SEC ignores the stated assignment of its own proposed expert, shifts the goalposts, and mischaracterizes the relevant topic as "blockchain analysis." Unny Daubert Mot. at 6. Because the SEC fails to explain or define the term, it is unclear what "blockchain analysis" even means. But whatever it means and even if such expertise were the sole relevant topic (it is not), Mr. Unny is nonetheless qualified.

Mr. Unny's qualifications regarding blockchain technology are based on substantial experience actually developing and building blockchain applications. Unny Report ¶¶ 4–6. At the outset, the SEC omits any mention that Mr. Unny explained during his deposition that he has expertise in this field. Unny Dep. Tr. at 11:21–12:02, 62:11–20. Such expertise is evident from his involvement in the design and development of blockchain applications and payment systems for many years. *See* Unny Report, App. A; Unny Report ¶¶ 1–9. In addition to the blockchain-related experience described above, Mr. Unny has worked on numerous projects involving the development of blockchain applications. Mr. Unny estimates that 50 percent of his work at Indus

---

[5] *See* Edman Daubert Mot., Section I.

Finch Group relates to blockchain applications that involve reviewing the blockchain. Unny Dep. Tr. at 22:16–23:22. One example is Mr. Unny's development of a token that operates on the Ethereum blockchain for a project called "███████████" *Id.* at 25:23–26:23. Mr. Unny also developed blockchain applications in his prior role as CTO of Equiis Technologies, developing an application similar to Zoom and WhatsApp that would have run on a private blockchain. *Id.* at 32:07–33:14. Mr. Unny did similar work for the ███████████████ ████████████████████████, Unny Report ¶ 5, where he built an application on the Ethereum blockchain. Unny Dep. Tr. at 67:09–68:12. And Mr. Unny has also given multiple lectures on blockchain technologies since 2018. Unny Report ¶ 5; Unny Report, App. A at 3 (under "Presentations").

Mr. Unny's work experience with building and developing both blockchain applications and payment systems that interact with blockchains qualifies him to assess Dr. Edman's opinion— certainly in any kind of "blockchain analysis" that the SEC maintains is required to review Dr. Edman's opinion. Chai's interaction with the blockchain is only one element of a broader system that processes transactions on a financial payment system. And Mr. Unny's experience gives him insight into how the "processing and settlement" of transactions occurs on such systems and qualifies him to rebut Dr. Edman's opinion.

**C.    The SEC's Arguments for Exclusion Fail**

The SEC tries to sidestep Mr. Unny's extensive history with developing financial payment systems and blockchain applications and attempts to disqualify Mr. Unny by quibbling over irrelevant details. The SEC initially argues that Mr. Unny should be disqualified because he has "████████████████████████████████" has not given a presentation specifically "███████████████████████" and not used specific blockchain tools. Unny Daubert Mot. at 7–8. Specifically, the SEC argues that Mr. Unny's unfamiliarity with two blockchain analysis products identified in *Matter of Search of One Address in Washington, D.C., Under Rule 41*, 512 F. Supp. 3d 23 (D.D.C. 2021), as tools that law enforcement "can use,"[6] 512

---

[6] Although the SEC's asserts that these tools are the "████████████████████ ████████████████████" Unny Daubert Mot. at 8, it fails to provide any support for this statement. Worse still, it fails to explain why they are even relevant to this case.

F. Supp. 3d at 26 & n.5, is grounds for his disqualification. But in light of Mr. Unny's substantial experience with developing both blockchain applications and payment systems that interact with the blockchain, it is unclear how these issues could disqualify Mr. Unny or are even relevant to his qualifications as a rebuttal expert in this matter (or even this matter).

The remainder of SEC's argument relies on a bad faith attempt argue that Mr. Unny lacks knowledge about blockchain analysis using out of context statements taken from his deposition. For example, the SEC asserts that Mr. Unny "███████████████████████████████ ████████," Unny Daubert Mot. at 8, even though he identified a tool that *he* used to review the Ethereum blockchain and was not asked to name any other specific tools. *See* Unny Dep. Tr. at 23:23–24:09. The SEC also misconstrues Mr. Unny's explanation that he does not "████████ ████████████████████████" because his firm does not conduct "████████████ ████" as an admission that Mr. Unny lacks the necessary skills to review relevant blockchain data and blockchain application source code. Unny Daubert Mot. at 7. Not only does this argument ignore Mr. Unny's experience in *personally* developing blockchain applications—which, as mentioned above, requires a vast degree of expertise in understanding blockchains and their underlying source code—the SEC also conveniently omits that Mr. Unny is able to conduct this analysis (Unny Dep. Tr. at 11:21–12:02, 62:11–20) and that Dr. Edman does not challenge any of Mr. Unny's findings related to Mr. Unny's review of the relevant blockchain data.

