# katten

525 W. Monroe Street
Chicago, IL 60661-3693
+1.312.902.5200 tel
katten.com

PETER G. WILSON
peter.wilson@katten.com
+1.312.902.5200

November 27, 2023

Hon. Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:  *Securities and Exchange Commission v. Terraform Labs, Pte. Ltd and Do Hyeong Kwon*, 1:23-cv-01346

Judge Rakoff,

We write on behalf of third-party Jump Crypto Holdings LLC (and entities within the Jump Trading Group, hereinafter collectively referred to as "Jump"), in follow up to the *Daubert* hearing held by the Court on November 17, 2023. During that hearing, the Court raised a question regarding the fact that the names of certain Jump entities had been redacted or anonymized in certain filings with the Court and invited Jump to make a further application to the Court regarding confidentiality issues. While the practice of redacting names of entities in filings in this action does not appear to be limited to Jump (*see, e.g.*, ECF No. 106 at 24 (redacting names of firms)), as stated during the hearing by counsel for the Securities and Exchange Commission ("SEC") and Jump, Jump's confidentiality interest relates to certain underlying materials that have been produced by Jump.

Jump does not maintain that its name should be anonymized or redacted in filings with the Court in this action and is not applying for any such order. Rather, the information that Jump maintains should be treated as confidential is information in documents already protected by the Court's May 15, 2023 Protective Order (ECF No. 34). As a "third part[y] providing discovery in this action," the Protective Order authorizes Jump to designate as Confidential certain categories of information, including "previously nondisclosed financial information," "previously nondisclosed material relating to ownership or control of any non-public company," "previously nondisclosed business plans, product development information, or marketing plans," "any information of a personal or intimate nature regarding any individual," or "any other category of information hereinafter given Confidential status by the Court." Protective Order ¶¶ 1-2. When

# Katten

November 27, 2023
Page 2

producing materials in this action, Jump designated certain materials Confidential pursuant to the Protective Order.[1]

Since the Protective Order already protects Jump's Confidential information, Jump is not applying to the Court for any further protections beyond or pursuant to it such as additional categories of information that should be treated as Confidential (which Jump understands was the opportunity afforded to it by the Court at the hearing). Nonetheless, out of an abundance of caution and to explain why certain materials should remain protected pursuant to the Protective Order and overcome any presumption of access to judicial materials, below we provide an overview of the types of materials Jump has produced and the primary Confidential materials we understand that the parties to this action have relied upon in their filings. Though the materials Jump produced relate to a wide range of matters, they generally concern Jump's financial information and business plans, including documents relating to its trading data and its trading and investment strategies. Jump understands that certain of that information has been relied upon by the parties in support of or in opposition to their summary judgment and *Daubert* motions, primarily Jump's trading data. Any summary, analysis, or other descriptions of that data that may appear in the parties' submissions is entitled to protection. That information is the underlying information that allows for the calculation of Jump's profits and losses, and reveals information relating to Jump's trading and business strategies and the sources to which Jump looks to construct those strategies. Exhibit A (M. Hinerfeld Decl.) ¶¶ 2-4.

As a proprietary trading firm, Jump's trading strategies are its most important and sensitive intellectual property. *Id.* ¶ 2. Accordingly, Jump devotes significant economic and employee resources to research, develop, operate, maintain, and protect from public disclosure these strategies, which are its competitive advantage. *Id.* The type of information contained in these records not only identifies when, in what products, at what prices, and in what amounts Jump decided to place orders and trade, but also identifies the particular strategies associated with each of these decisions. *Id.* ¶ 3. Courts routinely recognize such materials as highly sensitive business information and protect them accordingly. *See, e.g.*, *City of Providence v. BATS Glob. Markets, Inc.*, No. 14-CV-2811 (JMF), 2022 WL 539438 (S.D.N.Y. Feb. 23, 2022) (finding that a document reflecting nonparty trading data and business strategy should be kept under seal due to a "significant" privacy interest in preventing disclosure); *Title Trading Servs. USA, Inc. v. Kundu*, No. 3:14-CV-225-RJC-DCK, 2016 WL 608193, at *7 (W.D.N.C. Jan. 5, 2016) (enjoining defendant from revealing plaintiff's proprietary trading strategies to prevent plaintiff from losing "a competitive advantage in the industry"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp.

---

[1] Jump understands that the SEC also reproduced documents in this action that were produced by Jump to the SEC during its investigation prior to commencing this action and appropriate materials have likewise been treated as Confidential.

# Katten

November 27, 2023
Page 3


3d 152 (S.D.N.Y. 2015) (finding that documents containing trading strategies, including "internal corporate documents that govern investment strategies, information regarding proprietary modeling assumptions, and more generally, customer names, account numbers, and pricing information . . . overcomes the presumption of public disclosure"). This is particularly true when the information is a third party's. *See Dodona I, LLC*, 119 F. Supp. 3d at 156.

Disclosure of those materials, or descriptions or summaries of the information contained within them, including how Jump profited or lost or when, in what products, and in what amounts Jump decided to trade, could cause irreparable harm to Jump by allowing others to potentially mimic or gain insight into Jump's trading strategies and identify the information sources from which Jump constructs its strategies. Ex. A ¶ 3; *see, e.g.*, *Eastmore Management, LLC v. Gunta*, No. 653592/2018, 2019 WL 2902152, at *4 (N.Y. Sup. Ct. July 05, 2019) (noting that disclosure of plaintiff's proprietary trading strategies could cause plaintiff to "sustain a loss of business impossible, or very difficult, to quantify" and cause plaintiff to "lose its competitive edge").[2]

The parties to this action have not objected (as permitted in Paragraph 8 of the Protective Order) to Jump's designations. Jump, however, understands that one or more of the parties may still be in the process of submitting non-sealed, redacted versions of certain materials attached as exhibits to their motions. As such, Jump will continue to work with the parties to address redactions to those materials when and if they are presented to the Court.

As set forth above, Jump is not applying to the Court for any confidentiality protections relating to the disclosure of its name or any other protections beyond what is provided for in the Protective Order, which already protects and should continue to protect Jump's Confidential material from public disclosure. Jump remains available to provide further information relating to these issues at the Court's request.

---

[2] While Jump understands that the parties have primarily relied on Jump's trading data, it is not aware of the full catalog of materials that the parties have relied on in their filings. To the extent that the parties have relied on Jump's Confidential non-data documents, those documents reflect matters such as Jump's financial information, ownership structure, and business plans, including but not limited to Jump's operations, Jump's trading and investment strategies, and Jump's profit and loss. Such documents also fall within the delineated categories of information protected by the Protective Order. Protective Order ¶ 2. Moreover, courts have routinely found that such materials are sensitive confidential business information that should be withheld from public disclosure. *See, e.g.*, *Dodona I, LLC*, 119 F. Supp. 3d 152.

# Katten

November 27, 2023
Page 4


Respectfully Submitted,

/s/ Peter G. Wilson

Christian T. Kemnitz[*]
Peter G. Wilson
Elliott M. Bacon[*]

*Counsel for Jump Crypto Holdings LLC*

---

[*] *pro hac vice* forthcoming