**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>TERRAFORM LABS PTE LTD. and DO HYEONG KWON,<br><br>                    Defendants. | Civil Action No. 23 Civ. 1346 (JSR)<br><br><br>Hon. Jed S. Rakoff |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO RECONSIDER THE COURT'S ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. MATTHEW EDMAN**

## <u>TABLE OF CONTENTS</u>

<u>**Page(s)**</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

     A.     Dr. Edman's Opinion ............................................................................... 3

     B.     The Daubert Hearing ............................................................................... 6

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ................................................................................................................... 8

     I.     The Court's Opinion is Based on Clear Error of Facts ......................................... 8

     II.     The New Amendments to Rule 702 are an Intervening Change in the Controlling Law that Warrants Reversal ............................................................................. 12

CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barbaro v. United States ex rel. Fed. Bureau of Prisons FCI Otisville*,
    No. 1:05-cv-06998-DLC, 2006 WL 3161647 (S.D.N.Y. Oct. 30, 2006) ...............................13

*Coffey v. Dowley Mfg., Inc.*,
    89 F. App'x 927 (6th Cir. 2003) ......................................................................................13

*Raffles Tree Apparel Pte. Ltd. v. A Base IX Co. LLC*,
    No. 18-CV-05791 (JSR), 2019 WL 1447214 (S.D.N.Y. Mar. 4, 2019)
    (Rakoff, J.) ......................................................................................................................13

*S.E.C. v. Collector's Coffee Inc.*,
    464 F. Supp. 3d 665 (S.D.N.Y. 2020) ...............................................................................8

*Schoolcraft v. City of New York*,
    133 F. Supp. 3d 563 (S.D.N.Y. 2015) ...............................................................................8

*United States v. Briscoe*,
    2023 WL 8096886 (D.N.M. Nov. 21, 2023) .....................................................................14

*Werth v. Hill-Rom, Inc.*,
    856 F. Supp. 2d 1051 (D. Minn. 2012) .............................................................................13

**Other Authorities**

Local Civil Rule 6.3 ..........................................................................................................8

Rule of Evidence 702 .................................................................................................*passim*

Defendants Terraform Labs Pte. Ltd. ("TFL") and Kwon Do Hyeong respectfully submit this memorandum of law in support of their Motion for Reconsideration of the Court's Opinion and Order denying Defendants' motion to exclude the testimony and opinions of Dr. Matthew Edman (the "Opinion"), ECF No. 149, specifically Dr. Edman's opinion that the transactions generated by the LP Server do not represent the actual processing and settlement of real world Chai transactions and are instead transactions generated by the LP Server that mirror Chai user and merchant activity. Because the Opinion (a) overlooks concessions by Dr. Edman that he lacked the requisite inputs or data needed to determine whether the source code that he examined produced Chai activity on the blockchain and (b) failed to apply the newly-revised version of Federal Rule of Evidence 702, the Court should reconsider and reverse the Opinion denying Defendants' motion to exclude the testimony and opinions of Dr. Edman to avoid manifest injustice.

## INTRODUCTION

The Court should reconsider and reverse the Opinion because the Court's ruling is based on clear errors of fact and does not account for an intervening change in controlling law. *First*, the Court overlooked that Dr. Edman lacked key data that, by Dr. Edman's own admission, was required to determine whether the source code that he examined produced blockchain activity that represented actual Chai transactions. The Court's opinion rejected Defendants' arguments that Dr. Edman did not have the requisite data and instead relied on speculation about inputs into the LP Server by summarily concluding that (a) "all that meant was that Dr. Edman could not say whether the purported Chai transactions replicated on the Terra blockchain were real Chai transactions that had elsewhere occurred through traditional means of payment or were entirely fake transactions" (which is the foundation of Dr. Edman's opinion), (b) Defendants—who, the Court acknowledges, did *not* have possession or control over those inputs—did not produce the requisite inputs, and (c) Dr. Edman otherwise had the requisite data to make his conclusions. Opinion at 22–24. In so doing, the Court effectively reversed the burden of proof both as to the admissibility of Dr. Edman's opinions and the claim Dr. Edman was retained to support.

