# EXHIBIT 2

```
          NBHJSECH

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SECURITIES AND EXCHANGE
     COMMISION,
 4
                  Plaintiff,
 5
            v.                                 23 Civ. 1346 (JSR)
 6
     TERRAFORM LABS PTE LTD., ET
 7   AL.,
                                               Hearing
 8
                  Defendants.
 9
     ------------------------------x
10                                             New York, N.Y.
                                               November 17, 2023
11                                             2:00 p.m.

12   Before:

13                         HON. JED S. RAKOFF,

14                                             District Judge

15                              APPEARANCES

16   U.S. SECURITIES AND EXCHANGE COMMISSION
          Attorneys for Plaintiff
17   BY:  CHRISTOPHER J. CARNEY
          JAMES P. CONNOR
18        LAURA E. MEEHAN

19   DENTONS US LLP
          Attorneys for Defendants Do Hyeong Kwon and Terraform Labs
20   BY:  DOUGLAS W. HENKIN
          LOUIS A. PELLEGRINO, III
21        MARK CALIFANO
          MATTHEW A. LAFFERMAN
22        DAVID L. KORNBLAU

23   Also Present:

24   Elliott Bacon, Katten Muchin Rosenman
     Sarah Gonzalez, Paralegal
25
```

1   questions myself, again, I'll give defense counsel the first
2   shot and then SEC counsel.  Though we may have to interrupt for
3   a few minutes at 4:00 o'clock.
4   CROSS-EXAMINATION
5   BY MR. CALIFANO:
6   Q    Good afternoon, Dr. Edman?
7   A    Good afternoon.
8   Q    So as part of your examination and analysis, one thing that
9   you agreed upon and determined was that the LP server uses
10  what's known as a RESTful API; is that correct?
11  A    That's one component of it, yes.
12  Q    But it was also the case, do you agree, that unless inputs
13  are made into that RESTful API, that LP server will not execute
14  any transactions on the blockchain; is that right?
15  A    The LP server source code that I reviewed did require
16  inputs, whether via the RESTful API or via certain databases
17  that the LP server relied on.
18  Q    But because you did not examine any of that input or could
19  not determine what system was providing that input, you could
20  not determine who or what was exercising control over those
21  transactions that the LP server was performing; is that right?
22  A    Well, first, the inputs to the server were not available
23  for review.
24            THE COURT:  Yes.  I'm going to interrupt you on that
25  because that's something that I was unclear of from the papers.

1   As I understand it, there was some data that was requested, I
2   guess, by the SEC that was never produced, what?  By Chai?
3            MR. CARNEY:  Never produced by defendants.  We had
4   discussions with, in particular Mr. Califano, who said he was
5   making his best efforts to obtain the data from a company
6   called Naver that was apparently hosting the data on behalf of
7   Gaza Labs, which was a Terra-affiliated company.  And by virtue
8   of that, they were asking Naver to provide them the data, but
9   were unable to get Naver to turn the data over to them.
10            THE COURT:  So what about that?
11            MR. CALIFANO:  Well, your Honor, there's a little more
12   information, I think, that the Court needs to consider about
13   that.  First of all, according to evidence that the SEC has
14   included in its own motion for summary judgment, the head of
15   engineering for e-wallets at Chai had explained that the LP
16   server actually sits with the Chai server on the Chai system.
17   What we do know from the information that was provided that was
18   available to TFL and was provided to the SEC was that control
19   of that Naver cloud was not in the hands of TFL.
20            TFL has produced every document and every relevant
21   piece of code or other data that it had in its possession.  TFL
22   also made efforts to try to get access to any of that server
23   information through Gaza Labs and even through Naver cloud,
24   which is sort of like the Amazon web services for Korea.  But
25   more importantly, your Honor, both the SEC and the defendants

1  have made requests, which your Honor approved directly, to Chai

2  for all of this information and we are still waiting for it.

3  We want it, the SEC wants it, but we don't have it.

4            MR. CARNEY:  Your Honor, if I --

5            THE COURT:  Yes.  But then we are going to have to

6  stop and then we'll resume it because this is not unimportant.

7  So I want to get everyone's view, but I guess my narrow

8  question at the moment is if the data is produced by Chai, then

9  doesn't it make sense then to give it to the experts for both

10 sides to allow a supplemental report from each side if it

11 changes anything in a material way, yes?

12           MR. CALIFANO:  Yes, your Honor.

13           MR. CARNEY:  Yes, your Honor.

14           THE COURT:  You would agree with that?  Okay.

15           And secondly, where is Chai located?

16           MR. CARNEY:  In Korea.

17           THE COURT:  Okay.  All right.  To be continued.

18           We will take a 15-minute break.

19           (Recess)

20           THE COURT:  So just to finish up on that little

21 question, are there efforts that the SEC can apply for that

22 they haven't yet applied for to try to compel production of

23 those documents from Chai?

