```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION

              Plaintiff

         v.                              23 Civ. 01346 (JSR)

TERRAFORM LABS PTE LTD. , et
al.

              Defendants

------------------------------x
                                         New York, N.Y.
                                         February 9, 2024
                                         12:30 p.m.
Before:

                     HON. JED S. RAKOFF

                                         District Judge

                    TELEPHONIC APPEARANCES

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
CHRISTOPHER J. CARNEY
JAMES P. CONNOR
DEVON STAREN
CARINA CUELLAR
LAURA E. MEEHAN

DENTONS US LLP
     Attorneys for Defendant Terraform
LOUIS A. PELLEGRINO III
MELISSA GOMEZ NELSON
MATTHEW A. LAFFERMAN

KAPLAN HECKER & FINK LLP
     Attorney for Defendant Kwon
MICHAEL FERRARA
```

(The Court and all parties appearing via telephone)

THE COURT: This is Judge Rakoff.

Will counsel please identify themselves.

MR. CARNEY: Good afternoon, your Honor.

This is Christopher Carney on behalf of the SEC..

MR. PELLEGRINO: Louis Pellegrino for the Dentons firm. I'm joined by Melissa Nelson and Matt Lafferman who just joined us.

MR. FERRARA: For defendant Kwon, Michael Ferrara, Kaplan Hecker & Fink. Good afternoon, your Honor.

MR. CARNEY: This Chris Carney from the SEC again. I would just note that I'm joined by several of my colleagues as well: James Connor, Laura Meehan, Devon Staren and Carina Cuellar. Thank you, your Honor.

THE COURT: So the reason I convened this call is that in granting the two-month adjournment of trial, I relied, among other things, on the representation from Mr. Kwon's attorney that Kwon would be consenting to extradition. And then I read in the news yesterday, and it was not clear to me, but it sounded like that he wasn't consenting. So maybe someone can fill me in.

MR. FERRARA: This is Michael Ferrara. Happy to address that, your Honor. I will candidly tell you that we had the same sorts of questions when we spoke to local counsel in Montenegro. The analogy I would use to sort of tee this up,

<pre>                                                                      3
          O29QsecC
</pre>

 1    your Honor, is someone who is coming in to plead guilty but

 2    expects the process to be fair; meaning, we're going to go

 3    through the Rule 11 allocution, right?  You're going to be

 4    advised of the various maximum penalties, right?  We wouldn't

 5    want someone who is consenting to us, you know, to plead to the

 6    charges against him, we still want that person to have a fair

 7    proceeding.  And my understanding from local counsel is that

 8    Mr. Kwon is not raising challenges that he potentially could

 9    raise to extradition, but he is saying that he expects it to be

10    done fairly and in accordance with law.

11              And so there were various irregularities, I'll call

12    they will.  I obviously am not an expert in Montenegro law.  We

13    are consulting with, as I mentioned, with local counsel.  But,

14    for instance, like I think that the lower court was supposed to

15    have, for instance, like sort of calculated which request for

16    extradition came in first, and it didn't.  I think the lower

17    court didn't even at first ask Mr. Kwon if he consented to

18    extradition to the United States.  It only asked him if he

19    consented to South Korea.  So Mr. Kwon's counsel in Montenegro

20    raised certain challenges basically saying --

21              THE COURT:  Excuse me for interrupting, but -- so

22    nothing would have prevented him to inform the higher court

23    that, of course, we also consent to extradition to the United

24    States, and also if there were some procedures that were not

25    followed, we waive our objection, just as someone in the

<pre>                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
</pre>

1  analogy you had to would have to consent to waiving all their
2  various constitutional rights.
3      And so I don't understand why counsel in Montenegro
4  did not — if Mr. Kwon was really interested in being
5  extradited, as was represented to this Court — make those
6  assertions to the higher court so we wouldn't be faced with
7  this situation.
8      MR. FERRARA: Understood. Your Honor, I think, right,
9  we're talking about this through two sort of problematic
10  lenses. The first is I think we are both -- I have the benefit
11  of speaking with local counsel. I suspect your Honor does not
12  have a Montenegro legal expert. I will say today there were
13  more news articles that came out. A lot of times we are not
14  able to get local counsel on the phone. So a lot of these news
15  reports which are, you know, tricky. And, number two, I'm
16  obviously not an expert in that law, but my understanding is I
17  don't think that's the right -- like the right place to do it.
18  To continue to use this analogy that I started, one might say
19  to the appellate court, the defendant is prepared to plead but
20  he needs to be advised of his rights, and the appellate court
21  is not the place to do that.
22      Now I will be candid with you, your Honor, we have --
23  as we have told the U.S. Attorney's Office for the Southern
24  District, Mr. Kwon would, quite frankly, prefer to be
25  extradited to South Korea. That's where his family is. But he

