**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD. and DO HYEONG KWON,<br><br>              Defendants. | Civil Action No. 1:23-cv-01346-JSR<br><br>Hon. Jed S. Rakoff |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................1

I.      Evidence of the May 2022 depeg and related alleged losses
        should be excluded..............................................................................................1

II.     Evidence or reference to Mr. Kwon's incarceration, arrest or legal proceeding
        should be barred.................................................................................................1

III.    Evidence of any invocations of the Fifth Amendment privilege by non-party witnesses
        Kariya, DiSomma, and Kuan should be excluded. ...............................................8

IV.     The testimony of four SEC wintesses on issues of which they lack personal
        knowledge should be excluded ..........................................................................13

V.      Any reference to other fraud cases or scandals should be excluded..................15

VI.     Certain Audio Recordings should be excluded under Rule 802. ........................17

VII.    Any reference to Korean aw or the legality of Chai's use of the blockchain
        under Korean law should be excluded.. ..............................................................19

VIII.   All references to unregistered sales of securities should be excluded
        under Rule 402......................................................................................................22

IX.     SEC Witnesses William Connolly and Sunny Kim Should be Precluded from
        Testify at Trial....................................................................................................24

CONCLUSION.............................................................................................................25

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abington Emerson Cap., LLC*, Case No. 2:17-cv-143, 2021 WL 611998
(S.D. Ohio Jan. 22, 2021) ....................................................................................11

*Akinyemi v. Napolitano*,
347 F. App'x 604 (2d Cir. 2007) ...........................................................................9

*Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*,
2014 WL 3507427 (S.D.N.Y. July 15, 2014) .......................................................22

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
No. 04-cv-10014, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) .........................16

*Arlio v. Lively*,
474 F.3d 46 (2d Cir. 2007)....................................................................................23

*Banks v. Yokemick*,
144 F. Supp. 2d 272 (S.D.N.Y. 2001).....................................................................9

*Bernstein v. Vill. of Wesley Hills*,
95 F. Supp. 3d 547 (S.D.N.Y. 2015), *aff'd*, 644 F. App'x 42 (2d Cir. 2016).........13

*CDX Liquidating Trust v. Venrock Assocs.*,
411 B.R. 591 (N.D. Ill. 2009) ...............................................................................16

*Cooper v. Meritor, Inc.*,
No. 4:16-CV-52, 2019 WL 1028530 (N.D. Miss. Mar. 4, 2019) ..........................16

*Farace v. Indep. Fire Ins. Co.*,
699 F.2d 204 (5th Cir. 1983) ................................................................................12

*Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*,
68 F. Supp. 3d 486 (S.D.N.Y. 2014), *aff'd sub nom.* 873 F.3d 85 (2d Cir.
2017) .....................................................................................................................17

*In re Gen. Motors LLC Ignition Switch Litig.*,
2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) .........................................................22

*In re General Motors LLC Ignition Switch Litigation*,
2017 WL 2493143 (S.D.N.Y. June 9, 2017) .........................................................18

*Gomez v. City of Chicago*,
No. 13 C 05303, 2015 WL 13651138 (N.D. Ill. June 29, 2015) ...........................16

*Gora v. Costa*,
   971 F.2d 1325 (7th Cir. 1992) ...................................................................................6

*Gray v. Great Am. Recreation Ass'n, Inc.*,
   970 F.2d 1081 (2d Cir. 1992)...................................................................................5

*LiButti v. United States*,
   107 F.3d 110 (2d Cir. 1997)....................................................................8, 9, 10, 11

*Marfia v. T.C. Ziraat Bankasi*,
   874 F. Supp. 560 (S.D.N.Y. 1994), *vacated on other grounds,* 100 F.3d 243
   (2d Cir. 1996).........................................................................................................13

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp.3d 558 (S.D.N.Y. 2017).....................................................................16

*In re Mylan N.V. Sec. Litig.*,
   2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) .......................................................10

*Old Chief v. United States*,
   519 U.S. 172 (1997).................................................................................................7

*Park West Radiology v. CareCore Nat., LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009)....................................................................23

*Payne v. Huntington Union Free Sch. Dist.*,
   219 F. Supp. 2d 273 (E.D.N.Y. 2002) ..............................................................13, 14

*Payne v. Jones*,
   711 F.3d 85 (2d Cir. 2013)........................................................................................6

*People of State of NY v. Adorno*,
   1987 WL 19642 (S.D.N.Y. Oct. 29, 1987) ...........................................................22

*Porter v. Quarantillo*,
   722 F.3d 94 (2d. Cir. 2013).....................................................................................20

*Progressive Cas. Ins. Co. v. Monaco*,
   2017 WL 2873051 (D. Conn. July 5, 2017) ............................................................9

*Repecki v. Home Depot USA*,
   942 F. Supp. 126 (E.D.N.Y. 1996) ..........................................................................5

*In re Reserve Fund Securities and Derivative Litig.*,
   2012 WL 12354220 (S.D.N.Y. Sept. 11, 2012).......................................................1

*Revak v. SEC Realty Corp.*,
   18 F.3d 81 (2d Cir. 1994).........................................................................................2

*Rosario v. City of New York*,
    2021 WL 9455782 (S.D.N.Y. Nov. 23, 2021) ........................................................7

*Ross v. Am. Exp. Co.*,
    35 F. Supp. 3d 407 (S.D.N.Y. 2014)..................................................................12

*Rotolo v. Digital Equip. Corp.*,
    150 F.3d 223 (2d Cir. 1998)............................................................................18

*S.E.C. v. Adelphia Commc'ns Corp.*,
    2006 WL 8406833 (S.D.N.Y. Nov. 16, 2006) ......................................................10

*Sabratek Liquidating LLC v. KPMG LLP*,
    No. 01-C-9582, 2003 WL 22715820 (N.D. Ill. Nov. 18, 2003) .............................17

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999) (Sotomayor, J.).......................................................21

*Sec & Exch. Comm'n v. Contorinis*,
    743 F.3d 296 (2d Cir. 2014)..............................................................................2

*Sec. & Exch. Comm'n v. Genovese*,
    No. 17 CIV. 5821 (LGS), 2022 WL 16748779 (S.D.N.Y. Nov. 7, 2022) ...............2, 3, 4

*SEC v. Am. Growth Funding II, LLC*,
    2018 WL 6322145 (S.D.N.Y. Dec. 4, 2018) .........................................................1

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012)...............................................................................2

*SEC v. Jensen*,
    2013 WL 12129377 (C.D. Cal. Mar. 13, 2013) .....................................................2

