**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 23 Civ. 1346 (JSR) |
| Plaintiff, | |
| v. | Hon. Jed S. Rakoff |
| TERRAFORM LABS, PTE. LTD. and DO HYEONG KWON, | |
| Defendants. | |


**DEFENDANTS' MEMORANDUM IN OPPOSITION**
**TO THE SEC'S MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 1

I.  Any Fifth Amendment Invocations by Non-party Witnesses Kuan, Kariya, and
DiSomma Should be Excluded ......................................................................... 1

    A.  Kariya, DiSomma, and Defendants Are Not Co-Conspirators and There is
No Basis for An Adverse Inference ......................................................... 1

        (i)  The Mere Existence of a Business Relationship Between
Defendants and Jump is Alone Insufficient to Establish the *LiButti*
Factors of Loyalty and Control .................................................. 1

        (ii)  There Is No Evidence to Support that DiSomma or Kariya's
Interests are Aligned with Defendants ....................................... 2

        (iii)  DiSomma and Kariya's Individual Conduct is Not a Central Issue .......... 3

    B.  Evidence of Kuan's Fifth Amendment Invocation Should Be Excluded
and The Facts of This Matter Do Not Support An Adverse Inference ................. 4

II.  Statements by Jump are Inadmissible Hearsay ................................................. 5

III.  All Evidence and Argument Regarding the May 2022 Depeg Should Be Excluded ........ 9

IV.  The Court Should Exclude Certain of the SEC's Designations of Do Kwon's
Investigative Testimony and Admit Defendants' Counter-Designations ...................... 10

V.  The Court Should Limit Reference to Mr. Kwon's Conviction in Montenegro.............. 12

VI.  Defendants Should Not Be Precluded from Introducing Evidence and Argument
Regarding the Location or Custodian of the LP Server .................................... 14

VII.  Defendants' Third-Party Deposition Designations Are Appropriate............................... 16

VIII.  Defendants Properly Disclosed Kevin Zhou as a Potential Trial Witness........................ 18

IX.  Defendants May Properly Call Witnesses At Trial To Offer Relevant and
Probative Testimony ........................................................................................ 19

X.  The Court Should Exclude Certain of the SEC's Designations of TFL's Rule
30(b)(6) Deposition Testimony or Otherwise Admit TFL's Corrections ........................ 21

XI.  ████████████████████████████████████████████████████
████████████████████████████████████ .................................. 26

i

XII.    Statements by "Chai Corporation or Its Officers" are Inadmissible Hearsay ................. 29

XIII.   The Court Should Not Give A "Missing Witness" Jury Instruction if Mr. Kwon
        Does Not Appear At Trial ............................................................................................ 36

XIV.    Defendants Should Not Be Precluded from Introducing the Risk Disclosure in the
        Anchor Terms of Service Because it is Relevant to Determining Materiality ................. 37

CONCLUSION ....................................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 650 Fifth Ave., et al.*,
    934 F.3d 147 (2d Cir. 2019) ..................................................................................5

*In re 650 Fifth Avenue and Related Properties*,
    2017 WL 6729515 (S.D.N.Y. June 22, 2017) ......................................................34

*In re Adler, Coleman Clearing Corp.*,
    No. 95-08203 (JLG), 1998 Bankr. LEXIS 1925 (Bankr. S.D.N.Y. Apr. 17,
    1998) ......................................................................................................................3

*Agniel v. Central Park Boathouse LLC*,
    No. 12 Civ. 7227 NRB, 2015 WL 463971 (S.D.N.Y. Jan. 26, 2015)..........22, 23, 24

*Akinyemi v. Napolitano*,
    347 F. App'x 604 (2d Cir. 2007) ..........................................................................2

*Alvarado-Herrera v. Acuity*,
    344 F.R.D. 103 (D. Nev. 2023), *aff'd*, No. 22 Civ. 438 (CDS)(NJK), 2023 WL
    5035323 (D. Nev. Aug. 4, 2023) ..........................................................................25

*Banks v. Yokemick*,
    144 F. Supp. 2d 272 (S.D.N.Y. 2001)....................................................................3

*BanxCorp v. Costco Wholesale Corp.*,
    978 F. Supp. 2d 280 (S.D.N.Y. 2013)....................................................................19

*Berkovich v. Hicks*,
    922 F.2d 1018 (2d Cir. 1991)................................................................................29

*Bourjaily v. United States*,
    483 U.S. 171 (1987)..........................................................................................5, 30

*Brevard v. Schunk*,
    2020 WL 374563 (N.D.N.Y. Jan. 23, 2020)..........................................................13

*Brockman v. NAES Corp.*,
    2019 WL 6606459 (D. Conn. 2019) ......................................................................26

*Busher v. Barry*,
    No. 14 Civ. 4322 (NSR), 2019 WL 6895281 (S.D.N.Y. Dec. 18, 2019) ................21

*Celestin v. Premo*,
    2015 WL 5089687 (N.D.N.Y. Aug. 27, 2015) ........................................................13

*Doe v. Lima*,
    2020 WL 728813 (S.D.N.Y. Feb. 13, 2020)............................................................13

*In re Dynagas LNG Partners LP Sec. Litig.*,
    504 F. Supp. 3d 289 (S.D.N.Y. 2020)....................................................................38

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...................................................................................38

*Emerson v. Wembley USA Inc.*,
    433 F. Supp. 2d 1200 (D. Colo. 2006)....................................................................4

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
    No. 13 Civ. 7570 (RJS), 2015 WL 13885012 (S.D.N.Y. July 7, 2015) ........................ *passim*

*Halperin v. eBanker USA.com, Inc.*,
    295 F.3d 352 (2d Cir. 2002)...................................................................................38

*Kirsch v. Fleet Street, Ltd.*,
    148 F.3d 149 (2d Cir. 1998)...................................................................................36

*LiButti v. U.S.*,
    107 F.3d 110 (2d Cir. 1997)...........................................................................1, 3, 5

*Lombardo v. Stone*,
    99 Civ. 4603, 2002 WL 113913 (S.D.N.Y. Jan. 29, 2002)....................................29

*In re Mylan N.V. Sec. Litig.*,
    2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) ........................................................4

*New Jersey v. Sprint Corp.*,
    No. 03–2071–JWL, 2010 WL 610671 (D. Kan. Feb. 19, 2010) ............................22

*Phoenix Assocs. III v. Stone*,
    60 F.3d 95 (2d Cir. 1995).......................................................................................17

*Picard v. Sage Realty*,
    2021 WL 6052422 (S.D.N.Y. Dec. 21, 2021) ..................................................8, 34

*Podell v. Citicorp Diners Club, Inc.*,
    112 F.3d 98 (2d Cir. 1997).....................................................................................26

*Reserve Fund Sec. & Derivative Litig. v. Reserve Mgmt. Co.*,
    2012 U.S. Dist. LEXIS 191094 (S.D.N.Y. Oct. 3, 2012) ......................................11

*Rivera v. United Parcel Serv.*,
   325 F.R.D. 542 (S.D.N.Y. 2018) .......................................................................19

*S.E.C. v. Adelphia Commc'ns Corp.*,
   2006 WL 8406833 (S.D.N.Y. Nov. 16, 2006) ......................................................4

*Sanders v. Ritz-Carlton Hotel Co. LLC*,
   2008 WL 4155635 (S.D.N.Y. Sept. 9, 2008) ......................................................13

*SEC v. True N. Fin. Corp.*,
   No. 10 Civ. 3995, 2013 WL 4781037 (D. Minn. Sept. 6, 2013), ECF No. 320
   (Ex. R) ................................................................................................................18

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007) .......................................................................14, 16

*Sicav v. Wang*,
   No. 12 Civ. 6682 (PAE), 2014 WL 2624753 (S.D.N.Y. June 12, 2014) ..............14

*Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*,
   No. 21 Civ. 9472 (JGK)(KHP), 2022 WL 3704001 (S.D.N.Y. Aug. 26, 2022) ....14

*Sprint Comms. Co., L.P. v. Theglobe.com, Inc.*,
   236 F.R.D. 524 (D. Kan. 2006) .........................................................................25

*TVT Recs. v. Island Def Jam Music Grp.*,
   250 F. Supp. 2d 341 (S.D.N.Y. 2003) ................................................................21

*U.S. v. Casamento*,
   887 F.2d 1141 (2d Cir. 1989) ............................................................................34

*United States v. Almeida-Perez*,
   549 F.3d 1162 (8th Cir. 2008) ...........................................................................28

*United States v. Barrow*,
   400 F.3d 109 (2d Cir. 2005) ................................................................................9

*United States v. Birnbaum*,
   337 F.2d 490 (2d Cir. 1964) ..............................................................................33

*United States v. Blake*,
   195 F. Supp. 3d 605 (S.D.N.Y. 2016) ..................................................................9

*United States v. Daly*,
   842 F.2d 1380 (2d Cir. 1988), *cert. denied*, 488 U.S. 821 (1988) ...................5, 30

*United States v. DeNapoli*,
   8 F.3d 909 (2d Cir. 1993) ..................................................................................11

*United States v. Desena*,
    260 F.3d 150 (2d Cir. 2001)..................................................................32

*United States v. Diaz*,
    176 F.3d 52 (2d Cir. 1999)...............................................................6, 30

*United States v. DiMaria*,
    727 F.2d 265 (2d Cir. 1984)..................................................................9

*United States v. Dupre*,
    462 F.3d 131 (2d Cir. 2006)................................................................17

*United States v. Estrada*,
    430 F.3d 606 (2d Cir. 2005).....................................................12, 13, 27

*United States v. Lang*,
    589 F.2d 92 (2d Cir. 1978)..................................................................35

*United States v. Lieberman*,
    637 F.2d 95 (2d Cir. 1980)..................................................................33

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001)...............................................................7, 32

*United States v. Netschi*,
    511 F. App'x 58 (2d Cir. 2013) .............................................................9

*United States v. Paone*,
    782 F.2d at 390–91 ..............................................................................33

*United States v. Paredes*,
    176 F. Supp. 2d 183 (S.D.N.Y. 2001)....................................................7

*United States v. Ruggiero*,
    726 F.2d 913 (2d Cir. 1984)................................................................33

*United States v. Saget*,
    377 F.3d 223 (2d Cir. 2004), *cert. denied*, 543 U.S. 1079 (2005)..........34

*United States v. Sanin*,
    113 F.3d 1230 (2d.Cir.1997)...............................................................32

*United States v. SKW Metals & Alloys, Inc.*,
    195 F.3d 83 (2d Cir. 1999)...............................................................7, 32

