# EXHIBIT V

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>  v.<br><br>TERRAFORM LABS PTE LTD. and DO HYEONG KWON,<br><br>         Defendants. | No. 1:23-cv-1346 (JSR) |

## THIRD AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff Securities and Exchange Commission ("SEC") will take the deposition upon oral examination of one or more officers, directors, agents, or other persons who shall be designated to testify on behalf of Defendant Terraform Labs PTE Ltd, ("Terraform") regarding all information known or reasonably available to Terraform with respect to the topics identified in Exhibit A.

The deposition will take place on September 30, 2023 at 9:00 a.m. at the offices of Dentons US LLP, located at 1900 K Street NW, Washington DC 20006. The deposition will be recorded by a stenographer and videographer, and will continue from day to day until completed.

1

Dated:  September 14, 2023
        Washington, DC

                                          /s/ Devon Staren
Devon L. Staren
Laura E. Meehan
Christopher J. Carney
Carina Cuellar
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-5346 (Staren)
starend@sec.gov

## CERTIFICATE OF SERVICE

I certify that on September 14, 2023, I caused the foregoing to be served by email upon counsel of record, at the following email addresses:

> Attorneys for Defendants Terraform Labs PTE Ltd. and Do Hyeong Kwon:
>
> David Kornblau
> David.kornblau@dentons.com
>
> Douglas W. Henkin
> Douglas.henkin@dentons.com
>
> Stephen Senderowitz
> Stephen.senderowitz@dentons.com
>
> Mark Califano
> mark.califano@dentons.com
>
> Nicholas W. Petts
> nick.petts@dentons.com

                                            /s/ Devon Staren

# EXHIBIT A

## DEFINITIONS

As used herein, the words and phrases listed below have the following meanings:

1. "Terra" means Defendant Terraform Labs PTE Ltd, including, but not limited to, parents, predecessors, successors, present or former subsidiaries, including, but not limited to, Terraform Labs Limited, affiliates (including, but not limited to Kernal Labs and/or GaZa Labs), officers (including, but not limited to Do Hyeong Kwon), directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, trade or business names used by any of the foregoing, and/or representatives.

2. "Kwon" means defendant Do Hyeong Kwon.

3. "Jump" refers to Jump Trading, LLC, including, but not limited to, parents, predecessors, successors, present or former subsidiaries, affiliates (including, but not limited to Jump Crypto and/or Tai Mo Shan), officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, trade or business names used by any of the foregoing, and/or representatives.

4. "Chai" refers to Chai Corporation (a company incorporated in South Korea under the Company Registration No. 365-81-01225), including, but not limited to, parents, predecessors, successors, present or former subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, trade or business names used by any of the foregoing, and/or representatives.

5. "Terra Crypto Asset Securities" means the crypto assets that the SEC has alleged constitute securities and security-based swaps in its Complaint, specifically: a) the LUNA token; b) the wrapped LUNA ("wLUNA") token; c) the TerraUSD stablecoin called "UST" and the

1

Anchor Protocol; d) the Mirror Token called "MIR"; and e) the synthetic assets that could be created by the Mirror Protocol, collectively called "mAssets," including, but not limited to, individual mAssets, such as mAAPL and/or mTSLA.

6. "Communication" means any manner or method of disclosure, exchange, transmittal, or receipt of information or opinion, whether oral, written, or electronic, including, but not limited to, written, verbal, or electronic, and shall include Communications received by or sent from any email address used by Terra, and any and all Communications conveyed over any cell phone, chat, messaging application, social media, or other electronic application or function, whether public or private, including, but not limited to Discord, Slack, Signal, WhatsApp, WeChat, Instagram, Twitter, and/or Telegram.

7. "Concerning," "reflecting," or "relating to" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing, or reflecting. A request that asks for Documents concerning, reflecting, or relating to a Communication includes, but is not limited to, the Communication itself and any notes or written memorialization of the Communication.

8. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement.

9. "Relevant Period" shall mean the period between January 1, 2018 and the present and shall apply to all topics listed below unless otherwise noted.

**TOPICS**

1. Terra's corporate structure, ownership, and office locations.

2. Terra's executives, employees, contractors, and their duties, compensation, locations, and reporting lines.

3. Kwon's role at Terra, including, but not limited to, his positions, duties, compensation, and control over Terra decisions, activities, transactions, and/or statements.

4. Terra's financial condition and operations, including, but not limited to, any and all income and/or revenue from transactions involving Terra Crypto Asset Securities, Terra's use of such income and/or revenue, Terra Crypto Asset Securities retained or held by Terra, and all bank accounts, digital wallets, and/or other locations where Terra maintained company assets.

5. All transfers from Terra-controlled digital wallets to Sygnum Bank AG from May 2022 to the present and all withdrawals from Sygnum Bank AG by Terra, including Kwon or any Terra employee, officer, or agent, from May 2022 to the present.

6. Terra's marketing, promotion, and solicitation of investments in Terra Crypto Asset Securities, including, but not limited to: Terra's public statements in interviews, social media posts, press releases, chats, blogs, videos, and/or advertisements; Terra's marketing and promotional materials; and Terra's communications with purchasers, borrowers, investors, and/or potential investors of Terra Crypto Asset Securities.

7. Details, negotiations, and circumstances of Terra's transactions in Terra Crypto Asset Securities with purchasers, borrowers, investors, and/or potential investors, including direct transactions, transactions through crypto asset trading platforms, and transactions effected through any website developed and/or operated by Terra.

8. Terra's efforts to develop, consult, create, support, maintain, promote, upgrade, operate, and grow the Terra ecosystem, including, but not limited to, efforts concerning the Terra blockchain (Columbus 1-5), Terra Crypto Asset Securities, associated protocols, algorithms, and smart contracts, and communications with purchasers, borrowers, investors, and/or potential investors about such efforts.

9. Terra's efforts to develop, propose, vote, and pass governance proposals, including communications with any owners or operators of the Terra blockchain validators and/or validator nodes, and communications with purchasers, borrowers, investors, and/or potential investors about such efforts.

10. Terra's efforts to promote, market, support, and fund the Anchor Protocol and communications with purchasers, borrowers, investors, and/or potential investors about such efforts.

11. Terra's efforts to promote, market, support, and increase use of the Mirror Protocol, including, but not limited to, Terra's practices of airdropping MIR tokens to third parties, posting instructional materials online, operating a website to offer and sell MIR tokens and transactions involving mAssets, and communications with purchasers, borrowers, investors, and/or potential investors about such efforts.

12. Terra's efforts to develop trading markets for Terra Crypto Asset Securities, including, but not limited to, details, negotiations, and circumstances concerning Terra's efforts to make Terra Crypto Asset Securities available for sale on crypto asset trading platforms (including, but not limited to, Binance, KuCoin, Bittrex, Gopax, Huobi, Kraken, OKX, FalconX, Coinlist, and/or Coinbase), the development, operation, and maintenance of smart contracts, bridges, and/or protocols (such as Shuttle and/or Wormhole) to allow versions of Terra Crypto

Asset Securities to trade on blockchains other than Terra's blockchain (including wLUNA), and communications with purchasers, borrowers, investors, and/or potential investors regarding those efforts.

13. Terra's efforts to "improve liquidity" of Terra Crypto Asset Securities, including, but not limited to, Terra's trading of Terra Crypto Asset Securities (directly, and through Terra "bots"), agreements and/or partnerships with third parties in connection with any listing, purchase, sale, transfer or distribution of Terra Crypto Asset Securities to "market makers," including, but not limited to Jump, Wintermute Trading LTD, and/or Skynet Trading, and communications with purchasers, borrowers, investors, and/or potential investors concerning such efforts.

