**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. 23 Civ. 1346 (JSR) |
| v. | |
| TERRAFORM LABS PTE. LTD. and DO HYEONG KWON, | Hon. Jed S. Rakoff |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF TERRAFORM LABS PTE. LTD.'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. EDMAN IN HIS SUPPLEMENTAL EXPERT REPORT**

1

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.     Dr. Edman's Failure to Address the Recently Discovered Existence of Other Chai Components in His Supplemental Report Demonstrate His Opinion as Speculative and Unreliable ............................................................................................................ 3

II.    The Opinions in Dr. Edman's Supplemental Report Constitute Improper Expert Opinion ........................................................................................................................ 5

     A.    The Opinions in Dr. Edman's Supplemental Report Are an Improper Evaluation of Mr. Kim's Credibility ............................................................... 6

     B.    Dr. Edman's Supplemental Report Should Be Excluded Because It Presents Impermissible Narrative Testimony ............................................. 7

     C.    Dr. Edman's Supplemental Opinions Should Be Excluded Because He Is Unqualified to Analyze Mr. Kim's Testimony Regarding Term-of-Art Uses of the Terms "Processing" and "Settlement" ................................... 10

III.   Raj Unny Should be Permitted to Testify as to the Definitions of "Processing" and "Settlement" .............................................................................................................. 11

CONCLUSION .................................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Elysium Health-ChromaDex Litig.*,
    No. 17 Civ. 7394 (LJL), 2022 WL 421135 (S.D.N.Y. Feb. 11, 2022) ...................................11

*In re Fosamax Products Liability Litigation*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)...................................................................................11

*LinkCo, Inc. v. Fujitsu Ltd.*,
    No. 00 Civ. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ..................................7

*Navigators Ins. Co. v. Goyard, Inc.*,
    608 F. Supp. 3d 44 (S.D.N.Y. 2022).......................................................................................6

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)................................................................................................6, 7

*Reno v. Cnty. of Putnam*,
    No. 16 Civ. 5179 (LMS), 2020 WL 206466 (S.D.N.Y. Jan. 14, 2020)...................................7

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)...................................................................................11

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013).....................................................................................8

*United States v. Maxwell*,
    No. 20 Cr. 330, 2021 WL 5283951 (S.D.N.Y. Nov. 11, 2021) ...............................................6

**Other Authorities**

Federal Rule of Civil Procedure 60(b)...........................................................................................1

Dr. Edman filed a supplemental report which purports to respond to percipient witness Paul Kim's testimony that Chai used the Terra blockchain to process and settle its transactions and which uses—contrary to Dr. Edman's previous statements and the SEC's previous position—technical definitions of the terms "processing" and "settlement." Defendants Terraform Labs Pte. Ltd. ("TFL") and Kwon Do Hyeong respectfully submit this memorandum of law in support of their renewed motion to exclude the opinions and testimony of Dr. Matthew Edman in their entirety pursuant to Federal Rule of Civil Procedure 60(b) or, in the alternative, to exclude the opinions and testimony of Dr. Edman raised in his February 27, 2024 Supplemental Expert Report ("Supplemental Report"), and to permit Raj Unny to testify as to the technical definitions of "processing" and "settlement" in response to these newly-raised issues by the SEC.

## INTRODUCTION

On January 15, 2024, Chai's former head of engineering, Paul Kim, testified under oath in Korea pursuant to a letter of request issued by this Court on August 15, 2023. Mr. Kim's testimony, which is based on firsthand personal knowledge (that was not available when the defendants originally moved to exclude Dr. Edman's testimony), demonstrates that Dr. Edman's opinion should be excluded in its entirety as speculative and unreliable. Mr. Kim testified about his personal knowledge of the internal workings of the Chai payment system and the LP Server based on the fact, among others, that he wrote the code for the LP Server.[1] Furthermore, Paul Kim testified to facts that completely undermine and expose Dr. Edman's "expert" report as unfounded opinion—given that Mr. Kim testified based on his firsthand personal knowledge that Chai processed and settled transactions on the blockchain,[2] that the LP Server created Terra wallets for

---

[1] *See* Ex. 1, Translation of Transcript of Testimony of Witness Hanju "Paul" Kim ("Kim Tr.") at 34 ("Q. In fact, you created the LP server, correct? A. Yes, I wrote the code."). The SEC served a copy of a certified translation of the Kim Transcript on Defendants on February 23, 2024.

