UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | No. 1:23-cv-1346 (JSR) |
| TERRAFORM LABS PTE LTD. and DO HYEONG KWON, | |
| Defendants. | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

Motion *in Limine* No. 1: To Allow Adverse Inferences Against Defendants ................................1

    A.  As Conspirators Whose Interests are Aligned with Defendants, DiSomma and
        Kariya's Testimony Should be Admitted and an Adverse Inference Instruction is
        Warranted...........................................................................................................................3

           i.        Defendants, DiSomma, and Kariya Shared a Close Business Relationship
                  and Conspired Together............................................................................3

           ii.      DiSomma and Kariya's Interests are Perfectly Aligned with Defendants...5

           iii.     DiSomma and Kariya Play a Significant Role in the Litigation.................6

    B.  As a Former Terraform Employee, Whose Interests are Aligned with Defendants,
        Kuan's Testimony Should be Admitted and an Adverse Inference Instruction is
        Warranted...........................................................................................................................7

Motion *in Limine* No. 2: To Admit Jump's Statements (Plaintiff's Exhibit 68) Into Evidence ......9

    A.  PX 68 is Admissible as a Non-Hearsay Statement of a Co-Conspirator .......................9

    B.  PX 68 is Admissible as Non-Hearsay State of Mind Evidence ...................................11

    C.  DiSomma's Statements in PX 68 Are Admissible as Statements Against Interest .....12

Motion *in Limine* No. 3: To Preclude Certain Evidence Related to the May 2022 Depeg ...........13

Motion *in Limine* No. 4: To Admit Designated Portions of Kwon's Investigative Testimony Into
        Evidence............................................................................................................................15

Motion *in Limine* No. 5: To Allow the SEC to Introduce Evidence of Kwon's Forgery
        Conviction in Montenegro for Impeachment Purposes Under Fed. R. Evid. 609(a).........17

Motion *in Limine* No. 6: To Preclude Defendants from Introducing Evidence or Argument
        Regarding the Location or Custodian of the "LP Server" ..................................21

Motion *in Limine* No. 7: To Preclude Defendants from Introducing Deposition Designations
        from Available Witnesses ...................................................................................24

Motion *in Limine* No. 8: To Preclude Defendants from Calling Witnesses Not Identified
        on Their Rule 26(a) Disclosures ........................................................................26

Motion *in Limine* No. 9: To Preclude Defendants from Calling Witnesses To Testify About
        Topics Not Disclosed in Discovery ...................................................................27

Motion *in Limine* No. 10: To Permit the SEC to Designate the Rule 30(b)(6) Deposition Testimony of Terraform Labs as Admissible and to Strike Defendant's "Corrections" ...29

Motion *in Limine* No. 11: To Preclude Defendants from Questioning ████████ About Irrelevant Topics .............................................................................31

Motion *in Limine* No. 12: To Admit Statements By Chai Into Evidence......................................34

Motion *in Limine* No. 13: The Court Should Give the "Missing Witness" Jury Instruction If Kwon Does Not Appear At Trial  .....................................................................38

Motion *in Limine* No. 14: To Exclude Evidence and Claims That Defendants' False and Misleading Statements Were Immaterial Based on Disclaimers ..................................39

CONCLUSION..........................................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Feinberg*,
  2020 WL 7706571 (S.D.N.Y. Oct. 15, 2020) ............................................................. 30

*Adams-Flores v. the City of New York*,
  2024 WL 519819 (S.D.N.Y. Feb. 9, 2024) .......................................................... 27, 29

*AmTrust N. Am., Inc. v. KF&B, Inc.*,
  2020 WL 5552522 (S.D.N.Y. Sept. 16, 2020) ........................................................... 25

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
  2022 WL 4333555 (N.D.N.Y. Sept. 19, 2022) ........................................................... 30

*Baxter v. Palmigiano*,
  425 U.S. 308 (1988) ....................................................................................................... 2

*Beechwood Restorative Care Ctr. v. Leeds*,
  856 F. Supp. 2d 580 (W.D.N.Y. 2012) ...................................................................... 18

*Brink's Inc. v. City of New York*,
  717 F.2d 700 (2d Cir. 1983) ..................................................................................... 2, 7

*Coletti v. Cudd Pressure Control*,
  165 F.3d 767 (10th Cir. 1999) ................................................................................... 25

*Coquina Invs. v. TD Bank, N.A.*,
  760 F.3d 1300 (11th Cir. 2014) .................................................................................... 5

*Daniels v. Loizzo*,
  986 F. Supp. 245 (S.D.N.Y. 1997) ............................................................................ 20

*Edward Andrews Grp. Inc. v. Addressing Servs. Co.*,
  2008 WL 759337 (S.D.N.Y. Mar. 24, 2008) ............................................................. 24

*FTC v. RCG Advances, LLC*,
  2023 WL 6281138 (S.D.N.Y. Sept. 27, 2023) ............................................................. 9

*FTC v. Vyera Pharms., LLC*,
   2021 WL 5236333 (S.D.N.Y. Nov. 10, 2021) ............................................................... 16

*Graham v. City of New York*,
   128 F. Supp. 3d 681 (E.D.N.Y. 2021) .......................................................................... 33

*Hlinko v. Virgin Atl. Airways*,
   1997 WL 68563 (S.D.N.Y. Feb. 19, 1997) .................................................................. 31

*In re 650 Fifth Ave. & Related Properties*,
   2017 WL 6729515 (S.D.N.Y. June 22, 2017) ......................................................... 12, 35

*In re AMLA Litig.*,
   328 F.R.D. 127 (S.D.N.Y. 2018) ................................................................................ 27

*In re Adler, Coleman Clearing Corp.*,
   1998 WL 182808 (Bankr. S.D.N.Y. Apr. 17, 1998) ....................................................... 5

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   2022 WL 4087842 (S.D.N.Y. Sept. 6, 2022) ................................................................. 4

*In re Platinum-Beechwood Litig.*,
   469 F. Supp. 3d 105 (S.D.N.Y. 2020) .......................................................................... 32

*Lewis v. American Sugar Refining, Inc.*,
   2018 WL 11409641 (S.D.N.Y. March 26, 2018) .......................................................... 33

*LiButti v. United States*,
   107 F.3d 110 ................................................................... 2, 3, 4, 5, 6, 7, 8, 9

*Marquez-Ortiz v. United States*,
   2023 WL 3568806 (S.D.N.Y. May 18, 2023) ............................................................... 30

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006) ....................................................................................... 27

*Podell v. Citicorp Diners Club, Inc.*,
   112 F.3d 98 (2d Cir. 1997) ......................................................................................... 31

*Rad Servs., Inc. v. Aetna Cas. & Sur. Co.,*
  808 F.2d 271 (3d Cir. 1986) ...................................................................... 8

*Ridge v. Davis,*
  639 F. Supp. 3d 465 (S.D.N.Y. 2022) ...................................................... 20

*SEC v. Adelphia Commc'ns Corp.,*
  2006 WL 8406833 (S.D.N.Y. Nov. 16, 2006)............................................ 7

*SEC v. Airborne Wireless Network,*
  2023 WL 5938527 (S.D.N.Y. Sept. 12, 2023)........................................... 37

*SEC v. Am. Growth Funding II, LLC,*
  *2018 WL 6322145 (S.D.N.Y. Dec. 4, 2018*).............................................. 15

*SEC v. Am. Growth Funding II, LLC,*
  2019 WL 1748186 (S.D.N.Y. April 19, 2019) .......................................... 38

*SEC v. Goldstone,*
  2016 WL 4487896 (D.N.M. July 12, 2016)............................................... 17

*SEC v. Lek Secur. Corp.,*
  276 F. Supp. 3d 49 (S.D.N.Y. 2017) ........................................................ 15

*SEC v. Pentagon Capital Mgmt.,*
  725 F.3d 279 (2d Cir. 2013) .................................................................... 14

*SEC v. Sirianni,*
  334 F. App'x 386 (2d Cir. 2009) ............................................................. 36

*SEC v. Terraform Labs Pte. Ltd.,*
  2023 WL 8944860 (S.D.N.Y. December 28, 2023) ............................ passim

*SEC v. Thompson,*
  238 F. Supp. 3d 575 (S.D.N.Y. 2017) ..................................................... 39

*SEC v. Universal Express, Inc.,*
  475 F. Supp. 2d 412 (S.D.N.Y. 2007) ..................................................... 16

*Siegel v. Kontogiannis*,
    2018 WL 11412884 (E.D.N.Y. Oct. 13, 2018)........................................................... 18

*Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*,
    2013 WL 311846 (D.N.M. Jan. 18, 2013)................................................................. 18

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008)................................................................................................. 32

*State Farm Mut. Auto. Ins. Co. v. Abrams*,
    2000 WL 574466 (N.D. Ill. May 11, 2000)................................................................. 4

*Tater v. City of Huntington Beach*,
    2023 WL 4295351 (C.D. Cal. May 10, 2023) ........................................................... 33

*United States v. Almeida-Perez*,
    549 F. 3d 1162 (8th Cir. 2008) ............................................................................... 34

*United States v. Arias*,
    94 F. Supp. 3d 93 (D. Mass. 2015) ......................................................................... 19

*United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave.,
    Brooklyn, N.Y.*,
    5 F.3d 78 (2d Cir. 1995) ........................................................................................... 2

*United States v. Certified Environmental Services, Inc.*,
    753 F. 3d 72 (2d Cir. 2014) ..................................................................................... 32

*United States v. Collier*,
    527 F.3d 695 (8th Cir. 2008) ................................................................................... 19

*United States v. Cuti*,
    720 F.3d 453 (2d Cir. 2013) ............................................................................. 39, 40

*United States v. District Council of New York City and Vicinity of United Broth. of
    Carpenters and Joiners of America.*,
    832 F. Supp. 644 (S.D.N.Y. 1993) ............................................................................. 4

*United States v. Dupree,*
   706 F. 3d 131 (2d Cir. 2013) ................................................................. 36

*United States v. Estrada,*
   430 F.3d 606 (2d Cir. 2005) ................................................................. 20

*United States v. James,*
   712 F.3d 79 (2d Cir. 2013) ............................................................ 10, 11

*United States v. Litvak,*
   889 F.3d 56 (2d Cir. 2018) ................................................................. 39

*United States v. Manafzadeh,*
   592 F.2d 81 (2d Cir. 1979) ................................................................. 18

*United States v. Miller,*
   954 F.3d 551 (2d Cir. 2020) ............................................................... 12

*United States v. Ray,*
   2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) ...................................... 11

*United States v. Torres,*
   845 F.2d 1165 (2d Cir. 1988) ............................................................. 39

*United States v. Velissaris,*
   2022 WL 17076747 (S.D.N.Y. Nov. 18, 2022) .................................. 40

*United States v. Vilar,*
   729 F.3d 62 (2d Cir. 2013) ................................................................. 39

*United States v. Wagner,*
   2022 WL 19179 (S.D.N.Y. Jan. 3, 2022) ........................................... 34

*Wilson v. Jamaica Serv. Program for Older Adults, Inc.,*
   2023 WL 8817150 (E.D.N.Y. Dec. 21, 2023) .................................... 25

**Statutes**

15 U.S.C. § 77v ....................................................................................... 25

**Rules**

Fed. R. Civ. P. 26 ............................................................................. 16, 26