The SEC also mischaracterizes Mr. Unny's reliance on Cornerstone Research—misstating Mr. Unny's deposition testimony in an effort to show that Cornerstone Research's role was improper. In doing so the SEC misrepresents the facts and misapplies the law. Cornerstone Research assisted Mr. Unny with "█████████ his report, in addition to providing "███ ███████████████████████████████████████████████████████████ ██████████████████████" and ██████████████," Unny Dep. Tr. at 9:10–10:01 (emphasis added), compiling the requisite source code, 13:20–15:11, and compiling

the results of the analysis in workpapers, 188:2–11. Mr. Unny then reviewed and checked Cornerstone Research's work to verify its accuracy.[7] 14:7–12, 14:19–11.

These facts are distinguishable to *Bank of New York Mellon v. WMC Mortg., LLC*, 2015 WL 4887446 (S.D.N.Y. Aug. 17, 2015), where an expert's opinion was excluded because his familiarity with other experts assisting him "was confined to a single brief telephone conversation that was a 'meet-and-greet' during which he learned no details about [the other expert's] methodology." 2015 WL 4887446, at *8. Here, in contrast, Mr. Unny worked closely with Cornerstone Research, who acted at Mr. Unny's direction when preparing the necessary materials for his report. An expert like Mr. Unny "may rely on assistants or the opinions of other experts in formulating their own expert opinions" and "present the work of others" as long as "the expert supervised, directed, or participated in that work, and if the expert is qualified in the field and could perform the work themselves." *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 115 (S.D.N.Y. 2021). Not only did Cornerstone Research work at Mr. Unny's direction, but it is unquestionable that Mr. Unny has the experience to conduct the tasks conducted by Cornerstone Research in light of his substantial experience in developing blockchain applications and payment systems that interact with the blockchain.[8]

The rest of the SEC's arguments rest on a fundamental misunderstanding of the role of rebuttal experts: Whether Mr. Unny analyzed the transaction fees associated with the Terra blockchain, Unny Daubert Mot. at 9, or that validators in a proof-of-stake blockchain like Terra may receive more rewards when there are a greater number of transactions, *id.* at 10, has no bearing on his qualifications and on the opinions of Dr. Edman's work that Mr. Unny rendered. As a rebuttal expert, Mr. Unny is only required to "criticize[] the methodology and/or opinions of another" and need not "himself offer a competing analysis." *In re Aluminum*, 336 F.R.D. at 29.

---

[7] In asserting that Mr. Unny did not know whether one data analyst at Cornerstone Research "had any training or certifications related to blockchain analysis," Unny Daubert Mot. at 9, the SEC conveniently omits that Mr. Unny knew that the analyst was capable of doing this analysis (Unny Dep. Tr. at 16:16–17) and reviewed the results of his work and that of other Cornerstone Research analysts. *Id.* at 14:04–12, 17:01–05.

[8] The SEC also neglects to mention that Dr. Edman relied on a consulting firm in preparing his report. Edman Report ¶ 61.

The analyses about which the SEC complains are not required, nor has the SEC contended otherwise, to *rebut* Dr. Edman's opinions.

And, contrary to the SEC's position, Mr. Unny's citation of papers from "Global Legal Group" to provide a basic description of blockchain technology in the background section of his report (Unny Report at 8–11 nn. 10, 12–18, 21–22, 34) is irrelevant. Mr. Unny included these papers to communicate the "███████████████████" to the reader, Unny Dep. Tr. at 99:17–100:03, and the papers would be "██████ for someone who "████████████████ ██████████████████████████" Unny Dep. Tr. at 100:13–100:18. That Mr. Unny relied on his experience with blockchain technology to evaluate the accuracy of the description of blockchain technology in these papers, Unny Dep. Tr. at 99:17–100:03, is irrelevant—especially as the SEC has failed to assert that any aspect of the description that Mr. Unny used is inaccurate or otherwise impacts his overall opinion.