1

In making these findings, moreover, the Court overlooks Dr. Edman's own assessment that the missing inputs are required to determine whether the LP Server executed a blockchain transaction. Specifically, Dr. Edman admitted during his deposition that inputs into the LP Server were required to determine whether the LP Server executed transactions on the blockchain, but did not review these inputs and based his opinion on the unfounded *assumption* that certain inputs and scripts were used, without any supporting evidence. Yet, nowhere in the Opinion does the Court identify how Dr. Edman was able to identify the characteristics of Terra blockchain transactions generated by the LP Server or determine whether certain scripts were used without the inputs or scripts that Dr. Edman *assumes* existed. And, notably, in finding that Defendants did not produce this material, the Court ignored the uncontested fact that Chai, not Defendants, was in possession of the LP Server and the relevant inputs, a fact the Court specifically credited and relied on elsewhere in the Opinion.[1]

*Second*, despite briefly referencing the new rule, the Court's decision did not account for an intervening change in the controlling law—Federal Rule of Evidence 702. The amendments to Rule 702, which became effective December 1, 2023, require the Court to determine that expert testimony reflects a reliable application of the expert's methodology and facts upon which the expert is basing his or her opinion. Dr. Edman's opinion does not satisfy any aspect of this standard because it fails to explain his methodology for concluding that transactions were not executed on the Terra blockchain. Indeed, Dr. Edman conceded that his opinion could not satisfy Rule 702 by acknowledging during his deposition that the inputs he did not review were required to form the opinion he has offered. In light of these clear errors of fact and the intervening change in Rule 702, Defendants respectfully request that the Court reverse its Opinion and enter an order granting Defendants' Daubert Motion to Exclude Testimony and Opinions of Dr. Edman in its entirety.

---

[1] "Defendants argue, with considerable force, that direct evidence of how Chai's data processing system works would require review of Chai's source code 'or logs, data, or records from operation of the Chai System.' Such evidence is not available because it was never produced by Chai, a Korean corporation, and is not accessible to defendants." Opinion at 62 (internal citations omitted).

## **BACKGROUND**

Although the full background is provided in more detail in the underlying briefing, facts relevant to this motion are set forth below. The SEC offered Dr. Edman's opinion in support of its securities fraud claim alleging that Defendants falsely represented that Chai used the Terra blockchain to "process and settle" payments between its users and merchants in order to encourage purchases of the tokens using the Terraform blockchain. AC ¶¶ 5, 121–52. Dr. Edman was tasked with determining whether "the purported Chai customer and merchant transactions" "represented the processing and settlement of 'real world' transactions between Chai customer and merchants via the Terra blockchain." Ex. C to Defs' Mem. in Supp. of Defs' Mot. to Exclude the Opinions and Testimony of Dr. Matthew Edman ("Edman Daubert Mot."), Corrected Expert Report of Dr. Matthew J. Edman ("Edman Report") ¶ 10, ECF No. 97-2.

### A.    Dr. Edman's Opinion

Dr. Edman's review of Chai was limited to the source code associated with the LP Server and LP Watcher, in addition to publicly available data on the Terra blockchain. *See* SEC Opp. at 3. But he did not examine the LP Server itself or any inputs into the LP Server. Observing that ████ ██████████████████████████████████████████████████," (Edman Report ¶ 42), Dr. Edman recognized on multiple occasions during his deposition that this ████████████████████████ ████████████████████████████████. Specifically, Dr. Edman testified as follows:



Ex. D to Edman Daubert Mot., September 20, 2023 Dep. Tr. of Matthew J. Edman ("Edman Dep. Tr."), ECF No. 97-3 at 129:16–130:07 (emphasis added). Dr. Edman confirmed this representation again later in his deposition:



*Id.* at 131:14–132:07 (emphasis added). Dr. Edman again confirmed this understanding near the end of his deposition:



Ex. 1, Additional Page of September 20, 2023 Dep. Tr. of Matthew J. Edman at 170:15–22 (emphasis added). Despite this acknowledgment, Dr. Edman admitted that he did not review the REDIS Server, *id.* at 135:10–23, and only reviewed "█████████████████████████████████ ███████████████████████████" *Id.* at 98:13–100:06.

Indeed, Dr. Edman admitted that he could not determine who or what provided the inputs that made the LP Server execute transactions on the blockchain, and that it could be "███████ ██████████████████████████" (*id.* at 149:12–150:8), which is exactly what the Chai application is. As a result, Dr. Edman admitted that he could not exclude the possibility that the transactions executed by the LP Server represent actual processing and settlement of "███████"

4

██████████████████████████████████████████████████████████

███████████████████████████████████████████" *Id.*

 Dr. Edman engaged in similar analysis when conducting his review of the use of ██████

███████████████████████████████████████████████████████████

██████████████████████. Dr. Edman explained that the "█████████████████████

████████████████████████████████████████████████████████████████"

*Id.* at 150:09–151:15. Nonetheless, Dr. Edman admitted that he was unable to ██████████████

███████████████████████████████ and was only opining as to █████████████████

██████████████████



*Id.* at 154:19–155:10 (emphasis added). His admission that the LP Server inputs could be provided

by humans thus necessarily means that the keys held by the Server could be controlled by humans.