24           MR. CARNEY:  Well, your Honor, first, I think it's

25 important to make clear that there's two separate sets of data

1     that we're talking about.  And so when I was talking about the
2     efforts of defense counsel to obtain data, I was specifically
3     talking about their efforts to obtain Terraform data.  There's
4     this device called the LP server, and the evidence shows that
5     it was Terraform employees, there was an employee by the name
6     of Paul Kim, and I think in some of the briefing you would've
7     seen the chat message.  He's the fellow that says the LP server
8     is just replicating Chai transactions.  So the LP server was
9     something that was controlled by Terraform, and we asked
10    Terraform for that.  And that's what started this dialogue
11    which we attached to our briefing about their efforts to go to
12    Naver and get that information.  So that's one category of
13    data.
14              THE COURT:  Let's stop on that just for a minute so we
15    don't get two things confused.  So what about that?
16              MR. CALIFANO:  Your Honor, Paul Kim, according to the
17    evidence, was one of the people would wrote the code for the LP
18    server and wrote the code for another piece of operation that
19    Dr. Edman examined in his opinion.  The operation of the LP
20    server was something that was conducted in Chai systems.  That
21    information and that evidence is sitting in the government's
22    own filings in their motion for summary judgment.
23              What we have tried to do, nevertheless, because
24    Mr. Kim is a TFL employee and that kind of work that software
25    companies often perform by writing code for the operation of a

system that they may or may not fully control the operation of, we have done everything we can to gather all the information in our possession or in the possession of TFL and have produced it to the SEC.

We are also interested in all of the data that was put into the LP server and all of the structure of that Chai payment system ourselves, which is why we have sought independently to try to get that information.  But we have had to do what we have to do by going to third parties to get it because we do not have possession of it and nor do we have control over it.  That is why we both made our independent efforts to make those requests from Gaza Labs, which at one point did initially open the version of Amazon web services where all the Chai systems were operated.  We have gone to the actual web hosting company to try to get them to respond to us, and we have joined the SEC in making those requests to Chai because we would also like to see that data.

THE COURT:  So to the extent that the data has not been produced that was requested, is any of that data in or controlled by companies in the U.S.?

MR. CALIFANO:  Not that we're at all aware of, your Honor.  It's all in Korea.

THE COURT:  Okay.  So then I want to come back to the SEC.  So I know you made and I approved your applications.  I'm just wondering whether there are other things that could be

1   done to try to have those applications complied with.  So any
2   thoughts on that?
3            MR. CARNEY:  I mean, we could certainly give it some
4   thought.  I know that a request from your Honor carries a lot
5   more weight than a request from us, so I'm not sure --
6            THE COURT:  That's why I'm raising it.  I'm happy to
7   make requests, but I need to see what's -- there are two
8   possibilities.  There are things that I can compel.  That would
9   be true of, for example, anything in the United States, but
10  that's not the issue here.  There are things that I can
11  formally request like in Hague Convention applications and
12  stuff like that.  And then there are things that I can less
13  formally request such as letters to relevant judges in foreign
14  countries and so forth.
15           All those seem to me to be at least worth thinking
16  about, but we'd need to act fairly quickly because the trial
17  date, by the way, is, as I'm sure I've said before, firm,
18  fixed, final, and unmoveable.
19           So okay, let's go back to the witness.  Counsel was
20  putting some questions.
21           MR. CALIFANO:  Thank you, your Honor.
22  BY MR. CALIFANO:
23  Q   Dr. Edman, I think the last question I may have asked you —
24  and I just want to make sure that I've gotten this correctly —
25  is that, because you did not examine any of the input data that

1  developers of these systems.  I reviewed information related to
2  a website called Chai Scan, which purported to track Chai
3  payment transactions, deposition transcripts, really a variety
4  of sources.
5  Q   And is it normal in your line of work for someone to
6  review, for instance, communications between developers?
7  A   Yes.  In I would say pretty much every single
8  investigation, including blockchain-related investigations,
9  that involves, you know, not just analyzing and collecting
10 blockchain data, but also adding context to that data by
11 examining other sources.
12 Q   And how is it that you can determine what the LP server did
13 in this case without the inputs that defense counsel referred
14 to?
15 A   Well, the LP server is just source code and a fairly small
16 application at that.  So I could analyze that source code.  I
17 could look at what it expected the inputs to be, and I could
18 analyze what it would do with those inputs.  It's a
19 deterministic system.  So given certain inputs, you can analyze
20 the software and determine what the outputs are.  In this case,
21 the outputs from the LP server are blockchain transactions
22 which are public, and so I was able to identify the properties
23 of those blockchain transactions based on reviewing the source
24 code associated with the LP server and then identifying those
25 transactions on the public Terra blockchain.