1  is consenting to both.  But yes, he has raised certain issues
2  with the way the proceeding is done.
3      Now I will also tell your Honor that my understanding
4  is that we developed from some of the news reports is that the
5  objections he raised that the appellate court now sent this
6  back down to the lower court, actually should speed this
7  process up.  The way we understand it's supposed to work is if
8  an extraditee -- I'm not sure that's a word -- agrees to be
9  extradited, consents to the extradition, then the Court decides
10 where the person goes as opposed to sending it to the Minister
11 of Justice in Montenegro to decide.  So we are hopeful, and
12 part of the idea of this was that it would make things move
13 faster.
14      THE COURT:  Well, while you are right that I have not
15 consulted any expert in Montenegro law, what was represented in
16 the letter from Mr. Patton to me of January 11, 2024 was not
17 only that Mr. Kwon had consented to extradition to the United
18 States but also that "Mr. Kwon through his counsel in
19 Montenegro has made every effort to be extradited from
20 Montenegro as quickly as possible."  And I am sorry that we
21 don't -- by the way, does Montenegro counsel speak English?
22      MR. FERRARA:  We use an interpreter.
23      THE COURT:  All right.
24      MR. FERRARA:  I believe -- I don't want to -- I
25 believe we use the same interpreter.  I believe it's a person

1  who works with counsel, so they might -- I honestly can't say
2  if they're both lawyers, but our understanding is that we have
3  one -- he's actually quoted -- he is quoted in one of the
4  articles. He is our local counsel. He has a colleague who is
5  with him in all of our meetings who interprets.
6      THE COURT: Well, the fact of the matter is that it's
7  hard for me to escape the conclusion that I was misled about
8  what was going to happen and that I materially relied on those
9  misleading statements in adjourning the trial. Based on what I
10 have just been informed, I will assume and presume that any
11 such misleading was unintentional on U.S. counsel's behalf.
12     However, going forward, I will not accept any
13 representations relating to any aspect of what is going on in
14 Montenegro unless they take the form of a sworn declaration by
15 Montenegro counsel duly translated to English by a certified
16 interpreter and made subject to penalties of perjury in the
17 United States. Otherwise, I don't want to hear one word about
18 what allegedly is Mr. Kwon's position regarding extradition
19 from Montenegro because I don't trust it.
20     Anything else counsel wants to raise?
21     MR. FERRARA: Well, your Honor, I am going back and
22 forth in my head. This is still Michael Ferrara for Mr. Kwon.
23     You know, obviously, Judge, you know, my, David Patton
24 and Sean Hecker's reputation with you is obviously -- and the
25 way we relate with you is obviously of supreme importance to

1  you and our law firm. And the idea I just feel -- I feel like
2  I need to be quite sure when I go back to discuss with them
3  what happened here, if we need to put more in on this, we will,
4  but the idea that we would ever try to mislead you in any way,
5  like I can't sort of let that sit there.

6  THE COURT: I thought I made clear, but I will make
7  clear again, that the misleading impression that I was left
8  with which I relied on in granting the request for the
9  adjournment, I am quite sure was unintentional on American
10 counsel's part. Whether it was the result of less than total
11 cooperation by Montenegro counsel, I have no idea, but it is
12 precisely because of the Court's very positive experiences with
13 all the counsel, all the U.S. counsel for Mr. Kwon that you
14 just mentioned, that I am presuming it was totally
15 unintentional.

16 I do get the feeling — but this may not be correct and
17 you can correct me if I'm wrong — that U.S. counsel did not
18 convey to Montenegro counsel in advance of what occurred
19 yesterday: Judge Rakoff has made it absolutely clear in his
20 order that he's granting this extension because of the
21 representations that were made to him that both Mr. Kwon is
22 consenting to extradition to the United States and is prepared
23 to do through his counsel in Montenegro is "prepared to make
24 every effort to be extradited as quickly as possible." And I
25 get the feeling that maybe the seriousness of the Court's

reliance on those representations by U.S. counsel was not perhaps conveyed to Montenegro counsel as forcefully as it might have been. But I could be wrong about that.

MR. FERRARA: Well, I --

THE COURT: Go ahead.

MR. FERRARA: Well, I -- and perhaps I didn't, and shame on me if I didn't. I will say that in addition to, of course, wanting to always speak truthfully to you, we, as you might imagine, have been asked this same question about consent and why are these articles happening, from both the SEC and the Department of Justice, and we have been trying to answer them.

So, again, without getting into privileged conversations or waiving anything, I can tell you we asked at least 15 different ways because we too are puzzled, and I feel like it is sort of an oddity of Montenegro extradition law that a person can both consent and sort of insist that it be done legally, which is why we tried to say in our letter, you know, subject to appropriate -- I can't remember the exact wording.

THE COURT: Let me ask you this, and maybe you don't know the answer. After I granted the extension, did Montenegro counsel file anything with the Montenegro court in connection with this appeal saying, in words or substance, based on the representations that we have made to the U.S. court, we are withdrawing any objections we have to what occurred below and urge the Court to simply allow us to be extradited to the U.S.

1  as quickly as possible. Was anything remotely like that filed?
2         MR. FERRARA: I don't believe so.
3         THE COURT: No, I don't believe so either. So that is
4  why I think you need to continue to put pressure on Montenegro
5  counsel to fulfill the substance of the representations that
6  were made to me. But I repeat, I'm not assuming any bad faith
7  on the part of U.S. counsel. I'm delighted you're in this
8  case, but I am not going to accept anything regarding what's
9  going on in Montenegro unless it takes the form of a
10 declaration from Montenegro counsel under oath subject to
11 punishment for perjury in the U.S. Got it?
12        MR. FERRARA: Understood.
13        THE COURT: Very good. Thanks a lot. Bye-bye.
14        (Adjourned)