*SEC v. Lek Sec. Corp.*,
    276 F. Supp. 3d 49 (S.D.N.Y. 2017)...................................................................2

*SEC v. True North Fin. Corp.*,
    Civil No. 10-3995, 2013 WL 4781037 (D. Minn. Sept. 6, 2013)...........................16

*United States v. Blake*,
    195 F. Supp. 3d 605 (S.D.N.Y. 2016)............................................................20, 21

*United States v. Brown*,
    79 F. 2d 321 (2d Cir. 1935)..........................................................................3, 4

*United States v. Caccia*,
    122 F.3d 136 (2d Cir. 1997)..............................................................................6

*United States v. Carneglia*,
    256 F.R.D. 384 (E.D.N.Y. 2009) ........................................................14

*United States v. Copple*,
    24 F. 3d 535 (3d Cir. 1994)..............................................................3, 4

*United States v. Elmaani*,
    2023 WL 2770742 (S.D.N.Y. Apr. 4, 2023).......................................20

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980)..............................................................23

*United States v. Funds Held in Name of for Benefit of Wetterer*,
    17 F. Supp. 2d 161 (E.D.N.Y. 1998), *rev'd on other grounds*, 210 F.3d 96 (2d
    Cir. 2000) ......................................................................................5, 6

*United States v. Gardell*,
    2001 WL 1135948 (S.D.N.Y. Sept. 25, 2001)...................................22

*United States v. Hall*,
    993 F.2d 1540 (4th Cir. 1993) (per curiam)........................................6

*United States v. Harwood*,
    998 F.2d 91 (2d Cir. 1993).................................................................20

*United States v. Jenkins*,
    687 F. App'x 71 (2d Cir. 2017) ..........................................................6

*United States v. Lang*,
    589 F.2d 92 (2d Cir. 1978).................................................................20

*United States v. Martoma*,
    2014 WL 31191 (S.D.N.Y. Jan. 6, 2014) ............................................3

*United States v. Ruth*,
    578 F. Supp. 3d 392 (W.D.N.Y. 2022) ...............................................20

*United States v. Saneaux*,
    365 F. Supp. 2d 493 (S.D.N.Y. 2005).................................................19

*United States v. Stein*,
    521 F. Supp. 2d 266 (S.D.N.Y. 2007).................................................23

*United States v. Super*,
    492 F.2d 319 (2d Cir. 1974)................................................................6

*United States v. Torres*,
    845 F.2d 1165 (2d Cir. 1988)..............................................................6

*United States v. Zhang*,
    165 F.3d 16, 1998 WL 802071 (2d Cir. 1998) ...........................................................................6

*Victory v. Bombard*,
    570 F.2d 66 (2d Cir. 1978)...................................................................................................12

*Woods v. START Treatment & Recovery Centers, Inc.*,
    864 F.3d 158 (2d Cir. 2017)................................................................................................12

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 CIV 3288 DLC, 2005 WL 375315 (S.D.N.Y. Feb. 17, 2005) ..............................11, 12

*Wright v. Undercover Officer #84*,
    2018 WL 4042101 (S.D.N.Y. Aug. 22, 2018) ......................................................................18

**Other Authorities**

U.S. Const. Amend. V ............................................................................................. *passim*

Fed. R. Civ. P. 26(a)(1) and 37(c)(1) .............................................................................24

Fed. R. Civ. P. 37(c)(1) ...................................................................................................24

Fed. R. Civ. P. 37(e)(1)(A) ..............................................................................................24

Fed. R. Civ. P. 44.1 .........................................................................................................22

Fed. R. Evid. 401 .....................................................................................................18, 23

Fed. R. Evid. 402 ................................................................................................... *passim*

Fed. R. Evid. 403 ................................................................................................... *passim*

Fed. R. Evid. 602 ......................................................................................13, 14, 15, 18

Fed. R. Evid. 608 ...............................................................................................................7

Fed. R. Evid. 801 .....................................................................................................18, 21

Fed. R. Evid. 802 .....................................................................................................17, 20

Fed. R. Evid. 803 .....................................................................................................15, 20

Fed. R. Evid. 804 ..............................................................................................14, 20, 21

Fed. R. Evid. 807 .............................................................................................................21

Fed. R. Evid. 901 .....................................................................................................18, 19

Fed. R. Evid. 1006 ..........................................................................................................24

Local Rule 56.1 ...............................................................................................................20

CryptoNewsZ, *Daniel Shin, Co-founder of Terra Speaks Exclusively to*
 *CryptoNewsZ* (Sept. 24, 2019), https://bit.ly/3TYD72A ........................................21

**ARGUMENT**

**I.     Evidence of the May 2022 Depeg and Related Alleged Losses Should be Excluded.**

The SEC should be precluded from offering any evidence or argument relating to the May 2022 depeg, including but not limited to: (i) the amount of UST or LUNA that individual purchasers acquired, (ii) the alleged financial implications of those purchases, (iii) the fact of any alleged loss from or any aggregate or individual loss amounts for UST and LUNA holders following the collapse of UST's peg in May 2022, and (iv) the collapse of UST and LUNA prices in May 2022. This evidence is irrelevant to the SEC's fraud claims. The SEC has no evidence (because none exists) that Defendants' alleged misstatements concerning Chai or the May 2021 depeg caused or were relevant to the May 2022 depeg. On the contrary, the SEC has admitted that "[s]everal factors contributed to the [May 2022] crash, including the sale of large amounts of UST by one or more sophisticated trading firms beginning on or about May 7, 2022." Am. Compl. ¶ 170 (ECF No. 25). In fact, it was the short attack by hedge funds alluded to in the Amended Complaint that caused the May 2022 depeg, not allegedly false statements purportedly made by Defendants years before. Indeed, under the SEC's theory, unlike a typical "pump and dump," in this case the market did not learn until **after** the May 2022 depeg the alleged "truth" regarding whether Chai used the blockchain and whether Terra's algorithm "self-healed" the May 2021 depeg. Including the May 2022 depeg in the trial would not only needlessly complicate the proceeding with extraneous issues; it would confuse and inflame the jury and unfairly prejudice Defendants.