*United States v. Smothers*,
    652 F.Supp.3d 271 (E.D.N.Y. 2023) .................................................6, 30

*United States v. Tellier*,
　83 F.3d 578 (2d Cir. 1996) ........................................................................ 31

*United States v. Tracy*,
　12 F.3d 1186 (2d Cir. 1993) .................................................................. 5, 30

*United States v. Wagner*,
　No. 20-CR-410 (NSR), 2022 WL 19179 (S.D.N.Y. Jan. 3, 2022) ........................ 28

*United States v. Weaver*,
　860 F.3d 90 (2d Cir. 2017) ...................................................................... 39

*Williamson v. United States*,
　512 U.S. 594 (1994) ............................................................................... 34

*In re WorldCom, Inc. Sec. Litig.*,
　2005 WL 375315 (S.D.N.Y. Feb. 17, 2005) ..................................................... 5

**Statutes**

15 U.S.C. § 77v(a) .................................................................................. 18

**Other Authorities**

Fed. R. Civ. P. 6 ..................................................................................... 11

Fed. R. Civ. P. 26 ................................................................................ 11, 19

Fed. R. Civ. P. 30 ................................................................ 22, 24, 25, 26

Fed. R. Civ. P. 32 .......................................................................... *passim*

Fed. R. Civ. P. 45 ................................................................................... 18

Fed. R. Evid. 104 ................................................................................... 30

Fed. R. Evid. 106 .......................................................... 11, 16, 17, 25

Fed. R. Evid. 403 .......................................................................... *passim*

Fed. R. Evid. 404 ................................................................................... 29

Fed. R. Evid. 602 ............................................................................ 21, 35

Fed. R. Evid. 608 ................................................................................... 29

Fed. R. Evid. 609 .................................................... 12, 13, 27, 28

Fed. R. Evid. 801 .......................................................................... *passim*

Fed. R. Evid. 803 ................................................................................................8, 9

Fed. R. Evid. 804 ....................................................................................... *passim*

4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 609.20[2] (2d ed.
    2018) ......................................................................................................13

## ARGUMENT

I.  **Any Fifth Amendment Invocations by Non-party Witnesses Kuan, Kariya, and DiSomma Should be Excluded**

The Court should reject the SEC's effort to unfairly prejudice Defendants by parading before the jury three non-party witnesses—Kanav Kariya (Jump Crypto), William DiSomma (Jump Trading LLC) and Jeff Kuan (former TFL employee)—solely to have them assert their Fifth Amendment right not to testify. Nor should the Court instruct the jury to take any adverse inference against Defendants based on the assertion of constitutional rights by non-party witnesses Defendants do not control. *See* SEC's Mem. in Support of its Motions *in Limine* ("SEC MIL") at 1. Defendants have demonstrated in their own motion *in limine* that these conclusions are mandated by Fed. R. Evid. 403 and *LiButti v. U.S.*, 107 F.3d 110, 121 (2d Cir. 1997), and incorporate those arguments here. Defs.' Mem. in Support of their Motions *in Limine* ("Defs. MIL") at 8–12. We address only the additional SEC arguments that were not discussed in Defendants' motion.

A.  **Kariya, DiSomma, and Defendants Are Not Co-Conspirators and There Is No Basis for An Adverse Inference**

In an attempt to satisfy *LiButti*, the SEC argues that DiSomma, Kariya, and Defendants are co-conspirators. SEC MIL at 3. But the SEC does not and cannot show that any conspiracy existed. The SEC has not pled a conspiracy in this case, and has not named DiSomma, Kariya, or any Jump entity as a defendant in this case. None of the *LiButti* factors support the SEC's motion.

(i)  *The Mere Existence of a Business Relationship Between Defendants and Jump is Alone Insufficient to Establish the* LiButti *Factors of Loyalty and Control*

In support of its motion for an adverse inference, the SEC argues that "Jump was *Terraform's* most important business relationship." SEC MIL at 3 (emphasis added). But Second Circuit law requires the opposite analysis: when determining the nature of a relationship, "[i]t should be examined … **from the perspective of a non-party witness' loyalty to the ... defendant.**" *LiButti at* 123 (emphasis added). Moreover, the SEC cites no evidence establishing or even relating to Kariya and DiSomma's loyalty to Terraform or Mr. Kwon. SEC MIL at 1–7.

Therefore the SEC has not provided a basis for an adverse inference. *Akinyemi v. Napolitano,* 347 F. App'x 604, 607 (2d Cir. 2007) (even employee lacked sufficiently close relationship to party-employer).

Nor does the SEC cite any evidence establishing Defendants' control over Kariya and DiSomma. SEC MIL at 1–5. There is no evidence that Defendants can or have asserted *control* over Jump; instead, the evidence directly supports the opposite—Terraform and Jump ███████ ███████ set forth their arms-length relationship and confirmed their independence from each other. *See*, *e.g.*, DiSomma Tr. Ex. 4 at ¶ V (Ex. A)[1] ████████████████████ ████████████████████████████████████████

TFL_SEC_00219392 at ¶ 5 (Ex. B) ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████

      (ii)    *There Is No Evidence to Support that DiSomma or Kariya's Interests are Aligned with Defendants*

The SEC relies entirely on speculation to support its argument that the non-party witnesses' invocations affect the outcome of the litigation to the benefit of both Defendants and the non-party witnesses. SEC MIL at 5. Citing no evidence, the SEC alleges that DiSomma and Kariya "aided and abetted [Defendants' purported] fraud."[2] *Id.* The SEC uses this *allegation* (which is not evidence) to claim that the witnesses' avoidance of self-incrimination prevents testimony damaging to Defendants. *Id.* at 6. But this sleight of hand assumption is not based on evidence, speculates about DiSomma and Kariya's would-be testimony, fails to establish (or even address) how such speculative outcome would benefit DiSomma and Kariya, and completely ignores the *Libutti* factors relevant to whether an adverse inference is warranted.

---

[1] References to (Ex. __) refer to Exhibit __ to the Declaration of Douglas W. Henkin dated March 11, 2024.

[2] The SEC has never claimed nor brought an action against Jump or its employees for aiding and abetting fraud related to this matter.

In *Libutti,* a central issue was whether the non-party witness, Robert, was the effective owner of the assets at issue in the tax levy action against his *daughter*, Edith. 107 F.3d at 112–13. This supported the Court's finding that in addition to other factors, Robert and Edith had a collective interest in avoiding these assets from government levy. *Id.* at 124. But the SEC cannot and does not allege that Jump, Kariya, or DiSomma are owners of Terraform or even beholden to Terraform. Rather, the record and evidence support the opposite. *See, e.g.*, DiSomma Tr. Ex. 4 at ¶ V (Ex. A). Without evidence of ties among the non-parties, it can just as easily be inferred that Kariya or DiSomma's refusal to answer questions was consistent with their desire to protect *only* their own interests, not Defendants'. *See Banks v. Yokemick,* 144 F. Supp. 2d 272, 290 (S.D.N.Y. 2001). Further, there is no evidence that DiSomma or Kariya—individually—face SEC or any other legal exposure for their business dealings with Terraform. The SEC has not cited any case law analogous to the facts in this case to support their assertions that the non-party witnesses' interests are aligned with Defendants.[3]

> (iii)    *DiSomma and Kariya's Individual Conduct is Not a Central Issue*

The SEC claims that █████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
█████ and that the invocations from Kariya and DiSomma are crucial to prove their case. The evidence upon which the SEC relies to claim that DiSomma and Kariya are key figures in this litigation is weak and highly disputed by the parties.[4] The SEC is asking the Court to assume the

---

[3] For example, the SEC's reliance on *In re Adler, Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 Bankr. LEXIS 1925, at *30 (Bankr. S.D.N.Y. Apr. 17, 1998) as support for their argument that Kariya and DiSomma's interest are advanced by a positive outcome for Defendants in this litigation is misplaced. Unlike here, in *Adler*, certain non-party witnesses were named defendants in a related adversary proceeding in which they invoked the privilege at their depositions. *Adler*, 1998 Bankr. LEXIS 1925, at *30. But *Adler* found that an adverse inference was *not* warranted for non-party witnesses who were *not* named defendants in the related adversary proceeding. *Id.*

[4] The SEC argues five non-exclusive reasons "that Jump, through DiSomma and Kariya, entered into an agreement with Defendants to help restore the UST peg." SEC MIL at 6–7. Although Defendants disagree with every reason, the SEC's claim that there is "overwhelming corroborating evidence" to support its position undercuts the need for an adverse inference.

existence of an agreement for which it has provided no evidence and use that as the basis for an adverse inference against Defendants. That is not the law.

###### B.   Evidence of Kuan's Fifth Amendment Invocation Should Be Excluded and The Facts of This Matter Do Not Support An Adverse Inference

Jeff Kuan departed Terraform over a year before he invoked the Fifth Amendment at his deposition on advice of his independent counsel. Kuan Tr. 16:17–17:13 (Ex. C). Moreover, Kuan and his former employer, Terraform, lack the close knit relationship required to permit an adverse inference. *See In re Mylan N.V. Sec. Litig.,* 2023 WL 2711552, at *24 (S.D.N.Y. Mar. 30, 2023) (rejecting adverse interest against employer from former employee's invocation); *S.E.C. v. Adelphia Commc'ns Corp.*, 2006 WL 8406833, at *12 (S.D.N.Y. Nov. 16, 2006) (rejecting adverse interest against former supervisor from former subordinate's invocation, despite defendant's affiliation with witness's new employer). The SEC's argument that Kuan is loyal to Terraform is based entirely on its claim that "Terraform is paying Kuan's legal fees associated with this action." SEC MIL at 8. But that is wrong. ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ There is thus no evidence that Terraform "controls" Kuan.

There is also no evidence that Defendants' interests in the litigation's outcome are compatible with Kuan's. Kuan does not play a key role in the litigation and there is no evidence that he faces legal exposure from the SEC or any other potential claim for his actions while employed at Terraform. Nor is there any basis to find that Kuan has reputational or other incentives to proffer false testimony. The fourth factor, Kuan's role as a non-party witness in the litigation, also disfavors an adverse inference. Courts have found that "granting an inference would not be trustworthy" if "circumstances would seem to allow [plaintiff] to find [ ] answers elsewhere." *Emerson v. Wembley USA Inc.*, 433 F. Supp. 2d 1200, 1213 (D. Colo. 2006). Kuan is not a key witness, nor is he in <u>sole</u> possession of "vital evidence." The SEC points to Kuan's messages with Brian Curran during the May 2021 depeg. But, the SEC has listed Curran as a witness it expects to call at trial, and neither he nor any other TFL employee has invoked the Fifth Amendment.