14. Terra's maintenance, control, and use of the following Twitter accounts: @terra_money; @LFG_org; @stablekwon; @mirror_protocol, and/or @anchor_protocol.

15. Terra's establishment, maintenance, preservation, purpose, control, and use of certain websites and all pages related to the website, including: websites ending in "terra.money," such as docs.terra.money, station.terra.money, bridge.terra.money, finder.terra.money; www.anchorprotocol.com; terra.mirror.finance, and/or www.mirror.finance.

16. Terra's maintenance and use of email addresses ending in @terra.money, @anchorprotocol.com, and/or @lfg.org to communicate with others including, purchasers, borrowers, investors, potential investors, and/or other third parties.

17. Terra's policies, procedures, and practices as to any restrictions and/or limitations, if any, on use or resale of Terra Crypto Asset Securities by purchasers, borrowers, investors, and/or potential investors of Terra Crypto Asset Securities.

18. Terra's policies, procedures, and practices in restricting or limiting the timing and/or distribution of Terra Crypto Asset Securities to purchasers, investors, and/or borrowers of Terra Crypto Asset Securities.

19. Terra's association with Chai, and information relating to the formation, development, and operation of the Chai business within Terra, Terra's separation from Chai, the basis for the separation, and the ongoing role of Terra officers and employees with Chai after the separation, including Kwon's ongoing role with Chai.

20. Any communications, documents, and information concerning Korean regulatory and/or legal restrictions on Chai's ability to process payments using blockchain technology, including, but not limited to, meetings, notices, warnings, and/or applications to regulators concerning Chai's use of blockchain technology.

21. Terra's representations concerning Chai's use of the Terra blockchain to process and settle its transactions, including, but not limited to, communications with purchasers, borrowers, investors, and/or potential investors in Terra Crypto Asset Securities, marketing materials, investors decks, public statements and interviews, and the basis for those representations.

22. Chai transactions recorded on the blockchain, including Terra's maintenance, control, operation, purpose, and use of the LP server, the source(s) of its information concerning Chai transaction data, the Terra wallet addresses, and the source and use of the KRT used in the blockchain transactions associated with Chai.

23. Terra's communications, agreements, and understandings concerning Chaiscan and/or DSRV Labs.

24. Terra's representations concerning the price of UST and its connection to the fiat currency of the United States, including, but not limited to, representations concerning the effectiveness of the algorithm linking LUNA and UST during and following the temporary UST "depeg" from the U.S. dollar in May 2021.

25. Terra's efforts to influence the price of UST including, but not limited to, purchasing and/or burning UST in May 2021.

26. Terra's communications, agreements, and understandings with Jump (and persons associated with Jump, including, but not limited to, William DiSomma, Kanav Kariya, Benjamin Huan, Kevin Liu, Michael Setrin, and/or Takashi Fujishima) concerning Jump's transactions in Terra Crypto Asset Securities, including, but limited to, efforts by Jump to influence the price of UST by purchasing and/or burning UST in May 2021 and Terra's agreement to modify the requirements for Jump's receiving LUNA under existing agreements.

27. The development, creation, control, funding, financial condition, and operation of the Luna Foundation Guard, including, but not limited to the Master Services Agreement between Terra and the Luna Foundation Guard dated January 10, 2022, Terra's relationships, agreements, and communications with other members and/or participants in the Luna Foundation Guard, and electronic or digital wallets held in the name of, for the benefit of, on behalf of, or controlled by the Luna Foundation Guard (individually, or as part of a group of signers (e.g., a "multi-sig wallet")) at any bank, securities institution, or digital asset trading platform or other third party service.

28. Terra's efforts to defend UST's peg in May of 2022, and its public statements and communications with purchasers, borrowers, investors, and/or potential investors concerning such efforts.

29. Any communications concerning the application of U.S. securities laws to Terra, including whether any of the Terra Crypto Asset Securities constitute securities under U.S. securities laws.