[2] *See, e.g.*, Kim Tr. at 79 ("Q. To sum up, Chai utilized the blockchain technology to process and settle transactions through partnership with Terraform Labs. Is this understanding correct? A. Yes, correct."), at 25 ("[Chai] was 100% linked to the Terra blockchain in the backend."); at 26 ("I rigorously developed the algorithm and I personally made enormous efforts to link it to the Terra blockchain from the beginning, so it should be seen as one whole thing in its entirety, included in the whole payment process."), at 70 ("Q: Were the block chain transactions that were

new Chai users,[3] and that the LP Server executed transactions on behalf of Chai users and merchants.[4] As previously briefed and as Dr. Edman testified, Dr. Edman never examined the actual components of the Chai payment system (about which he admitted Mr. Kim would have personal knowledge), the LP Server itself, the data inputs, or who provided these inputs into the LP Server. In contrast, Mr. Kim's unrebutted factual testimony that the LP Server was not a "closed system" of wallets (and in fact, processed and settled transactions on the Terra blockchain) makes clear that the previously identified flaws in Dr. Edman's opinion render his opinion entirely speculative.

Even if the Court does not exclude Dr. Edman's opinion in its entirety, Dr. Edman should be precluded from testifying as to the opinions in his Supplemental Report because it constitutes improper expert testimony. His supplemental opinions are inadmissible for three reasons: (1) His critique of Mr. Kim's testimony improperly evaluates a fact witness's credibility; (2) his opinion is an attempt to interpret and re-write the factual narrative of Mr. Kim's testimony in a manner that does not require specialized knowledge, and is thus outside the purview of expert testimony and is inconsistent with the actual percipient testimony in this case; and (3) he is unqualified to opine on Mr. Kim's testimony because Mr. Kim uses the terms "processing" and "settlement" in a technical manner—and Dr. Edman admitted that he lacks the expertise to opine on the technical uses of those terms. Additionally, Raj Unny should be permitted to testify as to the technical

---

generated in accordance with the Chai transactions real transactions? Or were they a mere copy of the records?  A: They were real KRT transactions, and not a mere copy.").

[3] Kim Tr. at 68 ("Q. When there is a new Chai user, does the LP server create a Terra wallet for that new Chai user on the blockchain? A. Yes. It calls a certain LP-related module ClaimDON function to launch, open, launch a Terra wallet connected to the Chai user on the blockchain.").

[4] *See*, *e.g.*, Kim Tr. at 66 ("Q. Therefore, when the user makes a payment, or conducts a transaction, or does the top-up, which you mentioned, using the Chai app, Chai app's API sends over the data needed to conduct a blockchain transaction in the equivalent amount to the endpoint on the LP server side. A. Yes, correct.").

definitions of "processing" and "settlement" because Mr. Kim's testimony, combined with the SEC's allegations, places the technical meanings of these terms squarely at issue.

## ARGUMENT

### I. Dr. Edman's Failure to Address the Recently Discovered Existence of Other Chai Components in His Supplemental Report Demonstrate His Opinion as Speculative and Unreliable

Dr. Edman's failure to address how his opinions account for the newly developed evidence concerning the true operation of the Chai components renders his entire opinion speculative and unreliable. Dr. Edman's opinion concludes that because "the purported Chai transactions on the Terra blockchain represented transfers between wallet addresses controlled by Terraform Labs," the "purported Chai user transactions occurred within a 'closed system' of Terra blockchain wallet addresses," "rather than the processing and settlement of Chai transactions between Chai users and merchants." Ex. C to Defs' Mem. in Supp. of Defs' Mot. to Exclude the Opinions and Testimony of Dr. Matthew Edman ("Edman Daubert Mot."), Corrected Expert Report of Dr. Matthew J. Edman ("Edman Report") ¶ 11(d), ECF No. 97-2. But Dr. Edman lacks sufficient data upon which to base his opinions.  For example, Dr. Edman admitted that he did not review "any source code repositories" from Chai itself, "any source code or systems from Chai," and lacked knowledge of how Chai processed a user's purchase from a merchant. Ex. D to Edman Daubert Mot., September 20, 2023 Dep. Tr. of Matthew J. Edman ("Edman Dep. Tr"). at 125:05–126:05, ECF No. 97-3. He reviewed only "what the server would do based on certain input[s]" but he never received the record of any actual inputs (*id.* at 98:13–100:06), he does not know who or what provided inputs, and he "would just be speculating" as to whether the LP Server was receiving inputs from humans or applications. *Id.* at 149:13–150:08.