Fed. R. Civ. P. 30 ............................................................................. 16, 30

Fed. R. Civ. P. 32 ........................................................................................ 16, 17, 24, 30

Fed. R. Civ. P. 37 ............................................................................................. 23, 26, 27

Fed. R. Civ. P. 43 ........................................................................................................ 25

Fed. R. Civ. P. 45 ........................................................................................................ 38

Fed. R. Evid. 401 ................................................................................. 13, 31, 32, 33

Fed. R. Evid. 403 ......................................................................... 13, 31, 32, 33, 34

Fed. R. Evid. 607 ........................................................................................................ 18

Fed. R. Evid. 609 ............................................................................. 17, 18, 19, 20, 34

Fed. R. Evid. 611 ........................................................................................................ 25

Fed. R. Evid. 801 ................................................................................. 3, 10, 11, 16, 37

Fed. R. Evid. 803 ........................................................................................................ 11

Fed. R. Evid. 804 .......................................................................................... 12, 35, 36

**Other Authorities**

8A Fed. Prac. & Proc. Civ. § 2142 (3d ed.) ..................................................... 25

Charles Alan Wright & Victor James Gold, 28 Federal Practice & Procedure,
    § 6133 (2d ed. 2023) ...................................................................................... 18

Montenegrin Criminal Code ................................................................. 17, 19, 20

Robert Heidt, The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,
    91 Yale L.J. 1062 (1982) ................................................................................ 8

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 14

*Balestra v. ATBCOIN LLC*,
    380 F. Supp. 3d 340 (S.D.N.Y. 2019) .......................................................................... 6, 9, 22, 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................... 14

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ................................................................................................... 4

*Bittner v. United States*,
    143 S. Ct. 713 (2023) ............................................................................................................. 13

*Boguslavsky v. Kaplan*,
    159 F.3d 715 (2d Cir. 1998) ................................................................................................. 40

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................................... 4

*Calder v. Jones,*
    465 U.S. 783 (1984) ............................................................................................................ 4, 7

*Common Cause v. FEC,*
    842 F.2d 436 (D.C. Cir. 1988) .............................................................................................. 12

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ..................................................................................................... 5

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) ..................................................................................................... 3

*Eberhardt v. Waters*,
    901 F.2d 1578 (11th Cir. 1990) ............................................................................................ 11

*Friel v. Dapper Labs, Inc.*,
    No. 21-civ-5837, 2023 WL 2162747 (S.D.N.Y. Feb. 22, 2023) ......................................... 17

*Gary Plastic Packaging Corp. v. Merrill Lynch, Inc.*,
    756 F.2d 230 (2d Cir. 1985) ................................................................................................. 27

*Geiger v. SEC*,
    363 F.3d 481 (D.C. Cir. 2004) ........................................................................34

*Global Network Commc'ns, v. City of N.Y.*
    458 F.3d 150 (2d Cir. 2006)...........................................................................15

*Golden v. Garafalo*,
    678 F.2d 1139 (2d Cir. 1982)........................................................................16

*Goldfarb v. Channel One Russia*,
    442 F. Supp. 3d 649 (S.D.N.Y. 2020)..............................................................7

*Hocking v. Dubois*,
    885 F.2d 1449 (9th Cir. 1989) ......................................................................16

*Jones v. Tyson*,
    No. 00 CIV. 7382(CM)(MDF), 2001 WL 401438 (S.D.N.Y. Apr. 18, 2001)....................9

*Leonard F. v. Israel Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir.1999).............................................................................15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013).......................................................................7, 10

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013).............................................................40

*Mirlis v. Greer*,
    952 F.3d 51 (2d Cir. 2020)..............................................................................6

*Myers v. Casino Queen, Inc.*,
    689 F.3d 904 (8th Cir. 2012) ..........................................................................6

*Nissan Motor Co. v. Nissan Comput. Corp.*,
    89 F. Supp. 2d 1154 (C.D. Cal. 2000) ............................................................5

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..........................................................................39

*Owen v. Elastos Foundation*,
    19-cv-5462-GHW, 2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021)....................................6, 9

*Pfaff v. U.S. Dept. of Housing and Urban Devel.*,
    88 F.3d 739 (9th Cir. 1996) ........................................................................14

*R.A. Holman & Co., Inc. v. SEC*,
    366 F.2d 446 (2d Cir. 1966).................................................................29, 31

*Reich v. Valley Nat. Bank of Arizona*,
    837 F. Supp. 1259 (S.D.N.Y. 1993).............................................................14

*Revak v. SEC Realty Corp.*,
    18 F.3d 81 (2d Cir. 1994)...............................................................22, 24

*Reves v. Ernst & Young*,
    494 U.S. 56 (1990).........................................................................11

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012)..................................................................14

*SEC v. Aqua-Sonic Prods.*,
    524 F. Supp. 866 (S.D.N.Y. 1981) ...........................................................16

*SEC v. Arbitrade Ltd.*,
    No. 22-CV-23171, 2023 WL 2785015 (S.D. Fla. Apr. 5, 2023) ......................................18

*SEC v. Aronson*,
    No. 11 Civ. 7033(JSR), 2013 WL 4082900 (S.D.N.Y. Aug. 6, 2013) ..............................18

*SEC v. Brigadoon Scotch*,
    480 F.2d 1047 (2d Cir. 1973)..................................................................12

*SEC v. Bronson*,
    14 F. Supp. 3d 402 (S.D.N.Y. 2014)..........................................................30

*SEC v. Cavanagh*,
    1 F. Supp. 2d 337 (S.D.N.Y. 1998) ......................................................28, 30

*SEC v. Cavanagh*,
    445 F.3d 105 (2d Cir. 2006)..................................................................30

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947).........................................................................14

*SEC v. C.M. Joiner Leasing Corp.*,
 320 U.S. 344 (1943) .................................................................................................11, 16

*SEC v. Constantin*,
 939 F. Supp. 2d 288 (S.D.N.Y. 2013) ...............................................................................40

*SEC v. DiMaria*,
 207 F. Supp. 3d 343 (S.D.N.Y. 2016) ...............................................................................38

*SEC v. Dunn*,
 587 F. Supp. 2d 486 (S.D.N.Y. 2008) .................................................................................9

*SEC v. Edwards*,
 540 U.S. 389 (2004) ..........................................................................................................11

*SEC v. Glen-Arden Commodities, Inc.*,
 493 F.2d 1027 (2d Cir. 1974) ......................................................................................24, 25

*SEC v. Kik Interactive Inc.*,
 492 F. Supp. 3d 169 (S.D.N.Y. 2020) ..............................................................12, 13, 22, 24

*SEC v. LBRY, Inc.*,
 No. 21-cv-260-PB, 2022 WL 16744741 (D.N.H. Nov. 7, 2022) ...........................12, 19, 25

*SEC v. Life Partners, Inc.*
 87 F.3d 536, 544 (D.C. Cir. 1996) ....................................................................................24

*SEC v. MiMedx Group, Inc.*,
 19 Civ. 10927 2022 WL 902784 (S.D.N.Y. March 28, 2022) ...........................................38

*SEC v. Mut. Benefits Corp.*,
 408 F.3d 737 (11th Cir. 2005) ...................................................................................27, 28

*SEC v. NAC Foundation, LLC*,
 512 F. Supp. 3d 988 (N.D. Cal. 2021) ...............................................................................23

*SEC v. PlexCorps*,
 17-CV-7007 (CBA) (RML), 2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018) ............6, 10, 13

*SEC v. Ralston Purina Co.*,
 346 U.S. 199 (1953) ..........................................................................................................29

*SEC v. Sason,*
     433 F. Supp. 3d 496 (S.D.N.Y. 2020) ...............................................................30

*SEC v. SG Ltd.,*
     265 F.3d 42 (1st Cir. 2001) .............................................................................12

*SEC v. Stoker,*
     865 F. Supp. 2d. 457 (S.D.N.Y. 2012) ............................................................38

*SEC v. Straub,*
     921 F. Supp. 2d 244 (S.D.N.Y. 2013) .............................................................10

*SEC v. Sugarman,*
     No. 19-cv-5998, 2020 WL 5819848 (S.D.N.Y. Sept. 30, 2020) ..........15, 38, 39

*SEC v. Syron,*
     934 F. Supp. 2d 609 (S.D.N.Y. 2013) .............................................................38

*SEC v. Telegram Grp., Inc.,*
     448 F. Supp. 3d 352 (S.D.N.Y. 2020)...............................15, 17, 18, 20, 23, 27

*SEC v. Terraform Labs Pte Ltd.,*
     No. 22-368, 2022 WL 2066414 (2d Cir. June 8, 2022) ...........................1, 4, 5, 8

*SEC v. Universal Express, Inc.,*
     475 F. Supp. 2d 412 (S.D. N.Y. 2007).................................................29, 31, 34

*SEC v. Wey,*
     246 F. Supp. 3d 894 (S.D.N.Y. 2017) .............................................................39

*SEC v. W.J. Howey Co.,*
     328 U.S. 293 (1946).........................................................2, 11, 15, 16, 18, 19

*SEC v. Xia,*
     No. 21-cv-5350, 2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022)......................20

*In re Time Warner Inc. Sec. Litig.,*
     9 F.3d 259 (2d Cir. 1993).........................................................................37, 39

*Underwood v. Coinbase Glob., Ind.,*
     No. 21-civ-8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ..............34

*United States v. Martoma*,
   No. 12-cr-973 (PGG), 2013 WL 6632676 (S.D.N.Y. Dec. 17, 2013) ............................26

*United States v. Smith*,
   985 F. Supp. 2d 547 (S.D.N.Y. 2014) ...............................................................................12

*United States v. Zaslavskiy*,
   No. 17-cr-647 (RJD), 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) .............12, 13, 14, 20

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
   241 F.3d 135 (2d Cir. 2001)............................................................................................4, 5

*In re Vivendi, S.A. Secs. Litig.*,
   838 F.3d 223 (2d Cir. 2016)..............................................................................................37

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ......................................................................................................10

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000).................................................................................................9

**STATUTES**

7 U.S.C. § 1a(18) ....................................................................................................................32

7 U.S.C. § 1(a)(47) ..................................................................................................................32

15 U.S.C. § 77b(a)(1)...................................................................................................15, 21, 25

15 U.S.C. § 77e(a) ...................................................................................................................28

15 U.S.C. § 77e(c)....................................................................................................................28

15 U.S.C. § 77e(e)....................................................................................................................31

15 U.S.C. § 77q........................................................................................................................35

15 U.S.C. § 77t(b).....................................................................................................................11

15 U.S.C. § 77v..........................................................................................................................4

15 U.S.C. § 78c(a)(10).................................................................................................15, 21, 25

15 U.S.C. § 78c(a)(65) ................................................................................................32

15 U.S.C. § 78c(a)(68) ................................................................................................32

15 U.S.C. § 78f(*l*) ......................................................................................................32

15 U.S.C. § 78j ............................................................................................................35

15 U.S.C. § 78u(d)(1) ..................................................................................................11

15 U.S.C. § 78aa ..........................................................................................................4

**RULES**

FRCP 9(b) ....................................................................................................................14

17 C.F.R. § 230.502(d) ...............................................................................................32

17 C.F.R. § 230.903(a) ...............................................................................................32

17 C.F.R. § 240.10b-5 ................................................................................................35

31 C.F.R. § 1010.100(m) ............................................................................................20

**OTHER AUTHORITY**

*FinCEN Guidance, Application of FinCEN's Regulations to Certain Business Models*
(May 9, 2019) ..............................................................................................................21

SEC Rel. No. 6863, *Offshore Offers and Sales* (Apr. 24, 1990) .................................31

SEC Rel. No. 81207 *Report of Investigation Pursuant to Section 21(a) of the Securities
Exchange Act of 1934: The DAO* (July 25, 2017) ........................................................13

Pursuant to Rule 9 of Your Honor's Individual Rules of Practice and the Amended

Stipulation and Order (ECF No. 174), the SEC submits the following omnibus memorandum in

support of its motions *in limine*.