Mr. Unny's substantial experience with building and developing blockchain applications and payment systems that interact with blockchains qualifies him as a rebuttal expert who can critique Dr. Edman's opinions. The SEC's argument for exclusion thus fails.

## II.   Mr. Unny's Opinions are Proper for a Rebuttal Expert

The SEC misconstrues Mr. Unny's opinions as affirmative opinions to try to create the basis to attack the purported lack of Mr. Unny's use of an underlying model. But "[t]he task of a rebuttal expert is different from that of an affirmative expert," *In re Aluminum*, 336 F.R.D. at 29, and "rebuttal can be properly undertaken by poking holes in another's argument," *Broadspring*, 2014 WL 4100615, at *19, or identifying a "flawed premise in an expert report that casts doubt on ... that report's conclusions," *Feliciano*, 2020 WL 6205689, at *3, without offering an underlying "model or theory." *Henkel v. Wagner*, No. 1:12-cv-04098-AJN, 2016 WL 1271062, at *12 (S.D.N.Y. Mar. 29, 2016). Rebuttal experts need do no more than provide "a reasoned basis" for their criticism of an affirmative expert's failings. *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 1:11-cv-681-KBF, 2015 WL 5459662, at *12 (S.D.N.Y. Sept. 16, 2015).

Mr. Unny's opinions are thus entirely proper. To begin with, Mr. Unny exhibits the requisite expertise and methodology. A rebuttal expert "needs only her expertise and the method identified at the beginning of the report—namely, reviewing the documents in this case, along with [the opposing expert's] report, and arriving at an opinion." *Henkel*, 2016 WL 1271062, at *12. Mr. Unny is qualified as an expert to rebut Dr. Edman's opinions, *see supra* Section I, identifies the scope of his opinions as " ███████████████████████████████████████ ████████████████████████" Unny Report ¶ 10(a); *see also* Unny Dep. Tr. at 92:01–05, and bases his opinions on his review of the relevant materials. Unny Dep. Tr. at 235:18–236:02; Unny Report, App. B (identifying that Mr. Unny reviewed the " ███████████ " in support of Dr. Edman's report)

Further, Mr. Unny's opinions are within the scope of a rebuttal expert. Mr. Unny's opinion pokes holes and identifies flawed premises in Dr. Edman's opinions—that Dr. Edman fails to account for the fact (1) that the ████████████████████████████████ with the purported Chai transactions is consistent with ████████████████, which undermines Dr. Edman's conclusion that the █████████████████████████████████████████" Unny Report ¶¶ 48–51; and (2) that documents and admissions from Dr. Edman himself indicate that Chai incorporated ████████████████████████████████████████████████ ██████████—none of which Dr. Edman reviewed or considered—which demonstrate the inability of Dr. Edman to substantiate his conclusions about the nature and extent of Chai's interaction with the blockchain. *Id.* ¶¶ 38, 40–47. Dr. Edman's failure to adequately account for "obvious alternative explanations" for his conclusions is grounds for his exclusion, *Am. Railcar Indus., Inc. v. GyanSys, Inc.*, No. 1:14-cv-08533-JSR, 2017 WL 11501888, at *21 (S.D.N.Y. Nov. 14, 2017), *aff'd*, 764 F. App'x 57 (2d Cir. 2019), and explanation of that failure is proper scope for a rebuttal expert. *In re Aluminum*, 336 F.R.D. at 34 (S.D.N.Y. 2020) (the "lack of an alternative model does not prevent him, as a rebuttal expert, from 'tear[ing] down' other expert's theories or opinions and "is not grounds for excluding his critique of" the other expert); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 481 (E.D.N.Y. 2011) (declining to exclude rebuttal experts that focused entirely on the "the underlying facts of the analysis" of the opposing expert's conclusions).