Despite not having the requisite inputs or scripts or any data from Chai (including actual Chai

transaction data to compare to the blockchain transactions he reviewed), Dr. Edman based his

conclusion that purported Chai user and merchant ████████████████████████████████

████████" (Edman Report ¶ 70), on the existence of blockchain transactions purportedly generated

by the LP Server and certain scripts. Specifically, in his Report, Dr. Edman determined that he was

able to identify "████████████████████████████████████████████████████" (*id.*

¶ 57), the "██████████████████████████████████████████████" (*id.* ¶ 63), and the

percentage of native crypto asset transfers on the Terra blockchain "█████████████████████

██████████" (*id.* ¶ 65), in addition to concluding that certain scripts, notably the "███████████

██████████" script, were used. *Id.* ¶¶ 67–68.

### B.       The Daubert Hearing

Defendants brought a Daubert motion to exclude the opinions and testimony of Dr. Edman. On November 17, 2023, this Court held a hearing on all motions to exclude expert witness testimony and opinions ("Daubert Hearing"). At the one-hour hearing in which the Court evaluated pending Daubert motions for five proposed expert witnesses, the Court questioned counsel for both Defendants and the SEC on which entity possessed the LP Server and relevant inputs, and counsel for both parties had a limited opportunity to question Dr. Edman directly. During the Court's questioning of Dr. Edman, the Court and counsel for the parties engaged in substantial discussion about who possessed the LP Server and relevant inputs. Ex. 2, Tr. of Daubert Hr. at 60:18–65:18. The SEC asserted that:

> There's this device called the LP server, and the evidence shows that it was Terraform employees, there was an employee by the name of Paul Kim, and I think in some of the briefing you would've seen the chat message. He's the fellow that says the LP server is just replicating Chai transactions. So the LP server was something that was controlled by Terraform, and we asked Terraform for that.

*Id.* at 62:24–63:13. In response, counsel for Defendants stated that "TFL has produced every document and every relevant piece of code or other data that it had in its possession." *Id.* at 61:20–21. Counsel for Defendants pointed out that in "evidence that the SEC has included in its own motion for summary judgment, the head of engineering for e-wallets at Chai had explained that the LP server actually sits with the Chai server on the Chai system" (*id.* at 61:13–16) and explained the independent efforts that Defendants made obtain the LP Server, despite the material being possessed by Chai and located in Korea:

> MR. CALIFANO: Paul Kim, according to the evidence, was one of the people [who] wrote the code for the LP server and wrote the code for another piece of operation that Dr. Edman examined in his opinion. The operation of the LP server was something that was conducted in Chai systems. That information and that evidence is sitting in the government's own filings in their motion for summary judgment. What we have tried to do, nevertheless, because Mr. Kim is a TFL employee and that kind of work that software companies often perform by writing code for the operation of a system that they may or may not fully control the operation of, we have done

6

everything we can to gather all the information in our possession or in the possession of TFL and have produced it to the SEC.

We are also interested in all of the data that was put into the LP server and all of the structure of that Chai payment system ourselves, which is why we have sought independently to try to get that information. But we have had to do what we have to do by going to third parties to get it because we do not have possession of it and nor do we have control over it. That is why we both made our independent efforts to make those requests from Gaza Labs, which at one point did initially [operate] the version of Amazon web services where all the Chai systems were operated. We have gone to the actual web hosting company to try to get them to respond to us, and we have joined the SEC in making those requests to Chai because we would also like to see that data."

THE COURT: So to the extent that the data has not been produced that was requested, is any of that data in or controlled by companies in the U.S.?

MR. CALIFANO: Not that we're at all aware of, your Honor. It's all in Korea.

*Id.* at 63:16–64:22. In response, the Court offered to take further action to "try to have those applications [to Chai in Korea] complied with" because it was "happy to make requests," including both "formal[] request[s] like in Hague Convention applications" and "less formal[] request[s] such as letters to relevant judges in foreign countries and so forth." *Id.* at 65:06–14. The Court thus recognized the importance of this information to the reliability—and thus admissibility—of Dr. Edman's opinions.