"Irrelevant evidence is not admissible" under Rule 402, and even minimally relevant evidence must survive balancing under Rule 403: "its probative value [must not be] substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 402, 403. Thus, this Court and others have held—often at the SEC's specific request—that alleged investor losses should be excluded from trials of securities fraud claims brought by the SEC. *See, e.g.*, *SEC v. Am. Growth Funding II, LLC*, 2018 WL 6322145, at *1 (S.D.N.Y. Dec. 4, 2018) (granting SEC motion to exclude evidence of losses because it is not

relevant to proving securities fraud); *In re Reserve Fund Securities and Derivative Litig.*, 2012 WL 12354220, at *1 (S.D.N.Y. Sept. 11, 2012) (precluding both the SEC and the defendants from presenting evidence of investor losses or profits on the grounds that the evidence was irrelevant in a trial for liability where remedies are decided separately); *SEC v. Jensen*, 2013 WL 12129377, at *5–6 (C.D. Cal. Mar. 13, 2013) (excluding any reference to a defendant's profits as irrelevant to securities fraud liability). This line of precedent reflects that alleged losses are irrelevant to Section 17(a) and Section 10(b) claims brought by the SEC, which require no proof of "investor reliance, loss causation, or damages." *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 59 (S.D.N.Y. 2017); *see also SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012); *Sec. & Exch. Comm'n v. Genovese*, No. 17 CIV. 5821 (LGS), 2022 WL 16748779, at *1 (S.D.N.Y. Nov. 7, 2022). And the evidence poses a significant risk of confusing the issues, misleading the jury, and wasting time because the court, not the jury, determines whether disgorgement is appropriate and the amount to be disgorged. *Sec & Exch. Comm'n v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014). Likewise, these rulings recognize that evidence of alleged investor losses is highly prejudicial to Defendants. *See, e.g.*, *Genovese*, 2022 WL 16748779 at *1.

Applying Rules 402 and 403, the Court should exclude the following witnesses, testimony, and evidence related to the May 2022 depeg and the resulting losses allegedly suffered by purchasers:

**1.    The Summary Testimony of Donald Hong.**  Donald Hong is the SEC's so-called summary witness who reviewed and analyzed TFL's financial records. At the summary judgment stage, this Court admitted his declaration to "show that the funds from [token] purchases were indeed pooled." Summ. J. Op. at 41 n.11 (ECF No. 149). Mr. Hong opined that Defendants ███████ █████████ Hong Decl. ¶ 6 (ECF No. 77); *see also id.* ¶¶ 12–13, 21, 25–26, 29, 33–36. And this Court reasoned that such "pooling" relates to horizontal commonality, *see Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994), which it found relevant to whether purchasers of the tokens at issue invested their "money in a common enterprise" under *Howey*. *See* Summ J. Op. at 37–41

(ECF No. 149); *see, also* Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 7, 11 (ECF No. 71) (citing Hong Decl. ¶¶ 21–23, 25, 29–32, 35).

Now that the Court has resolved the securities question,[1] Hong's discussion of TFL's finances is irrelevant to resolving issues at trial. The jury will decide only falsity, materiality, and scienter. *See* Summ. J. Op. at 53–54 & n.12 (citing *SEC v. Thompson*, 238 F. Supp. 3d 575, 591 (S.D.N.Y. 2017) (ECF No. 149). The SEC's prior briefing forecasts its use of Hong's testimony to present alleged losses. *See, e.g.*, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J.  at 28–29 (ECF No. 71) (citing Hong Decl. ¶¶ 42–48) (███████████████████████████████

███████████████████████). But as noted above, those alleged losses are irrelevant to the SEC's fraud claims and would inflame and confuse the jury and unfairly prejudice Defendants.

**2.**      **Evidence and testimony by specific purchasers detailing their alleged losses from the May 2022 depeg**.   The Court should exclude any evidence or testimony of dollar amounts spent, tokens acquired, prices paid, and losses allegedly suffered by any individual, institution, or pool of purchasers in connection with the May 2022 depeg. *See* Pl.'s Pre-Trial Disclosures at 1–2, 4 (identifying Arash Vakil, Nader George, Matthew Hyde, Jonathan Kol, Boris Revsin, and Arjun Sethi) (Ex. A)[2]; Declaration of Matthew Hyde ¶¶ 20–25 (ECF No. 84); Declaration of Nader George ¶ 23 (ECF No. 85); Declaration of Boris Revsin ¶ 18 (ECF No. 82). Such evidence or testimony has no probative value for proving the SEC's securities fraud claims at trial. *See United States v. Martoma*, 2014 WL 31191, at *6 (S.D.N.Y. Jan. 6, 2014). Any purported probative value "is substantially outweighed by the risk of prejudice from juror sympathy for" purchasers. *Genovese*, 2022 WL 16748779, at *1. Testimony, for example, that purchaser losses came from money "saved for their children's college educations," long-term savings, or "from savings dedicated to other special purposes" is "unfairly prejudicial." *United States v. Copple*, 24 F. 3d 535, 545–46 (3d Cir. 1994); *see also United States v. Brown*, 79 F. 2d

---

[1] Defendants preserve all objections to the Court's ruling that the tokens here at issue are or were sold as "investment contracts." *See* Summ. J. Op. at 35–50 (ECF No. 149).
[2] References to (Ex. __) refer to Exhibit __ to the Declaration of Douglas W. Henkin dated January 15, 2024.

321, 325 (2d Cir. 1935) (finding error in permitting purchasers to testify regarding the "consequence of their losses," such as that "some buyers had lost their homes and their businesses, and gone hopelessly into debt"). That is because such testimony is "designed to generate feelings of sympathy for the victims and outrage toward [the Defendants]." *Copple*, 24 F. 3d at 546. Testimony that individuals acquired UST or LUNA with funds set aside for important personal or pecuniary purposes should thus be barred.

3.    **Testimony from Professor Bruce Mizrach concerning the May 2022 depeg**. Professor Bruce Mizrach was engaged to analyze the 2021 depeg, not the 2022 depeg. *See* Mizrach Rebuttal Report at 12 (ECF No. 112-3). Through this lens, he opines that ███████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Mizrach Report at 4 (ECF No. 112-1). This conclusory speculation is superfluous and lacks any analytical or logical support. Hendershott Report ¶ 136 (ECF No. 112-2). It would thus serve as an improper back door for the SEC to introduce evidence of purchaser losses allegedly stemming from the May 2022 depeg. Such evidence would inflame the jury and introduce confusion by suggesting that the May 2022 depeg was the product of fraud by Defendants.

4.    **All other evidence and argument regarding purchaser losses.** It follows that any other evidence of alleged aggregate loss or individual losses associated with the May 2022 depeg is not relevant and should be excluded at risk of unfairly prejudicing Defendants under Rule 403. As established above, loss has nothing to do with liability determinations under Section 17(a) or Section 10(b) in SEC enforcement actions. And any evidence or argument to that effect would only "generate feelings of sympathy for the [purchasers] and outrage toward [Defendants] for reasons not relevant" to the claims. *Copple*, 24 F. 3d at 545-46; *see also Genovese*, 2022 WL 16748779, at *1 (precluding evidence of "aggregate" investor losses because of risk from "juror sympathy for investors"); *Brown*, 79 F. 2d at 325 (similar). For these reasons, Defendants request that the Court preclude any evidence and argument concerning purchaser losses allegedly related to the May 2022 depeg or the May 2022 depeg itself.