The "overarching concern" laid out in *LiButti* that such invocations be "trustworthy under all of the circumstances and will advance the search for truth" warrants exclusion of these three witnesses' invocations and denial of any adverse inferences. *LiButti*, 107 F.3d at 123–24. Further, the evidence of the non-party witnesses' invocation should be excluded because it is unfairly prejudicial. *See* Fed. R. Evid. 403; *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375315, at *5 (S.D.N.Y. Feb. 17, 2005) (citing *LiButti*, 107 F.3d at 124). Absent extraordinary circumstances, trial courts should exercise discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege. *See WorldCom*, 2005 WL 375315, at *5; *see also In re 650 Fifth Ave., et al.*, 934 F.3d 147, 172 (2d Cir. 2019) (reversing district court where the judge allowed the government to play five videotapes of non-testifying individuals declining to answer question after question during their depositions). On cross-examination, a nonparty asked why he invoked the privilege will undoubtedly invoke privilege and compound the prejudice created by the initial ambiguous invocation; due to the courtroom drama an invocation creates, the jury is likely to place too much emphasis upon an ambiguous invocation. *See id.*

## II.     Statements by Jump are Inadmissible Hearsay

The SEC also moves *in limine* to admit into evidence PX 68, ██████████████████
███████████████████████████████████████. SEC Trial Ex. 68 (Ex. E). This exhibit is hearsay for which none of the exceptions cited by the SEC applies. SEC MIL at 9–12. The exhibit is therefore inadmissible.

*First*, the SEC seeks to admit PX 68 as "statements by Terraform's co-conspirator 'during and in furtherance of the conspiracy.'" SEC MIL at 10. Under Rule 801(d)(2)(E), "a court must find (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993). The SEC must prove these factual predicates to admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 176 (1987); *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir. 1988), *cert. denied*, 488 U.S. 821 (1988). Although the court may

consider the hearsay statements themselves in its analysis, "these statements are presumptively unreliable, and, for such statements to be admissible, there must be some independent corroboration of the defendant's participation in the conspiracy." *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999); *United States v. Smothers*, 652 F. Supp. 3d 271, 306 (E.D.N.Y. 2023).

The SEC points to no evidence to establish the existence of a conspiracy between Terraform and Jump. In particular, no admissible evidence establishes either that (1) the companies entered into an agreement to restore UST's peg or that (2) such an agreement was unlawful or wrongful.[5] More particularly, the SEC has failed to describe for the Court the alleged agreement in any detail, including the purported purpose of such agreement, which members of the companies are alleged to have carried out the conspiracy, or when any agreement was reached. Evidence— even hearsay evidence—cited by the SEC that Jump purchased UST on May 23,[6] phone call records (without more) between Mr. Kwon and Mr. Kariya on May 23, 2021, and the prospective testimony of an unreliable witness simply that he was instructed to purchase UST does not establish an ***agreement*** between the two parties. In fact, the evidence amply demonstrates that Jump was independently financially motivated to purchase LUNA and UST, which was then-trading at a discount to its $1.00 peg. *See* Defs. Trial Ex. 1262 (Ex. G) (purchases ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮). Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Expert Report

---

[5] The SEC relies on the Court's summary judgment opinion, in which the Court indicated that it "could make such a finding" (but did not) that certain statements were admissible under Fed. R. Evid. 801(d)(2)(E). However, putting aside the Defendants' disagreement with the SEC's reliance on that statement, PX 68 was never part of the Court's summary judgment analysis. *See Terraform Labs*, 2023 WL 8944860, at *20 n.15.

[6] Indeed the evidence the SEC cites, *e.g.*, MIL at 10 ("[s]poke with Do, we're gonna deploy $250 million from stability reserve through Jump to stabilize the peg."); *id.* ("Curran followed up just over 20 minutes later, stating that 'Jump has already started buying ... May not need entire $250 million.'") is wholly unreliable given that there is no evidence that TFL deployed capital through Jump, and the SEC concedes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ackley Declaration (Ex. F) at ¶ 11.

of Terrence Hendershott ("Hendershott Report") ¶ 115, ECF No. 96-1. There is still no evidence that Jump and Terraform ever conspired to commit any **wrongful act**. Even taking the SEC's allegations as true for the moment, there is no allegation that the purported agreement for Jump to help restore UST's peg was itself wrongful; rather, the SEC alleges only that it was TFL's *later* failure to disclose the alleged intervention that violated U.S. securities laws.

The Jump statements within PX 68 are also hearsay because they do not in any way "further" the aims or goals of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). These statements do not remotely resemble the many cases in which courts have categorized the types of statements deemed to be "in furtherance of" a conspiracy. *See*, *e.g.*, *United States v. Mulder*, 273 F.3d 91, 103 (2d Cir. 2001) ("[S]tatements between coconspirators that ... inform each other as to the progress or status of the conspiracy do further the conspiracy."); *United States v. SKW Metals & Alloys, Inc.,* 195 F.3d 83, 88 (2d Cir. 1999) ("The statements must prompt the listener to respond in a way that promotes or facilitates the carrying out of a criminal activity."). Here, not a single statement within PX 68 can be said to have been made "in furtherance" of any alleged conspiracy. Indeed, the statements were issued ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. *See* Ackley Declaration (Ex. F) ¶¶ 13–17 (████████████████████████████████████). The statements within PX 68 are akin to the "idle chatter" or "mere[] narrative" that the Second Circuit has held to be insufficient under Rule 801(d)(2)(E). *United States v. Paredes*, 176 F. Supp. 2d 183, 187 (S.D.N.Y. 2001)

Moreover, the portion of PX 68 that the SEC has routinely relied upon throughout this litigation is ████████████████████████████████████████████████ ████████ *See* Ex. E. Notably, in addition to there being no evidence or context to establish ████ ████████████████████████████████████—doing nothing to "further" any conspiracy, and further undermining the document's creditability and relevance, while also heightening its risk of unfair prejudice towards Defendants if introduced. *See* Fed. R. Evid. 403. The hearsay exception cannot be satisfied by an *assumption* about the answer to a question.

*Second*, ███████████ statements within PX 68 are also not admissible as a statement against interest pursuant to Fed. R. Evid. 804(b)(3)(A).[7] For a statement to be against interest, it must be a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." *See* Fed. R. Evid. 804(b)(3)(A); *Picard v. Sage Realty*, 2021 WL 6052422, *4 (S.D.N.Y. Dec. 21, 2021).[8] Here, DiSomma's statements are not against his or Jump's interest. The SEC does not allege that anything about Jump's trading of LUNA or UST, which was recorded publicly on the blockchain, was illegal. The statements were merely a description of ███████████ ███████████ *See* Ex. E. Indeed, there is no allegation or evidence that Jump could be exposed to civil or criminal liability, as Jump is not alleged to have engaged in any securities law violations.

*Finally,* PX 68 is also not admissible as "state of mind" evidence under Fed. R. Evid. 803(3). The SEC's only argument here is to *again* rely on the Court's summary judgment opinion. MIL at 11 (citing *Terraform Labs*, 2023 WL 8944860, at *20). But the Court's opinion was not referring to PX 68, and PX 68 does not include contemporaneous statements by Jump executives, but rather statements made *after* Jump is alleged to have traded. *See infra* at 7. Indeed, PX 68 is nothing more than an "explanation of past events," which do not satisfy Fed. R. Evid. 803(3). *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016); *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984) (FRE 803(3) requires statements that "face forward, rather than backward."); *United States v. Netschi*, 511 F. App'x 58, 61 (2d Cir. 2013) ("to fall within Rule

---

[7] The SEC does not argue that the statements in PX 68 made by persons ███████████ ███████████ are admissible under Fed. R. Evid. 804(b)(3)(A).

[8] The SEC's only argument in support of admitting Mr. DiSomma's statements under Fed. R. Evid. 804(b)(3)(A) is its repeated reliance on the Court's summary judgment opinion. MIL at 12 (citing *Terraform Labs*, 2023 WL 8944860, at *20). Again, the Court did not consider PX 68, and the SEC offers no explanation how DiSomma's statements concerning Jump's trading in LUNA and UST otherwise expose him to liability.

803(3)'s 'state of mind' hearsay exception, the statements sought to be introduced must relate to the declarant's state of mind *during* the [illegal conduct]," rather than what the declarant "said or did *after* the [illegal conduct] had taken place").

### III. All Evidence and Argument Regarding the May 2022 Depeg Should Be Excluded

Defendants agree that the cause of the May 2022 depeg is irrelevant to the SEC's securities fraud claims. Consequently, *all* evidence and argument related to the May 2022 depeg should be excluded, including (1) evidence regarding the collapse of UST and LUNA prices at that time and any losses sustained by token holders at that time (*see* Defs. MIL at 1–4) and (2) any expert testimony or argument that the May 2022 depeg shows that UST would not have recovered its peg in May 2021 but for Jump's trading. *See* Am. Compl. ¶ 9, ECF No. 25 ("[W]ithout secret intervention to save it, the price of UST and LUNA [during the May 2022 depeg] plummeted to nearly zero … ."). However, if the Court were to permit the SEC to introduce evidence or argue anything about the May 2022 depeg to the jury, Defendants would be entitled to rebut them by showing that the May 2022 depeg was caused by an intentional short attack launched by third-party trading firms, not any actions or alleged misstatements or omissions by Defendants. *See, e.g., United States v. Barrow*, 400 F.3d 109, 120–121 (2d Cir. 2005) (rebuttal evidence includes evidence that "refute[s], oppose[s], or counteract[s] (something) by evidence, argument, or contrary proof" as well as "any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary") (citations omitted).

If the SEC were permitted to open the door regarding the May 2022 depeg, it should not be slammed shut to rebuttal evidence from Defendants on the same issue. It would be fundamentally unfair for the Court to permit the SEC to try to blame Defendants for alleged May 2022 token holder losses (Am. Compl. ¶¶ 1, 172) without permitting Defendants to show the true cause of any such losses. Nor should the SEC be allowed to introduce expert testimony that ████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Expert
Report of Prof. Bruce Mizrach at 4, ECF No. 96-3, without permitting Defendants to introduce
expert testimony that the SEC's expert has ███████████ for his conclusion, Hendershott
Report ¶ 136, ECF No. 96-1; Hendershott Supplemental Report ¶ 15 (Ex. H).