Mr. Kim's recent testimony, during which he was subject to extensive cross-examination, demonstrates that the data Dr. Edman admitted he did not review contradicts Dr. Edman's opinion and the premise for it (*i.e.*, that Dr. Edman could opine as he did without ever reviewing the data). Mr. Kim testified that other components of the Chai system sent information to the LP Server for

execution on the blockchain and that Chai was *not* a "closed system." Specifically, Mr. Kim confirmed that the LP Server was not a closed system of wallets that replicated transactions that did not occur, but instead, created a Terra wallet for every new Chai user to use to execute transactions onto the blockchain. Kim Tr. at 68 ("Q. When there is a new Chai user, does the LP server create a Terra wallet for that new Chai user on the blockchain? A. Yes. It calls a certain LP-related module ClaimDON function to launch, open, launch a Terra wallet connected to the Chai user on the blockchain."). And Mr. Kim confirmed that the LP Server executed transactions on behalf of actual Chai users *only* when Chai users directed Chai to make a transaction:

> Q. Therefore, when the *user* makes a payment, or conducts a transaction, or does the top-up, which you mentioned, using the Chai app, Chai app's API sends over the data needed to conduct a blockchain transaction in the equivalent amount to the endpoint on the LP server side.
>
> A. Yes, correct.
>
> Q. Item e. What has been explained so far is only a rough overview, but this process kicks in every time transactions occur on the Chai app. This kind of process. Is this correct?
>
> A. Yes.
>
> Q. Without such input from the Chai app, the LP server is unable to execute a blockchain transaction that is equivalent to the transaction on the Chai app, correct?
>
> A. Yes.
>
> …
>
> Q. Item g. When a *customer* uses the Chai app to purchase something from a merchant, the customer uses the Chai app. In a normal condition, the LP server executes a corresponding blockchain transaction within a few seconds, right? In a normal condition without any failure.
>
> A. Yes, yes, correct.

Kim Tr. at 66 (emphasis added). Mr. Kim also confirmed throughout his testimony "that Chai utilized the blockchain technology to process and settle transactions." *Id*. at 79; *see also*, *e.g.*, *id.* at 23 ("Chai and Terraform were in a collaborative relationship where transactions occurring on

Chai were generated on the Terra blockchain as KRT transactions."), 25 ("[Chai] was 100% linked to the Terra blockchain in the backend."), at 26 ("I rigorously developed the algorithm and I personally made enormous efforts to link it to the Terra blockchain from the beginning, so it should be seen as one whole thing in its entirety, included in the whole payment process."), at 38 ("As for the LP server, Chai's API server, through the LP module … . It is actually the same question. It was there because the content that was passed on through the LP module, through the LP dispatcher to the LP server was processed on the Terra blockchain."), at 70 ("Q: Were the block chain transactions that were generated in accordance with the Chai transactions real transactions? Or were they a mere copy of the records?  A: They were real KRT transactions, and not a mere copy.").

This newly developed, first-hand evidence confirms that Dr. Edman's analysis is speculative and unreliable. Despite never reviewing the LP Server, the inputs that were required for the LP Server to run, or other components of Chai, Dr. Edman speculates about how the entire system operated. Mr. Kim, who not only had access to everything Dr. Edman did not, but was one of its creators, testified under oath, and subject to cross-examination, about the operation of the system. Dr. Edman does not and cannot account for that testimony in his opinion. In light of Mr. Kim's testimony, Dr. Edman's opinions amount to "subjective belief or unsupported speculation" and must be excluded under *Daubert*. *See*, *e.g.*, *Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 48–50 (S.D.N.Y. 2022) (striking expert report for, among other things, impermissible interpretations and theories concerning an insurance contract).