### Motion *in Limine* No. 1:  To Allow Adverse Inferences Against Defendants

The SEC moves to admit Jeffrey Kuan, Kanav Kariya, and William DiSomma's Fifth

Amendment invocation and requests an adverse inference instruction against Defendants based

on those invocations. The SEC intends to call each witness at trial with the expectation that

Kuan, Kariya, and DiSomma will invoke the Fifth Amendment and refuse to testify.[1]

As this Court is aware from the SEC's briefing in this case, each witness has critical

evidence concerning Terraform's scheme to deceive investors about UST's $1.00 peg.

Specifically, Kuan, who was then Terraform's business development lead, spoke with Do Kwon

during the May 2021 depeg, and Kuan shared some of these discussions with Brian Curran,

Terraform's then-head of communications. Indeed, the Court cited Kuan's contemporaneous

messages with Curran, as the "[t]he SEC's best evidence of a scheme with Jump." *SEC v.*

*Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *19 (S.D.N.Y. Dec. 28, 2023). And Kariya and

DiSomma are key Jump decisionmakers who brokered and approved the deal with Defendants,

and then directed Jump employees to execute the trades to restore UST's peg.

Thus, it is undisputed that Kuan, Kariya, and DiSomma have knowledge of critical facts

that help prove that Terraform perpetrated a scheme to deceive investors. During their

---

[1] If the Court determines that is unnecessary to physically call Kuan, Kariya, and DiSomma to
assert the Fifth Amendment at trial, the SEC respectfully requests that it be permitted to
introduce portions of the video-taped deposition testimony in which each witness invoked the
Fifth Amendment and refused to answer questions. *See* Ex. 1 (Deposition Transcript of Jeffrey
Kuan) (highlighted portion); Ex. 2 (Deposition Transcript of Kanav Kariya) (highlighted
portion), and Ex. 3 (Deposition Transcript of William DiSomma) (highlighted portion) for the
designated testimony. A proposed Adverse Inference Instruction as attached as Ex. 4.

depositions, however, each invoked the Fifth Amendment in response to all substantive questions concerning Terraform and Jump, including the events described above. *See* Exs. 1-3.

The Supreme Court has stated that negative inferences derived from invocation of the Fifth Amendment may be permissible against a defendant in civil cases. *See Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976). This is true even when the invocation is made by a nonparty. *See LiButti v. United States*, 107 F.3d 110, 120-24 (2d Cir. 1997); *Brink's Inc. v. City of New York*, 717 F.2d 700, 709 (2d Cir. 1983). The justification for admitting such evidence is that a witness's use of Fifth Amendment privilege deprives a party of potentially crucial evidence, leaving the party no recourse other than to comment upon that use. *See United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995).

In *LiButti*, the Second Circuit endorsed four non-exclusive factors to guide trial courts in determining the admissibility of a non-party's invocation of the Fifth Amendment privilege and the drawing of adverse inferences: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *Id.* at 123-24. *LiButti* made clear that these factors should be applied flexibly and that an invocation is not barred even if not all of the factors are satisfied. *See id.* at 123-24. At bottom, "the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

Application of the *LiButti* factors to the instant facts demonstrates that the testimony is admissible, and an adverse inference instruction based on the witnesses' Fifth Amendment testimony is justified. *Id.*

**A. As Conspirators Whose Interests are Aligned with Defendants, DiSomma and Kariya's Testimony Should be Admitted and an Adverse Inference Instruction is Warranted**

The Second Circuit identified the relationship between the non-party witness and the party as the "most significant circumstance" in determining whether to permit an adverse inference. *Id.* at 123. "The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship." *Id.* Moreover, in describing the second consideration—control—the Court stated "[t]he degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation will likely inform the trial court whether the assertion of the privilege should be viewed as akin to testimony approaching admissibility under Fed. R. Evid. 801(d)(2)—a vicarious admission." *Id.* Notably, Fed. R. Evid. 801(d)(2) includes statements by the party's co-conspirator during and in furtherance of the conspiracy.

     i. *Defendants, DiSomma, and Kariya Shared a Close Business Relationship and Conspired Together*

The relationship among Defendants and DiSomma, Kariya, and Jump demonstrates that the first two *LiButti* factors weigh in favor of admitting the testimony and instructing the jury on adverse inference. As set forth in the SEC's filings, the evidence admitted at trial will show that Jump was Terraform's most important business relationship because Jump fulfilled the vital role of creating liquidity in the market for Terraform's crypto assets. SEC's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("SEC 56.1") at ¶ 126; Ex. 168 (January 13, 2020 email from Do Kwon re: [CONFIDENTIAL] Regarding liquidity partnership), ECF No. 75-12. As Jump's cofounder, DiSomma, was one of the most important decisionmakers at Jump. Moreover, Kariya was one of the most influential Jump decisionmakers in the crypto asset area, and regularly spoke with Do Kwon. *See* Ex. 5 (Do Kwon Testimony Transcript) at 290:5-9. Both

DiSomma and Kariya were therefore responsible for the strong business relationship shared between Terraform and Jump.

Moreover, the evidence will show that DiSomma and Kariya were co-conspirators in a conspiracy to commit securities fraud. Indeed, at the heart of the scheme to deceive investors about UST's stability, is the agreement between Terraform and Jump ironed out as UST was depegging from the U.S. dollar. And the three people central to the brokering and ultimate execution of this agreement are Defendant Do Kwon, Kariya, and DiSomma. *See* SEC 56.1 at ¶¶ 210-218. Further, after brokering this deal DiSomma then directed Jump traders to take steps to execute trades to help restore UST's peg. *See id.* at ¶ 214. "As alleged coconspirators, some degree of loyalty . . . may prevent one party from rendering damaging testimony against another." *State Farm Mut. Auto. Ins. Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (applying the *LiButti* factors); *see also United States v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America*., 832 F. Supp. 644, 652 (S.D.N.Y. 1993) (holding that a co-conspirator's refusal to testify may justify an inference against other co-conspirators). Such a relationship thus favors imputing the alleged conspirators' Fifth Amendment assertion to his co-conspirator. *Id.*; *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2022 WL 4087842, at *2 (S.D.N.Y. Sept. 6, 2022) (applying the *LiButti* factors and ruling that adverse inferences could be drawn from the Fifth Amendment invocations of former employees of alleged co-conspirators).

DiSomma and Kariya's previous close business relationship with Defendants, combined with their joint involvement in a fraudulent scheme, makes it highly unlikely that DiSomma and Kariya will "render testimony [Fifth Amendment or otherwise] in order to damage" those relationships or further incriminate each other. *LiButti*, 107 F.3d at 123; *State Farm*, 2000 WL

574466, at *6. Rather, it is most likely that DiSomma and Kariya would clear their name—and Jump's name, where they are still employed—if they could, thus giving their Fifth Amendment testimony, and the associated adverse inference against Defendants, the imprimatur of trustworthiness. *See Coquina Invs. v. TD Bank, N.A.,* 760 F.3d 1300, 1311 (11th Cir. 2014) (observing the unlikelihood of the witness invoking the privilege if he knew nothing about the Ponzi scheme). Accordingly, both the relationship and the control considerations of *LiButti* weigh in favor of admitting the testimony and permitting the adverse inference.

      ii.   *DiSomma and Kariya's Interests are Perfectly Aligned with Defendants*

The third *LiButti* consideration is whether DiSomma and Kariya "[are] pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *LiButti*, 107 F.3d at 123. Aligned interests can be a mutual interest in establishing as legitimate, transactions alleged fraudulent. *In re Adler, Coleman Clearing Corp*., No. 95-08203 (JLG), 1998 WL 182808, at *39 (Bankr. S.D.N.Y. Apr. 17, 1998).

DiSomma and Kariya, as the individuals who brokered the agreement between Defendants and Jump to bolster the UST peg in May 2021, are undoubtedly non-captioned parties in interest. Given their involvement in the fraud scheme, a finding that Defendants deceived investors about UST's stability makes likely a finding that DiSomma and Kariya too aided and abetted the fraud. Simply from a reputational standpoint, DiSomma and Kariya, who remain employed at Jump, have an interest in seeing Defendants prevail.

Moreover, DiSomma and Kariya's continued invocation of their Fifth Amendment privilege both advances their own interests by permitting each to avoid self-incrimination and assists Defendants by not testifying truthfully and irreparably damaging their defense. Indeed,

given DiSomma and Kariya's joint agreement with Defendants, it is likely that testimony that

incriminates DiSomma and Kariya would also incriminate Defendants.

Thus, the third factor strongly counsels for the adverse inference. DiSomma and Kariya's

interest in avoiding the full and public elucidation of their and Jump's role in the scheme to

deceive investors, and whatever consequences might follow, is compatible with Defendants'

interest in avoiding liability for it.

   iii.    *DiSomma and Kariya Play a Significant Role in the Litigation*

The fourth *LiButti* factor asks "whether the non-party witness was a key figure in the

litigation and played a controlling role in respect to any of its underlying aspects." *LiButti*, 107

F.3d at 123-24.

As described above, the evidence at trial will show that Kariya brokered the critical

agreement that led to Jump intervening on May 23, 2021, to help restore UST's peg to the U.S.

dollar. SEC 56.1 at ¶ 214. The evidence will further show that DiSomma discussed the

agreement with Kariya and directed Jump traders to execute trades to help restore UST's peg.

*See id.* Thus, both DiSomma and Kariya are key figures in this litigation, and their testimony, or

a substitute therefor, is critical to "the search for truth." *LiButti*, 107 F.3d at 123-24.

Finally, there is overwhelming corroborating evidence, that Jump, through DiSomma and

Kariya, entered into an agreement with Defendants to help restore the UST peg. This evidence

includes, but is not limited to: (1) Defendants' admissions that Do Kwon spoke to Kariya on

May 23, 2021 about UST's depeg; (2) a witness's declaration and anticipated testimony

documenting Kariya's statements about the deal with Defendants and DiSomma's directions to

Jump traders to engage in trading to restore the peg; (3) corroborating documentary evidence

confirming that Defendants waived Jump's vesting requirements and later memorialized this

agreement in July 2021; (4) Dr. Bruce Mizrach's expert report and anticipated testimony documenting Jump's trading activity to support UST's peg on and around May 23, 2021; and (5) Curran's testimony that Do Kwon informed him that Jump deployed funds to support the UST peg and Do Kwon's later instruction to Curran that he was not to reveal Jump's role in restoring the UST peg. *See* SEC 56.1 at ¶ 210; Ex. 16 (Defendant Kwon's Second Amended Responses and Objections to Plaintiff's Second Set of Interrogatories, dated September 8, 2023), ECF No.73-2, at Response 21; Ex. 17 (Kwon's Second Amended Responses and Objections to Plaintiff's First Set of Interrogatories, dated September 8, 2023), ECF. No. 73-2, at Response 9; Declaration of ███████████████████; Ex. 5 (Do Kwon Testimony Transcript) at 337:3-15; Ex. 270 █████████████████████████████████ ECF. No.76-13 at 2; Ex. 271 █████████████████████████████████████ ██████████████████████████████ ECF No. 76-13; Ex. 7 (Excerpts from the Deposition Transcript of Brian Curran), ECF No. 73-1 at 100:8-102:2, 102: 3-108:2. Based on this and other corroborating evidence, "the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124.