### A.   Mr. Unny's Opinion that Dr. Edman Failed to Consider the Presence of "Custodial Wallets" is Proper for a Rebuttal Expert

The SEC fundamentally misrepresents Mr. Unny's rebuttal opinion that Dr. Edman's opinion fails to consider the presence and use of custodial wallets. The SEC selectively quotes both Mr. Unny's report and deposition transcript to try to diminish his experience with custodial wallets and recharacterize Mr. Unny's opinion as affirmatively stating that the "███████████ ███████████████████." Unny Daubert Mot. at 12. However, Mr. Unny (1) has relevant experience with custodial wallets—even developing a custodial wallet for a financial payment system—and (2) does not assert an affirmative opinion but instead rebuts Dr. Edman's *own opinion* by explaining that he failed to substantiate why "███████████████████ ████████████████████████████████████████████████ ████████████████ (which the SEC does not even contest).

The SEC's argument that Mr. Unny does not have the requisite expertise to evaluate custodial wallets again ignores the fact that he has extensive work experience with custodial wallets. Notably, Mr. Unny has actually "implemented" a custodial wallet system before, Unny Dep. Tr. at 146:12–14, 152:05–07, by, for example, developing a "custodian wallet system," (*id.* at 34:09–41:14, *see also* 146:22–147:03), for a financial payment that Mr. Unny built while CTO at ft.digital Fintech. *See supra* section I.A. Mr. Unny also identified previously working on "██ ████████████████████████████████████████████████ ████████████████████████████████████████," Unny Report 6 (emphasis added), and being familiar with custodial wallets at PayPal, Kraken, Binance, and Coinbase. Unny Dep. Tr. at 146:05–11. The SEC ignores this experience, does not contest it, and instead wrongly asserts that Mr. Unny "████████████████████████████████ ████████████████████[9] Unny Daubert Mot. at 12. Mr. Unny's experience with actually building a custodial wallet system for a payment system, along with his other experience, qualifies him to offer his opinions here.

---

[9] The SEC also fails to identify any relevant difference in functionality between commercially available and non-commercially available custodial wallets. *See* Unny Daubert Mot. at 12. Meaning its entire construct is much ado about nothing.

Worse still, the SEC fundamentally misrepresents Mr. Unny's opinion. The SEC's assertion that "███████████████████████████████████████████████████████ ████████████████████," Unny Daubert Mot. at 12 (emphasis in original), is *false*. Mr. Unny does opine that custodial wallets *were* used, but instead explains that Dr. Edman failed to account for this use of wallets in his own opinion. Specifically, Mr. Unny asserts that Dr. Edman "does not acknowledge or account for the fact that his description of the '████████████████ ████████████████████████████████████' and the wallets associated with █████████████ █████████████████' as being '█████████████████████████' is *fully consistent with a custodial wallet implementation*, a common user experience solution for cryptocurrency wallets." Unny Report ¶ 11(ii) (emphasis added); *see also id.* ¶ 48. In other words, the fact that the LP source code reflects that ████████████████████████████████████████████████ is consistent with a custodial wallet system in which the LP Server would hold the key on behalf of its users.[10] Unny Dep. Tr. at 158:11–15; Unny Report ¶¶ 19–20, 49–50. Mr. Unny concludes that Dr. Edman's failure to consider this alternative explanation undermines his conclusion that the fact that the ██ ███████████████████████████ definitively shows that the transactions were created by the LP Server rather than by individual users of Chai, which is the entire basis for Dr. Edman's opinion ███████████████████████████." Unny Report ¶ 51.

Contrary to the SEC's argument, Mr. Unny's deposition testimony was completely consistent with this opinion. Mr. Unny made it clear during his deposition that the presence and use of a custodial wallet system was a possibility, *see* Unny Daubert Mot. at 12 (citing Unny Dep. Tr.)—and one that Dr. Edman did not consider. Mr. Unny also clarified that he could not definitively determine whether a custodial wallet was used without examining the underlying Chai source code, (*id.* at 12–13)—although the little data that he had was consistent with such implementation. Unny Dep. Tr. at 155:06–17. This is completely consistent with Mr. Unny's opinion that neither Dr. Edman nor himself could definitively determine "how Chai operated and

---

[10] Dr. Edman's failure is all the more relevant given his acknowledgement of the ██████████████ ████████████████████████, Edman Dep. Tr. at 145:04–147:07, and his acknowledgement that the ███████████████████████████████████████████████████████. *Id.* at 149:12–150:08 (emphasis added).

how it interacted with the Terra blockchain" without this code. Unny Report ¶ 47.[11] As a result, the SEC's attempt to shift the burden of proof to Mr. Unny fails because Mr. Unny is simply "poking holes in another's argument," *Broadspring*, 2014 WL 4100615, at *19, and identifying a "flawed premise in an expert report that casts doubt on ... that report's conclusions," *Feliciano*, 2020 WL 6205689, at *3.