## LEGAL STANDARD

"A motion for reconsideration is properly granted where 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 567 (S.D.N.Y. 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A court must grant reconsideration of a prior ruling pursuant to Local Civil Rule 6.3 in order to "correct a clear error or prevent manifest injustice" or when there is "an intervening change of controlling law." *S.E.C. v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 668 (S.D.N.Y. 2020).

**ARGUMENT**

**I.      THE COURT'S OPINION IS BASED ON CLEAR ERROR OF FACTS**

The Court's Opinion does not account for key facts that show that Defendants did not possess the LP Server and that Dr. Edman lacked the data required for the LP Server to execute a blockchain transaction or determine what scripts were used. The Court summarily rejected Defendants' argument that Dr. Edman failed to consider "the data that was input into the LP Server that resulted in the blockchain transaction" on the grounds that "defendants were unable to produce" this data and that Dr. Edman "was able to reach his conclusions based on the LP Server source code and public blockchain data." Opinion at 22–23. The Court found that the missing data only "meant … that Dr. Edman could not say whether the purported Chai transactions replicated on the Terra blockchain were real Chai transactions that had elsewhere occurred through traditional means of payment or were entirely fake transactions." *Id.* at 23. The Court also summarily rejected Defendants' argument that Dr. Edman relied on "improper speculation about inputs into the LP Server" on the grounds that "Dr. Edman's analysis is based on his review of the LP Server itself, the 'repository' of which contained 'scripts' that 'use the private keys controlled by the LP Server to create transactions associated with purported merchant user wallets,'" and such matters were "outside the scope of his inquiry." *Id.* at 24. This was error.

*First*, the Opinion ignores uncontested facts that the LP Server is in the possession of Chai, not TFL. As noted at the Daubert Hearing, evidence on which the SEC relied in its own summary judgment motion shows that Chai's head of engineering for ewallet Jihoon Kim explained to CW-1 that the LP Server actually ███████████████████████████████. Ex. 16b to the Decl. of Witness 1, ECF No. 78-2, page 11 to 40 of 133, at 17:19–18:08 ("f███████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████"). Representations made by counsel for Defendants at the Daubert Hearing further clarified that Chai, not TFL, has possession of the LP Server, which the Court itself acknowledged *sua sponte,* and suggested further efforts by the Court to support the letter of request to Chai in Korea. Tr. of Daubert Hr. at 63:16–65:18. The SEC's assertion that a TFL employee once wrote the LP Server code does not place any of these facts or representations

in dispute or demonstrate in any way that TFL currently has possession of the LP Server. And the Court itself recognizes that Chai's data processing system, of which the LP system is part, "is not available because it was never produced by Chai, a Korean corporation, and is not accessible to defendants." Opinion at 62. Thus, concluding that "defendants were unable to produce" the LP Server and related inputs is manifestly unsupported by the factual record. This is another way in which the Court reversed the burdens of proof; if the Chai data "is not accessible to defendants," *id*., then that cannot be a basis for allowing the admission of proposed expert evidence by the SEC that depends on having that evidence.

*Second*, the Opinion ignores clear and uncontested statements by Dr. Edman that the missing inputs are required to determine whether the LP Server executed a Chai transaction as a blockchain transaction. Not only did Dr. Edman not review the LP Server, but Dr. Edman repeatedly confirmed during his deposition that the ███████████████████████████████ ████████████████████████████████████████—stating that the LP Server "██████████████████████████████████████ ████████████████████████" (Edman Dep. Tr. at 129:16–130:07), "████████████████ ████████████████████████████████████████ ████████████████████" (*id.* at 131:14–132:07), confirmed that "for the LP Server to manufacture activity [on the blockchain] it needs inputs." Ex. 1, Edman, Additional Page of September 20, 2023 Dep. Tr. of Matthew J. Edman at 170:15–22.

However, Dr. Edman admitted that he did not review the inputs that he expressly stated were required for the LP Server to execute a blockchain transaction. Dr. Edman admitted that he did not review the ████████████ *id.* at 135:10–23, and only reviewed "████████████████ █████████████████████████████████████ *Id.* at 98:13–100:06. In other words, his opinions about "████████████████████" are entirely speculative because he has no knowledge of whether the "████████████" in his opinion occurred in fact. Indeed, he admitted that any inputs to the LP Server "███████████████████████████████ and that without access to the LP Server, "███████████████████████" *Id.* at 150:3– 8 (emphasis added). Dr. Edman re-confirmed during the Daubert Hearing that he made

assumptions as to the inputs used—specifically stating that he could determine what the LP Server did in this case without the inputs because he could analyze the source code for the LP Server, look at "████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████" Tr. of Daubert Hr. 70:15–20 (emphasis added). But without evidence about whether those inputs ever occurred in fact that is all speculation. Further, at no point—in either his deposition or the Daubert Hearing—did Dr. Edman identify the methodology for determining how he identified what inputs could be used, thus increasing the degree of his speculation.