## II.    Evidence or Reference to Mr. Kwon's Incarceration, Arrest or Legal Proceeding Should be Barred.

Mr. Kwon, who has been incarcerated in Montenegro since March 2023, is currently awaiting a decision in that country on whether he will be extradited to South Korea or the United States. No extradition date has been set. As a result, he may not be able to attend or testify at this trial. Because Mr. Kwon lacks control over his ability to appear and would not be available to provide testimony for either side in this action, any adverse inferences drawn from his absence would be fundamentally unfair. If he remains unable to attend trial, Defendants move the Court to instruct the jury that he is unavailable and that no adverse inference can be drawn from his absence against either side. *See* ECF No. 161 at 1-34 (Mr. Kwon's letter response to the Court's December 29 order regarding his attendance at trial). Defendants also ask for an order preventing any party from raising before the jury Mr. Kwon's prior absence, his arrest or incarceration in Montenegro, or that he has been criminally charged in any jurisdiction.

### A.    An Adverse Inference Instruction Regarding Mr. Kwon's Absence from Trial Would Be Inappropriate

Mr. Kwon is both a party and a potential witness. "Generally, there is no duty on the part of either party to call any particular person as a witness." *Repecki v. Home Depot USA*, 942 F. Supp. 126, 129 (E.D.N.Y. 1996). However, "[t]he non-appearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention." *Gray v. Great Am. Recreation Ass'n, Inc.*, 970 F.2d 1081, 1082 (2d Cir. 1992). Whether an "adverse inference" should be drawn from absence depends on whether there exists no reasonable excuse for the witness's absence. *United States v. Funds Held in Name of for Benefit of Wetterer*, 17 F. Supp. 2d 161, 186 (E.D.N.Y. 1998), *rev'd on other grounds*, 210 F.3d 96 (2d Cir. 2000).

Here, Mr. Kwon is not available to appear or testify at trial for the "reason" that he is incarcerated in Montenegro and Montenegrin authorities have severely limited access to Mr. Kwon. *See id.* Mr. Kwon's detention in Montenegro has rendered him unavailable for examination

pursuant to a Letter of Request to Montenegro. Under the "peculiar circumstances in this case," *id.*, reasonable excuse exists for his failure to appear at trial. As a result, the Court should not allow the jury to draw any adverse inference from his absence. *See id.* (declining to make an adverse inference where the witness resided in Guatemala and his fugitive status in the United States was a reasonable excuse for his failure to appear at trial); *cf. Payne v. Jones*, 711 F.3d 85, 90 (2d Cir. 2013) (quoting district court's instruction to jury that it should not hold defendant's failure to attend several days of trial due to illness against him).

Under certain circumstances, the jury may "draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party." *United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997); *see also United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988). But such an adverse inference is "not warranted where . . . the uncalled witness is equally unavailable to both sides." *United States v. Zhang*, 165 F.3d 16, 1998 WL 802071, at *1 (2d Cir. 1998) (unpublished table opinion).

Here, neither party will be able to call upon Mr. Kwon to appear and testify at a trial beginning January 29. Mr. Kwon is thus "equally unavailable" to both parties, rendering a missing witness instruction improper. *See United States v. Jenkins*, 687 F. App'x 71, 73 (2d Cir. 2017); *Zhang*, 1998 WL 802071, at *1; *United States v. Super*, 492 F.2d 319, 323 (2d Cir. 1974) (instruction that the jury should not draw an inference one way or the other was proper where witness was equally unavailable to both sides).

Any probative value of his absence or incarceration would also be far outweighed by the prejudice resulting from a "missing witness" instruction. *See Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992) ("[W]e emphasize that evidence of [witness's] current incarceration is highly prejudicial, and therefore courts should not be quick to admit such evidence."); *see also, United States v. Hall*, 993 F.2d 1540 (4th Cir. 1993) (per curiam) ("The court rationally concluded that allowing the jury to hear the evidence [of a defendant's incarceration and conviction] would have

an undue prejudicial effect on [that defendant], because the jury may have been tempted to infer [] guilt based merely on his prior conviction and incarceration.").

To avoid this prejudice, Defendants request that, in the event of Mr. Kwon's absence, the Court issue a preliminary instruction informing the jury only that he is outside of the United States, unable to attend trial or testify, and that his attendance is not a relevant consideration. Likewise, they request that the Court prevent any party from raising his absence to the jury in any other way.

### B. The Court should disallow any evidence or argument concerning Mr. Kwon's incarceration, arrest, or other legal issues

Defendants also request that the Court prevent any party from mentioning to the jury Mr. Kwon's arrest or incarceration in Montenegro, or that he is the subject of criminal proceedings, or under indictment, in any jurisdiction. Any discussion of Mr. Kwon's legal proceedings in Montenegro, South Korea, or this District would be wholly irrelevant to the SEC's claims, and in any event would be substantially more unfairly prejudicial than probative under Rule 403. *See Rosario v. City of New York*, 2021 WL 9455782, at *4 (S.D.N.Y. Nov. 23, 2021) (precluding evidence of robbery indictment and conviction that was later vacated because, among other reasons, "[i]t has long been recognized in this district that an indictment 'is not evidence of anything more than the finding of the grand jury'"). The lack of any probative value for Mr. Kwon's pending indictments must be balanced against the substantial, unfair prejudicial effect that mentioning them would have on the jury, including the risk recognized by the Supreme Court that the jury will view Mr. Kwon's unproven indictments as evidence that he is a "bad person deserv[ing] punishment." *Old Chief v. United States*, 519 U.S. 172, 181 (1997) ("the overriding policy of excluding such evidence, despite [any] admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.").

Accordingly, the Court should bar any evidence or testimony related to Mr. Kwon's indictments or related legal issues. *See* Fed. R. Evid. 403, 608(b).