If the SEC were permitted to inject these issues into the trial, Defendants would not take
"days" to present their rebuttal evidence, as the SEC argues. SEC MIL at 11. Depending on the
scope of evidence on these points admitted during the SEC's case, Defendants may present rebuttal
through the testimony of only a few witnesses, such as the CEO and COO of Wintermute Trading,
Ltd.—one of the hedge funds that shorted UST in May 2022—and Defendants' expert, Dr.
Hendershott. Contrary to the SEC's speculation, Defendants would not offer into evidence "more
than 500 exhibits on this topic." SEC MIL 11. Defendants included those exhibits on their exhibit
list solely to give notice of documents that Dr. Hendershott *might* rely on if the SEC were allowed
to open the door to irrelevant testimony regarding the cause of the May 2022 depeg.

## IV. The Court Should Exclude Certain of the SEC's Designations of Mr. Kwon's Investigative Testimony and Admit Defendants' Counter-Designations

The SEC has designated large portions of testimony given by Mr. Kwon during the SEC
investigation that led to the filing of this action. Defendants do not contest that the testimony
designated by the SEC constitutes statements by a party-opponent under Fed. R. Evid. 801(d)(2),
but many of the SEC's designations are inadmissible on other grounds, including irrelevance, Fed.
R. Evid. 403 (its probative value is substantially outweighed by unfair prejudice), vagueness and
other defects in form, lack of foundation, and lack of personal knowledge. *See* Defs. Objs. to Pl's
Testimony Designations and Defs.' Counter-Designations, dated Mar. 1, 2024 (Ex. I). Defendants
do not detail those objections here, but will follow the Court's practice requiring the submission
of marked-up deposition transcripts and objections noted thereon at least three business days
before trial. *See* Individual Rule 6(a).

In addition to sustaining Defendants' objections to the SEC's designations of Mr. Kwon's
testimony, the Court should admit Defendants' counter-designations of his testimony. Defendants'

counter-designations are admissible under the Rule of Completeness because they are "necessary to ensure that the excerpts offered by the SEC are fairly understood in context." *Reserve Fund Sec. & Derivative Litig. v. Reserve Mgmt. Co.*, 2012 U.S. Dist. LEXIS 191094, at *57 (S.D.N.Y. Oct. 3, 2012); *see* Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).

Moreover, even apart from the Rule of Completeness, the counter-designations are admissible under the hearsay exception for former testimony. *See* Fed. R. Evid. 804(b)(1). Each element of that exception is satisfied. *First*, Mr. Kwon is unavailable because, in light of his detention in Montenegro pending extradition, it appears likely that Defendants' counsel will "not be[] able, by process or other reasonable means, to procure … the declarant's attendance" at trial. Fed. R. Evid. 804(a)(5)(A). *Second*, the SEC asserts that Mr. Kwon's sworn investigative testimony "was given as a witness at a … lawful deposition … ." Fed. R. Evid. 804(b)(1)(A); SEC MIL at 16–17 (arguing that Mr. Kwon's testimony is admissible as a deposition under Fed. R. Civ. P. 26(a)). *Third*, the testimony is offered against the SEC, which had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(a)(5)(B). Although the Second Circuit has noted that the government sometimes may have a different motive at "a preliminary stage of an investigation" than at trial, it has directed district courts to focus on whether the government had a "substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. *United States v. DeNapoli*, 8 F.3d 909, 913, 914 (2d Cir. 1993). Here, the SEC did not question Mr. Kwon at a preliminary stage of its investigation. On the contrary, when the SEC's lawyers (including the SEC's lead litigator on this case) took Mr. Kwon's testimony for two days in late August 2022, they had already been working with both of the purported whistleblowers they are still relying on for their fraud claims, and they questioned Mr. Kwon extensively about both aspects of those claims (Chai and the 2021 depeg). Thus, the SEC had a full opportunity and a high degree of motivation to prove the same allegations that will be tried by this Court.

**V.      The Court Should Limit Reference to Mr. Kwon's Conviction in Montenegro**

The SEC asks the Court to allow it to impeach Mr. Kwon with evidence of his Montenegrin conviction. SEC MIL at 17–21. The Court should deny that motion as unripe, as we do not yet know for certain whether Mr. Kwon will testify and/or which portions of his prior sworn testimony the Court will admit, if any. In any event, if evidence of the conviction is admitted to impeach, the Court should preclude the SEC from offering details about the offense beyond the essential facts of the conviction.

The SEC states that it "intends to call Mr. Kwon as a witness and/or introduce portions of Kwon's sworn investigative testimony" and to use his conviction in Montenegro to impeach him. SEC MIL at 17. Because the admissibility of a prior conviction under Fed. R. Evid. 609 necessarily turns on whether it has value as impeachment, the Court should reserve decision on the issue until it is known if Mr. Kwon will in fact testify and/or whether portions of his prior testimony are admitted. *See* Fed. R. Evid. 609 Advisory Committee's Note to 1990 Amendments ("The Committee concluded that the title of the rule [Impeachment by Evidence of a Criminal Conviction], its first sentence and its placement among the impeachment rules clearly establish that evidence offered under Rule 609 *is offered only for purposes of impeachment*.") (emphasis added). If Mr. Kwon does not testify, the Montenegrin conviction would not be admissible. Or if the only portions of Mr. Kwon's testimony that were admitted were consistent with the SEC's view of the facts, then it would have no need to introduce the conviction to impeach. Under those circumstances, introduction of the conviction would not be "for impeachment purposes," Rule 609's foundational requirement, but rather would simply be to inform the jury that Mr. Kwon has previously been convicted and inappropriately invite them to use the conviction as improper propensity evidence. *See*, *e.g.*, *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005) ("Both Rule 609(a)(1) and (a)(2) contemplate admitting 'evidence of a witness's convictions *for impeachment purposes*.'" (emphasis added)).

If the Court ultimately determines that evidence of the prior conviction should be admitted, the Court should limit that impeachment to the essential facts of the conviction: name, date, and

sentence imposed. *See id.* at 615 ("the presumption under Rule 609(a)(2) … is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the 'evidence' that is to be admitted for impeachment purposes"). "It is usually considered prejudicial to elicit the specific details of a crime that does not bear directly on the truth-telling trait." 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 609.20[2] (2d ed. 2018). Accordingly, should the Court determine that evidence of Mr. Kwon's conviction in Montenegro is admissible under Rule 609, it should limit the description of the conviction to the jury as follows: "On June 19, 2023, Mr. Kwon was convicted in a foreign jurisdiction of possession of a fraudulent passport and sentenced to four months' imprisonment."

Here, allowing facts referenced by the SEC beyond the essential ones—such as references to the nationalities of the passports and the names on those passports or Mr. Kwon's alleged attempt to board a jet to Dubai—would have no probative value and would result in unfair prejudice to Mr. Kwon. *See* Fed. R. Evid. 403, 609(a)(1)(A); *Brevard v. Schunk*, 2020 WL 374563, at *2 n.2 (N.D.N.Y. Jan. 23, 2020) ("To the extent that Defendants' motion *in limine* can be construed as a request to go beyond the essential facts of Plaintiff's convictions, the Court finds that any additional probative value of that evidence is substantially outweighed by unfair prejudice"); *Celestin v. Premo*, 2015 WL 5089687, at *4 (N.D.N.Y. Aug. 27, 2015) (allowing party to impeach witness under Rule 609(a)(2) by asking witness "if he was convicted of making a false statement, but not as to the underlying facts"); *Sanders v. Ritz-Carlton Hotel Co. LLC*, 2008 WL 4155635, at *6 (S.D.N.Y. Sept. 9, 2008) (finding the facts underlying party's conviction used to impeach under Rule 609(a)(2) to be inadmissible). Allowing the SEC to explore facts beyond those necessary to have secured Mr. Kwon's conviction in Montenegro would also "lead the Court down the path of a 'trial within a trial' on a peripheral issue," leading to delay and confusion from the jury. *Doe v. Lima*, 2020 WL 728813, at *6 (S.D.N.Y. Feb. 13, 2020); *see also* Fed. R. Evid. 403. The risk of unfair prejudice to Mr. Kwon is especially high here, where the extraneous evidence surrounding his conviction in Montenegro may cause the jury to infer that Mr. Kwon is

facing criminal indictment in the United States and elsewhere, facts that should be kept out of the trial for reasons explained in a separate motion *in limine*.

### VI.   Defendants Should Not Be Precluded from Introducing Evidence and Argument Regarding the Location or Custodian of the LP Server

This motion *in limine* is simply an attempt by the SEC to shift the blame to Defendants for the SEC's own failure to obtain evidence—the LP Server and related inputs—relevant to its fraud claims. The Court should deny the motion because the evidence shows that Defendants did not have possession, custody, or control of the LP Server during the pendency of this matter—and the SEC identifies no evidence whatsoever as to the custodian of the inputs to the LP Server.

"[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). And where, as here, a party contests that it has possession, custody, and control of the relevant information, the requesting party has the burden to prove possession, custody and control. *Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, No. 21 Civ. 9472 (JGK)(KHP), 2022 WL 3704001, at *3 (S.D.N.Y. Aug. 26, 2022) (internal citations omitted). In doing so, the requesting party must prove that an "intracorporate relationship establishes some legal right, authority, or ability of the parent to obtain requested documents on demand." *Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2014 WL 2624753, at *4 (S.D.N.Y. June 12, 2014) (internal citations omitted). Defendants do not concede that there was a corporate "parent" relationship at the time relevant here, and the facts show otherwise.

The evidence relied on by the SEC does not and cannot show that Defendants had possession, custody, or control over the LP Server or the relevant inputs. As noted in Defendants' motion *in limine*, (*see* Defs.' Mem. in Support of their Supplemental Motions *in Limine* ("Defs. Suppl. MIL") at 8–10, ECF No. 186), the SEC offers no evidence as to the entity or person that was in the possession, custody, or control of the *inputs* to the LP Server and only points to a vague statement by a former TFL employee, Natalie Luu, to assert that TFL has possession, custody, or control of the LP Server. SEC MIL at 23. Not only does the SEC conspicuously omit evidence

contradicting this statement, but the SEC fails to explain how Ms. Luu's statement that Kernel Labs *was* "Terraform Labs' Korea office" establishes that there was a relationship between TFL and Kernel Labs that would establish that Defendants had a legal right, authority, or ability to obtain information from Kernel Labs *during this litigation*. *See* Defs. Suppl. MIL at 8–10.