## II.   The Opinions in Dr. Edman's Supplemental Report Constitute Improper Expert Opinion

The opinions offered in Dr. Edman's supplemental report should be excluded as improper expert testimony for three reasons: (1) Dr. Edman improperly opines as to the credibility of a fact witness (Mr. Kim); (2) Dr. Edman's evaluation of Mr. Kim's testimony is being presented for the sole purpose of constructing a factual narrative that does not require any specialized knowledge, is outside the purview of an expert witness, and is inconsistent with the actual testimony; and (3)

Dr. Edman tries to evaluate Mr. Kim's testimony about the use of "processing" and "settlement" in a financial payment system despite having admitted that he is unqualified to do so.

### A.    The Opinions in Dr. Edman's Supplemental Report Are an Improper Evaluation of Mr. Kim's Credibility

The Second Circuit "has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005). "[T]hat is, expert testimony is inadmissible if it 'comment[s] directly, under the guise of expert opinion, on the credibility of trial testimony from' specific fact witnesses." *United States v. Maxwell*, No. 20 Cr. 330, 2021 WL 5283951, at *4 (S.D.N.Y. Nov. 11, 2021). Such testimony is inadmissible because it "'undertakes to tell the jury what result to reach,' and 'attempts to substitute the expert's judgment for the jury's.'" *Nimely,* 414 F. 3d at 398 (citations omitted).

Dr. Edman's Supplemental Report is replete with assertions about Mr. Kim's credibility. This is most evident in the section of his opinion in which he asserts (without evidence) that Mr. Kim's "testimony regarding Chai merchant transactions on the Terra blockchain prior to December 2019 is *vague and unsupported* by the evidence." Ex. 2, Supplemental Report ("Supp. Report"), Section IV (emphasis added); *see also id.* ¶¶ 30–37. Indeed, this section concludes with the suggestion—anchored to nothing but Dr. Edman's *ipse dixit*—that Mr. Kim's testimony that "[t]empura was never once used" is not true. *Id.* ¶ 37 ("[E]ven if Mr. Kim's assertion that '[t]empura was never once used' *were true*") (emphasis added). Dr. Edman also expends considerable effort asserting that Mr. Kim's confirmation that "Chai utilized the blockchain technology to process and settle transactions through partnership with Terraform Labs" was not true based on other aspects of Mr. Kim's testimony. *Id.* ¶ 24 n.8.

These opinions are implicit or outright judgments as to Mr. Kim's credibility, and therefore render Dr. Edman's Supplemental Report impermissible. Courts in this district have found similar opinions impermissible. *See Reno v. Cnty. of Putnam*, No. 16 Civ. 5179 (LMS), 2020 WL 206466, at *2 (S.D.N.Y. Jan. 14, 2020) (expert opinion that testimony was "inconsistent and conflicted"

was improper because it constitutes a "personal assessment of the credibility of another witness's testimony"); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (expert opinion that testimony was "unclear and at times contradictory" opined as to the credibility of the evidence and thus was not proper topic for expert testimony). The opinions in the Supplemental Report should likewise be excluded.

**B.      Dr. Edman's Supplemental Report Should Be Excluded Because It Presents Impermissible Narrative Testimony**

Dr. Edman's attempt to parse and rewrite Mr. Kim's testimony does not require specialized knowledge, is outside of the purview of his role as an expert witness, and is inconsistent with Mr. Kim's testimony. "Experts are not percipient witnesses …. It is therefore inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story.'" *Scentsational Techs., LLC v. Pepsi*, Inc., No. 13 Civ. 8645 (KBF), 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *aff'd*, 773 F. App'x 607 (Fed. Cir. 2019); *see also S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) ("Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. Mere narration thus fails to fulfill *Daubert's* most basic requirements.").