> **B. As a Former Terraform Employee, Whose Interests are Aligned with Defendants, Kuan's Testimony Should be Admitted and an Adverse Inference Instruction is Warranted**

Even prior to its decision in *LiButti*, the Second Circuit recognized a non-party's invocation could be used against a former employer, accepting the rationale that ex-employees' refusals to testify could appropriately be conceptualized as vicarious admissions of their former employer." *SEC v. Adelphia Commc'ns Corp.*, No. 02 Civ. 5776, 2006 WL 8406833, at *12 (S.D.N.Y. Nov. 16, 2006); *see Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983). So too here, where three of the four *LiButti* factors, and Kuan's contemporaneous

documented statements, counsel in favor of the trustworthiness of drawing an adverse inference against Defendants based upon Kuan's invocation.

The first *LiButti* factor, the "nature of the relevant relationship" weighs in favor of an adverse inference. Although, Kuan, Terraform's former lead of business development, is no longer employed by Terraform, there is reason to believe that he still retains some loyalty to his former employer. Specifically, ████████████████████████████████████ *See* Ex. 3 (Excerpts from the Deposition Transcript of Chris Amani), ECF. No. 73-1, at 66:7-67:14; *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.,* 808 F.2d 271, 276 (3d Cir. 1986) (stating that "[a]ny factors suggesting that a former employee retains some loyalty to his former employer—such as the fact that the employer is paying for his attorney"—serves the purpose of "reduc[ing] the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable" (quoting Robert Heidt, The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1119 n. 214 (1982))).

The third and fourth *LiButti* factors also counsel for the adverse inference. Kuan's interests in avoiding the full and public elucidation of his knowledge of Terraform's fraud upon the investing public, and whatever consequences might follow for him reputationally, is compatible with Defendants' interest in avoiding liability for it. Further, as this court recognized in its Opinion and Order, Kuan is one of the key witnesses in possession of vital evidence supporting the claim that Defendants deceived investors about UST's stability. In particular,████ ████████████████████████████████████████████████████ ████████████. *See* Ex. 273 ████████████████████████████████ ████████████ ECF No. 76-13. Kuan, therefore, is a key figure in this litigation because he is in possession of critical evidence necessary to prove that Terraform deceived the investing public.

Finally, because most of Kuan's and Curran's documented conversations were contemporaneous with the events as they unfolded, "the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124; *see also FTC v. RCG Advances, LLC,* No. 20-CV-4432 (JSR), 2023 WL 6281138, at *3 (S.D.N.Y. Sept. 27, 2023) (quoting *LiButti*).

### Motion *in Limine* No. 2:  To Admit Jump's Statements (Plaintiff's Exhibit 68) Into Evidence

The SEC moves *in limine* to have Plaintiff's Exhibit 68 ("PX 68"), attached as Ex. 6, including statements made by Jump and its officers and employees, admitted into evidence.

### A.  PX 68 is Admissible as a Non-Hearsay Statement of a Co-Conspirator

As discussed above, the SEC has alleged a conspiracy between Terraform and Jump to deceive investors about UST's $1.00 peg, by secretly arranging for Jump to make bulk purchases of UST to drive the price back up to $1.00, in exchange for Terraform's agreement to lift certain vesting conditions in agreements between Jump and Terraform. *Terraform Labs*, 2023 WL 8944860, at *19. ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
                                        Ex. 6, PX 68 at JUMP-SEC-TERRA 0001956. As a result, ██████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

Jump's executives' statements in PX 68 are admissible non-hearsay as statements by Terraform's co-conspirator "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit the statements on that basis, the Court must determine by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. James*, 712 F.3d 79, 105 (2d Cir. 2013).

Each element is met here.[2] First, as explained above, the evidence shows a conspiracy between Terraform and Jump, including text messages between Kuan and Curran recounting that Terraform "actually might've been fucked" without Jump's intervention and that Jump "saved our ass." Ex. 6, PX 68 at JUMP-SEC-TERRA 0001956. ████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ *Id.* This is in addition to the expected testimony of ██████████████████████, who will corroborate Jump's actions to restore the peg and testify that Kariya told DiSomma on May 23 that Kwon is ████████████████ ████████ Ex. 6. And there is no dispute that, after UST's price had fallen below $1.00 on May 23,

---

[2] In addressing the admissibility of DiSomma's and Kariya's statements ████████████████ ████████ regarding Jump's actions during the May 2021 depeg, the Court found that it "could make [ ] a finding based on the record" that those statements were "admissible non-hearsay as statements by Terraform's coconspirator 'during and in furtherance of the conspiracy' to inflate UST's price through a secret agreement." *Terraform Labs*, 2023 WL 8944860, at *19 n.16.

Kwon communicated multiple times with Kariya and that Jump purchased large amounts of UST that same day. *Id.*

There is also no question that the conspiracy was between the person who made the statements in PX 68 █████████████ and Defendants Terraform and Kwon (against whom the evidence is offered), thus satisfying the second element. *James*, 712 F.3d at 105. And third, because ██████████████████████ in PX 68 ████████████████████████████ ████████████████████████████████████████████, the statements were made "during the course of and in furtherance of the conspiracy," thus satisfying the third and final requirement for admission under Fed. R. Evid. 801(d)(2)(E). *James*, 712 F.3d at 105.

### B. PX 68 is Admissible as Non-Hearsay State of Mind Evidence

PX 68 is also admissible as non-hearsay state of mind evidence under Fed. R. Evid. 803(3). The Court has already held that "contemporaneous statements by Jump executives concerning the capital Jump was willing to risk and what Terraform was offering in return, together with changes in Jump's trading practices tend to show the state of mind of Jump executives – specifically, their intent, motive, and plan to conspire with Terraform to restore UST's $1 peg." *Terraform Labs*, 2023 WL 8944860, at *20 (citing ECF No. 127 at 4). That is precisely what PX 68 shows – ████████████████████████████████ ████████████████████████████████████████████ ██████████████████ PX 68 at JUMP-SEC-TERRA 0001956. ██████████████ ████████████████████████████████████████████ ████████████████████████ *Id.* PX 68 is thus admissible to show the ████ ████████ state of mind under Fed. R. Evid. 803(3). *United States v. Ray*, 2022 WL 558146, at

*24 (S.D.N.Y. Feb. 24, 2022) ("[A] statement that relates to a declarant's state of mind – including motive, intent, or plan – at the time he made the statement is not excluded by the rule against hearsay.")

### C.  DiSomma's Statements in PX 68 Are Admissible as Statements Against Interest

Finally, DiSomma's statements in PX 68 are also admissible under Fed. R. Evid. 804(b)(3)(A) as statements against interest from an unavailable witness.[3] Fed. R. Evid. 804(b)(3)(A). To be admissible under Fed. R. Evid. 804(b)(3)(A), the statements must be "so contrary to [a person's] interests that they tended to expose him to civil or criminal liability." *In re 650 Fifth Ave. & Related Properties*, 2017 WL 6729515, at *3 (S.D.N.Y. June 22, 2017). The rule also "cover[s] statements that would subject the declarant to social or reputational harm." *Id*. (citing the Committee Notes to Fed. R. Evid. 804)). DiSomma's statements in PX 68 qualify as statements against interest. In fact, Court has already held that similar oral statements by DiSomma made to ███████████████ qualified as statements against interest under Fed. R. Evid. 804(b)(3)(A). *Terraform Labs*, 2023 WL 8944860, at *20 ("Statements suggesting Jump's, and those individuals', participation in a secret agreement to restore UST's peg would tend to expose those individuals 'to civil or criminal liability' under Fed. R. Evid. 804(b)(3)(A)"). The Court should find that DiSomma's written statements contained in PX 68 are admissible for the same reason.

---

[3] On summary judgment, the Court ruled that DiSomma was unavailable because he invoked his Fifth Amendment rights rather than answer any questions about the May 2021 depeg at his deposition. *Terraform Labs*, 2023 WL 8944860, at *20. Because the SEC expects DiSomma to invoke his Fifth Amendment rights at trial as well, the same analysis applies. *See United States v. Miller*, 954 F.3d 551, 561 (2d Cir. 2020) ("When a witness properly invokes his Fifth Amendment right against self-incrimination, he is unavailable for the purposes of Rule 804(a).").

**Motion _in Limine_ No. 3:  To Preclude Certain Evidence Related to the May 2022 Depeg**

Pursuant to Federal Rules of Evidence 401 and 403, the SEC moves _in limine_ to preclude

Defendants from seeking to introduce voluminous testimony and exhibits at trial relating to the

purported "cause" of the May 2022 collapse of the Terraform ecosystem. For example, it appears

that Defendants intend to introduce the following evidence at trial:

- Testimony by their expert Professor Terrence Hendershott, a purported rebuttal expert, relating to trading activity in UST by certain market actors leading up to Terraform's May 2022 collapse and his independent analysis of the causes of that collapse.[4]

- Testimony obtained through a Letter of Request ("LOR") by Evgeny Gaevoy and Marina Gurevich, the CEO and COO of Wintermute, a third-party trading firm that Defendants assert participated in the so-called "concerted shorting strategy" of UST that allegedly led to the May 2022 collapse.[5]

- Evidence in the form of exhibits identified as Defendants' Exhibits D-356-D-361, D-363, D-365-66, D-368, D-371-D-372, D-432-D-987, D-988-989, and D-1024-1031, and D-1032, which appear to be voluminous trading data, transaction ledgers, or source code produced by parties that Defendants have asserted were involved in or may have had information relating to trading and market activity leading to the May 2022 collapse.

- Defendants have served notice pursuant to Fed. R. Evid. 902(11) that they will seek to introduce records from eight parties, all of which appear likely to relate to market activity concerning May 2022.