The SEC's argument that Mr. Unny's opinion should be excluded because he did not review materials in addition to those relied on by Dr. Edman fails as a matter of law. The SEC asserts that the "most revealing flaw" in Mr. Unny's opinion is that he did not ask Defendants about the use of custodial wallets in Chai. Unny Daubert Mot. at 13–14. However, it is well established that a rebuttal expert may rely on the same facts on which the affirmative expert relies, *Henkel*, 2016 WL 1271062, at *12, and need not conduct independent research. *Deutsch*, 768 F. Supp. 2d at 481–82 (that rebuttal expert has not conducted his own research is not a basis to exclude the testimony; rather, it is simply an issue for counsel to explore on cross-examination) (citing *In re Viagra Prods. Liab. Litig.*, 572 F. Supp. 2d 1071, 1088 (D. Minn. 2008)).

Mr. Unny's opinion that Dr. Edman failed to consider the use of custodial wallets relies on the "reasoned basis" that the ████████████████████████████ associated with the purported Chai transactions is consistent with the use of custodial wallets. As such, this opinion is reliable and there is no basis to exclude it.

**B.    Mr. Unny's Opinion that Dr. Edman Failed to Consider that Other Applications Could Have Interacted with the LP Server is Proper for a Rebuttal Expert**

The SEC also fundamentally misrepresents Mr. Unny's rebuttal opinion that Dr. Edman's opinion fails to consider other components in Chai, including those that interacted with the LP server. Remarkably, the SEC neglects to mention that *Dr. Edman himself* identified that ████ ████████████████████████████████████—and instead takes out of context statements

---

[11] The SEC's argument that Mr. Unny "████████████████████████████████████████ ████████████████████████" is misleading and irrelevant because Dr. Edman's conclusion that Terraform "████████████████████" was not based on a review of the blockchain but based on his review of ████████████████████████. Edman Report ¶ 47.

made by Mr. Unny during his deposition and suggests that source code underlying the Chai payment system would be irrelevant to this matter.

The SEC again fundamentally misrepresents Mr. Unny's opinion. Dr. Edman's opinion centers around the core conclusion that the ███████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████" Edman Report ¶ 70. In coming to this conclusion, Dr. Edman relies entirely on ███████████████████████████████████████████████████████████████████ ████████. *Id.* ¶¶ 29, 41, 49–55, 56. However, Dr. Edman did not review "████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████. Edman Dep. Tr. at 125:05–126:05.

In rebuttal, Mr. Unny opines that Dr. Edman's ████████████████████████████ ██████████████████████████████████" cannot be supported based on "██████████████ ████████████████████████████████████████" Unny Report ¶ 11(i). Relying on his substantial experience with financial payment systems, *see supra* Section I, Mr. Unny explains that such systems usually require multiple technology and software components to enable them to operate, Unny Report ¶ 29, and there are indications that the Chai payment system included components other than the LP Server. *Id.* ¶¶ 43–46. Specifically, Mr. Unny identifies that the RESTful API architecture, upon which Dr. Edman observes that the LP Server relies, requires "██ ███████████████████████████████████████████" in order for the LP Server to initiate blockchain transactions. *Id.* ¶ 38, *see also id.* ¶¶ 43–44. Mr. Unny further identifies documents that Dr. Edman cited that show the existence of other components of Chai. *Id.* ¶¶ 45–46. Mr. Unny opines that Dr. Edman's failure to consider this evidence, which suggests that other components were required to both settle and process transactions and interact with the blockchain, and instead to rely ████████████████████████████ to draw conclusions about how and to what extent Chai ██████████████████ renders Dr. Edman's conclusions unsupported and untenable. *Id.* ¶¶ 46–47.