Dr. Edman engaged in a similarly flawed process in reviewing the use of scripts that were purportedly used with the LP Server when it was processing inputs and executing transactions on the blockchain. Dr. Edman explained that the "███████████████████████████████████ ████████████████████████████████████████████████" *id.* at 150:09–151:15, but later admitted in his deposition that he was unable to "█████████████████ ████████████████████████████████████████████████████████████████ █████████████████████" *Id.* at 154:19–155:10. In light of the fact that Dr. Edman failed to review the LP Server and the inputs into the LP Server, admitted that the inputs could be provided by humans, and failed to determine which scripts (if any) were used, the Court is manifestly incorrect that Dr. Edman based his opinion "on his review of the LP Server itself" and "the 'repository' of which contained 'scripts' that 'use the private keys controlled by the LP Server to create transactions associated with purported merchant user wallets'" or was otherwise "outside the scope of his inquiry." Opinion at 24. Dr. Edman specifically admitted that the two predicates relied on by the Court were false.

The Court's Opinion does not address the fact that these unfounded assumptions by Dr. Edman underpin his opinion. Despite not knowing the inputs that were—in Dr. Edman's own words—needed to generate a blockchain transaction, Dr. Edman makes conclusions in his Report about identifying ████████████████████████████████████████████████████" (Edman Report ¶ 57 (emphasis added)), the "████████████████████████████████ ███████████" (*id.* ¶ 63 (emphasis added)), and the percentage of native crypto asset transfers on the

10

Terra blockchain "*generated* by Terraform Labs' LP Server," *id.* at 65 (emphasis added). Dr. Edman then relies on these conclusions to assert that "█████████████████████████████████████████████████████████████" (*id.* at 66 (emphasis added)) and his ultimate conclusion that the purported Chai user and merchant transactions "████████████████████████████████████████████████████████" *Id.* ¶ 70 (emphasis added). However, the Court ignores that Dr. Edman cannot reconcile (a) his conclusions that he was able to identify blockchain transactions generated by the LP Server and his opinion that these *unidentified* transactions nonetheless definitively did not represent real Chai transactions with (b) the uncontested facts that he does not have or know the inputs that were needed to generate these blockchain transactions, and his concession that these inputs could be provided by humans—which would include Chai users. And the Court further ignores that Dr. Edman's conclusions about the use of certain scripts, notably the use of "███████████████████" script in his Report, (Edman Report ¶¶ 67–68), and his determination that ████████████████████████████████████████ ████████████████████████████████████████████████████████" (Edman Dep. Tr. at 150:09–151:15) cannot be reconciled with Dr. Edman's conclusion that he does not know what scripts (if any) were actually used. *Id.* at 154:19–155:10.

That these key facts were not addressed by the Court's opinion constitutes manifest injustice that warrants reconsideration and reversal of the Opinion. Manifest injustice occurs where issues are raised in briefing that are absent from the court's ultimate opinion, s*ee, e.g., Barbaro v. United States ex rel. Fed. Bureau of Prisons FCI Otisville*, No. 1:05-cv-06998-DLC, 2006 WL 3161647, at *1 (S.D.N.Y. Oct. 30, 2006), and where the Court overlooked factual matters "that might reasonably be expected to alter the conclusion reached." *Raffles Tree Apparel Pte. Ltd. v. A Base IX Co. LLC*, No. 18-CV-05791 (JSR), 2019 WL 1447214, at *1 (S.D.N.Y. Mar. 4, 2019) (Rakoff, J.) (granting defendant's motion for reconsideration and reversing summary judgment on defendant's counterclaim where, on reconsideration, the court found that it overlooked evidence that defendants showed plaintiffs' evidence of damages). The Court does not explain how Dr. Edman's assumptions as to the use and existence of certain inputs and scripts, without any evidence such inputs or scripts were used, can be reconciled with its findings that Dr. Edman's opinion is

11

reliable, when such assumptions necessarily render his opinion unduly speculative, as Dr. Edman himself conceded. *Compare Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 931 (6th Cir. 2003) (excluding as unreliable expert testimony where the witness "made 'guesstimations' with regard to important elements of [his] calculations") *and Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1065 n.15 (D. Minn. 2012) *with* Edman Dep. Tr. at 150:03–08 ("Without access to the LP Server, I would just be speculating as I sit here today."). The Court's Opinion thus ignores key facts that renders Dr. Edman's opinion unreliable and warrants reconsideration and reversal of the Opinion.