III.   **Evidence of Any Invocations of The Fifth Amendment Privilege by Non-party Witnesses Kariya, DiSomma, and Kuan Should be Excluded.**

Non-party witnesses, Kanav Kariya of Jump Crypto ("Kariya"), William DiSomma (of Jump Trading LLC) ("DiSomma"), and Jeff Kuan (TFL's former head of business development) ("Kuan") invoked their Fifth Amendment privilege during depositions in this case. *See* Summ. J. Op. at 11, 56–57 (ECF No. 161); Kuan Tr. 10:4-13 (Ex. B). Although none provided any substantive testimony at deposition, the SEC has designated their deposition testimony and expects to call all three as trial witnesses. Pl.'s Pretrial Disclosures 2–3 (Ex. A).  Presumably, the SEC hopes to introduce their invocations at trial for the sole purpose of requesting that the jury should impute their invocation to the Defendants and draw an adverse inference against Defendants. The Court should foreclose this highly inflammatory gambit and exclude the testimony of Kuan, Kariya and DiSomma. An adverse inference against Defendants based on these non-party witnesses' invocation of Fifth Amendment privilege is improper and highly prejudicial under the law of the Second Circuit.

In the Second Circuit, admissibility of "a non-party's invocation of the Fifth Amendment privilege against self-incrimination in the course of civil litigation and the concomitant drawing of adverse inferences" turns "on the circumstances of the case." *LiButti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997). The Second Circuit has outlined four "non-exclusive factors which should guide the trial court": (1) the nature of the non-party witness's relationship to the party, (2) the degree of control of the party over the non–party witness, (3) "the compatibility of the interests of the party and non-party in the outcome of the litigation," and (4) the role of the non-party witness in the litigation, specifically whether the non-party witness was a key figure in the litigation and played a controlling role. *Id.* at 123–24 (citation omitted). The "overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.[3]

---

[3] *LiButti* involved a very different set of facts than the present case. The non-party witness was the plaintiff's father, and the two shared ties to the same business entity. *Id.* They further shared the

In this case, all four *LiButti* factors weigh in favor of excluding the privilege invocations and barring adverse inferences. An adverse inference under these circumstances would not be trustworthy, nor would it advance the search for the truth. *See id.*; *see also Akinyemi v. Napolitano*, 347 F. App'x 604, 607 (2d Cir. 2007) (inference not trustworthy); *Progressive Cas. Ins. Co. v. Monaco*, 2017 WL 2873051, at *10-11 (D. Conn. July 5, 2017) (same).

First, there is not a sufficient relationship between Kuan, Kariya, DiSomma and Defendants. The "nature of the relationship" between the witness and the defendant is "the most significant" factor and "should be examined . . . from the perspective of a non-party witness' [*sic*] loyalty to the . . . defendant" at the time the privilege is invoked. *LiButti*, 107 F.3d at 123 (emphasis added); *see Banks v. Yokemick*, 144 F. Supp. 2d 272, 290 (S.D.N.Y. 2001). "[T]he closer the bond," "the less likely the non-party witness would be to render testimony in order to damage the relationship." *LiButti*, 107 F.3d at 123.

Kariya and DiSomma have at most an arms-length business relationship with TFL and Mr. Kwon. They have no loyalty to TFL or Mr. Kwon now or at the time of their depositions. Both witnesses invoked the Fifth Amendment on advice of their respective counsel, not on account of Defendants, and they also declined to answer questions posed by Defendants. They are Jump employees and have never been TFL employees. Nor do they have familial or close personal ties to Mr. Kwon. *See LiButti*, 107 F.3d at 123.  TFL and Jump are two separate companies with different business goals and operations. Such an arms-length business relationship cannot serve as a basis for an adverse interest. *Akinyemi*, 347 F. App'x at 607 (finding even employee lacked a sufficiently close relationship to the party-employer).[4]

---

same interest in the outcome of the case, due to "their collective desire that [certain assets] be deemed in [the daughter's] ownership so that they would be insulated from levy by the government." *Id.* The Second Circuit thus found that the "strength of [his] relationship" to the plaintiff, and the fact that the two "had precisely the same interest against the drawing of adverse inferences" "compel[led] the admissibility and consideration" of the non-party witness's invocations. *Id.*

[4] The SEC has asserted that Jump executives joined with Defendants in an alleged secret arrangement to prop up the price of UST. But the SEC has proffered no evidence of such a

The nature of Kuan's relationship with the Defendants at the time of his deposition also does not support an adverse interest. *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552, at *24 (S.D.N.Y. Mar. 30, 2023) (rejecting adverse interest against employer from invocation of former employee); *S.E.C. v. Adelphia Commc'ns Corp.*, 2006 WL 8406833, at *12 (S.D.N.Y. Nov. 16, 2006) (rejecting adverse interest against former supervisor from invocation of former subordinate). Indeed, when Kuan was deposed on October 3, 2023, he testified that he left TFL nearly one year prior and was since employed by a company called Axelar. *See* Kuan Tr. 16:17 to 17:13 (Ex. B). Like Kariya and DiSomma, Kuan invoked the Fifth Amendment on advice of his respective counsel, not on Defendants' account, and also declined to answer Defendants' questions.

The second *LiButti* factor similarly favors exclusion.  It looks to the "degree of control which the party has vested in the nonparty witness . . . in regard to the key facts and general subject matter of the litigation."  107 F.3d at 123. There is no evidence that Defendants have vested control in Kuan, Kariya or DiSomma. None are an employee or agent of TFL, and Defendants do not control them. Rather, the evidence establishes the opposite of control.  With respect to Kariya and DiSomma, the written agreements between TFL and Jump (or Tai Mo Shan Limited) set forth their arms-length relationship and confirm their independence.  *See* DiSomma Tr. Ex. 4 at ¶ V (Ex. C) (August 16, 2020 Master Loan Agreement)  ("Such party is acting for its own account, and not as a nominee or agent for any other Person."); TFL_SEC_00219392 at ¶ 5 (October 4, 2020 Tai Mo Shan OTC Trading Agreement) (Ex. D) (███████████████████████████████████ █████████████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████). With respect to Kuan, there is no evidence that suggests Defendants would have any control over a former employee. And other factors suggesting loyalty

---

conspiracy.. Notwithstanding evidence to the contrary (such as that Jump unilaterally commenced active trading on May 23 ), the SEC is asking the Court to assume the existence of an unproven agreement, and then use that as the basis for an adverse inference against Defendants. That is bootstrapping, and the attenuated chain compounds the lack of reliability and trustworthiness and underscores why an adverse inference would be improper.

to Defendants, like paying for Kuan's attorney's fees, are absent here. *LiButti*, 107 F.3d at 122. As to the third factor, Kuan, Disomma and Kariya's assertion of the Fifth Amendment privilege advances their own interests—not that of Defendants. *See LiButti*, 107 F.3d at 123. It in fact harms Defendants "by preventing [them] from learning key facts supporting [their] theory" regarding Jump's involvement in the 2021 depeg and that Defendants did not commit fraud. *Abington Emerson Cap., LLC*, Case No. 2:17-cv-143, 2021 WL 611998, at *22 (S.D. Ohio Jan. 22, 2021)("[T]he interests of [the witness and the party] in the outcome of this matter are more adverse than cohesive and this element counsels towards finding the adverse inference untrustworthy."). Indeed, all three witnesses also declined to answer questions posed by Defendants, making clear that the third factor is not in play.