Even if Ms. Luu's statement could establish such a relationship, the evidence indicates that, at all times during this litigation, the LP Server was in the possession, custody, and/or control of Chai, not Defendants. The SEC omits referencing key evidence showing that responsibility for the payment of the Naver Cloud was transferred from Gaza Labs to Chai in 2018. Defs. Suppl. MIL at 9. Moreover, in an October 2021 recording, Chai's head of engineering ewallets confirmed that the LP Server was at that time on Chai's server.[9] The SEC's reliance on Paul Kim's statement that he had "access" to the LP Server after he left Chai cannot establish that Defendants had possession, custody, or control of the LP Server when the SEC fails to show that the nature or extent of Mr. Kim's "access" or whether it overlapped with the onset of this matter.

The SEC also failed to identify any reasonable steps TFL failed to take to obtain a copy of the LP Server. In fact, *Defendants*, not the SEC, specifically added requests for the LP Server to the letter of request this Court issued to the Chai Corporation in Korea.[10] And if the SEC believed that LP Server was still stored on the Naver Cloud, the SEC's argument is simply an attempt to shift the burden to the Defendants to obtain materials that the SEC could have sought through a letter of request to Naver Cloud. *Shcherbakovskiy*, 490 F.3d at 138 ("We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents."). In sum, the SEC's motion

---

[9] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[10] *See* Attachment B to Letter of Request for International Judicial Assistance to the Chai Corporation ("Chai Letter of Request"), ECF No. 46-1 (see Request No. 2 of Defendants' Document Requests); August 16, 2023 Docket Entry issuing the Chai Letter of Request.

should be denied for erroneously attempting to blame Defendants for the SEC's own failure to obtain relevant evidence from an independent third party during discovery.

### VII.   Defendants' Third-Party Deposition Designations Are Appropriate

The Court should deny the SEC's motion to preclude Defendants' introduction of deposition designations for witnesses William Chen, Michael Brown, Matthew Cantieri, Natalie Luu, Brian Curran, Seungjin Jacob Park, and ███████████.

With respect to William Chen, a former TFL employee, Defendants' deposition designations are proper to provide context pursuant to the Rule of Completeness under Fed. R. Evid. 106. Mr. Chen testified under oath at his deposition in this matter that he has no personal knowledge about Chai, never worked on the LP Server, and anything he said about Chai was based on what he heard from others. Chen Tr. 54:16–55:8; 91:12–18; 145:19–148:25 (Ex. J).[11] Notwithstanding Mr. Chen's testimony, the SEC has indicated it intends to introduce into evidence a number of ██████████████████████████████████████████ *See* Ex. K (P-257); Ex. L (P-370); Ex. M (P-371); Ex. N (P-375); Ex. O (P-377); Ex. P (P-640). The SEC does not intend to call Mr. Chen as a witness. *See* Ex. Q (SEC's Pre-Trial Disclosures to Defendants).

Defendants have separately moved to exclude these SEC exhibits on grounds of lack of foundation and hearsay. Defs. Suppl. MIL at 1–3. If these documents are admitted over Defendants' objections, Defendants' Chen deposition designations should be admitted pursuant to the Rule of Completeness, which allows Defendants to introduce "*any other statement*—that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (emphasis added).[12] The Rules and fundamental fairness require this prior testimony be introduced because "it is essential to

---

[11] Defendants reserve the right to introduce other portions of Mr. Chen's deposition in rebuttal to other affirmative evidence presented by the SEC.

[12] If these documents are admitted over Defendants' objections, Defendants also reserve the right to introduce the deposition testimony of Seungjin Jacob Park for impeachment or rebuttal.

explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) (internal quotation marks and citations omitted). Here, Mr. Chen's designated deposition testimony is essential to explain Mr. Chen's lack of firsthand knowledge about Chai and the LP server and to avoid misleading the jury about these central issues.

The SEC's objection to these designations as hearsay is without merit. The Rule of Completeness expressly trumps "a hearsay objection." Fed. R. Evid. 106; *see also* Fed. R. Evid. 106 Advisory Committee's Note to 2023 Amendments ("A party that presents a distortion can fairly be said to have forfeited its right to object on hearsay grounds to a statement that would be necessary to correct the misimpression."). Moreover, Defendants' deposition designations are not hearsay because they are not offered for the truth of the matter asserted; rather, they are offered to provide context and completeness for other evidence. In addition, they show Mr. Chen's state of mind and therefore fall within a hearsay exception. *See, e.g.*, *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (emails were not hearsay because they were not offered to prove the truth of the matters asserted, but rather to provide context for other evidence and also showed state of mind).

Defendants' designations of the deposition testimony of the other witnesses at issue are admissible because the witnesses are unavailable under Fed. R. Civ. P. 32(a)(4). Mr. Brown is unavailable because he resides in Japan, which is outside the Court's subpoena power, and because he recently suffered a serious injury that precludes travel. Henkin Decl. ¶ 2; *see* Fed. R. Civ. P. 32(a)(4)(B) (witness unavailable if "more than 100 miles from the place of … trial or is outside the United States"); Fed. R. Civ. P. 32(a)(4)(C) (witness unavailable who cannot attend or testify because of illness); Fed. R. Civ. P. 32(a)(4)(D) (witness unavailable when "the party offering the deposition could not procure the witness's attendance by subpoena"); *see also* Fed. R. Evid. 804(a)(4) and (a)(5).

Mr. Cantieri, Ms. Luu, Mr. Curran, and Mr. Chen are unavailable because they each reside in California—far more than 100 miles from the place of trial. Henkin Decl. ¶¶ 3-6; Fed. R. Civ.

17

P. 32(a)(4)(B). The SEC is incorrect that the nationwide subpoena power in SEC enforcement actions provided by 15 U.S.C. § 77v(a) overrides the 100-mile rule for unavailability set forth in Fed. R. Civ. P. 32. By its terms, 15 U.S.C. § 77v(a) displaces the geographical limit for subpoenas only under Rule 45, and is silent on Rule 32. Thus, in *United States v. IBM*, this Court held that under the plain and unambiguous language of Rule 32, a witness located more than 100 miles from the courthouse is unavailable for purposes of admission of their deposition testimony even if subject to nationwide subpoena power. 90 F.R.D. 377, 380 (S.D.N.Y. 1981). Notably, the SEC *conceded* this rule in a prior case. Letter of Plaintiff, *SEC v. True N. Fin. Corp.*, No. 10 Civ. 3995, 2013 WL 4781037 (D. Minn. Sept. 6, 2013), ECF No. 320 (Ex. R) (letter from SEC counsel arguing that long-distance witnesses are unavailable for purposes of admitting former testimony regardless of nationwide subpoena authority).

The SEC's motion is also premature. If any of these witnesses testify at trial, Defendants will rely on their live testimony rather than prior deposition testimony (other than for impeachment), and this issue will be moot. There is no need for the Court to rule on the SEC's motion unless and until Defendants offer the deposition testimony into evidence. *See True N. Fin. Corp.*, No. 10 Civ. 3995, 2013 WL 4781037, at *4 (D. Minn. Sept. 6, 2013) (notwithstanding nationwide subpoena power, court reserved the right to allow SEC to present deposition testimony in lieu of live testimony if SEC was not able to procure witness's attendance by subpoena or other reasonable means).

### VIII.   Defendants Properly Disclosed Kevin Zhou as a Potential Trial Witness

The Court should deny the SEC's motion *in limine* to preclude Defendants from calling Kevin Zhou as a witness for trial because Defendants fully complied with the Federal Rules of Civil Procedure by promptly producing to the SEC materials showing Mr. Zhou's knowledge.

A party must supplement its Rule 26 disclosures if additional information is learned during the discovery period. Fed. R. Civ. P. 26(a)(1)(A)(i), Fed. R. Civ. P. 26 (e)(1)(A). However, "there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery." *BanxCorp v. Costco*

*Wholesale Corp.*, 978 F. Supp. 2d 280, 323 (S.D.N.Y. 2013) (quoting 8A Charles Alan Wright &

Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2010)).

Here, Defendants complied with Rule 26(e) because Defendants first learned of ███████

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Galois Prod. Cvr. Ltr (Ex.

S). The emails show that ███████████████████████████████████████████████████████

████████████████████████. *See, e.g.*, TFL-GAL-000418 (Ex. T). ██████████████████

██████████████████████████ Production Letter to the SEC (Ex. U). These

documents put the SEC on notice as to the extent of Mr. Zhou's knowledge and thus complied

with Fed. R. Civ. P. 26(e). *See BanxCorp*, 978 F. Supp. 2d at 323–24 (recognizing that documents

produced provided "ample notice of the witnesses" that the plaintiff contended were not identified

in Rule 26(a) disclosures). Moreover, the disclosure occurred more than three months before the

original trial date and more than five months before the current trial date. The SEC could have

sought to take Mr. Zhou's deposition, but did not. As a result, there was no prejudice to the SEC

and preclusion is unwarranted. *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 548 (S.D.N.Y.

2018) ("[P]reclusion is 'a drastic remedy' and is generally disfavored.") (internal citations

omitted).

## IX.   Defendants May Properly Call Witnesses At Trial To Offer Relevant and Probative Testimony

The SEC improperly moves to preclude Defendants from calling five witnesses on

Defendants' witness list—all of whom have been deposed in this case. In support of its motion,

the SEC posits that Amani, Park, Cantieri, Luu, and Brown lack relevant knowledge concerning

the issues to be decided at trial. But the SEC is wrong. For example, Mr. Amani will testify that

he was a member of the Terraform community (even though he did not yet work for Terraform),

and observed the May 2021 depeg in that capacity. Indeed, Mr. Amani already testified, among

other things, that he "understood [the May 2021 Depeg] as [he] was observing it as ... a third-party

observer" and remembers "reading discussion on the forums about—about how to keep it from

happening again, how to—how to change the algorithm." Amani Tr. 140:11–142:13 (Ex. QQ). Furthermore, as the current CEO of the company and its corporate representative at trial, he is able to offer testimony on behalf of the Terraform. In this capacity, he will offer relevant and probative testimony concerning the background of the company, the events of the 2021 Depeg (based on his firsthand knowledge), testimony concerning how the Terraform ecosystem worked, and testimony that Mr. Kwon sought to relaunch the company with the assistance and support of the Terraform community after the May 2022 depeg, which goes to the jury's evaluation of intent, a hotly contested issue in this case.

The remaining witnesses will also offer relevant and probative evidence. Park testified that he had just joined the company when the May 2021 Depeg happened, and was part of discussions on the May 2021 Depeg postmortem, which the Defendants intend to question him about at trial. Park Tr. 216:14–219:11 (Ex. RR). Among other things, Park is anticipated to discuss how the slippage costs of high swap fees for the mint/burn mechanism were going to be addressed by Terraform.