The Supplemental Report is an attempt to rewrite the under-oath testimony of a fact witness who helped create the Chai payment system—*the only witness in this case with firsthand knowledge of Chai's systems*—into the narrative the SEC wishes it was, but is not. For example, Dr. Edman completely recasts and misrepresents Mr. Kim's testimony as to Chai's ability to process transactions when the Terra blockchain was down. Dr. Edman asserts that "Mr. Kim's testimony confirmed that Chai was able to process transactions without the Terra blockchain" and that Mr. Kim "took issue with the suggestion of Chai *not* being able to process and settle transactions without the Terra blockchain." Supp. Report ¶ 20 (emphasis in original). Dr. Edman presents this statement as meaning that the blockchain was not involved in processing and settling transactions on Chai.

7

But Dr. Edman ignores and omits testimony by Mr. Kim that explains that Chai was able to process transactions while the LP Server and/or Terraform blockchain was offline by queuing transactions for processing once everything was back online. When asked how transactions would be processed when the LP Server was down, Mr. Kim explained that he "made queue layers on both sides for what is called durability in English of the content" and that when "failure situations arise, in computer engineering, we use such content structure or architecture so that the content would not be lost and so that KRT transactions can catch up with all content on Chai's ledger information once the abnormal situation is resolved—this was the design by which it operated." Kim Tr. at 42–43.[5]

Another example of this problem is Dr. Edman's mischaracterization and selective quotation of the conversation between Mr. Kim and DevOps engineer Etienne Napoleone. Dr. Edman highlights narrow sections of Mr. Kim's testimony stating Mr. Kim "suggested that the LP Server 'replicated' Chai transactions onto the Terra blockchain for 'stability' and 'data accessibility' reasons and so that 'people who participate in the blockchain can check and verify its accuracy.'" Dr. Edman then concludes, based on these assertions, that "[t]his would still be consistent with my opinion that Chai transactions were not processed and settled on the Terra blockchain." Supp. Report at 17 n.5.

---

[5] Mr. Kim later testified to the exact same process in response to a question about transactions when the Terra blockchain was down:

> Among what I said earlier, there is the LP queue on the Chai side, which plays the WAL function. They get stored there first, and the LP server receives such content as long as the LP server is in operation. I mean, the blockchain may have stopped operating, but that does not mean that the LP server stopped operating. So, the LP server receives such content in real time; and there is this queue layer inside the LP server, which ensures that the content is stored and not lost when the blockchain faces problems; and the content gets stored there. And then, when the blockchain re-operates, the process resumes: the content gets converted to multisend and gets uploaded.

*Id*. at 61.

However, not only is language cited by Dr. Edman benign,[6] but in declaring Mr. Kim's testimony to be consistent with his opinion, Dr. Edman completely ignores Mr. Kim's explicit under-oath testimony on the same  the Slack conversation with Mr. Napoleone (see Exhibit C to Kim Tr. (Chat between Paul Kim and Etienne Napoleone), ECF No. 87-6) to *the opposite* of Dr. Edman's conclusion—that the Chai transactions *were* processed on the blockchain:

> Q. From an engineer's point of view, does the word "replicate" have a different meaning from "copy" in layman's terms?
>
> A. Yes. From an engineering standpoint, the word would not be understood as simple duplicating or copying. The word would be understood to entail the purpose of enhancing stability, coordination in the face of failure, and accessibility.
>
> Q. Item c. Were the blockchain transactions that were generated in accordance with the Chai transactions real transactions? Or were they a mere copy of the records?
>
> A. *They were real KRT transactions, and not a mere copy*.
>
> Q. In that case, is it true that certain value, value was transferred between the user's wallet and the merchant's wallet, in other words, an account of some sort?
>
> A. *Yes. They are transfer records of KRT token stablecoins*.
>
> Q. Is it correct that, using blockchain technology, an accurate ledger about various information, such as buy, discount, refund, reward, and merchant payment, was gained from Chai?
>
> A. Yes, from Chai. From Chai.
>
> Q. Thanks to, by using such blockchain technology?
>
> A. *Yes, yes, yes, it is correct that it was used*.

Kim Tr. at 69–70 (emphasis added).

---

[6] Mr. Kim's testified that his reference to replication was "database jargon" for "database replication," "to enhance the stability of certain data, as well as failure response, coordination in the face of failure, and data accessibility, and things like that. Storing the content in multiple databases for such purposes is described as replicating. This is the intent behind what I said there." Kim Tr. at 69.