Such evidence should be excluded as irrelevant pursuant to Fed. Rule Evid. 401 because

evidence as to what may have caused the May 2022 crash is not relevant to any element that the

SEC must prove, nor does it support any cognizable defense. In this case, a jury must determine

---

[4] Indeed, in a supplemental report served on January 8, 2024, Professor Hendershott spends 10 pages (in addition to nearly 25 pages in his initial report) discussing trading activity leading up to May 2022 and purporting to analyze "the causes of the May 2022 de-peg." _See_ Ex. 7, Amendment to the Expert Report of Terrence Hendershott, dated January 8, 2024, pp 9.
[5] Defendants served a "Second Amended Exhibit List" on February 23, 2024, which includes a number of new and previously undisclosed exhibits, including D-1034-1035, D-1263-1271, D-1628-1630, D-1730-1741, all of which may also relate to a discussion of market activity leading up to the May 2022 collapse.

whether Defendants' misstatements about the restoration of UST's peg in May 2021, and their

concealment of Jump's involvement in that, constituted a material misstatement or material

omission as to which Defendants had a duty to speak, or constituted a fraudulent device, with

*scienter*, in connection with the purchase or sale of securities. *See SEC v. Pentagon Capital

Mgmt.*, 725 F.3d 279, 285 (2d Cir. 2013) (setting forth the elements of Section 10(b), Rule 10b-

5, and Section 17(a) claims). Exploring whether and how a particular trading firm contributed to

Terraform's collapse in May 2022 is not relevant to that analysis. Nor is it a defense to whether

Defendants committed fraud through their concealment of Jump's involvement in the May 2021

restoration of UST's peg that a particular trading firm may have contributed to the May 2022

collapse. Indeed, it is not even at issue that trading of large amounts of UST by one or more

sophisticated trading firms was one of several factors that led to the May 2022 crash.  The SEC

alleged in its Amended Complaint that:

> In May 2022, UST de-pegged from the U.S. dollar again. This time
> UST's price did not recover. Several factors contributed to the
> crash, including the sale of large amounts of UST by one or more
> sophisticated trading firms beginning on or about May 7, 2022.
> The algorithm failed to maintain the peg for UST, and its price fell
> to near zero, as did the prices of Terraform's other crypto assets.

Amended Complaint, ¶ 170 (ECF No. 24).

Thus, spending significant time litigating which trading firms contributed to that collapse,

and how they contributed to that collapse, will do nothing to advance the determination of issues

in dispute. Further, as the Court has recognized, the SEC's trading expert is not offering any

opinions about the May 2022 collapse. *Terraform Labs Pte. Ltd*., 2023 WL 8944860, at *7

(S.D.N.Y. Dec. 28, 2023) ("Finally, defendants urge the Court to exclude any opinions by Dr.

Mizrach about UST's later price crash in 2022. But there are no such opinions to exclude. The

SEC and Dr. Mizrach are clear that his opinions are only about the May 2021 depeg, not events in 2022. SEC Mizrach Opp. at 19–20. The Court accepts that representation.").

Moreover, even if relevant, the evidence should be excluded under Fed. R. Evid. 403 because it creates a risk of prejudice, confuses the issues, and has the potential to mislead the jury. The sheer volume of the evidence that Defendants seek to introduce demonstrates with certainty that the evidence will delay the proceedings, waste time, and be needlessly cumulative. Astonishingly, the Defendants appear to have identified *more than 500 exhibits* on this topic and testimony in this regard could add several days to the trial. If not constrained, Defendants could take up days of the jury's and the Court's time on this irrelevant and needless exploration of the market factors leading to the May 2022 collapse, distracting the jury from the real issues.[6]

### Motion in Limine No. 4:  To Admit Designated Portions of Kwon's Investigative Testimony Into Evidence

The SEC intends to introduce portions of Kwon's sworn investigative testimony conducted in September 2022. Kwon was interviewed under oath and on the record, in the presence of his attorneys, by attorneys for the SEC. Kwon, through counsel, then submitted corrections to the testimony, which were incorporated into the final transcript. The SEC requests that the Court rule that the portions of Kwon's investigative testimony designated by the SEC are admissible at trial, either as non-hearsay party admissions or as designated testimony under Fed. R. Civ. P. 26(a)(3)(A)(ii) and 32(a). *See* Ex. 5 (Kwon's Investigative Testimony) and Ex. 8 (SEC's Designations of Kwon's Investigative Testimony).

---

[6] To the extent Defendants wish to introduce such evidence for the purpose of arguing that the devastating losses that their fraud caused to investors is less than it seems, those arguments should be addressed during the remedies phase when the Court will calculate disgorgement and penalties relating to the fraud claims. *See SEC v. Am. Growth Funding II, LLC*, 2018 WL 6322145, at *3 (S.D.N.Y. Dec. 4, 2018) (jury determines liability but has no role in determining the amount of disgorgement causally connected to Defendants' violations).

Defendants may argue that Kwon's testimony is inadmissible because it was taken during an SEC investigation, not in a deposition conducted under Fed. R. Civ. P. 30. Any such argument would have no merit, because investigative testimony is "clearly admissible at trial as party admissions" under Fed. R. Civ. P. 801(d)(2). *SEC v. Universal Express, Inc*., 475 F. Supp. 2d 412, 416 n.1 (S.D.N.Y. 2007); *see also FTC v. Vyera Pharms., LLC*, 2021 WL 5236333, at *3 (S.D.N.Y. Nov. 10, 2021) (investigative testimony of Vyera employees admissible against both company and individual defendants under Fed. R. Civ. P. 801(d)(2)). In finding that investigative testimony would be admissible at trial, the Court in *Universal Express* noted that the defendant "does not dispute that he testified under oath while represented by counsel or that he has had access to the transcript of his testimony." 475 F. Supp. 2d at 416 n.1. So too here: Kwon's investigative testimony was under oath, Kwon was represented by counsel (the same counsel currently representing Terraform Labs), and he not only had access to the transcript, but made changes for minor transcription errors, all of which were incorporated into the final transcript. Ex. 9 (Kwon's Corrections to Testimony).

Even if Fed. R. Evid. 801(d)(2) did not foreclose any challenge to the admission of Kwon's investigative testimony, which it does, the Federal Rules of Civil Procedure allow admission of the testimony. Kwon's statements during his investigative testimony were made under oath, on the record, while represented by counsel. *See* Ex. 5 (Kwon's Testimony). Rule 32(a)(1) permits the use of similar types of depositions at trial so long as "(A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (C) the use is allowed by Rule 32(a)(2) through (8)." And Rule 32(a)(3) expressly permits the use depositions given by adverse parties like Kwon for "any

purpose." Courts have also held that designated portions of SEC investigative testimony transcripts are admissible at trial under Fed. R. Civ. P. 32. *See, e.g.*, *SEC v. Goldstone*, 2016 WL 4487896, at *9–12 (D.N.M. July 12, 2016) (allowing SEC to designate portions of investigative testimony transcripts to be used at trial).

For the foregoing reasons, the Court should rule that the portions of Kwon's investigative testimony designated by the SEC is admissible.

### Motion *in Limine* No. 5:  To Allow the SEC to Introduce Evidence of Kwon's Forgery Conviction in Montenegro for Impeachment Purposes Under Fed. R. Evid. 609(a)

The SEC asks that the Court permit it to impeach Defendant Do Kwon's sworn investigative testimony with evidence of his passport fraud conviction in Montenegro, pursuant to Fed. R. Evid. 609(a).

After the SEC filed its Complaint in this matter, Kwon was arrested in Montenegro in March 2023, while attempting to board a jet to Dubai. *See* Ex. 10 and 11, Plaintiff's Exhibits 54 and 55 ("PX 54" and "PX 55a"). He was found carrying false Costa Rican and Belgian passports with fake names, and was charged with criminally forging documents under Article 412 of the Montenegrin Criminal Code. PX 55a. In June 2023, he was convicted and sentenced to four months imprisonment under the same Article, *id*.; his appeal was rejected and the conviction and sentence were affirmed in November 2023. Exs. 12 and 13, Plaintiff's Exhibits 651a and 651b.

The SEC intends to call Kwon as a witness and/or introduce portions of Kwon's sworn investigative testimony as part of its case-in-chief, and to impeach Kwon's testimony with his subsequent conviction. In particular, the SEC will seek to introduce testimony that it designated, including testimony in which Kwon suggested that Chai payments were processed on the

blockchain, when the evidence shows that Kwon knew they were not.[7] The SEC also intends to

call Kwon as a live trial witness if he is available and may seek to impeach Kwon with his

criminal conviction during that testimony.

The SEC may generally impeach Kwon, as it may impeach any witness whose testimony

it introduces. Fed. R. Evid. 607; *see also Siegel v. Kontogiannis*, No. 15-CV-2856, 2018 WL

11412884, at *3 (E.D.N.Y. Oct. 13, 2018) (permitting plaintiffs to impeach defendant "even if

they call him as a witness"). This rule applies whether the witness's testimony is presented live

or via "testimony the party has read into the record in its case in chief." *Beechwood Restorative*

*Care Ctr. v. Leeds*, 856 F. Supp. 2d 580, 600 (W.D.N.Y. 2012); *see also Skyline Potato Co., Inc.*

*v. Hi-Land Potato Co., Inc.*, No. CIV 10-0698, 2013 WL 311846, at *22 (D.N.M. Jan. 18, 2013).

The Court should permit the SEC to specifically impeach Defendant Kwon with evidence

of his Montenegrin conviction[8] for fraud because the elements of the offense "required proving a

---

[7]   For example, Kwon testified evasively in sworn testimony designated by the SEC:

Q.    Were the payments that were being processed through Chai being processed on the
      blockchain?
A.    Well, I mean, from -- so, you could see every transaction that you were making on Chai
      about Chaiscan, and I'm not sure if they had any merchants that they added into Chai
      that, you know -- they weren't recording transactions on the blockchain, but every time
      that they would announce a major merchant and I would look it up on Chaiscan, it would
      generally be there. But I haven't been performing this checking exercise exhaustively for
      everything that Chai did. So, I can't speak to that.  But generally speaking, every time
      there will be a new merchant integration, where you could make a payment, you can
      verify it on Chaiscan.com.

Ex. 5 at 213:24-214:12.

[8] That the conviction occurred in a foreign country is irrelevant under Rule 609. *See United
States v. Manafzadeh*, 592 F.2d 81, 90-91 (2d Cir. 1979) (permitting impeachment via Iranian
conviction); *see also* Charles Alan Wright & Victor James Gold, 28 Federal Practice &
Procedure § 6133 (2d ed. 2023) ("Rule 609 convictions may be rendered in any forum including
federal, state, military, and foreign.").

dishonest act or false statement." Fed. R. Evid. 609(a)(2). Defendant Kwon was convicted under

Article 412 of the Montenegro Criminal Code, which makes it a crime "create[ ] a false

document or issues a false document . . . with the intention to use it as a real one[.]"

Montenegrin Criminal Code, art. 412; *see also* Ex. 11, PX 55a (June 19, 2023 Basic Court in

Podgorica First instance decision against Do Kwon and translation) (finding that Kwon "guilty"

of "commit[ing] the criminal offense of document forgery under Art. 412 para. 2, in conjunction

with para. 1 of the Criminal Code of Montenegro.").

Creating a false document with the intention of using as a real one, or forgery, requires

proving a dishonest act under Rule 609(a)(2). *See, e.g. United States v. Arias*, 94 F. Supp. 3d 93,

110 (D. Mass. 2015) (admitting prior convictions for forgery under Fed. R. Evid. 609(a)(2)). A

conviction for passing off a "false or untrue document as an authentic document" or

"obtain[ing]" a false or untrue document "for usage" similarly requires proof of a false statement

or dishonest act: the false claim (or the intent to falsely claim) that a fake document is legitimate.