The SEC's argument that Mr. Unny's rebuttal opinion is unreliable and speculative is undermined by the admission of its own expert and the SEC's own evidence. During his deposition, although Dr. Edman recognized that the source code that he examined included the ████████████████████████████████████████████████████████████████████████, (Edman Dep. Tr. at 129:16–130:07, 131:14–32:07, 170:15–22), he admitted that he never reviewed the ██████████████████████. *Id.* at 98:13–100:06. Indeed, Dr. Edman acknowledges that the inputs into the LP Server "██████████████████████████████████ ██████" Edman Dep. Tr. at 149:12–150:08. Further, Dr. Edman implicitly acknowledges that Chai incorporates multiple software components when he describes Chai as a payment processor that offers a user experience "████████████████████████" Edman Report ¶ 26. ██████ includes multiple technical systems, including: a web and mobile application, gateways that allow users to link to their banks and credit cards, and protocols that allow users to securely send and receive funds.[12] Thus, if in Dr. Edman's view Chai is indeed ██████████████, it follows that Chai has additional components other than simply the LP Server that must be examined in order to determine how the processing and settlement of transactions occurred. And notably, evidence relied on by the SEC in its own summary judgment motion suggests that the LP Server is just one of multiple components that make up the Chai payment system. Ex. 16b to the Decl. of Witness 1, ECF No. 78-2, page 11 to 40 of 133, at 17:19–18:08 ("██████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████r").

The SEC ignores these facts and blatantly misrepresents Mr. Unny's opinion, seeking to undermine Mr. Unny's opinion that documents show components other than the LP Server within the Chai payment system by selectively quoting his deposition transcript. Unny Daubert Mot. at

---

[12] Nuria Cordon, *What a quarter century of digital transformation at PayPal looks like*, CIO (Oct. 4, 2023), https://bit.ly/3u9iWnC (within the "Technological layers" of the article, identifying multiple "layers" of PayPal, including infrastructure (like databases and servers); technologies that underpin PayPal's services; common platforms (like the payments/transactions technology); and the merchant, consumer, and development experience layer (like the web interface, mobile application, and APIs); *see also* PayPal, *Send money at the speed of life*, https://bit.ly/3MrwMIh (last accessed November 3, 2023); PayPal, *How do I link a bank account to my PayPal account?*, https://bit.ly/3FIRTlL (last accessed November 3, 2023); PayPal Developer, *PayPal security guidelines and best practices*, https://bit.ly/3QI6xA5 (last accessed November 3, 2023).

15. During his deposition, Mr. Unny explained that there were indications in documents *on which Dr. Edman relied* that the Chai payment system included other components than the LP Server. Specifically, when asked about one email that listed the names of "████████████████████ ████████████████████████████████████" Unny Report ¶ 46 n.82, Mr. Unny confirmed that email included the subject line of the ████████████████████████ ██████" (Unny Dep. Tr. at 114:07–15; Ex. E, Exhibit 2 to Unny Dep. Tr.)—and otherwise suggested "that there was a Chai finance GitHub repository" and within that repository, there was "████████████████████████████" which indicates that the ███████████████ had a significant amount of files that "████████████████████████████████████" Unny Dep. Tr. at 115:19–116:13. Mr. Unny additionally confirmed that another document demonstrated a Terra employee was being asked by a Chai employee to review source code from the "████ ████████████████████, (Unny Dep. Tr. at 118:16–122:13; Ex. F, Exhibit 3 to Unny Dep. Tr.), which indicates the existence of source code that relates to the settlement of Chai transactions other than the LP Server source code. Unny Dep. Tr. at 123:02–08. And Mr. Unny also pointed out that another document made references to the existence of additional components of the Chai payment system, the ████████████████████████. Unny Dep. Tr. at 123:09–19, 124:04–10; Ex. G, Exhibit 4 to Unny Dep. Tr. These documents, which Mr. Unny examined after they were translated from Korean into English (Unny Dep. Tr. at 119:13–17), were not examined at all by Dr. Edman in his original report. *See generally* Edman Report (showing no commentary about the English portion of these documents[13] or any Korean translations); Edman Dep. Tr. at 115:15-:18 ("████████████████████████████████████████"). The references to the "████████████████████" or other components and files in these documents

---

[13] Notably, there is no evidence in Dr. Edman's original report that he considered the English portions of these documents in his opinion. For instance, in one document that reflects 73 different code files (Ex. E), key portions of the email—the subject line and the code file names— are largely in English.