II.   **THE NEW AMENDMENTS TO RULE 702 ARE AN INTERVENING CHANGE IN THE CONTROLLING LAW THAT WARRANTS REVERSAL**

Respectfully, the Court should also reconsider and reverse the Opinion because it does not account for an intervening change to the standard in Rule 702. New amendments to Rule 702, which became effective December 1, 2023, require that "an expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). These changes were motivated by the Committee's belief that many courts have found the requirements set forth in Rule 702(d) were "questions of weight and not admissibility" and found that expert testimony was "presumed to be admissible." *United States v. Briscoe*, 2023 WL 8096886, at *4 (D.N.M. Nov. 21, 2023). This amendment was specifically intended to eliminate that presumption by "emphasiz[ing] that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology" because "jurors may ... lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." Fed. R. Evid. 702, Advisory Committee Notes, 2023 Proposed Rules. Thus, the amended Rule 702 "does not permit the expert to make claims that are unsupported by the expert's basis and methodology." *Id.*

Further, comments by the Advisory Committee make it clear that the changes to Rule 702 are substantive and not superficial revisions. Although there have been revisions to Federal Rules for conformity reasons alone,[2] the Advisory Committee has made it clear that this change to Rule

---

[2] *See, e.g.*, Fed. R. Civ. P. 56, Advisory Committee Notes, 1987 Amendment ("The amendments are technical. No substantive change is intended.").

702 is not that type of amendment—the explicit reference to the "expert's opinion" invites a trial court to more directly scrutinize an expert's ultimate conclusions, not just the underlying principles and methods employed. Report of the Advisory Committee on Evidence Rules at 6 (May 15, 2022), https://bit.ly/3TOoY8i (recognizing that the changes to the "language of the amendment more clearly empowers the court to pass judgment on the conclusions that the expert has drawn from the methodology. ... [T]hat is because the methodology *must* not only be reliable, it *must* be reliably applied." (emphasis added)). Thus, the Court is manifestly incorrect to call the changes to Rule 702 cosmetic. Opinion at 15, n. 4 (characterizing the changes to Rule 702 as "small changes" and stating that the decision "would be identical under both the old and new versions" of the Rule).

Dr. Edman's opinion fails to satisfy all aspects of this new standard. As noted above, he fails to reliably apply any methodology to the facts by failing to review the requisite inputs to the LP Server or scripts and instead bases his opinion on what the inputs or scripts *could* do without any evidence of what inputs or scripts *were* used. *See supra* Section I. This is precisely a case where the new amendment precludes admitting Dr. Edman's opinion, as the flaws are highly technical and thus would undoubtedly confuse the jury as to the factual support or methodology in his opinion—especially in light of the highly specialized field at issue here.

The new standard expressed in amended Rule 702 constitutes an intervening change in the law that mandates the exclusion of Dr. Edman's opinion and thus reconsideration and reversal of the Opinion.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court reconsider and reverse the Opinion and grant Defendants' *Daubert* Motion to Exclude Testimony and Opinions of Dr. Edman in its entirety.

Date: January 4, 2024

Respectfully submitted,

*/s/Mark G. Califano*

**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
Louis A. Pellegrino
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com
david.kornblau@dentons.com
louis.pellegrino@dentons.com

Mark G. Califano
Melissa Gomez-Nelson (admitted *pro hac vice*)
Matthew A. Lafferman (admitted *pro hac vice*)
1900 K Street, NW
Washington, DC 20006
Tel: (202) 496-7500
mark.califano@dentons.com
melissa.gomeznelson@dentons.com
matthew.lafferman@dentons.com

*Counsel for Defendant Terraform Labs Pte. Ltd.*

*/s/ David Patton*

**KAPLAN HECKER & FINK LLP**
David Patton
Michael Ferrara
Andrew Chesley
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
dpatton@kaplanhecker.com
mferrara@kaplanhecker.com
achesley@kaplanhecker.com

*Counsel for Defendant Do Hyeong Kwon*

14

## **CERTIFICATE OF SERVICE**

I, Mark G. Califano, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on January 4, 2024.

/s/ Mark G. Califano
Mark G. Califano