Finally, the fourth factor also favors exclusion. Even if Kariya and DiSomma may have been involved in the 2021 repeg, there is no allegation or evidence that they played any role, let alone a controlling role in respect to any of the allegedly false statements at issue in the case. *LiButti*, 107 F.3d at 123–24. Moreover, Jump's trading records reveal that it conducted little, if any, active trading to support the UST price during the two periods in which UST recovered most of its price. For example, from 3:00 pm CDT on May 23, 2021, to 7:00 am CDT on May 24, 2021,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Hendershott Report¶ 98 (ECF No. 112-2).  Jump's lack of active trading activity during the recovery of the price of UST in May 2021 further demonstrates that the interests of Kariya and DiSomma are independent of the Defendants. *Id.* at ¶¶ 94, 98.

Similarly, the SEC has not asserted, indeed there is no evidence to support, that Kuan was a key figure, much less that he had a controlling role, in anything relevant to this case. *See* Am. Compl. (does not reference Kuan) (ECF No. 24). Thus all four *Libutti* factors weigh in favor of exclusion. Even if the evidence were admissible under the *Libutti* factors, "the court must still determine whether it should be admitted under the standards described in Federal Rule of Evidence 403." *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 DLC, 2005 WL 375315, at

*5 (S.D.N.Y. Feb. 17, 2005) (citing *LiButti*, 107 F.3d at 124). Kuan, Disomma and Kariya's testimony should also be excluded because its probative value is substantially outweighed by the danger of unfair prejudice from an adverse inference. Fed. R. Evid. 403.

The Fifth Amendment invocations by Kuan, Kariya and DiSomma have little, if any, probative value. "In most circumstances silence is so ambiguous that it is of little probative force." *Victory v. Bombard*, 570 F.2d 66, 70 (2d Cir. 1978) (quoting *United States v. Hale*, 422 U.S. 171, 176 (1974)); *see Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210–11 (5th Cir. 1983) ("The assertion of the privilege, particularly on the advice of counsel, is an ambiguous response. An attorney might advise [a] client not to answer questions simply as a safety measure lest the client disclose information that she or he may not even know to be criminal.").

By contrast, the risk of confusion and prejudice is significant. A "jury may attach undue weight to [this] assertion of the privilege." *Id.* at 211; *see also Ross v. Am. Exp. Co.*, 35 F. Supp. 3d 407, 450 (S.D.N.Y. 2014) ("In many contexts, inferences from silence are perilous, and silence is often so ambiguous that it is of little probative force, inviting a fact finder to speculate as to its meaning.") "[T]he danger of unfair prejudice is high when a jury is told that a witness declined to answer a question by invoking the Fifth Amendment; the implication is, at best, that the witness refused to answer because she had something to hide." *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 171 (2d Cir. 2017). There is also risk that the SEC's "examining attorney [could] effectively testif[y] for the witness who is invoking the privilege," because "fact-specific questions designed to suggest that the answer would be yes invite[] jurors 'to give evidentiary weight to *questions* rather than answers.'" *In re WorldCom, Inc.*, 2005 WL 375315, at *5 (quoting *LiButti*, 107 F.3d at 122)). Here, the prejudice is exceedingly unfair. The jury would be  inferring Defendants' culpability on key issues in dispute from the silence of non-party witnesses. In sum, the testimony of Kuan, Kariya and DiSomma and any evidence of their invocation of the Fifth Amendment should be excluded, and no adverse inference should be permitted.

**IV.    The Testimony of Four SEC Witnesses On Issues of Which They Lack Personal Knowledge Should be Excluded.**

The Court should preclude testimony from four of the SEC's witnesses because they lack personal knowledge or because their testimony would be inadmissible hearsay. Under Federal Rule of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See e.g., Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 559 (S.D.N.Y. 2015) ("While the Court does not doubt that [the witness] is *aware* of at least some of the assertions in his Affirmation, they remain inadmissible if not based on personal knowledge.") (emphasis in original), *aff'd*, 644 F. App'x 42 (2d Cir. 2016); *Marfia v. T.C. Ziraat Bankasi*, 874 F. Supp. 560, 563 (S.D.N.Y. 1994) ("[T]here is nothing in the record to show that [the witness] has any personal knowledge" because "[a]t best, [the witness's] contention . . . is based on 'conjecture or hearsay.'"), *vacated on other grounds,* 100 F.3d 243 (2d Cir. 1996); *Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp. 2d 273, 279 (E.D.N.Y. 2002). Nor may a witness testify to a hearsay statement by another person unless an exception to the hearsay rule applies to that statement of the other person. *See, e.g., Marfia*, 874 F. Supp. at 563 (citing *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir.1991)).



████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████
          ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

3.      **Keone Hon** lacks personal knowledge of the trading activities of other members of the Jump Crypto team. Hon Decl. ¶ 9 (ECF No. 91). As this Court recently noted, his statements as to this topic "lack proper foundation and are vague and speculative."  Op. and Order at 59 (ECF No. 149).

██    ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████

## V.   Any Reference to Other Fraud Cases or Scandals Should be Excluded.

Any reference to, or mention of, other cases or scandals involving fraud or crypto assets should be precluded as unduly prejudicial to Defendants and irrelevant to the material facts in dispute here. ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ Any such evidence should be excluded at trial under Federal Rules of Evidence 402 and 403.

Courts have regularly recognized that such references are not relevant and, more importantly, are improper and inflammatory. *See, e.g.*, *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp.3d 558, 580 (S.D.N.Y. 2017) (granting motion *in limine* to preclude reference to "well-known historical accounting scandals" because "such evidence is not relevant and would be unduly prejudicial"); *Cooper v. Meritor, Inc.*, No. 4:16-CV-52, 2019 WL 1028530, at *8 (N.D. Miss. Mar. 4, 2019) (granting motion *in limine* to exclude "evidence, arguing, referring to, or commenting on Flint, Michigan, Erin Brockovich, or any other environmental site"); *SEC v. True North Fin. Corp.*, Civil No. 10-3995, 2013 WL 4781037, at *4 (D. Minn. Sept. 6, 2013) (granting motion *in limine* to exclude reference to Madoff or other SEC litigation); *CDX Liquidating Trust v. Venrock Assocs.*, 411 B.R. 591, 605-06 (N.D. Ill. 2009) (granting motion *in limine* to exclude reference to "other corporate scandals or infamous suits").