Luu also has firsthand knowledge of the May 2021 Depeg. Luu is anticipated to discuss the Depeg event, and her observations of what happened after the peg was restored. Again, the SEC is wrong that Luu does not know anything about these issues. Although Luu testified in her deposition that ███████████████████████████████████████ (Luu Tr. 105:3–15 (Ex. VV)), she does know *about* the depeg, and indeed, she testified regarding the ████████████ ███████████████████████████████████ (Luu Tr. 29:11–31:23 (Ex. VV)).

Likewise, Cantieri will discuss a host of issues, including TFL's business and how it supported the Terra blockchain and community, the Anchor protocol, and Jump's relationship to TFL and the Terra blockchain and the May 2021 depeg. The SEC's citations to Cantieri's transcript refer to ████████████████████████████████████████████████████████ ████████████████████ Cantieri Tr. (Ex. SS) 81:17–82:9 █████████████████████ ████████████████ 175:11–14 ██████████████████████████████████████. All

the SEC does here is indicate questions it could ask during cross-examination, but these are not bases to preclude testimony.

And finally, Brown will testify as to his involvement in the Terraform community prior to starting employment at Terraform around July 2021.

The SEC's request to preclude any of these witnesses from testifying is an improper attempt to categorically exclude testimony *a priori*, without any context for the actual testimony that would be elicited at trial. The remedy for the SEC's professed concerns regarding the testimony of these percipient witnesses, including to the extent the SEC believes that any of these witnesses' testimony is subject to a Rule 602 objection, is to raise that issue at trial. *See Busher*, 2019 WL 6895281, at *13 (declining as "unduly broad" a motion to preclude all evidence on a topic but noting that the moving party could raise specific evidentiary objections at trial). "The Court will not preclude *in limine* evidence" which may be relevant to issues at trial, "and will, instead, rule on concrete objections made … in due course" at trial; *TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 345–46 (S.D.N.Y. 2003) (denying motion to preclude evidence of collateral legal disputes where such disputes may be relevant to issues at trial); *Busher v. Barry*, No. 14 Civ. 4322 (NSR), 2019 WL 6895281, at *13 (S.D.N.Y. Dec. 18, 2019) (denying defendants' motion seeking to limit evidence of a corporation's purpose, without prejudice to Defendants' raising specific evidentiary objections at trial.).

Accordingly, the Court should deny the SEC's motion to preclude Defendants from calling the aforementioned individuals.

### X.   The Court Should Exclude Certain of the SEC's Designations of TFL's Rule 30(b)(6) Deposition Testimony or Otherwise Admit TFL's Corrections

The Court should deny the SEC's motion to admit its designations of deposition testimony by Defendant TFL's representative as to which the SEC failed to provide reasonable advance notice of the question topics and exhibits. The SEC's deposition notice listed 29 topics spanning a period of nearly six years and covering virtually every subject touched upon in the Amended Complaint. Ex. V (30(b)(6) Deposition Notice). TFL designated as its representative for the

deposition an in-house attorney, which is "not uncommon." *New Jersey v. Sprint Corp.*, No. 03–2071–JWL, 2010 WL 610671 (D. Kan. Feb. 19, 2010). The attorney, Ashwin Mathialagan, spent approximately 23 hours with TFL's outside counsel preparing for the deposition, reviewing hundreds of corporate records relating to all 29 topics. Less than 24 hours before the deposition, the SEC's counsel sent TFL's counsel only two documents, which she said "might" be used in the deposition. Ex. W. Otherwise, Mr. Mathialagan and TFL's counsel could only guess at which specific topics and documents the SEC might question him about in connection with the 29 topics in the notice.

At the deposition, the SEC asked hundreds of improper questions that "(1) d[id] not clearly fall within the scope of those Matters as defined in the deposition notice or (2) although within the scope of the Matters, demand[ed] a degree of detailed recollection of past arrangements that would be unrealistic without more specific notice." *Agniel v. Central Park Boathouse LLC*, No. 12 Civ. 7227 NRB, 2015 WL 463971, at *3 (S.D.N.Y. Jan. 26, 2015).[13] These questions violated the fundamental precept that "Rule 30(b)(6) is not designed to be a memory contest." *Id.* (internal citation omitted).

Defendants accordingly object to the admission of Mr. Mathialagan's deposition testimony designated by the SEC on three topics:

*First*, Defendants object to admission of Mr. Mathialagan's testimony in response to SEC questions concerning the status of Chai's use of the Terra blockchain as of one specific day (June 11, 2019) and two particular months (June 2019 and September 2019).[14] The SEC did not provide any advance notice that it would ask questions concerning these specific moments in time within

---

[13] Defendants' objections based on lack of adequate notice were not required to be made during the deposition because they related to the substance, not the form, of the questions and could not have been corrected at the time of the deposition. *See* Fed. Civ. P. 32(d)(3)(B).

[14] Specifically, Defendants object to the following deposition testimony designated by the SEC: Mathialagan Tr. 146:13–17 (Ex. X) (SEC question regarding Terra blockchain use as of the date of an article published in Medium on June 11, 2019); *id.* at 151:8–16 (SEC question regarding Terra blockchain use as of June 2019), 161:1–6 (same), 174:21–25 (SEC question regarding Terra blockchain use as of September 2019). A copy of the Medium article referenced by the SEC (at Tr. 146:13–17) is Ex. Y.

a period exceeding five years and nine months, and encompassed only by an overbroad topic description in the SEC's deposition notice:

> Terra's representations concerning Chai's use of the Terra blockchain to process and settle its transactions, including, but not limited to, communications with purchasers, borrowers, investors, and/or potential investors in Terra Crypto Asset Securities, marketing materials, investors decks, public statements and interviews, and the basis for those representations.

Ex. V at 2, 6 (defining the relevant period as "January 1, 2018, through the present"). These SEC questions—paradigmatic examples of a prohibited "memory contest"—improperly "demand[ed] a degree of detailed recollection of past arrangements that would be unrealistic without more specific notice." *Agniel*, 2015 WL 463971, at *3.

*Second*, Defendants object to a convoluted question, asked three times by the SEC, concerning what regulatory issues TFL's former head of communications, Gigi Kwon (who is not related to Mr. Kwon), was referring to in a discussion about the opinion of a specific reporter in an internal TFL chat on June 13, 2019. Specifically, the SEC asked Mr. Mathialagan: "If you could turn to the next page [of the TFL chat], there is a communication starting at 9:50 a.m. from Gigi Kwon, and [s]he writes, 'He [the reporter] already thinks there is no way our model can work in Korea due to regulatory issues.' ... Do you know what regulatory issues she's referring to there?" Mathialagan Tr. 156:19–20 (Ex. X); Ex. Z at 5 (Mathialagan Deposition Exhibit 11). Mr. Mathialagan answered that "[t]he company doesn't have a clear record as to what the regulatory issue is." Mathialagan Tr. 156:21–22 (Ex. X). Dissatisfied with that answer, the SEC asked, "So the company does not know?" and Mr. Mathialagan again gave essentially the same answer: "It's unclear to the company what the regulatory issue is." *Id.* at 156:23–25. Continuing to badger the witness, the SEC's counsel then asked, "Well, what is the company's understanding?" without specifying the issue as to which she wanted to know the company's understanding. *Id.* at 157:1–2. This time, Mr. Mathialagan, apparently having forgotten the SEC's original question, said that

the company's understanding of "this regulatory issue" is "in relation to…[p]ayment licensing in Korea." *Id.* at 157:8–12.[15]

None of this testimony should be admitted because (1) the SEC's questions were confusing and harassing; (2) the reporter's thoughts about the Korean regulatory issue lack adequate firsthand knowledge to be admissible, and therefore have no relevance to this case;[16] and (3) the SEC gave no advance notice that it would ask questions about (a) this or any other reporter's opinion about anything, (b) a specific chat occurring on one day within the nearly six-year period covered by the deposition notice, or (c) one sentence written by a former TFL employee on the fourth page of the chat. *See*, *e.g.*, *Agniel*, 2015 WL 463971, at *3.

*Third*, the Court should exclude Mr. Mathialagan's testimony in response to the SEC's questions concerning Mr. Kwon's references in the same chat to a private blockchain called Tempura. Mathialagan Tr. 151:17–24, 152:1–3 (Ex. X). Mr. Mathialagan testified that neither he nor the company was knowledgeable about the Tempura blockchain. *Id.* The SEC provided no advance notice that it would ask questions about this specific chat and did not refer to Tempura in any of the 29 topics in its deposition notice, in violation of the requirement that a Rule 30(b)(6) deposition notice "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).

The Court should also deny the SEC's motion to exclude the changes to the deposition transcript that Mr. Mathialagan furnished to the SEC and the court reporter after the deposition, based on his further review of corporate records. Exhibit 15 to SEC MIL. In light of the SEC's failure to give adequate notice of the deposition topics and Mr. Mathialagan's lack of personal

---

[15] The Defendants also object that this final line of questioning is improper on the ground that it was asked and answered twice before, simply because the SEC did not "like" Mr. Mathialagan's initial responses.

[16] Defendants were not required to object to the relevance of the SEC's questions during the deposition because the irrelevance of the subject matter could not have been corrected at that time. *See* Fed. R. Civ. P. 32(d)(3)(A).

knowledge of the facts at issue,[17] it is not surprising that Mr. Mathialagan made a number of mistakes in his answers to the SEC's surprise questions.[18] Mr. Mathialagan's corrections are admissible under the Rule of Completeness and the Federal Rules of Civil Procedure, which entitles Defendants to introduce the corrections as "other parts [of the deposition] that in fairness should be considered with the part introduced." *See* Fed. R. Civ. P. 32(a)(6); Fed. R. Evid. 106.

The SEC's arguments for excluding the corrections are baseless. *First*, the SEC claims that the corrections were untimely because TFL's counsel did not request an opportunity to make corrections "before the deposition [was] completed." Fed. R. Civ. P. 30(e); SEC MIL at 23. But at the conclusion of the SEC's questioning of Mr. Mathialagan, the SEC stated "for the record that the SEC does intend to hold this deposition *open* … ." Mathialagan Tr. 258:24–259:1 (Ex. X) (emphasis added). Thus, the deposition was *not* closed when, a few days later, TFL's counsel sent a written request to the SEC and to the court reporter that Mr. Mathialagan be permitted to review the transcript and provide a statement of any desired changes in form or substance pursuant to Fed. R. Civ. P. 30(e). Oct. 4, 2023 Email to the SEC (Ex. TT); *see also Brockman v. NAES Corp.,* 2019 WL 6606459, *3 (D. Conn. 2019) (Court agrees that the parties expressly "held open" a deposition even though the initial time allotted to conduct the deposition had fully expired). TFL thereafter served Mr. Mathialagan's signed statement of corrections within "30 days after being notified by the officer that the transcript [was] available." Nov. 3, 2023 Email to the SEC (Ex. UU); Fed. R. Civ. P. 30(e). Both TFL's request and Mr. Mathialagan's corrections were therefore timely.