These examples show that the opinions in the Supplemental Report are impermissible "factual narrative based upon record evidence." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). Courts have excluded expert opinions that "merely recite[] facts that other witnesses have firsthand knowledge of and 'propound[s] a particular interpretation of' those facts" on the grounds that such testimony does not address technical questions difficult for jury to comprehend. *In re Elysium Health-ChromaDex Litig.*, No. 17 Civ. 7394 (LJL), 2022 WL 421135, at *29 (S.D.N.Y. Feb. 11, 2022). Dr. Edman's attempts are particularly problematic because he does not accurately recite Mr. Kim's testimony. The interpretation of Mr. Kim's testimony and determinations about his credibility are within the purview of a layman and do not require expert testimony. Mr. Kim's testimony should thus "be presented to the jury directly" and Dr. Edman must "not be permitted to merely read, selectively quote from, or 'regurgitate' the evidence" in providing his own expert testimony. *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). As such, the opinions in the Supplemental Report should be precluded.

### C.    Dr. Edman's Supplemental Opinions Should Be Excluded Because He Is Unqualified to Analyze Mr. Kim's Testimony Regarding Term-of-Art Uses of the Terms "Processing" and "Settlement"

Unlike Dr. Edman, whom the SEC has expressly disclaimed is using "processing" and "settlement" as a term of art (Mem. in Opp. to Defs Motion to Exclude the Opinions and Testimony of Dr. Matthew Edman at 17, ECF 110), Mr. Kim's testimony reflects that he *is* using technical definitions of both terms. For example, Mr. Kim explained that all information related to "settlement with merchants" was "passed on to the LP server, which then makes associated KRT transactions." Kim Tr. at 36. Mr. Kim later expounded on this explanation when asked about the relationship between the LP Server and Chai, stating that "the content that was passed on through the LP module, through the LP dispatcher to the LP server was *processed* on the Terra blockchain." *Id*. at 39 (emphasis added). Mr. Kim went on to explain how the LP Server was designed to "process" transactions onto the Terra blockchain "within a few seconds," *id*. at 42, and confirmed that the Terra blockchain reflected the same "settlement information" as on Chai's internal ledger.

*Id.* at 71. It is thus clear that Mr. Kim was using the terms processing and settlement as they are used in the financial industry in his personal experience working as a software engineer for Chai, a payments system.

Although Dr. Edman seeks to opine as to Mr. Kim's use of the technical definitions of processing and settlement, he lacks the expertise in financial payment systems or payment processes necessary to do so. Mem. in Supp. of Defs Motion to Exclude the Opinions and Testimony of Dr. Matthew Edman at 8–9, ECF No. 97. Indeed, the SEC previously conceded that Dr. Edman did *not* seek to opine about the technical definitions of processing and settlement. Opinion and Order at 24, ECF No. 149. That should end the matter: Dr. Edman's lack of expertise precludes him from opining as to Mr. Kim's use of the technical definitions of processing and settlement. For instance, Dr. Edman tries to address Mr. Kim's discussions of information related to "settlement with merchants" being "passed on to the LP server, which then makes associated KRT transactions." Supp. Report ¶ 16. Dr. Edman also attempts to undertake detailed analyses of several out-of-context answers by Mr. Kim about "settlement" on the Terra blockchain. *Id.* ¶ 23. Notably, Dr. Edman spends significant time trying to evaluate and reject Mr. Kim's under-oath confirmation that "Chai utilized the blockchain technology to process and settle transactions through partnership with Terraform Labs" *Id.* ¶ 24 n.8. But in each case, Dr. Edman is trying to contradict Mr. Kim's use of technical definitions of processing and settlement despite his and the SEC's concessions that he has no qualifications as to that subject. As a result, Dr. Edman's opinions regarding Mr. Kim's testimony must be excluded.