*See* Advisory Committee Notes on the 1990 Amendment to Rule 609(a)(2) (explaining that the

Conference Committee intended the Rule to apply to "crimes such as . . . false statement,

criminal fraud . . . or false pretense . . ."); *cf. also United States v. Collier*, 527 F.3d 695, 698

(8th Cir. 2008) (credit card fraud, which involved "sale or receipt of an access card to defraud"

was impeachable conviction under Rule 609(a)(2)). Thus, because Defendant Kwon's conviction

required proving a dishonest act or false statement, it is automatically admissible to impeach his

testimony.

Kwon's conviction is also admissible under Rule 609(a)(1) as a crime punishable by

imprisonment for more than one year whose probative value is not substantially outweighed by

the danger of unfair prejudice. Under Montenegrin law, violations of Article 412 of the Criminal

Code carry a maximum sentence of three years (for general violations of the law) or five years (for violations that involve public documents or other kinds of public records). *See* Montenegrin Criminal Code, art 412. Under either theory of liability, Kwon's fraud conviction was punishable "in the convicting jurisdiction" by imprisonment for more than one year under Fed. R. Evid. 609(a)(1)(A), and "must be admitted subject to the balancing test prescribed in Rule 403." *Ridge v. Davis*, 639 F. Supp. 3d 465, 473 (S.D.N.Y. 2022) (internal quotation marks omitted).

The probative value of Kwon's conviction easily outweighs whatever purported danger of unfair prejudice it poses. When conducting the Rule 403 inquiry in this context, the Court examines "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Id.* (quoting *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)). All four factors weigh strongly in favor of admitting Kwon's conviction. First, the impeachment value of the fraud conviction is very high. "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (citation omitted). And even if a conviction for passport fraud did not "bear directly on honesty such as to be automatically admissible," which it does, it would nonetheless be "highly probative of credibility," as with "theft and escape crimes." *Id.* at 617-619 (distinguishing such offenses from crimes of violence and crimes involving impulse or anger). Second, the conviction is recent – less than a year before trial, making it more relevant to the Defendant's credibility. Third, the conviction is not similar to the conduct alleged, lessening the likelihood that the jury would impermissibly infer that Kwon had a propensity for committing the alleged misconduct. Finally, the Defendant's

20

credibility is crucial, as the jury will be asked to decide whether to credit his testimony or the conflicting evidence presented by the SEC.

For the foregoing reasons, the Court should permit the SEC to impeach the Kwon with evidence of his conviction for passport forgery.

### Motion *in Limine* No. 6:  To Preclude Defendants from Introducing Evidence or Argument Regarding the Location or Custodian of the "LP Server"

The SEC alleges that Defendants used a device called the LP Server to replicate purported Chai transactions onto the Terraform blockchain, as part of their fraud to create the illusion that their blockchain was more active than it really was. Amended Complaint, ¶¶ 135-136. As the Court is aware, Defendants have consistently attempted to shift their failure to produce the input data to the "LP Server" onto the SEC. *See Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *8. Remarkably, in their failed motion to exclude Dr. Edman, Defendants *blamed the SEC* for their own failure to produce the LP Server inputs. *See* Def. *Daubert* Mot. at 14 ("Here, the SEC conducted two years of investigation before filing its allegations that Chai did not use the blockchain. It had the ability to request that evidence, but did not do so."). However, the Court rejected that argument (twice) both because the missing information was irrelevant to Dr. Edman's conclusions and because Defendants were the ones unable to produce the information. *See Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *8; *see also* Jan. 11, 2024 Order on Motions for Reconsideration (rejecting Defendants' same arguments about the LP Server inputs a second time).

Defendants have made inconsistent representations to the Court and the SEC about the whereabouts of the LP Server inputs that they claim are critical to evaluating the SEC's Chai fraud allegations. *See* Opp. to Edman Recon. Mot. at 8-12 (ECF No. 159). Even though Do Kwon co-founded Chai and Chai initially operated as part of Terraform, the "inputs" that

Defendants claim should have been reviewed were not actually produced in discovery, as Defendants initially claimed not to have access to them. *Id*. at 9. The SEC served interrogatories upon Defendants that asked them to "Identify the location and custodian of the 'LP Server." *See* August 4, 2023 Defendants' Second Amended Responses and Objections to Plaintiff's First Set of Interrogatories at 13 (Interrogatory No. 5) (ECF No. 159-3). Initially, Terraform responded that it understood "that the 'LP Server' was owned by Chai Corporation. TFL does not know the location or custodian of the 'LP Server." *Id*. Kwon initially offered a nearly identical response. *See* September 8, 2023 Defendant Kwon's Second Amended Responses and Objections to Plaintiff's First Set of Interrogatories at 8 (Interrogatory No. 5) (ECF No. 159-4).

However, near the end of discovery, Defendants claimed to have realized that one of their affiliated companies, Gaza Labs, did in fact host the LP Server on a cloud service it subscribed to through a company called Naver. *Id*. Defendants also claimed that they made attempts to obtain this data but were unsuccessful. *See* ECF No. 159-2. Around that same time, both Defendants amended their responses to the SEC's Interrogatory seeking the location and custodian of the LP Server to remove any mention of its "understand[ing] that the 'LP Server' was owned by Chai Corporation." *See* September 22, 2023 Defendants' [Third] Amended Responses and Objections to Plaintiff's First Set of Interrogatories at 13 (Interrogatory No. 5) (ECF No. 159-5); October 5, 2023 Defendant Kwon's Third Amended Responses and Objections to Plaintiff's Interrogatory Nos. 5 and 10 at 3 (Interrogatory No. 5) (ECF No. 159-6).

Thus, the SEC was concerned when in their reconsideration motion, Defendants accused the Court of "ignor[ing] *uncontested facts* that the LP Server is in the possession of Chai, not TFL." Def. Recon. Mot. at 8 (ECF No. 157) (emphasis added). As such, the SEC requested to meet-and-confer with Defendants about those representations. *See* January 2024 e-mail thread

22

(attached as Ex. 14). Specifically, the SEC sought an explanation about Defendants' prior efforts to obtain the LP Server inputs from Terraform affiliate Gaza Labs, given their representations to the Court that 'the LP Server is in the possession of Chai, not TFL." We also inquired about their representations to the Court that Gaza Labs "is no longer an operational company." *See* Def. *Daubert* Reply at 4 (ECF No. 121). In response, Defendants revealed that "Defendants made a request for access to counsel for the owner of *Kernel* (formerly Gaza Labs)." *See* January 2024 e-mail thread (Ex. 14).

Korean corporate records show that Terraform affiliate Gaza Labs did not simply stop operating. Instead, they show that in January 2022, Gaza Labs Inc. *changed its name* to Kernel Labs Inc. *See* Corporate Registry Certificate for Kernel Labs (attached as Ex. 15).[9] According to Terraform's former head of ecosystem development, Natalie Luu, "Kernel Labs is the Terraform Labs' Korea office which aims to provide all in one blockchain consulting (technical mechanism design legal marketing) to strategic partners." Luu Depo., 108:4-17 (attached as Ex. 16). Ms. Luu testified that it was Kwon who told her that Kernel Labs was Terraform's "Korea Office."[10]   *Id*.

---

[9] Most of this document is in Korean, and the SEC is in the process of obtaining an official translation, though the names "Gaza Labs and Kernel Labs," can be seen in English on the first page.

[10] Moreover, Dr. Edman's unrefuted analysis establishes that between June 10, 2019 and December 9, 2021 there were 45 collections of changes (referred to as "commits") made to the LP Server source code repository, which were all made by user with "terra.money" email addresses—44 of them by Paul Kim. Edman Report, ¶ 35 (ECF No. 87-2).  Thus, it was Dr. Edman's "opinion that 'Paul Kim paul@terra.money>' was the primary developer or maintainer of the LP Server." *Id*., ¶ 36. Kim confirmed this in his testimony in Korea pursuant to the Letter of Request. Ex. 17 (excerpts of Kim's testimony).  Specifically, Paul Kim testified that he created the LP Server by writing 99 percent of the code for it.  Kim Tr. at 35.  He further testified that though that his affiliation changed over various points from "Gauza" Labs to Chai Corporation and then to Terraform, he always had access to the LP Server.  Ex. 17, at Tr. 52-53.

Federal Rule of Civil Procedure 37(e)(1) provides in relevant part that "if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."

Given Defendants' *own arguments* about how critical the LP Server inputs are to the Chai case against them, the Court should find that Defendants failed to take reasonable steps to preserve this data, and that their failure was prejudicial to the SEC. Alternatively, if the LP Server inputs are not relevant, given Dr. Edman's ability to formulate his opinions without them as recognized by the Court, *Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *8, then the Court should preclude Defendants from making arguments to the jury about the missing LP Server inputs. However, under no circumstances should Defendants be permitted to benefit from their own failure to preserve this data by suggesting to the jury that somehow the SEC is to blame.

### Motion *in Limine* No. 7:  To Preclude Defendants from Introducing Deposition Designations from Available Witnesses

The SEC moves for an order to prevent Defendants from submitting deposition testimony into evidence from available witnesses. Defendants have submitted Designations of Testimony for Potential Use at Trial that purported to designate testimony from seven witnesses, including six former or current Terraform employees (Michael Brown, Matthew Cantieri, William Chen, Natalie Luu, Seungjin Jacob Park, and Brian Curran) and a ███████████████, who Defendants have not demonstrated are unavailable to appear at trial. *See* Ex. 18, Defendants' Deposition Designations. Deposition testimony is hearsay, so deposition designations of non-adverse witnesses are not admissible unless Defendants can show that the witness is unavailable under Fed. R. Civ. P. 32(a)(4). *Edward Andrews Grp. Inc. v. Addressing Servs. Co.*, 2008 WL

759337, at *2 (S.D.N.Y. Mar. 24, 2008) ("deposition testimony is inadmissible hearsay" when witness is available to appear at trial.).

Defendants have made no such showing here and each party has nationwide subpoena power in this action. 15 U.S.C. § 77v(a) ("[I]n any action or proceeding instituted by the Commission . . . a subpoena issued to compel the attendance of a witness . . . at a hearing or trial may be served at any place within the United States."). When, as here, "a party fails to demonstrate a non-adverse witness's unavailability and attempts to offer that witness's out-of-court statements for the truth of the matters asserted," including seeking to admit designations of deposition testimony, "those statements must be excluded as inadmissible hearsay." *Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, 2023 WL 8817150, at *6 (E.D.N.Y. Dec. 21, 2023); *see AmTrust N. Am., Inc. v. KF&B, Inc.*, 2020 WL 5552522, at *3 (S.D.N.Y. Sept. 16, 2020) (excluding deposition testimony when parties seeking admission "have not offered any evidence that [the witness] resides outside the subpoena power of the Court or that they have made any efforts to procure his testimony at trial").

Even if some designations fell within a hearsay exception (and they do not), there is a strong preference for live witness testimony, *see* Fed. R. Civ. P. 43(a)(4)(E), and Court should exercise its discretion under Fed. R. Evid. 611 to manage the presentation of evidence and require Defendants to present live testimony in open court.[11] *See Coletti v. Cudd Pressure Control*, 165 F.3d 767, 774 (10th Cir. 1999) (holding that "the district court did not abuse its discretion in refusing to admit depositions in lieu of live witness testimony at trial"); 8A Fed.