indicate that there are other components in the Chai payment system which Dr. Edman not only failed to identify the function of in the Chai payment system but failed to review entirely.[14]

Although the SEC improperly attempts to shift the burden to Defendants and Mr. Unny to prove that these files were used in the Chai payment system, the burden is actually on the SEC to show that Dr. Edman's opinion accounted for other components of the Chai payment system that may have interacted with the LP Server and did not err when basing his decision entirely on his review of only the source code for the LP Server.[15] Mr. Unny's opinion as a rebuttal expert is proper because, again, he is simply "poking holes in another's argument," *Broadspring*, 2014 WL 4100615, at *19, and identifying a "flawed premise in an expert report that casts doubt on ... that report's conclusions," *Feliciano*, 2020 WL 6205689, at *3; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 14862098, at *25 (E.D.N.Y. Oct. 8, 2022) ("As a rebuttal expert, [the rebuttal expert"] structured his report to *disagree* with [the expert's] opinions about the reasonableness of the EMV liability shift, not to offer an affirmative opinion that the liability shift deadline was reasonable. This is an acceptable rebuttal opinion.").

Finally, the SEC seeks to exclude Mr. Unny's opinion for *refusing to speculate*. During his deposition, the SEC asked Mr. Unny if he agreed with a statement made by a former Terra employee, Paul Kim. Ex. 6 to Unny Daubert Mot., ECF No. 87-6; Unny Dep. Tr. at 141:08–10. Mr. Unny explained that he ███████████████████████████████████████████ ███████████████████████████████" when the conversation at issue occurred, (Unny Dep. Tr. at 141:25–142:25) and did not know what Paul Kim meant. *Id.* at 143:10–12. The SEC's argument that Mr. Unny's opinion is unreliable because he refused to speculate about something for which he specifically noted that he lacked context is ludicrous.

---

[14] Dr. Edman attempt to remedy his failure to examine these documents in his sur-rebuttal is unsuccessful. Dr. Edman dismisses these documents as irrelevant without any substantive review on the basis that the documents do not include ██████████████████████. Ex. 3 to Edman Daubert Mot., Rebuttal Expert Report of Dr. Matthew J. Edman ("Edman Reb. Report") ¶¶ 43–44, ECF No. 87-3. However, the SEC's continued assertions that the LP Server is the sole criteria of relevance—without any knowledge or examination of the Chai payment system as a whole—is the same improperly narrow focus that Mr. Unny identifies as a key flaw in Dr. Edman's analysis.

[15] As indicated in the Edman Daubert Motion, Dr. Edman failed to do so. Edman Daubert Mot., Section II.A.

Mr. Unny's opinion that Dr. Edman failed to adequately review the other components of the Chai payment system relies on a "reasoned basis" that there was evidence, as Dr. Edman acknowledged, that there are multiple components to the Chai system, yet Dr. Edman based his opinion solely on his review of just one component—the LP Server. As such, Mr. Unny's rebuttal opinion is reliable, and there is no basis to exclude it.

## CONCLUSION

For the foregoing reasons, the SEC's *Daubert* Motion to Exclude Testimony and Opinions of Mr. Unny should be denied in its entirety.

Date: November 7, 2023                    Respectfully submitted,

                                          */s/Mark G. Califano*

                                          **DENTONS US LLP**
                                          Douglas W. Henkin
                                          David L. Kornblau
                                          Louis A. Pellegrino
                                          1221 Avenue of the Americas
                                          New York, New York 10020
                                          Tel: (212) 768-6700
                                          douglas.henkin@dentons.com
                                          david.kornblau@dentons.com
                                          louis.pellegrino@dentons.com

                                          Mark G. Califano
                                          Melissa Gomez-Nelson (admitted *pro hac vice*)
                                          Matthew A. Lafferman (admitted *pro hac vice*)
                                          1900 K Street, NW
                                          Washington, DC 20006
                                          Tel: (202) 496-7500
                                          mark.califano@dentons.com
                                          melissa.gomeznelson@dentons.com
                                          matthew.lafferman@dentons.com

                                          *Counsel for Defendants Terraform Labs Pte. Ltd.*
                                          *and Do Hyeong Kwon*

21

## CERTIFICATE OF SERVICE

I, Mark G. Califano, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on November 7, 2023.

*/s/ Mark G. Califano*
Mark G. Califano