Evidence that has no bearing on the claims asserted – including evidence of unrelated cases that imply a relationship with Defendants – is also irrelevant and should be excluded to avoid confusing the jury. *See, e.g., MF Global Holdings Ltd.*, 232 F. Supp.3d at 580 (excluding "evidence or argument referring to other accounting firms or clients or to past accounting scandals"); *Gomez v. City of Chicago*, No. 13 C 05303, 2015 WL 13651138, at *9 (N.D. Ill. June 29, 2015) (granting  motion "to bar evidence of or arguments about other allegations of police misconduct, like the high-profile cases . . . or the widely publicized incidents in Ferguson, Baltimore, Cleveland, and New York" because they "have no relevance"); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, No. 04-cv-10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (barring plaintiff from "making inflammatory remarks" such as "linking the [defendants], or hedge funds in general, to the [2008] financial crises").

Finally, the risk of unfair prejudice also clearly outweighs any minimal probative value

particularly in the instant case where it could "'lure the factfinder into [rendering its verdict] on a ground different from proof specific to the [claims brought].'" *Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 68 F. Supp. 3d 486, 491 (S.D.N.Y. 2014), *aff'd*, 873 F.3d 85 (2d Cir. 2017) (citation omitted); *see* Rule 403 Advisory Committee Notes (1972) ("unfair prejudice" "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

This trial is limited to Defendants' alleged liability for securities fraud regarding the 2021 repeg and Chai's use of the Terra blockchain. Comparisons to cases like Theranos or FTX, involving different facts, parties, and allegations, should not be permitted. Not only would such references be irrelevant, but they would only serve to inflame, confuse, and mislead the jury into believing that they were somehow related to this case, were symptomatic of a broader problem in the financial industry, or invite the jury to "send a message" to Defendants. Because any probative value is substantially outweighed by the risk of unfair prejudice all such references should be excluded. *See, e.g., Sabratek Liquidating LLC v. KPMG LLP*, No. 01-C-9582, 2003 WL 22715820, at *6 (N.D. Ill. Nov. 18, 2003) (granting motion *in limine* where "[t]he probative value of references to the accounting scandals of the past few years is substantially outweighed by the risk of unfair prejudice").

## VI. Certain Audio Recordings Should Be Excluded Under Rule 802.



---

[7] In the event this application is not granted, Defendants reserve all rights to assert further objections to each recording and/or transcript on an individualized basis, including (but not limited to) objections under Federal Rules of Evidence 401, 602 and 901, respectively.

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████ To the extent the SEC

intends to offer any part of the Recordings for reasons other than to prove the truth of the matter

asserted therein, or under any potential hearsay exception, it has made no such indication, and

therefore, any application to admit them should be denied.[8]

## VII.   Any Reference to Korean Law or The Legality of Chai's Use of The Blockchain Under Korean Law Should be Excluded.

The SEC has claimed that Chai "denied in emails to its own investors that it used a

blockchain to process its payments and claimed that doing so would not have been legally

permitted in Korea." Am. Compl. ¶ 144 (ECF No. 25). To the extent the SEC's characterization is

accurate,[9] any such statements about Korean law should be excluded from trial because (1) they

are inadmissible hearsay and (2) they cannot survive balancing under Federal Rule of Evidence

403.

Chai's messages to its investors are hearsay as "out-of-court statement[s] offered to prove

the truth of the matter asserted . . . ." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d. Cir. 2013).

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

---

[8] Even if the SEC could lay a proper foundation for admission of the tape recordings, which it cannot, it cannot escape the application of the hearsay rule to the transcript of that recording, which remain inadmissible out-of-court statements absent traditional authentication that the SEC cannot provide.  Fed. R. Evid. 802, 901(a).

[9] ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████
█████████████████████████████████████

As hearsay, Chai's statements must be excluded absent a hearsay exception. Fed. R. Evid. 802, 803, 804. However, no exception applies.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████  When out-of-court statements are "replete with indications" of unreliability because they are made "in situations [presenting] a strong incentive not to be truthful," they are, as a general matter, inadmissible. *United States v. Ruth*, 578 F. Supp. 3d 392, 410 (W.D.N.Y. 2022) (quoting *United States v. Fell*, 737 F. App'x 37, 40 (2d Cir. 2018)). "Self-serving explanations of past events" are particularly problematic, *United States v. Elmaani*, 2023 WL 2770742, at *6 (S.D.N.Y. Apr. 4, 2023) (cleaned up), especially when they are self-exculpatory in the face of legal liability. *See United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (citing *Williamson v. United States*, 512 U.S. 594, 618 (1994)). Here, the messages did not "tend to expose [the company] to civil or criminal liability," such that they were inherently reliable and admissible. Summ. J. Op. at 57 (ECF No. 149) (citing Fed. R. Evid. 804(b)(3)(A)) (cleaned up). In fact, Chai had every legal and pecuniary reason to lie—the corollary to the Court's summary judgment ruling on the Jump hearsay. *See id.*; *see also United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978) (observing that "a statement against interest" depends on circumstances "at the time of its making").

Second, Chai's statements allaying investor concerns about its ties to TFL also do not fall within the ambit of any other established hearsay exception. The company is not an opposing party or a coconspirator under Fed. R. Evid. 801(d); its messages were backward looking, and thus not statements of "then-existing state of mind under [Federal Rule of Evidence] 803(3)," *Blake*, 195 F. Supp. 3d at 610 (citing *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984)); and none of the exceptions for unavailable witnesses apply under Federal Rule of Evidence 804. The SEC also cannot avail itself of the residual exception under Federal Rule of Evidence 807 because it

cannot demonstrate that Chai's statements were sufficiently "trustworthy" due to their self-serving nature. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 231 (2d Cir. 1999) (Sotomayor, J.) (citing *Harwood*, 998 F.2d at 98; *see also id.* at 232 (identifying "insincerity" as a "risk peculiar" to hearsay). ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████ ████████████████████████████████████████

██████████████████ There is thus no basis for admission.

Even setting hearsay aside, any reference to requirements of Korean law would prompt confusion and prejudice that would substantially outweigh any minimal probative value under Rule of Evidence 403. This is not a case about whether Chai complied with Korean law but whether Defendants engaged in fraud under U.S. securities laws. At trial, the jury will be tasked with deciding, among other things, "whether Chai indeed used Terraform's blockchain to process and settle transactions with crypto assets in addition to traditional payment methods." Summ. J. Op. at 62 (ECF No. 149). The state of Korean law in 2022, and Chai's motivations and beliefs about its operations under Korean law in 2022, shed no light on this issue. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Given the unavailability of Chai witnesses and the absence of non-hearsay Chai statements in the record, that information is unknowable and untestable.