The SEC's second argument for excluding the corrections—that they are "substantive" (SEC MIL at 23–24)—is frivolous. Rule 30(e) expressly permits a witness to make deposition

---

[17] "[P]ersonal knowledge of the designated subject matter by the selected deponent is of no consequence." *E.g., Sprint Comms. Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527–28 (D. Kan. 2006)).

[18] *See, e.g., Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 109 (D. Nev. 2023) ("The deposition topics attempt to cover nearly every conceivable facet of this litigation, making the preparation of a thoroughly educated witness infeasible."), *aff'd*, No. 22 Civ. 438 (CDS)(NJK), 2023 WL 5035323 (D. Nev. Aug. 4, 2023); *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, No. 13 Civ. 7570 (RJS), 2015 WL 13885012, at *2 (S.D.N.Y. July 7, 2015) ("Given the breadth of this deposition notice [27 topics], it is unsurprising that [the 30(b)(6) witness] was not omniscient during her deposition.").

transcript changes "in form *or substance*." Fed. Civ. P. 30(e) (emphasis added). Consistent with the plain language of the rule, as the SEC acknowledges, the Second Circuit expressly "allows substantive corrections." SEC MIL 23–24 (citing *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997)).

Finally, the SEC is plainly wrong about the procedure to be followed in response to the provision of an errata sheet. It has long been recognized in this Circuit that the remedy for challenging an errata sheet is not to strike it, but to include it in the trial record, along with the original answers. *See*, *e.g.*, *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (holding that when a party amends his testimony under Rule 30(e), a deponent's "original answer should [be] admitted [into evidence]" even when he amends his deposition testimony—with the deponent "[o]f course ... free to introduce the amended answer and explain the reasons for the change.") (*citing Usiak v. New York Tank Barge Co.*, 299 F.2d 808, 810 (2d. Cir. 1962)).



### XII.   Statements by "Chai Corporation or Its Officers" are Inadmissible Hearsay

The SEC also moves *in limine* to have certain hearsay statements made by Chai Corporation, its officers, or "senior employees," admitted into evidence, on the grounds that these exhibits are admissible either as statements against interest or as statements by a co-conspirator. SEC MIL at 27. Specifically, the SEC seeks to introduce a series of statements, ███████████ ████████████████████████, that the SEC claims show that (1) Chai did not use the Terra blockchain, (2) Chai provided information to Terraform that allowed it to "mirror" Chai transactions on its blockchain, thus creating the illusion that Chai did, in fact, use the Terra blockchain; and (3) Chai had an agreement to help Defendants conceal the fact that Chai did not use the Terra blockchain. *Id.* Each of the proffered statements are hearsay, without any applicable exception that would render them admissible.

*First*, the SEC provides no independent evidence to demonstrate the existence of a conspiracy, or that the Chai Statements were made in furtherance of any purported conspiracy. In order to admit a statement under Fed. R. Evid. 801(d)(2)(E), "a court must find (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993). These prerequisites to admission of an 801(d)(2)(E) statement are "[p]reliminary questions concerning ... the

admissibility of evidence" as referenced in Fed. R. Evid. 104(a), and must be proven by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 176 (1987); *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir. 1988) *cert. denied*, 488 U.S. 821 (1988). And while the court may consider the hearsay statements themselves, "these statements are presumptively unreliable, and, for such statements to be admissible, there must be some independent corroboration of the defendant's participation in the conspiracy." *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir.1999) (*citing United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996)); *United States v. Smothers*, 652 F.Supp.3d 271, 306 (E.D.N.Y. 2023).

As an initial matter, the SEC has not proved, and cannot prove, an unlawful agreement to deceive token purchasers. The existence of any such agreement would depend on evidence that Terraform and Chai agreed to cover up a false statement. However, no such evidence exists in this case, because the SEC's allegedly "false" statements concerning Chai are demonstrably not false. Indeed, Paul Kim, Chai's Chief Technology Officer—and the architect of the computer code that allowed the Chai payment system to run on the Terraform blockchain—testified repeatedly that the blockchain transactions generated on Chai were *real*. *See*, *e.g.*, Kim Tr. (Ex. AA) at 23/97; 25/97 ("[Chai] was 100% linked to the Terra blockchain in the backend."); 26/97 ("I rigorously developed the algorithm and I *personally made enormous efforts to link it to the Terra blockchain from the beginning*, so it should be seen as one whole thing in its entirety, included in the whole payment process." (emphasis added)); 70/97 ("Q: Were the block chain transactions that were generated in accordance with the Chai transactions real transactions? Or were they a mere copy of the records?  A: They were real KRT transactions, and not a mere copy."). Accordingly, even if there was some purported "agreement" for Chai not to discuss Terraform, or for either company not to make public statements about the other, there would be nothing wrongful or illegal about an agreement to stay silent about the truth that Chai ran on the blockchain.

Tellingly, as with the alleged Jump "conspiracy," the SEC again makes no effort to explain the nature of the conspiracy it alleges, who was involved, or what Chai and Terraform purportedly agreed to stay silent about, ███████████████████████████████████████████████████

███████████████████████████████████████████████████ SEC MIL at 29–30 (citing PX 118a (Ex. HH), PX 125a (Ex. II)). But the SEC cannot rely upon the hearsay Chai Statements themselves to prove the existence of a purported illicit agreement between Chai and Terraform, without extrinsic evidence to support their theory. *See, e.g.*, *Tellier*, 83 F.3d at 580–81 (Statement by an alleged coconspirator was inadmissible hearsay where there was no independent corroborative evidence of the defendant's participation in a conspiracy to distribute marijuana). Here, the SEC proffers no explanation of which "false" statements Chai and Terraform allegedly agreed to keep quiet.

Moreover, the extrinsic evidence in this case categorically refutes the notion that Chai and Terraform were engaged in a conspiracy to hide facts about Chai's interaction with the blockchain, because as Paul Kim testified, the actual coding behind the Chai project reveals that it did, in fact, run on the blockchain. In short, the SEC musters no evidence to explain what the alleged "gentlemen's agreement" reference relates to, which illustrates precisely why the case law discussing Fed. R. Evid. 801 requires that the proponent of the statement demonstrate the parameters of the alleged conspiracy with outside evidence. *Tellier*, 83 F.3d at 580–81. Here, the SEC has not even attempted to meet this burden of proof with admissible evidence, and therefore, it has failed to demonstrate that Chai and Terraform were engaged in any form of collusion.

The Chai Statements proffered by the SEC are also hearsay for the additional reason that they do not in any way "further" the aims or goals of the supposed conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). As with the Jump statements discussed earlier, the Chai Statements do not remotely resemble any of the many cases in which courts have categorized statements deemed to be "in furtherance of" a conspiracy. *See, e.g.*, *United States v. Mulder*, 273 F.3d 91, 103 (2d Cir. 2001) ("[S]tatements between coconspirators that ... inform each other as to the progress or status of the conspiracy do further the conspiracy."); *United States v. SKW Metals & Alloys, Inc.,* 195 F.3d 83, 88 (2d Cir. 1999) ("The statements must prompt the listener to respond in a way that promotes or facilitates the carrying out of a criminal activity."); *United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); *United States v. Sanin*, 113 F.3d 1230 (2d. Cir. 1997) ("[E]fforts to recruit [parties]

into the conspiracy [are] 'in furtherance' of the conspiracy because they are intended to achieve the conspiracy's goals."). Not a single Chai Statement proffered by the SEC can be said to have been made "in furtherance" of any alleged conspiracy.

For example,  *See* MIL at 29–30 (citing PX 118a (Ex. HH) *Id.* (citing PX-119 (Ex. JJ)

Exs. KK, LL, OO, PP.

Likewise, the statements at PX 123a-b and PX 124a-b—if taken at face value—are nothing more than *Id.* (citing PX 123a-b (Ex. MM) and PX 124a-b (Ex. NN) Again, these types of statements of "concern"—which, notably, are typically uttered by the SEC whistleblower Myung himself, in

an effort to "set up" his unsuspecting speakers—do not further any purported conspiracy. *See United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980) ("in furtherance" requirement not satisfied by conversation that amounts to no more than idle chatter); *United States v. Birnbaum*, 337 F.2d 490, 495 (2d Cir. 1964) (mere narrative account of past activities not in furtherance of conspiracy); *cf. United States v. Paone*, 782 F.2d at 390–91 (narratives of past events satisfy Rule 801(d)(2)(E) when they apprise coconspirator of progress of conspiracy or are designed to induce his assistance). It is important to note that ███████████████████████████████

███████████████████████████████████████████████████████████████████

Thus, cases that discuss "updating co-conspirators," or the "progress" of the conspiracy, do not apply here. *See United States v. Ruggiero*, 726 F.2d 913, 924 (2d Cir. 1984) (statement to an undercover agent believed to be an actual coconspirator describing three previous murders was "in furtherance of" the conspiracy). Indeed, ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████ Accordingly, the SEC has both failed to prove the existence of any alleged conspiracy and failed to demonstrate that any of the proffered Chai Statements can be said to have been made "in furtherance of" the conspiracy. This renders the Chai Statements inadmissible hearsay.

*Second*, the Chai Statements are not statements against interest under Fed. R. Evid. 804(b)(3). In a civil case, Rule 804(b)(3)(A) permits a hearsay statement to be admitted if: (i) the declarant is unavailable as a witness; and (ii) the statement is "so contrary to the declarant's proprietary or pecuniary interest or has so great a tendency to ... expose the declarant to civil or criminal liability" that "a reasonable person in the declarant's position would have made the statement only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A); *Picard v. Sage Realty*, 2021 WL 6052422, *4 (S.D.N.Y. Dec. 21, 2021). The Supreme Court has emphasized that the determination of whether a particular statement is against interest is to be made considering all of the surrounding circumstances and on a case-by-case basis. *Williamson v. United States*, 512 U.S. 594, 603 (1994); *In re 650 Fifth Avenue and Related Properties,* 2017 WL 6729515 (S.D.N.Y.

June 22, 2017) (applying *Williamson* standard to civil case); *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004), *cert. denied*, 543 U.S. 1079 (2005) (an "adequately particularized analysis" is required).