### III. Raj Unny Should be Permitted to Testify as to the Definitions of "Processing" and "Settlement"

In light of Mr. Kim's recent testimony and Dr. Edman's Supplemental Report, Defendants renew their request that Raj Unny be permitted to testify as to the technical definitions of "processing" and "settlement." Mr. Unny is an expert in the field of financial payment systems, developing these systems, and processing and settlement on financial payment systems. Defendants Opp. to the Motion to Exclude the Testimony and Opinions of Raj Unny at 7–8, ECF

No. 109. Mr. Unny opined that "processing and settlement" has various meanings in the specific context of financial payment systems. Ex. A to Defs' Opp. to the Mot. to Exclude the Testimony and Opinions of Raj Unny ("Unny Opp."), Expert Report of Raj Unny ("Unny Report") ¶¶ 53–54, ECF No. 109-1. Mr. Kim's testimony, combined with the SEC's allegations (Am. Compl. ¶¶ 5, 118, 121, 126) and Dr. Edman's new opinions, places the technical meanings of these terms squarely at issue, regardless of whether the Court views Mr. Unny as qualified in blockchain analysis.[7] Mr. Unny should thus be permitted to testify about that topic.

## <u>CONCLUSION</u>

Paul Kim's testimony was given under oath and was subject to vigorous cross-examination. His testimony completely contradicts the SEC's claims relating to Chai. The law is clear that a proposed expert cannot be used to contradict a percipient fact witness's testimony, no matter how much the SEC may dislike that testimony. Defendants thus respectfully request that the Court exclude the opinions and testimony of Dr. Matthew Edman in their entirety or, in the alternative, exclude the opinions and testimony set forth in the Supplemental Report.

---

[7] Although Mr. Unny's opinions as to processing and settlement do not involve blockchain analysis, even if they did, Mr. Unny is sufficiently qualified to the specific subject matter raised by Mr. Edman's new opinions to rebut those new opinions. Notably, Mr. Kim's testimony corroborates Mr. Unny's analysis that there were components in the Chai payment system other than the LP Server (Unny Report ¶¶ 35–39) and that Dr. Edman's failed to review both these components and how the LP Server functions in the broader Chai payment system. *Id.* ¶¶ 35–39, 40–47. Mr. Kim's testimony also confirms Mr. Unny's opinion that Dr. Edman's failed to consider the presence of a custodial wallet system in which the LP Server would hold keys on behalf of its users. *Id.* ¶¶ 48–51. The fact that Mr. Unny's analysis was corroborated by a fact witness who discussed both blockchain and non-blockchain issues with respect to the design and operation of Chai further demonstrates that Mr. Unny's opinions fall within the purview of a battle of experts that should be decided by cross-examination at trial rather than exclusion.

Date: March 12, 2024                    Respectfully submitted,

                                        */s/Mark G. Califano*

                                        **DENTONS US LLP**
                                        Douglas W. Henkin
                                        David L. Kornblau
                                        Louis A. Pellegrino
                                        1221 Avenue of the Americas
                                        New York, New York 10020
                                        Tel: (212) 768-6700
                                        douglas.henkin@dentons.com
                                        david.kornblau@dentons.com
                                        louis.pellegrino@dentons.com

                                        Mark G. Califano
                                        Melissa Gomez-Nelson (admitted *pro hac vice*)
                                        Matthew A. Lafferman (admitted *pro hac vice*)
                                        1900 K Street, NW
                                        Washington, DC 20006
                                        Tel: (202) 496-7500
                                        mark.califano@dentons.com
                                        melissa.gomeznelson@dentons.com
                                        matthew.lafferman@dentons.com

                                        *Counsel for Defendant Terraform Labs Pte. Ltd.*

                                        */s/ David Patton*

                                        **KAPLAN HECKER & FINK LLP**
                                        David Patton
                                        Michael Ferrara
                                        Andrew Chesley
                                        350 Fifth Avenue, 63rd Floor
                                        New York, New York 10118
                                        Tel: (212) 763-0883
                                        dpatton@kaplanhecker.com
                                        mferrara@kaplanhecker.com
                                        achesley@kaplanhecker.com

                                        *Counsel for Defendant Do Hyeong Kwon*

13

## **CERTIFICATE OF SERVICE**

I, Mark G. Califano, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on March 12, 2024.

*/s/ Mark G. Califano*
Mark G. Califano

14