---

[11] This motion seeks to exclude Defendants' proposed deposition designations without regard to their content. The SEC reserves the right to separately object to the content of any proposed deposition designations on other grounds, including that the content of the testimony is not admissible.

Prac. & Proc. Civ. § 2142 (3d ed.) (federal courts have a "preference for live testimony."). Given the preference for live testimony and the benefits of allowing the jury to observe the witness, Defendants should be required to bring their witnesses to testify live at trial.

### Motion *in Limine* No. 8:  To Preclude Defendants from Calling Witnesses Not Identified on Their Rule 26(a) Disclosures

The SEC moves to preclude Defendants from calling witnesses not identified in Defendants' Rule 26(a) disclosures. In March 2023, Defendants served their Initial Disclosures as required by Rule 26(a), identifying six individuals "likely to have discoverable information," as well as incorporating the SEC's disclosures. *See* Ex. 19, Defendants' Rule 26(a) Disclosures. Defendants never supplemented their initial disclosures. Defendants' Witness List, however, includes eight fact witnesses not previously disclosed on either Defendants' or the SEC's disclosures, namely Ethan Lee, Joon Kim, Jean Lim, Gyejeong Kim, Jungmin Lee, Sungho Choi, Do-Young Song, and Kevin Zhou. *See* Ex. 20, Defendants' Witness List. Although Defendants have not amended their Witness List, they have represented to the SEC that they will not call seven of these eight witnesses at trial.[12] The SEC moves to exclude testimony from the remaining undisclosed witness, Kevin Zhou.[13]

The Federal Rules of Civil Procedure are clear that a party who "fails to identify a witness as required by Rule 26(a)" or under a supplement under Rule 26(e) is "not allowed to use that . . . witness . . . at a trial." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence" at trial. *Ebewo v. Martinez*, 309

---

[12] If Defendants do not withdraw these seven undisclosed witnesses on their final Witness List, the SEC requests that the Court exclude their testimony for the same reasons as Mr. Zhou.

[13] Although Defendants were required to provide Mr. Zhou's address and telephone number as part of their Witness List, *see* Fed. R. Civ. P. 26(a)(3)(A)(i), Defendants' counsel has stated that they do not know Mr. Zhou's contact information, other than his address.

F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Waiting until the eve of trial to name undisclosed fact witnesses is precisely the type of conduct that this Rule was designed to prevent.

A party who fails to disclose a witness will only be allowed to call that witness to testify at trial if it can show that "the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "In deciding whether to exclude belatedly disclosed evidence, the court must weigh four factors: (1) the party's explanation for failure to timely disclose; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance." *In re AMLA Litig.*, 328 F.R.D. 127, 136-137 (S.D.N.Y. 2018) (Rakoff, J.) (excluding undisclosed expert witness testimony) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *see also Adams-Flores v. the City of New York*, 2024 WL 519819, at *2 (S.D.N.Y. Feb. 9, 2024) (excluding non-disclosed fact witnesses).

Given the lack of any explanation for their failure to disclose and the fact that Defendants never supplemented their initial disclosures even once during discovery, Defendants cannot show that their failure to disclose was "substantially justified." Fed R. Civ. P. 37(c). The SEC would also suffer prejudice if Defendants were allowed to elicit testimony from undisclosed witnesses at trial. The SEC conducted extensive discovery with the expectation that Defendants' trial case would be proffered only through individuals who had been identified as potential witnesses in the Rule 26(a)(1)(A)(i) disclosures. Individuals identified for the first time as potential witnesses well after discovery, in disclosures made in shortly before trial, should be excluded. *Adams-Flores*, 2024 WL 519819, at *2.

**Motion *in Limine* No. 9:  To Preclude Defendants from
Calling Witnesses To Testify About Topics Not Disclosed in Discovery**

The SEC moves to exclude testimony from witnesses on topics for which Defendants have stated the witnesses had no knowledge. Defendants' Rule 26 disclosures identified only one

27

knowledgeable person regarding May 2021 depeg (Do Kwon) and no individuals knowledgeable about Chai. In sworn interrogatory responses, Defendants identified five individuals with knowledge regarding whether "transactions using the Korean payment application 'Chai' processed or settled on the Terraform blockchain[.]," but only one of those individuals – Paul Kim – is on Defendants' Witness List.  *See* Ex 21, Terraform Labs's Response to Interrogatory No. 6; Ex. 22, Kwon's Response to Interrogatory No. 6. And several other of Defendants' trial witnesses, including Chris Amani, Natalie Luu, Seungjin Jacob Park, Matthew Cantieri, and Michael Brown, testified in depositions that they have no personal knowledge whatsoever of Chai or the May 2021 depeg, the subject matters of the upcoming fraud trial.[14] *See* Ex. 23 (Amani Deposition Excerpts); Ex. 24 (Park Deposition Excerpts); Ex. 16 (Luu Deposition Excerpts); Ex. 25 (Cantieri Deposition Excerpts); Ex. 26 (Brown Deposition Excerpts).

The Court should rule that Defendant may not call undisclosed witness to testify regarding Chai. Specifically, given that Defendants have disclosed only one potential trial witness (Paul Kim) as knowledgeable about Chai, the Court should preclude Defendants from

---

[14]  By way of example, Mr. Cantieri testified as follows during questioning by Defendants' counsel:

> Q. Did you have any firsthand knowledge about what was or wasn't done by TFL, Jump, or anyone else in response to either of th[e] [May 2021 or May 2022] depegs?
>
> A. I had no firsthand knowledge.
>
> Q. And do you have any firsthand knowledge about how Chai worked?
>
> A. No firsthand knowledge.

Ex. 23, Tr. 175:11-17.

calling any other witnesses to testify about the topic. *Adams-Flores*, 2024 WL 519819, at *2 (excluding testimony from fact witness when party did "not dispute that she failed to name the witnesses at issue in her initial disclosures and in answer to relevant interrogatories — and, thus that she violated her disclosure obligations.").

The Court should also preclude Defendants from calling witnesses to testify regarding topics on which they have disavowed knowledge. Five of Defendants' trial witnesses (Amani, Luu, Park, Cantieri, and Brown) testified that they have no personal knowledge regarding the subjects of the upcoming fraud trial, the May 2021 depeg and Chai. Exs. 16, 23-26. Nor did Defendants identify these witnesses as knowledgeable about either topic area in their Rule 26 initial disclosures. The SEC further requested from Defendants a summary of these witnesses' expected testimony, but Defendants refused. Accordingly, given that Defendants have not disclosed Amani, Luu, Park, Cantieri, and Brown as knowledgeable about any relevant issue in the upcoming fraud trial, the Court should exclude their testimony on those topics.

### Motion in Limine No. 10:  To Permit the SEC to Designate the Rule 30(b)(6) Deposition Testimony of Terraform Labs as Admissible and to Strike Defendant's "Corrections"

The SEC anticipates that Defendants may object to the admission of designations from the deposition testimony of Terraform's Rule 30(b)(6) witness. *See* Ex. 8, SEC Deposition Designations. Defendant may argue that such designations are inadmissible because its 30(b)(6) witness lacked personal knowledge of the subject matter at issue. Moreover, in the event the Court properly admits these designations, Defendants may seek to introduce "corrections" to the testimony. For the reasons below, the Court should admit the SEC's designations and exclude Defendants' "corrections."

A party may use an adverse party's 30(b)(6) deposition "for any purpose." Fed. R. Civ. P. 32(a)(3). This rule applies notwithstanding that the 30(b)(6) deponent may lack personal

knowledge of the subject matter. *See Abbott Labs. v. Feinberg*, No. 18-8468 (LGS), 2020 WL

7706571 (S.D.N.Y. Oct. 15, 2020) (permitting designation of 30(b)(6) testimony); *see also*

*AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-598, 2022 WL 4333555, at *2 (N.D.N.Y. Sept.

19, 2022) ("While [FRE] 602 generally limits a witness's trial testimony to matters within that

witness's personal knowledge, an *adverse party* may use another party's Rule 30(b)(6)

deposition testimony for 'any purpose.'") (emphasis in original).

      Assuming the Court allows the SEC to introduce the 30(b)(6) deposition designations for

the reasons above, the Court should not then admit Defendants' "Correction / Errata Sheet."

Under Rule 30(e), a party desiring to review and submit changes to a deposition transcript must

make such a request "before the deposition is completed." Fed. R. Civ. P. 30(e)(1). Where a

party fails to do so, it may not avail itself of Rule 30(e). *See Marquez-Ortiz v. United States*, No.

2023 WL 3568806, at *2 (S.D.N.Y. May 18, 2023) ("Rule 30(e) only applies when the deponent

makes a request to review the deposition transcript 'before the deposition is completed.'"). Here,

counsel for Terraform did not ask on the record for an opportunity to review and sign the

deposition; the reporter's certificate does not reflect that a review was requested. *See generally*

Ex. 27, Rule 30(b)(6) Deposition Transcript, at p. 264. Therefore, Terraform's

"Corrections/Errata" sheet must be excluded.

      The substance and timing of Defendant's attempted "Corrections" bolster the argument

for exclusion. Indeed, Defendant does not correct errors in transcription. Rather, Defendant

substantively changes the witness's answers, purportedly after he "consulted company records."

*See* Ex. 28, Terraform's "Correction / Errata Sheet." Though this Circuit allows substantive

corrections, *see Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997), when

"substantial" substantive corrections are made, courts may permit the deposition to be reopened

for further cross examination, *see, e.g., Hlinko v. Virgin Atl. Airways*, No. 96-2873, 1997 WL

68563, at *1 (S.D.N.Y. Feb. 19, 1997) (Katz, MJ). Here, Defendant's changes are substantial.

Some corrections insert concrete answers where the prior answer was "I don't remember" or "I

don't know." *See* Ex. 28. Others change "correct" to "incorrect," "yes" to "no," and "yes" to "it's

not clear." *Id.* While, under these circumstances, the SEC would have been entitled to reopen the

deposition to clarify the confusion, it could not—Defendant did not submit the

"Corrections/Errata" sheet until after the close of discovery (34 days after the deposition itself).

Ex. 28, dated November 2, 2023. Defendant should not be allowed to fundamentally—and

singlehandedly—alter its 30(b)(6) witness's testimony via errata sheet after the fact.

### Motion in Limine No. 11:  To Preclude Defendants from Questioning ███████████ About Irrelevant Topics

Pursuant to Federal Rules of Evidence 401 and 403, the SEC moves *in limine* to preclude

Defendants from questioning the SEC's witness ████████ on, or in any way referring to,

two irrelevant, prejudicial, ████████ topics: ████████████████████

████████████████████████████████████████

██

The SEC expects to call ████████, who will testify that, as Kwon and executives at

Chai knew, Chai did not use the Terra blockchain. At ██████ deposition, Defendants sought to

discredit █████ by, among other things, questioning him about ████████████████

████████████████

████████████████████████████████

████████████████████████

████████████████████████████

████████████████████████

31

██████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████

"A district court is accorded a wide discretion in determining the admissibility of evidence under the federal rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). "In general, evidence is relevant if it has any tendency to make a material fact more less probable than it would be otherwise." *United States v. Certified Environmental Services, Inc.*, 753 F. 3d 72, 90 (2d Cir. 2014). "Under Fed. R. Evid. 403, the Court may still exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 114 (S.D.N.Y. 2020) (Rakoff, J.).