─────────────────────

[10] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Moreover, any probative value would be substantially outweighed by the serious confusion and prejudice caused by injecting difficult questions about Chai's compliance with Korean law into this already complex dispute.[11] If references to Korean law are not excluded, "[t]he result would be a mini-trial within the larger trial, and a sideshow at that, as [Korean law] is hardly central to the issues in this case." *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *5 (S.D.N.Y. Dec. 3, 2015) (citing Fed. R. Evid. 403) (granting Defendant's motion *in limine*). And the inference created by references to Chai and Korean law would be highly prejudicial to Defendants "since it could create an impression that [they] [were] guilty of some wrongdoing" by association. *People of State of NY v. Adorno*, 1987 WL 19642, at *4 (S.D.N.Y. Oct. 29, 1987) (citing Fed. R. Evid. 403). On balance, then, the unfair prejudice attendant to testimony and exhibits referring to the legality of Chai's use or potential use of the blockchain under Korean law manifestly outweighs any minimal probative value. *See United States v. Gardell*, 2001 WL 1135948, at *7 (S.D.N.Y. Sept. 25, 2001).

## VIII.   All References to Unregistered Sales of Securities Should be Excluded Under Rule 402.

The Court should exclude any references to TFL's unregistered sales of securities because they are irrelevant to the only triable issue[12]—whether the Defendants committed fraud. Evidence that "does not tend to prove a material fact" is inadmissible under Rules 401 and 402. *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (citing Fed. R. Evid. 401, 402). In granting partial summary judgment for the SEC on its registration claims, Summ. J. Op. at 43-44 (ECF No. 149), the Court resolved the question of whether the tokens at issue are securities. This removed the question from the jury's purview, leaving only the issue of whether Defendants are liable for securities fraud

---

[11] This issue of Korean law has not been noticed or briefed. The SEC did not provide the requisite notice about a foreign law issue under Federal Rule of Civil Procedure 44.1. *See* Fed. R. Civ. P. 44.1; *Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*, 2014 WL 3507427, at *4 (S.D.N.Y. July 15, 2014) (recognizing that an untimely Rule 44.1 notice created an issue of "unfair surprise"). And neither Party has offered any expert opinion on Korean law, much less as it pertains to Chai.

[12] As noted above, Defendants reserve all rights as to the Court's summary judgment decision.

under the SEC's two fraud theories (neither of which is related to registration). *See* Summ. J. Op. at 54, 62,  67 (ECF No. 149).

As a result, TFL's unregistered sales of securities are irrelevant. Even if such references were relevant, they would still be inadmissible as unduly prejudicial. Fed. R. Evid. 403. Evidence is prejudicial if it has a tendency "to prove some adverse fact not properly in issue or unfairly excite emotions against the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). As discussed, references to the unregistered sales of LUNA and MIR have no probative value to the fraud claims remaining for trial. They are, however, highly prejudicial because they relate to an "adverse fact not properly in issue" after the Court's summary judgment decision. *Figueroa*, 618 F.2d at 943. For example, references to the Court's conclusion that TFL transacted in unregistered securities could create the mistaken impression that TFL is also liable for fraud. *See Park West Radiology v. CareCore Nat., LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (excluding references to the making of and the district court's granting of a preliminary injunction ruling earlier in the case because the references were "likely to unduly influence the jury"). The risk of undue prejudice and issue confusion is particularly heightened here, given the novelty and complexity of the subject matter of this case. *See United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007) ("Evidence concerning these matters is likely to divert the jury's attention from the charged transactions, which are sufficiently complicated in themselves, to another set of complex transactions.").

The Court thus should exclude all references to TFL's unregistered sales of securities.

**IX.   SEC Witnesses William Connolly and Sunny Kim Should be Precluded from Testifying at Trial.**

The SEC has stated that it may call two SEC employees (SEC "fraud analyst" William Connolly and Sunny Kim of the SEC's Office of International Affairs) as trial witnesses "if the need arises." Pl's Pre-Trial Disclosures (Ex. A).  These witnesses should be precluded from testifying at trial because the SEC did not disclose them to Defendants during discovery, as required by Fed. R. Civ. P. 26(a)(1) and 37(c)(1). The SEC did not include them in its list of potential witnesses in its fourth amended Rule 26(a) disclosures, which it served on Defendants only eleven days before the discovery cut-off date set by the Court. *See* Pl.'s Fourth Am. R. 26(a) Initial Disclosures (Ex. T). Nor was the identity of these witnesses otherwise "made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 37(e)(1)(A). And the SEC's failure to disclose its own employees as potential witnesses was not and could not be "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Moreover, yesterday, the SEC further advised defense counsel that Mr. Connolly and Ms. Kim are not summary witnesses, which means that they are proposed expert witnesses. That makes the SEC's timing problem even worse, because neither witness was disclosed by the Court's expert witness disclosure date and neither has filed a report as required by Rule 26.

The SEC then listed new summary witnesses on its witness list but did not provide any additional information.  At 10:53pm on the day this motion was due, the SEC for the first time provided a non-exhaustive list of exhibits about which its two new witnesses might or might not testify, but provided no actual summaries of their proposed testimony.  *See* Email dated January 15, 2024 from James P. Connor (Ex. U).  That is both too late under the scheduling order and not compliant with Federal Rule of Evidence 1006.  Indeed, it is effectively no disclosure at all, and the SEC's summary witnesses should thus be precluded from testifying.

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' Motions *in Limine*.

Dated: January 15, 2024

Respectfully submitted,

*/s/*                                     

**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
Louis A. Pellegrino
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com
david.kornblau@dentons.com
louis.pellegrino@dentons.com

Mark G. Califano
Melissa Gomez-Nelson (admitted pro hac vice)
Matthew A. Lafferman (admitted pro hac vice)
1900 K Street, NW
Washington, DC 20006-1102
Tel: (202) 496-7500
mark.califano@dentons.com
melissa.gomeznelson@dentons.com
matthew.lafferman@dentons.com

*Counsel for Defendant Terraform Labs Pte. Ltd.*

*/s/*                                     

**KAPLAN HECKER & FINK LLP**
David Patton
Michael Ferrara
Andrew Chesley
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
dpatton@kaplanhecker.com
mferrara@kaplanhecker.com
achesley@kaplanhecker.com

*Counsel for Defendant Do Hyeong Kwon*