As an initial matter, there is no evidence that any of the declarants in the Chai statements are "unavailable." A declarant is unavailable for purposes of Rule 804 if, as relevant here, the declarant is "absent from the trial or hearing and the statement's proponent has not been able, *by process or other reasonable means*, to procure the declarant's attendance or testimony." Fed. R. Evid. 804(a)(5)(B) (emphasis added). The SEC offers only the conclusory statement that all the relevant Chai employees in these communications are located in South Korea or Singapore "and have not agreed to testify in this matter" SEC MIL at 28. Yet the SEC proffers no evidence that it has actually sought the testimony of these individuals, in contrast to the many foreign Letters of Request that were previously requested by the parties, and issued by the Court, in this case. *Cf. U.S. v. Casamento,* 887 F.2d 1141, 1170 (2d Cir. 1989) (Government's affidavit detailing a conversation with the responsible Italian extradition official deemed sufficient to demonstrate unavailability at trial). Indeed, even Dan Shin, who is in Korea, has not been proven to be unavailable, because the SEC has not alleged any attempts to secure his availability at trial, or even, to secure alternate forms of his testimony, such as a *de bene esse* deposition. *See also* Order, September 29, 2023, ECF No. 61 (granting the SEC's request to seek the deposition of defendant Do Kwon because "the laws of physics" do not make his appearance "impossible," despite it being highly unlikely that Montenegrin prison authorities would permit Kwon to appear for a deposition). As such, the mere statement by the SEC—without anything more—that the individuals are in a foreign country is insufficient to demonstrate their "unavailability" under Fed. R. Evid. 804.

In addition, the Chai Statement witnesses lack specific personal knowledge as to Chai's utilization of the blockchain, and therefore the proposed statements lack an admissible foundation. Under Fed. R. Evid. 602, a witness without percipient knowledge of an event lacks competency to testify. This requirement of firsthand knowledge has "always" been inherent in the statement

against interest exception embedded in Rule 804. *See United States v. Lang*, 589 F.2d 92, 97-98 (2d Cir. 1978) (reversing conviction where district court admitted hearsay "statement against interest" that lacked sufficient firsthand knowledge under Fed. R. Evid. 602). In essence, Rule 602 trumps Rule 804, and no statement of interest can be offered pursuant to Rule 804 where the witness lacks firsthand knowledge under Rule 602. As mentioned above, ██████████████████

████████████████████████████████████████████████████████████████████████████████████

██████ Defs. MIL at 12–14.[19] Nor does the SEC offer any proof that any of the other speakers in the proffered Chai Statements have any firsthand knowledge about Chai's coding (which is the only way one would know for certain how Chai "works"); in contrast to Paul Kim's extensive testimony in this regard. At a minimum, the Court should require a showing of direct, firsthand knowledge that the Chai code does not run on the blockchain before it should even consider the admissibility of the Chai Statements.[20]

Nor can any of the Chai Statements be said to be against pecuniary or penal interest. There is no suggestion or explanation how any of the statements by Jinny Baek, Gigi Kwon, Brian Jung, or Raghav Rostogi could conceivably be "against" their interest. Nor can these individuals be said to have made a statement against Chai's interest, because none of them are senior enough, and all lack the positional authority, to bind Chai to a statement regarding a topic about which they know nothing about.[21] Accordingly, the Chai Statements as a whole are not against interest, there is no

---

[19] This is the same witness about which this Court has found that a jury would have "reason to question his credibility or view his testimony as lesser in weight." Op. and Order, Dec. 28, 2023, ECF No.149, at 67.

[20] For example, with regard to the statements by Chai Engineer Jihoon Kim, the Court should allow voir dire or require the SEC to lay an adequate predicate demonstrating that Kim's statements are based on firsthand knowledge of the Chai code before the jury is allowed to consider them. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 166 (2d Cir. 1998) (Trial court has considerable discretion to decide whether an adequate foundation has been laid before the introduction of documents).

[21] And with respect to the statements by Dan Shin, even though he has been charged in Korea, the SEC still offers no proof of the nature of these charges, and no evidence indicating how ██████ ████████████████████████████████████████ for example, could be said to be against his interest in the Korea proceedings. *See* SEC MIL at 36–37.

proof that any of the statements are based on firsthand knowledge, and they should be excluded as inadmissible hearsay.

### XIII.   The Court Should Not Give A "Missing Witness" Jury Instruction if Mr. Kwon Does Not Appear At Trial

The SEC asks the Court to give the following "missing witness" jury instruction if Mr. Kwon does not appear at trial: "Prior to trial, the SEC notified Defendants that the SEC intended to call Defendant Do Hyeong Kwon [sic] ("Kwon") as a witness at trial, but Kwon did not appear to testify during the trial. You may, but are not required to, assume that Kwon's testimony would have been unfavorable to Defendant Kwon and Defendant Terraform Labs PTE, Ltd." SEC MIL at 38–39.

The SEC's request should be denied for two reasons. *First*, contrary to the SEC's contention (SEC MIL at 38), in the absence of a missing witness instruction, the jurors will ***not*** be "permitted to infer" that the SEC did not wish to call Mr. Kwon. Defendants agree that the Court should instruct jurors that they may not make such an inference; indeed, Defendants previously suggested that the Court explain to the jury that Mr. Kwon is outside of the United States, will not be present for trial, and that his lack of attendance is not a relevant consideration. Defs. MIL at 5–6. In addition, Defendants do not object to making the instruction even more pointed to address the concern the SEC raises; for example, the Court could instruct the jurors that the SEC would have called Mr. Kwon as a witness if he were present.

*Second*, the SEC's proposed instruction is highly misleading because it suggests that Mr. Kwon's non-appearance is due to his desire not to be present for this civil trial when that is not true. His non-appearance is due to a combination of factors relating to dysfunction in the Montenegrin court system in connection with extradition proceedings relating to two separate criminal cases in Korea and the United States; to the Defendants' knowledge, there has never been an extradition case in Montenegro reversed on appeal *three times*, with the most recent reversal being based on false statements to the lower court by the Minister of Justice. Those facts are not relevant to this trial and would be inflammatory and unfairly prejudicial were they to be disclosed

and explained to the jury (and *all* of them would have to be disclosed). Mr. Kwon attempted to engage in an expedited "summary" extradition proceeding by consenting to extradition to both the United States (to the extent its request complied with Montenegrin law) and Korea. As between the two countries, he argued that Montenegrin law favored extradition to Korea. But his exercise of these fundamental rights, and his continued detention in Montenegro despite his efforts to use the "summary" process, should not be grounds for the SEC to mislead the jury by suggesting that his absence is due to his desire to avoid attending *this* trial. Indeed, the SEC does not cite to, and Defendants have been unable to find, any case law supporting the sweeping proposition that Mr. Kwon's exercise of rights to lawful extradition proceedings renders a missing witness instruction appropriate (and the three appellate reversals would make such case law inapplicable even if it did exist). Accordingly, the Court should deny the SEC's request for a "missing witness" instruction.

### XIV.  Defendants Should Not Be Precluded from Introducing the Risk Disclosure in the Anchor Terms of Service Because it is Relevant to Determining Materiality

This motion should be denied because the risk disclosure language—including that the assets an individual used in the Anchor protocol are highly volatile and could lose their value—in the Anchor Protocol Terms of Service is relevant to the materiality of Defendants' alleged misstatements and omissions regarding the May 2021 depeg of UST. A fact is material if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to buy or sell. *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (*citing Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). Critically, "the touchstone of the inquiry is not whether isolated statements … were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Id.* This "total mix of information" not only includes "information already in the public domain and facts known or reasonably available to the [investors]," but also whether the purported risk was sufficiently disclosed. *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 308–09 (S.D.N.Y. 2020). Likewise, an omission is material "if there is a substantial

likelihood that a reasonable investor would have viewed the disclosure of that fact as significantly altering the total mix of information available to a reasonable investor in deciding whether to buy or sell." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

The Anchor Protocol Terms of Service include warnings of risk to purchasers of UST that are part the "total mix of information." Notably, these Terms of Service specifically warn of "the inherent risks associated with using cryptographic and blockchain-based systems" and that "the markets for these digital assets are highly volatile due to factors including (but not limited to) adoption, speculation, technology, security, and regulation." Defs. Trial Ex. 347 (Ex. WW) (Section 14, "Assumption of Risk"). ███████████████████████████████████████ ██████████████████████ (Decl. of Matthew Thomas Hyde ¶¶ 11–13, 21, ECF No. 84; Decl. of Nader George ¶¶ 13–18, ECF No. 85; Decl. of Arash Vakil ¶¶ 9–11, ECF No. 86), which required them to accept these Terms of Service before doing so. The risk warnings in the Terms of Service are thus part of the "total mix" of information available to these UST purchasers and are therefore relevant to the SEC's claim that they were misled by statements concerning the stability of UST. Moreover, the SEC has alleged that what made UST a security was the SEC's claim that UST was offered together with the Anchor Protocol. It therefore cannot prevent the jury from knowing about the Anchor Protocol's Terms of Service; it cannot rely on the Anchor Protocol to claim that UST was a security but prevent the jury from learning how the protocol worked.

The case cited by the SEC in support of this motion, *United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017), is inapposite. There, the Second Circuit rejected the argument that contractual disclaimers were grounds to overturn a conviction for mail and wire fraud as a matter of law. *See id.* at 95. Here, in contrast, Defendants are not arguing that the Anchor Protocol Terms of Service precludes liability as a matter of law. Rather, Defendants intend to introduce the risk warnings in the Terms of Service to illustrate the "total mix" of information available to purchasers of UST.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiff's Motions *in Limine*.

Dated: March 11, 2024

Respectfully submitted,

/s/ Douglas W. Henkin
**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
Louis A. Pellegrino
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com
david.kornblau@dentons.com
louis.pellegrino@dentons.com

Mark G. Califano
Melissa Gomez-Nelson (admitted *pro hac vice*)
Matthew A. Lafferman (admitted *pro hac vice*)
1900 K Street, NW
Washington, DC 20006-1102
Tel: (202) 496-7500
mark.califano@dentons.com
melissa.gomeznelson@dentons.com
matthew.lafferman@dentons.com

*Counsel for Defendant Terraform Labs Pte. Ltd.*

/s/ David Patton
**KAPLAN HECKER & FINK LLP**
David Patton
Michael Ferrara
Andrew Chesley
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
dpatton@kaplanhecker.com
mferrara@kaplanhecker.com
achesley@kaplanhecker.com

*Counsel for Defendant Do Hyeong Kwon*