Here, ███████ testimony will consist of his personal knowledge and observations regarding the fact that Chai did not use the Terra blockchain. His ███████████████ ██████████████████████████████ are both utterly irrelevant to his testimony or to any material fact at issue in this case, and should be excluded under Rule 401. Further, even if there was some conceivable relevance, it is substantially outweighed by the highly prejudicial and ██████████████████████████████████████████████. The Court should therefore preclude Defendants from questioning ███████ on these topics or referring to them at any point in front of the jury.

███████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████   The Court should preclude Defendants from making any such references under Rules 401

and 403.

     Defendants should be precluded from using ███████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ The Court should do the same here.

For these reasons, the Court should preclude Defendants from examining ████████████

████████████████████████████████████████████████

███████████████████████████

**Motion in Limine No. 12:  To Admit Statements By Chai Into Evidence**

The SEC moves *in limine* to have certain statements made by Chai Corporation or its officers and/or senior employees admitted into evidence. For the reasons set forth below, certain of the statements in these exhibits are admissible either as statements against interest or as statements by a co-conspirator.

The SEC has alleged that Defendants defrauded investors by falsely claiming that Chai Corporation ("Chai") used the Terra blockchain. ███████████████████████████ who observed that Chai did not, in fact, use the Terra blockchain. Worse, he learned that Chai had an agreement with Defendants to help conceal this fact from the public. ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████

Defendants' misrepresentations, and Chai's complicity, have had significant adverse legal consequences. Certain Chai executives, including Daniel Shin, have been indicted by South Korean authorities. All the Chai employees in these communications are located in South Korea

and/or Singapore and have not agreed to testify in this matter. Therefore, they are unavailable for

purposes of Fed. R. Evid. 804.

Federal Rule of Evidence 804(b)(3) creates an exception to the hearsay rule for

statements against penal or pecuniary interest. "To be a statement against penal interest, the

proffered statement need not have been sufficient, standing alone, to convict the declarant of any

crime, so long as it would have been probative in a criminal case against him." *In re 650 Fifth*

*Avenue and Related Properties*, 2017 WL 6729515, at *3 (S.D.N.Y. June 22, 2017) (citations

and quotations omitted). Further, the rule also "cover[s] statements that would subject the

declarant to social or reputational harm." *Id.* (citing the Committee Notes to Fed. R. Evid. 804).



Each of these

statements is manifestly against interest—

*See id.* at *3-6 (concluding that statements

revealing the declarant's involvement in efforts to conceal misconduct are admissible under Rule

804(b)(3)); *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *20 (S.D.N.Y. Dec. 28,

2023) (ruling that statements reflecting participation by third party in "secret agreement" to

deceive investors were admissible under Rule 804(b)(3)). Separately, Chai produced a

communication in which

35

No reasonable person would make such statements unless they believed them to be true. Fed. R. Evid. 804(b)(3). The legal and financial peril is obvious. Chai's officers and employees knew Defendants were misleading investors and chose to not to disclose the truth, while simultaneously helping Defendants mirror Chai transactions to substantiate Defendants' false statements about Chai. *See SEC v. Sirianni*, 334 F. App'x 386, 389 (2d Cir. 2009) (affirming the admission of statements made co-defendant to SEC witness where the statements implicated co-defendant in deceptive scheme). And, as it turns out, in the wake of Terraform's collapse, multiple Chai executives and employees have been indicted.

Accordingly, the following statements should be admitted pursuant to the hearsay exception for statements against interest:[15]

- Plaintiff's Exhibit ("PX") 118a, attached as Ex. 29, contains ███████████

- PX 119, attached as Ex. 30, contain ███████████

- PX 121, attached as Ex. 31, contain ███████████

- PX 122a at lines 4:1-9:2, 11:8-11:19, 17:16-22:5; 41:19-41:21 of 122b, attached as Ex. 32. ███████████

---

[15] Certain documents and portions of recorded calls (and transcripts thereof) include statements by ███, who was in conversation with the Chai declarant. Those statements should be admitted as well because they are not being offered for the truth of what they assert, but rather to show the effect on the listener. *United States v. Dupree*, 706 F. 3d 131, 136 (2d Cir. 2013) (A "statement offered to show its effect on the listener is not hearsay."). Those statements also provide essential context for the significance of the Chai officers' statements against interest.

- PX 123a at lines 49:2-55:9 of 123b, attached as Ex. 33. These are ███████ ████████████████████████████████████████████████████████ if regulators ask questions about why Chai and its officers were complicit in that fraud.

- PX 124a at lines 32:16-33:17 of 124b, attached as Ex. 34. These are ███████ ██████████████████████████████████

- ██████████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████

- PX 136, attached as Ex. 36, contains a ███████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████

- PX 155, attached as Ex. 37, contains a ███████████████████ █████████████████████████████████

Finally, these statements should also be admitted because, as statements by Defendants' co-conspirator, Chai, they are not hearsay. Fed. R. Evid. 801(d)(2)(E). *See also SEC v. Airborne Wireless Network*, 2023 WL 5938527, at *24 (S.D.N.Y. Sept. 12, 2023) (statements and actions by corporation's employees are imputed to it when the employees are acting within the scope of their authority). **The evidence reflects** ███████████████████████████████████ ████████████████████████████████████████████████. The statements ███████████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████ *See SEC v. American Growth Funding II,* 2019 WL

1748186, at *6 (S.D.N.Y. April 19, 2019) (setting forth the proponent's required showing under 801(d)(2)(E)).

For these reasons, the Court should admit into evidence the portions of Plaintiff's exhibits specified above.

### Motion in Limine No. 13: The Court Should Give the "Missing Witness" Jury Instruction If Kwon Does Not Appear At Trial

In the event that Kwon does not appear at trial, the SEC seeks a ruling that the Court instruct the jury that the SEC sought to call Kwon to testify at trial, but that Kwon refused to appear. The SEC thus seeks a standard "missing witness" jury instruction:

> Prior to trial, the SEC notified Defendants that the SEC intended to call Defendant Do Hyeong Kwon ("Kwon") as a witness at trial, but Kwon did not appear to testify during the trial. You may, but are not required to, assume that Kwon's testimony would have been unfavorable to Defendant Kwon and Defendant Terraform Labs PTE, Ltd.

The SEC will be prejudiced if the jury is permitted to infer that the SEC did not seek to call Kwon as a witness. This instruction is intended for witnesses peculiarly under the control of one party but not the other. Kwon's non-appearance at trial is under his own control.[16] According to the Declaration of Kwon's Montenegrin counsel (ECF No. 179-1), the Montenegrin High Court ordered Kwon to be extradited to the United States in February 2023. Kwon has delayed extradition, however, by challenging the extradition decision through appeals, *id*. at ¶¶ 10-15, resulting in Kwon "likely not be extradited before the end of March and he will likely not be present or able to attend at least the start of the trial scheduled to begin on March 25, 2024." ECF No. 179 (Kwon Status Report). Kwon has challenged extradition to the United

---

[16] In seeking an adjournment of the trial date, Kwon stated that he "wishes to attend his trial" and "has made every effort to be extradited from Montenegro as quickly as possible." ECF No. 161 (January 11, 2024).

States because he prefers to be extradited to South Korea, not the United States. ECF No. 179-1 at ¶ 8 ("Mr. Kwon prefers to be extradited to the United States . . . [t]he law and the international treaties governing extradition from Montenegro favors his extradition to South Korea."). Given Kwon's efforts to challenge and delay his extradition to the United States, his non-appearance at trial was under his own control. *See United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) ("When a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction and fails to produce such witnesses, the jury may infer that the testimony, if produced, would be unfavorable to that party."). This instruction is necessary because the jury should not be left wondering whether the SEC wanted Kwon to testify.

Accordingly, if Kwon's challenges to extradition to the United States result in him not appearing at trial, the Court should instruct the jury that it may, but is not required to, assume that Kwon's testimony would have been unfavorable to Defendants.

### Motion in Limine No. 14: To Exclude Evidence and Claims That Defendants' False and Misleading Statements Were Immaterial Based on Disclaimers

Defendants should be precluded from making arguments or cross-examining witnesses about contractual disclaimers or similar provisions in Defendants' Exhibit 347 ("D-347"), attached as Ex. 38, which Defendants describe as Terraform's Anchor Protocol Terms of Service ("Terms of Service"). There is no relevant purpose for such evidence or argument, and it is likely to confuse and mislead the jury as to the elements of securities fraud.

The Terms of Service contain general disclaimers of liability and damages "arising out or in any way related to" the Anchor Protocol (Section 15, "Release of Claims"), "disclaim[ers] [of] any representations," (Section 12, "No Warranties"), and broad "[a]ssumption[ ] of risk" language (Section 16, "Assumptions of Risk"). These disclaimers, which are directed explicitly

at causes of action sounding in "contract, tort, negligence, strict liability, or any other basis,"[17] do not (and could not) release Defendants from liability for securities fraud. Nor do the provisions disclaim liability for false representations or fraudulent scheme – the SEC's claims in this case.

Evidence and argument about these disclaimers would serve no relevant purpose and will be more prejudicial than probative. The "common-law requirements of justifiable reliance and damages plainly have no place in the federal fraud statutes." *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) (citing *Neder v. United States*, 527 U.S. 1, 24-25 (1999)); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 59 (S.D.N.Y. 2017) ("Unlike private plaintiffs, the SEC is not required to prove investor reliance, loss causation, or damages."). And because "a disclaimer of reliance on certain representations" does not mean that the other "representations were immaterial or without tendency to influence," *Weaver*, 860 F.3d at 95, they have no relevant purpose in the trial. Indeed, it would undermine the purposes of the fraud laws to permit "[f]raudsters [to] … escape [ ] liability for lies told to induce gullible victims … to sign a contract containing disclaimers of reliance." *Id*. at 96 (addressing criminal mail and wire fraud).

Having no relevant purpose, evidence or arguments about disclaimers are also properly excluded under Rule 403 because they are likely to confuse the jury. Indeed, permitting argument relating to the disclaimers could incorrectly lead the jury to believe that disclaimers are somehow probative of materiality, which they are not.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motions *in limine*.

---

[17]  Ex.  D-347, "Limitation of Liability," Section 17.

Dated:  February 26, 2024            Respectfully submitted,

                                     /s/ James P. Connor
                                     Christopher J. Carney
                                     James P. Connor, admitted *pro hac vice*
                                     Carina Cuellar, admitted *pro hac vice*
                                     Laura E. Meehan
                                     Devon L. Staren, admitted *pro hac vice*
                                     Attorneys for Plaintiff
                                     U.S. SECURITIES AND EXCHANGE
                                     COMMISSION
                                     100 F Street NE
                                     Washington, DC 20549
                                     Tel: (202) 551-8394
                                     Email: connorja@sec.gov

Of counsel:
Roger L. Landsman
100 F Street NE
Washington, DC

CERTIFICATE OF SERVICE

I hereby certify that, on February 26, 2024, I emailed the foregoing "PLAINTIFF

SECURITIES AND EXCHANGE COMMISSION'S OMNIBUS MEMORANDUM OF LAW

IN SUPPORT OF MOTIONS *IN LIMINE* " to Defendants' counsel of record.

/s/ James P. Connor
James P. Connor