UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

TERRAFORM LABS PTE LTD. and
DO HYEONG KWON,

Defendants.

No. 1:23-cv-1346 (JSR)

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

I.      Investor Testimony as to Purchases and Losses in May 2022 is Relevant, Probative, and Not Unduly Prejudicial ...........................................................................................1

II.     Evidence or Reference to Mr. Kwon's Conviction For Criminal Passport Forgery In Montenegro Is Admissible and a Missing Witness Instruction is Appropriate .............2

III.    The *LiButti* Factors Counsel for an Adverse Inferences Instruction Against Defendants ...................................................................................................................6

        A.  Co-Conspirators Kanav Kariya and William DiSomma's Invocations Should Be Admitted and an Adverse Inference is Warranted ....................................................7

        B.  Former Employee Kuan's Invocations Should be Admitted and an Adverse Inference is Warranted ..........................................................................................11

        C.  The Probative Value of Kuan, Kariya, and DiSomma's Testimony is Substantial and Outweighs any Potential Prejudice ................................................................13

IV.     The Testimony of Four SEC Witnesses Should Not be Excluded...............................14

V.      Neither Party Should Be Permitted to Present Evidence or Argument of Other Unrelated Fraud Cases ...............................................................................................17

VI.     Certain Audio Recordings are Admissible ................................................................18

VII.    Reference to Korean law and the Legality of Chai's Use of The Blockchain Under Korean Law is Admissible..........................................................................................19

VIII.   Defendants' Sales of Unregistered Securities are Relevant to their Fraudulent Conduct.....................................................................................................................21

IX.     SEC Witnesses Sunny Kim and William Connolly Should Not Be Excluded...........23

X.      William Chen's Written Statements Regarding Chai Are Admissible as Statements of a Party Opponent Under Fed. R. Evid. 801(d)(2)....................................................24

XI.     The SEC Does Not Intend to Introduce Evidence Related to Any Other U.S. Government Agency's Investigation .........................................................................28

XII.    The Court Should Not Exclude the SEC's Summary Witnesses.................................29

        A. Legal Standard ....................................................................................................29

        B. The SEC Witnesses are Proper Summary Witnesses.............................................30

i

XIII.   Kwon's May 23, 2021 Statements are Admissible ......................................................32

XIV.   The Court Should Permit References to Defendants' Failure to Produce the LP Server
        and Should Preclude Defendants from Attempting to Shift the Blame for this Failure
        to the SEC ...................................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Allen v. City of New York,*
  2016 WL 345578 (S.D.N.Y. Jan. 27, 2016) ................................................................. 23

*Allen v. City of New York,*
  695 F. App'x 614 (2d Cir. 2017) ............................................................... 23

*Attis v. Solow Realty Dev. Co.,*
  522 F.Supp.2d 623 (S.D.N.Y. 2007) .................................................... 26, 27

*Blue Chip Stamps v. Manor Drug Stores,*
  421 U.S. 723 (1975) ....................................................................................... 2

*Bourdages v. Metals Ref. Ltd.,*
  1984 WL 1209 (S.D.N.Y. Nov. 1, 1984) ....................................................... 35

*Brink's Inc. v. City of New York,*
  717 F.2d 700 (2d Cir. 1983) ...................................................................... 11

*Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co,*
  819 F.2d 1471 (8th Cir. 1987) ................................................................. 13

*Chemical Bank v. Arthur Andersen & Co,*
  726 F.2d 930 (2d Cir. 1984) ..................................................................... 33

*Dodson v. CBS Broad. Inc.,*
  423 F.Supp.2d 331 (S.D.N.Y. 2006) ........................................................ 35

*Fagiola v. Nat'l Gypsum Co AC & S Inc.,*
  906 F.2d 53 (2d Cir. 1990) ...................................................................... 29

*Fed. Ins. Co. v. Mertz,*
  2016 WL 1572995 (S.D.N.Y. Apr. 18, 2016) ............................................. 34

*Folio Impressions, Inc. v. Byer California,*
  937 F.2d 759 (2d Cir. 1991) ............................................................... 14, 15

*FTC v. RCG Advances, LLC,*
  2023 WL 6281138 (S.D.N.Y. Sept. 27, 2023) ............................................. 12

*Gray v. Great American Recreation Association, Inc.,*
  970 F.2d 1081 (2d Cir. 1992) ................................................................. 5, 6

*Hart v. RCI Hosp. Holdings, Inc.*,
   90 F.Supp.3d 250 (S.D.N.Y. 2015) ............................................................. 27

*In re 650 Fifth Ave. and Related Properties*,
   2017 WL 11490676 (S.D.N.Y. June 5, 2017) ............................................ 18

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) .............................................. 20

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F.Supp.3d 278 (S.D.N.Y. 2014) ............................................................ 33

*In re Mylan N.V. Sec. Litig.*,
   666 F.Supp.3d 266 (S.D.N.Y. 2023) .......................................................... 11

*LiButti v. United States*,
   107 F.3d 110 ............................................................................... 7, 8, 9, 10, 12

*Old Chief v. United States*,
   519 U.S. 172 (1997) ................................................................................. 4, 27

*Pappas v. Middle Earth Condo. Ass'n*,
   963 F.2d 534 (2d Cir. 1992) ...................................................................... 26

*Payne v. Jones*,
   711 F.3d 85 (2d Cir. 2013) .......................................................................... 5

*People of State of NY v. Adorno*,
   1987 WL 19642 (S.D.N.Y. Oct. 29, 1987) ................................................ 20

*Searles v. First Fortis Life Ins. Co.*,
   98 F.Supp.2d 456 (S.D.N.Y. 2000) ........................................................... 15

*SEC v. Adelphia Commc'ns Corp.*,
   2006 WL 8406833 (S.D.N.Y. Nov. 16, 2006) ........................................... 11

*SEC v. Am. Growth Funding II, LLC*,
   2018 WL 6322145 (S.D.N.Y. Dec. 4, 2018) ............................................... 3

*SEC v. Collector's Coffee Inc*,
   2023 WL 8280531 (S.D.N.Y. Nov. 30, 2023) ............................................. 6

*SEC v. Collector's Coffee Inc*,
   Transcript of Record (S.D.N.Y. Dec. 11-13, 2023) ...................................... 6

*SEC v. Genovese.*,
    2022 WL 16748779 (S.D.N.Y. Nov. 7, 2022) ........................................................ 4, 21

*SEC v. Lek Secur. Corp.*,
    2019 WL 3034888 (S.D.N.Y. July 11, 2019) ............................................................. 31

*SEC v. Ralston Purina Co.*,
    346 U.S. 119 (1953) .................................................................................................... 22

*SEC v. Terraform Labs Pte. Ltd.*,
    2023 WL 8944860 (S.D.N.Y. December 28, 2023) ............................................... passim

*SEC v. Thompson*,
    238 F.Supp.3d 575 (S.D.N.Y. 2017) ......................................................................... 33

*State Farm Mut. Auto. Ins. Co. v. Abrams*,
    2000 WL 574466 (N.D. Ill. May 11, 2000) ................................................................ 8

*United States v. Al-Sadawi*,
    432 F.3d 419 (2d Cir. 2005) ........................................................................................ 5

*United States v. Barnwell*,
    2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ...................................................... 31, 32

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) .................................................................................... 21

*United States v. Booth*,
    2022 WL 3139651 (S.D.N.Y. Aug. 4, 2022) ........................................................ 30, 31

*United States v. Brown*,
    79 F.32d 321 (2d Cir. 1935) ........................................................................................ 2

*United States v. Caccia*,
    122 F.3d 136 (2d Cir. 1997) ........................................................................................ 6

*United States v. Carboni*,
    204 F.3d 39 (2d Cir. 2000) ........................................................................................ 21

*United States v. Conlin*,
    551 F.2d 534 (2d Cir. 1977) ...................................................................................... 29

*United States v. Copple*, 24 F.3d 535 (3d Circ. 1994) ...................................................... 2

*United States v. District Council of New York City and Vicinity of United Broth. of
Carpenters and Joiners of America.*, 832 F.Supp.644 (S.D.N.Y. 1993) ........................ 8

*United States v. Fields*,
  102 F.2d 535 (8th Cir. 1939) ......................................................... 5

*United States v. Forbes*,
  249 Fed. Appx. 233 (2d Cir. 2007) .......................................... 2, 3

*United States v. Forbes*,
  2006 WL 2792883 (D. Conn. Sept. 28, 2006) ............................. 2

*United States v. Gardell*,
  2001 WL 1135948 (S.D.N.Y. Sept. 25, 2001) ........................... 20

*United States v. Gonzalez*,
  110 F.3d 936 (2d Cir.1997) ....................................................... 22

*United States v. Gramins*,
  939 F.3d 429 (2d Cir. 2019) ........................................................ 2

*United States v. Lemire*,
  720 F.2d 1327 (D.C. Cir. 1983) ................................................ 29

*United States v. Levy*,
  731 F.2d 997 (2d Cir. 1984) ................................................ 21, 22

*United States v. McElroy*,
  587 F.3d 73 (1st Cir. 2009) ...................................................... 29

*United States v. Miller*,
  954 F.3d 551 (2d Cir. 2020) ..................................................... 30

*United States v. O'Connor*,
  580 F.2d 38  (2d Cir.1978) ................................................. 21, 22

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006) ..................................................... 30

*United States v. Rigas*,
  490 F.3d 208 (2d Cir. 2007) ..................................................... 32

*United States v. Sasso*,
  59 F.3d 341 (2d Cir. 1995) ....................................................... 19

*United States v. Scarpa*,
  913 F.2d 993 (2d Cir. 1990) ..................................................... 13

*United States v. Soto*,
   2014 WL 1694880 (S.D.N.Y. April 28, 2014) .................................................... 18, 19

*United States v. Southland Corp.*,
   760 F.2d 1366 (2d Cir. 1985) .................................................................................. 34

*United States v. Stierhoff*,
   500 F.Supp.2d 55 (D.R.I. 2007) .............................................................................. 32

*United States v. Taylor*,
   802 F. App'x 604 (2d Cir. 2019) .............................................................................. 18

*United States v. Torres*,
   845 F.2d 1165 (2d Cir. 1988) .................................................................................... 6

*United States v. Wexler*,
   621 F.2d 1218 (2d Cir. 1980) .................................................................................. 21

*Yaron v. United States*,
   586 F. App'x 819 (2d Cir. 2014) .............................................................................. 18

**Statutes**

15 U.S.C. § 77v........................................................................................................... 25

**Rules**

Fed. R. Civ. P. 37................................................................................................. 23, 40

Fed. R. Evid. 401 ............................................................................................. 3, 13, 20

Fed. R. Evid. 402 ........................................................................................................ 1

Fed. R. Evid. 403 .................................................... 2, 3, 13, 19, 20, 22, 23, 28

Fed. R. Evid. 404 ................................................................................................. 21, 22

Fed. R. Evid. 602 ................................................................................................. 14, 27

Fed. R. Evid. 609 ................................................................................................... 5, 28

Fed. R. Evid. 611 ...................................................................................................... 29

Fed. R. Evid. 702 ...................................................................................................... 30

Fed. R. Evid. 801 ................................................................................... 8, 24, 26, 34

Fed. R. Evid. 802 ........................................................................................................ 26

Fed. R. Evid. 803 ................................................................................................... 16, 17

Fed. R. Evid. 804 ........................................................................................................ 16

Fed. R. Evid. 807 ........................................................................................................ 18

Fed. R. Evid. 1006 ........................................................................................... 29, 30, 31

## ARGUMENT

Pursuant to Rule 9 of Your Honor's Individual Rules of Practice and the Amended

Stipulation and Order (ECF No. 174), the SEC submits the following opposition to Defendants'

motions *in limine*.

**I.     Investor Testimony as to Purchases and Losses in May 2022 is Relevant, Probative, and Not Unduly Prejudicial.**

The SEC intends to present testimony from investors regarding the materiality of

Defendants' false and misleading statements, and the effect that those misstatements and

omissions had on investors' decision to make their investments. *See* Decls. of A. Vakil (ECF No.

86), N. George (ECF No. 85), M. Hyde (ECF No. 84), B. Revsin (ECF No. 82), A. Sethi (ECF

No. 83), and J. Kol (ECF No. 89). Having defrauded their investors, Defendants now seek to

silence them. Defendants seek to preclude sweeping amounts of probative evidence, including

the amounts of UST or LUNA those investors acquired, the financial implications of those

purchases, the fact of aggregate or individual loss amounts following the May 2022 collapse, and

the fact of the collapse of UST and LUNA prices in May 2022.[1] Def. Mot. at 1, 3-4.

The Court should deny Defendants' motion because the evidence they seek to exclude is

relevant to materiality, an element the SEC must prove, and is therefore admissible evidence. *See*

Fed. R. Evid. 402. Specifically, one investor is expected to testify that he bought and sold certain

---

[1] Defendants also seek to exclude testimony relating to May 2022 through Dr. Bruce Mizrach and the SEC's summary witness, Donnie Hong. With respect to Dr. Mizrach, the Court already rejected Defendants' argument to "exclude any opinions by Dr. Mizrach about UST's later price crash in 2022" because "there are no such opinions to exclude." *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *7 (S.D.N.Y. December 28, 2023). As the Court correctly observed, Dr. Mizrach's "opinions are only about the May 2021 depeg, not events in 2022." *Id*. With respect to Mr. Hong, Defendants' argument that "the SEC's prior briefing forecasts its use of Hong's testimony to present alleged losses" is purely conjecture. (Def. Mot. at 3). The SEC does not intend to call Mr. Hong for the purpose of demonstrating investor losses.

amounts of UST during the May 2022 crash, in a panic precisely because he believed that UST's peg would be restored by the algorithm. He is further expected to testify that this belief directly tied to his understanding that the algorithm alone had worked in stabilizing the peg in May 2021. Similarly, other investors will testify that, had they been aware that the algorithm could not withstand the events of May 2021 without third-party intervention, these investors would not have purchased as much as UST as they did, or in the manner that they did. Thus, details relating to investor purchases and the fact that investors lost money as a result are both "highly probative and relevant to the issue of materiality." *See United States v. Forbes*, 2006 WL 2792883, at *5 (D. Conn. Sept. 28, 2006), *aff'd* 249 Fed. Appx. 233 (2d Cir. 2007).

Evidence and testimony relating to the source of the investors' funds is also probative of materiality for the same reasons. That investors chose to invest their life savings or amounts drawn from a home equity line of credit demonstrates the strength of their belief that the algorithm worked and was stable, and how important it was to their investment decisions. *See United States v. Gramins*, 939 F.3d 429, 445-446 (2d Cir. 2019) (affirming admission of evidence that defendants' misrepresentations were important to counterparties' investment decisions in establishing materiality).[2]

---

[2] Defendants rely on inapposite case law in advancing their arguments that such testimony would be unduly prejudicial. *United States v. Martoma*, 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014) was an insider trading case relating to "other act" evidence and did not involve testimony from investors as to losses. *United States v. Copple*, 24 F.3d 535 (3d Circ. 1994) and *U.S. v. Brown*, 79 F.2d 321 (2d Cir. 1935) are criminal cases involving mail fraud charges that contain no discussion of materiality. In fact, in *United States v. Copple*, limited evidence of investor harm or loss was deemed to be relevant, admissible, and not unduly prejudicial for the purpose of proving defendant's specific intent to defraud. 24 F.3d at 545. And although in that case the Third Circuit held that testimony relating to the type of funds lost (*e.g.* savings for a child's college tuition) did not pass the Rule 403 balancing test, that holding was based in part on the court's conclusion that the evidence was not relevant to the *defendant's specific intent to defraud*. Here, by contrast, these investment decisions are directly probative of the materiality of the Defendants' misrepresentations and omissions to the investing public.

Similarly, the fact of the May 2022 crash and the resulting loss of nearly $40 billion in market value is also relevant.[3] If the investing public had known that Terraform's algorithm could not withstand the May 2021 events, they would not have trusted it with its funds in the amounts they did, leading to an increase in LUNA's price. Excluding the fact that the May 2022 crash happened and caused losses would leave the jury with only the evidence about the rise in the value of LUNA and UST after May 2021, covering up the fall to tell a misleading half of the story. In *United States v. Forbes*, the Second Circuit affirmed a district court's admission of similar evidence, finding that "[t]he District Court correctly ruled that references to the decline in [the Company's] stock price or investor losses were probative on the issue of materiality and permissible under Federal Rule of Evidence 403" and references to a "$14 billion fraud" were not misleading or unduly prejudicial. 249 Fed. Appx. 233, 236 (2d Cir. Oct. 1, 2007).

In support of their motion, Defendants rely on case law where evidence of investor gain or loss was excluded as irrelevant, but those cases did not consider whether that evidence was relevant to *materiality* or exclude it on that basis. For example, in *SEC v. Am Growth Funding II, LLC*, the SEC successfully precluded Defendants from improperly injecting issues of *reliance or loss causation* by suggesting that the SEC had not proved an element that the SEC was not required to prove—investor losses. 2018 WL 6322145, at *1 (S.D.N.Y. Dec. 4, 2018) (excluding monetary losses or profits of investors where Defendants were attempting to present evidence of

---

[3] By contrast, as the SEC has argued in its Motion *In Limine* No. 3, the voluminous testimony and evidence that Defendants seek to introduce about what *caused* the May 2022 depeg is irrelevant and excludable as unduly prejudicial. There is no dispute that sophisticated market players contributed to the May 2022 collapse, *see* Am. Compl. ¶ 170, and the SEC seeks to avoid wasting days of the Court's and the jury's time litigating that issue. This evidence could also cause jury confusion by suggesting that someone else was responsible for the losses Defendants caused. The issues before the jury are the falsity of Defendants' fraudulent misstatements and omissions to investors, the materiality thereof, and whether Defendants acted with scienter. This evidence should therefore be excluded under Fed. R. Evid. 401 and 403

investor gain or recoupment of losses). Similarly, in *SEC v. Genovese*, the Court excluded evidence or argument concerning shareholder losses *per se* where it was not "probative of any disputed issue" but did allow introduction of "evidence of stock price movement and timing and volume of investments…in the aggregate and relative to other trading activity" as highly probative of materiality and scienter. 2022 WL 16748779 at *1 (S.D.N.Y. Nov. 7, 2022).

That the SEC does not have to prove reliance or loss causation, and that Defendants cannot improperly suggest that it must, does not prevent the SEC from proving this case through the evidence of its own choice. This is particularly so where that evidence is probative of a highly contested issue, materiality. *See Old Chief v. United States*, 519 U.S. 172, 200 (1997) ("Because the Government bears the burden of proof on every element of a charged offense, it must be accorded substantial leeway to submit evidence of its choosing to prove its case.").

## II.     Evidence or Reference to Mr. Kwon's Conviction For Criminal Passport Forgery In Montenegro Is Admissible and a Missing Witness Instruction is Appropriate

Defendants seek to exclude evidence or reference to Kwon's forgery conviction in Montenegro, his other indictments in the United States and South Korea, and further argue that a missing witness instruction is not appropriate because Kwon "lacks control over his ability to appear" at trial. Def. Mot. 5. Defendants' motion should be denied. First, although the SEC does not intend to introduce evidence regarding Kwon's indictments in the United States or South Korea,[4] Kwon's forgery conviction is admissible under Fed. R. Evid. 609(a); the SEC has also moved *in limine* on the issue. *See* SEC Mot. *in Limine* No. 5, ECF No. 188 at 17-21.

---

[4]  The SEC could reasonably seek to introduce Kwon's March 2023 efforts to flee to Dubai with criminal charges pending in South Korea (PX 55a), as probative of Kwon's consciousness of guilt, but does not intend to do so at trial. *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) ("It is well-settled that flight can, in some circumstances, evidence consciousness of guilt.").

Defendants also argue that the Court should not instruct the jury that it may draw an adverse inference from Kwon's failure to appear at trial. Def. Mot. 5-6. Defendants are wrong. "The non-appearance of a litigant at trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention." *Gray v. Great American Recreation Association, Inc.,* 970 F.2d 1081, 1082 (2d Cir. 1992) (quoting *United States v. Fields,* 102 F.2d 535, 537–38 (8th Cir. 1939)). Kwon's failure to appear at trial qualifies for the adverse inference, given that he has procured his own absence by contesting extradition to the United States.[5]

Defendants rely on inapposite cases to support their argument that a missing witness instruction is not appropriate. Def. Mot. 6. For example, in *Payne v. Jones*, the Second Circuit merely quoted the district court's instruction that the jury should not draw an adverse inference from defendant's involuntary absence from three days of a five-day trial due to illness. 711 F.3d 85, 92 (2d Cir. 2013). The facts here could hardly be more different: Kwon will likely be absent from the entire trial due to his own challenges to U.S. extradition, thereby depriving the SEC of the ability to call the architect of Defendants' fraud schemes in its case-in-chief at trial. *See*

---

[5]  As the Court is aware, three weeks before the previously scheduled trial in late January, Kwon sought an adjournment until "no earlier than March 18, 2024" because he "wishes to attend his trial" and "has made every effort to be extradited from Montenegro as quickly as possible." ECF No. 161 (January 11, 2024). After Kwon secured the adjournment, the Montenegrin High Court ordered that Kwon should be extradited to the United States. Decl. of Goran Rodic ¶ 15, ECF No. 179-1 (Feb. 26, 2024). Instead of accepting his extradition to the United States so that he could appear for the March 25 trial as represented to the Court and the SEC, Kwon appealed the ruling. *Id.* at ¶ 15. Kwon contested extradition to the United States because, according to his Montenegrin attorney, he "prefers to be extradited to South Korea." *Id.* at ¶ 8. Due to Kwon's challenges to his extradition to the United States, Kwon likely will not appear at the trial. *Id.* at ¶¶ 17-18.

*United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) (when a "a party has it peculiarly within his power to produce [a] witness[ ] whose testimony would elucidate the transaction and fails to produce such witnesses, the jury may infer that the testimony, if produced, would be unfavorable to that party.").

Defendants also argue that a missing witness instruction would be unduly prejudicial but cite no authority in this District for that proposition. Def. Mot. 6-7. The Second Circuit has repeatedly endorsed the instruction when, as here, a critical witness within one party's control does not appear. *Gray,* 970 F.2d at 1082; *Torres*, 845 F.2d at 1169; *United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997). Accordingly, Judge Marrero recently gave a missing witness instruction on similar facts in *SEC v. Collector's Coffee, Inc., et al.*, No. 19-cv-4355 (S.D.N.Y.). In that case, the defendant was "detained in Germany" and, like Kwon, "resisting extradition" to the United States, *SEC v. Collector's Coffee Inc.*, 2023 WL 8280531, at *8 (S.D.N.Y. Nov. 30, 2023), and the Court provided the jury a missing witness instruction. Ex. A, *SEC v. Collector's Coffee, Inc., et al.*, No. 19-cv-4355, Trial Tr. 917:19-918:1 (Dec. 11, 2023); 1307:21-25 (Dec. 13, 2023) (the Court delivering the missing witness instruction).

**III.    The *LiButti* Factors Counsel for an Adverse Inferences Instruction Against Defendants**

Defendants argue that Jeffrey Kuan, Kanav Kariya, and William DiSomma's invocations of the Fifth Amendment should be excluded from evidence. Def. Mot. 8-12. The SEC has already moved *in limine* to admit each witness's Fifth Amendment invocation and requested that the Court provide an adverse inference instruction. SEC Motion *in Limine* No. 12, ECF No. 188 at 1-9. For the reasons set forth in that motion, and those set forth below, the Court should reject Defendants' motion.

### A. Co-Conspirators Kanav Kariya and William DiSomma's Invocations Should Be Admitted and an Adverse Inference is Warranted

Defendants argue that each of the *LiButti* factors weigh in factor of excluding Kariya and DiSomma's Fifth Amendment invocations and barring an adverse inference. In so arguing, they ignore the facts and misapply the law. Each *LiButti* factor counsels in favor of the conclusion that, as co-conspirators, Kariya and DiSomma's interests are aligned with Defendants. Moreover, the corroborating evidence demonstrates that here an "adverse inference is trustworthy under all the circumstances and will advance the search for the truth." *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997).

First, Defendants argue that Kariya and DiSomma merely had an "arms-length business relationship" with Defendants. Def. Mot. 9. The undisputed facts prove that the opposite is true. As set forth in the SEC's filings, the evidence will show that Jump was Terraform's most important business relationship because Jump fulfilled the vital role of creating liquidity in the market for Terraform's crypto assets. *See* SEC's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("SEC 56.1") at ¶ 126; Ex. 168 (January 13, 2020 email from Do Kwon re: [CONFIDENTIAL] Regarding liquidity partnership), ECF No. 75-12. As Jump's cofounder, DiSomma was one of the most important decisionmakers at Jump. Moreover, Kariya was one of the most influential Jump decisionmakers in the crypto asset area, and regularly spoke with Do Kwon. *See* Ex. 5 (Excerpts from Do Kwon Testimony Transcript), ECF No. 73-1, at 290:5-9. Both DiSomma and Kariya were therefore responsible for the strong business relationship shared between Terraform and Jump.

Moreover, when Defendants were most in need in May 2021, Defendants turned to Kariya, DiSomma, and Jump to save the day. In fact, Defendant Kwon believed that without Jump's intervention Terraform "actually might've been fucked." SEC 56.1 at ¶ 219. In *LiButti*

the Second Circuit explained that the closer the relationship between a party and a non-party is, the "less likely the non-party witness would be to render testimony in order to damage the relationship." 107 F.3d at 123. That is precisely the type of close business relationship between Defendants and Kariya, DiSomma, and Jump.

Defendants next argue that they did not vest control in Kariya and DiSomma. In so doing, Defendants fail to properly consider the import of the *LiButti* court's statement that "[t]he degree of control which the party has vested in the non-party witness in regard to the *key facts* and general subject matter of the litigation will likely inform the trial court whether the assertion of the privilege should be viewed as akin to testimony approaching admissibility under Fed. R. Evid. 801(d)(2)—a vicarious admission." *Id.* (emphasis added). And Defendants further ignore that 801(d)(2) includes statements by the party's co-conspirator during and in furtherance of the conspiracy. As this Court is well aware, the agreement between Terraform and Jump—ironed out with Kariya as UST was depegging—is at the heart of the scheme to deceive investors about UST's stability. *See* SEC 56.1 at ¶¶ 210-218 (ECF No. 72). Further, after brokering this deal DiSomma then directed Jump traders to take steps to execute trades to help restore UST's peg. *See id.* at ¶ 214. And as courts have long recognized, alleged co-conspirators are highly unlikely to render damaging testimony against the other. *See State Farm Mut. Auto. Ins. Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (applying the *LiButti* factors); *see also United States v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America*, 832 F.Supp.644, 652 (S.D.N.Y. 1993) (holding that a co-conspirator's refusal to testify may justify an inference against other co-conspirators).

Defendants next argue that DiSomma and Kariya's invocations only advance their own interests. But DiSomma and Kariya "[are] pragmatically a noncaptioned party in interest" in this

case. *LiButti*, 107 F.3d at 123. As such, DiSomma and Kariya's continued invocations of their Fifth Amendment privilege advance both their own interests by permitting each to avoid self-incrimination and assist Defendants by not testifying truthfully and irreparably damaging their defense. Indeed, given DiSomma and Kariya's joint agreement with Defendants, it is likely that testimony that inculpates DiSomma and Kariya would also inculpate Defendants. Moreover, DiSomma and Kariya's interest in avoiding the full and public elucidation of their and Jump's role in the scheme to deceive investors, and whatever consequences might follow is consistent with Defendants' interest in avoiding liability for this scheme. Thus, the third factor strongly counsels for the adverse inference.

Finally, Defendants double down on their claim that the fourth *LiButti* favors exclusion because neither DiSomma nor Kariya actually made the misstatements at issue in the case. Defendants misunderstand the law. The fourth *Libutti* factor asks "whether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects." *Id.* at 123-24. And, as this Court has recognized, the secret agreement between Defendants and Jump to take efforts to restore the UST peg in May 2021 is the *key* aspect of the fraud allegation. *Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *19 ("The SEC's evidence that defendants engaged in a scheme to deceive investors about UST's $1.00 peg, by secretly arranging for Jump to make bulk purchases of UST to drive the price back up to $1.00, is compelling but circumstantial.").

The evidence will establish that Kariya brokered the critical agreement that led to Jump intervening on May 23, 2021, to help restore UST's peg to the U.S. dollar. SEC 56.1 at ¶ 214 (ECF No. 72). The evidence will further show that DiSomma discussed the agreement with Kariya and directed Jump traders to execute trades to help restore UST's peg. *See id.* Thus, both

DiSomma and Kariya are key figures in this litigation, and their testimony, or a substitute

therefor, is critical to "the search for truth." *LiButti*, 107 F.3d at 123-24. Moreover, as articulated

in the SEC's motion *in limine*, there is overwhelming corroborating evidence establishing that

through Kariya and DiSomma, Jump entered into an agreement with Defendants to help restore

the UST peg. ECF No. 188 at 1-9.

In a last-ditch attempt to preclude Kariya and DiSomma's testimony, Defendants argue

that Jump did not actively trade to help restore UST's peg to the U.S. Dollar. In so doing,

Defendants recycle the same arguments about Jump's "active buying" and the trading of other

entities that they made in their failed effort to have Dr. Mizrach excluded. *See* Def. *Daubert* Mot.

at 7-8 (ECF. No. 74). The Court correctly rejected these arguments in denying Defendants'

Daubert motion. *Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *6-7. Such a post-hoc

argument about whether Jump ultimately succeeded in restoring the peg (which is not the SEC's

burden to prove) is wholly irrelevant to whether DiSomma and Kariya agreed to try to restore the

peg, and thus has no bearing on the admissibility of their invocations.

For these reasons, and the reasons more fully set forth the SEC's Motion *in Limine* No. 1

(ECF No. 188), Defendants' motion must be rejected. The evidence firmly establishes that the

adverse inferences requested by the SEC are "trustworthy under all circumstances and will

advance the search for truth." *LiButti*, 107 F.3d at 124.

### B. Former Employee Kuan's Invocations Should be Admitted and an Adverse Inference is Warranted

Defendants also argue that each of the *LiButti* factors weigh in favor of excluding Kuan's

Fifth Amendment invocations and barring an adverse inference. In so arguing, they ignore that

even prior to its decision in *LiButti*, the Second Circuit recognized a "non-party's invocation

[could] be used against a former employer, accepting the rationale that ex-employees' refusals to

testify could appropriately be conceptualized as vicarious admissions of their former employer." *See Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983). And, as set forth in the SEC's Motion *in Limine* No. 1 (ECF No. 188), three of the four *LiButti* factors, and Kuan's contemporaneous documented statements, counsel in favor of the trustworthiness of drawing an adverse inference against Defendants based upon Kuan's invocation.

Defendants also argue that Kuan, as a former employee, no longer has a relationship with Defendants. In support of this argument, they argue that there is no evidence to suggest that Defendants are paying Kuan's legal fees. However, Chris Amani, Terraform's CEO, testified in his deposition that Defendants were paying Kuan's legal fees. *See* Ex. 3 (Excerpts from the Deposition Transcript of Chris Amani), ECF. No. 73-1, at 66:7-67:14.

Defendants also cite to inapposite cases. For instance, in *In re Mylan N.V. Sec. Litig.,* 666 F. Supp. 3d 266, 320 n.21 (S.D.N.Y. 2023), the court merely commented in a footnote that it could not infer a conspiracy from Fifth Amendment invocations alone and explained the need for corroboration. The SEC agrees. This is why our motion *in limine* laid out the extensive corroboration of the secret deal between Jump and Defendants to bolster UST's peg in May 2021. ECF No. 188 at 1-9. Defendants' reliance on *SEC v. Adelphia Commc'ns Corp.*, 2006 WL 8406833, at *12 (S.D.N.Y. Nov. 16, 2006), is equally misplaced. Critical to the court's decision there was the determination that a statement by a supervisor did not qualify as an admission by a subordinate. Here, just the opposite is true. Defendant Kwon was Terraform's CEO and oversaw the operation of the company and his leads, including Kuan, who was the head of business development, Curran, and others. As such, Kuan's Fifth Amendment invocations should result in an adverse inference if the *LiButti* factors weigh in favor, as they do here.

Next, Defendants inexplicably argue that Kuan's invocations only advance his own interests. But Kuan's interest in avoiding the full and public elucidation of his knowledge of Terraform's fraud upon the investing public, and whatever consequences might follow for him reputationally, is compatible with Defendants' interest in avoiding liability for it.

Finally, Defendants, argue that Kuan is not a key figure in this case. However, this Court already recognized that Kuan is one of the key witnesses in possession of vital evidence supporting the claim that Defendants deceived investors about UST's stability. *Terraform Labs*, 2023 WL 8944860, at *19 ("The SEC's best evidence of a scheme with Jump comes from text messages between Jeff Kuan, Terraform's business development lead, and Brian Curran, the company's head of communications."). In particular, Kuan spoke with Defendant Kwon during the UST depeg in May 2021, and Kwon informed him of the deal with Jump. *See* Ex. 273 (Message thread starting with message from Brian Curran, dated May 23, 2021), ECF No. 76-13. The facts therefore have already established that Kuan is a key figure in this litigation because he is in possession of critical evidence necessary to prove that Defendants deceived the investing public.

Finally, because most of Kuan and Curran's documented conversations were contemporaneous with the events as they unfolded, "the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124; *see also FTC v. RCG Advances, LLC*, No. 20-CV-4432 (JSR), 2023 WL 6281138 at *3 (S.D.N.Y. Sept. 27, 2023) (quoting *LiButti*).

### C.  The Probative Value of Kuan, Kariya, and DiSomma's Testimony is Substantial and Outweighs any Potential Prejudice

In light of Kuan, Kariya, and DiSomma's knowledge about Terraform and Jump's secret deal in May 2021, their continued refusal to testify deprives the factfinder of significant,

firsthand information that would assist in the search for the truth. Moreover, the probative value of Kuan, Kariya, and DiSomma's Fifth Amendment testimony is substantial. As described above, Kariya and DiSomma were inextricably involved in the negotiation and execution of the secret deal between Defendants and Jump to restore the peg in May 2021. And Kuan personally spoke with Defendant Kwon and learned from Kwon that Jump was intervening to help restore the UST peg. The jury will rightly question why it has not heard from Kuan, Kariya, and DiSomma, and will further hold that omission against the SEC (who has the burden of proof). Should the jury not hear the Fifth Amendment assertions it may be left with the false impression that their testimony supports the Defendants. Thus, any perceived prejudice is more than outweighed by the probative value of each witness's testimony. Moreover, it is the SEC who will be unfairly prejudiced if it is not permitted to introduce the Fifth Amendment assertions.

Finally, Defendants contend that they will be prejudiced because they argue the SEC's attorneys will effectively testify for Kuan, Kariya, and DiSomma. Def. Mot. 12. The SEC, however, intends to call each witness for live testimony. Should the Court have any concern about potential leading questions then those concerns can be addressed prior to calling the witnesses.  *See In re WorldCom, Inc. Sec. Litig.,* No. 02 CIV 3288 DLC, 2005 WL 375315, at *5 (S.D.N.Y. Feb. 17, 2005) (noting that "the court has discretion under Rule 403 to control the way in which the invocation of the privilege reaches the jury").

## IV.    The Testimony of Four SEC Witnesses Should Not be Excluded.

The Court should deny Defendants' motion to exclude the testimony of four witness on the grounds that the witnesses allegedly lack personal knowledge under Fed R. Evid. 602. Def. Mot. 13-15. "The test is whether a reasonable trier of fact could believe the witness had personal knowledge." *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991)

1.   ███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████ [6] As he stated in his declaration, ████████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

*Id.* at ¶¶ 30-39.

█████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

_____

[6] ███████████████████████████████████████████
██████████████████████████████ Def. Mot. 14.  These issues are addressed separately in the SEC's Motion *in Limine* No. 12 and the SEC's Opposition to Defendants' Motion *in Limine* No. 6, where the SEC argues that certain of these statements should be admitted as exceptions to hearsay for the reasons described therein.

███████████████████████████████████████████████ At most, this fact goes to the weight Defendants may argue that the jury should give to ██████████ observations and conclusions.

Defendants' motion further appears based on a logical fallacy that assumes the truth of their unproven claims that Chai operated the LP Server and used blockchain technology for its payment processing business. ████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████ Def. Mot. 13-14. Yet Defendants cannot exclude a witness simply because his testimony contradicts their version of events. And █████████████ inability to explain how Chai used the blockchain is entirely consistent with the testimony he will give based on his personal observations that Chai did not, in fact, use the blockchain.

2. ██████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ The Court already rejected Defendants' arguments that statements overheard by █████████ by Jump executives during the May 2021 de-peg event are inadmissible hearsay: "[T]he Court holds that the above statements are admissible under Federal Rule of Evidence 804(b)(3) as statements against interest.  Statements suggesting Jump's, and [Mr. DiSomma and Mr. Kariya's] participation in a secret agreement to restore UST's peg would tend to expose those individuals 'to civil or criminal liability.'" *Terraform Labs PTE Ltd.*, 2023 WL 8944860, at *20. And despite Defendants' astonishing argument that "the state of mind of Jump executives is irrelevant" to the SEC's fraud claims (Def. Mot. at 15), the Court also previously agreed with the SEC that "contemporaneous statements by Jump executives concerning the capital Jump was willing to risk and what Terraform was offering in

return, together with changes in Jump's treading practices, tend to show the state of mind of Jump executives – specifically, their intent, motive, and plan to conspire with Terraform to restore UST's peg. Such statements are likewise admissible under Federal Rule of Evidence 803(3)." *Id.*[7]

3.    Keone Hon:  Contrary to Defendants' argument, the SEC does not intend to call Mr. Hon to discuss the trading of other Jump traders, but may call him to testify about his own trading, a topic about which he has personal knowledge. Hon Decl. ¶¶ 8-9, ECF No. 91 ("On or around the time I joined the Zoom call, I was instructed to purchase UST for Jump Trading . . . I [then] manually entered orders to purchase UST.").

4.    Brandon Ackley:  The SEC intends to call Mr. Ackley for the purpose of authenticating and admitting into evidence Jump's trading records, along with his testimony about those records. Defendants only appear to challenge Mr. Ackley's ability to testify about "statements made by other Jump employees." Def. Mot. 15, but the SEC does not intend to ask Mr. Ackley question about statements made by other Jump employees. Rather, the SEC will question Mr. Ackley, who "regularly review[s] and analyze[s] transaction and order data" for Jump, about its trading records. Although Mr. Ackley's declaration stated its content was based

---

[7] With regard to Defendants' arguments concerning ███████████ personal knowledge, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

on Jump's, not Mr. Ackley's personal knowledge, we expect that Mr. Ackley will have the requisite personal knowledge given his job responsibilities to authenticate and establish that Jump's trading records are admissible business records under Fed R. Evid. 803(6) and to provide brief testimony about those records. *Searles*, 98 F.Supp.2d at 461.

## V.  Neither Party Should Be Permitted to Present Evidence or Argument of Other Unrelated Fraud Cases

Defendants argue that "[a]ny reference to, or mention of, other cases or scandals involving fraud or crypto assets should be precluded as unduly prejudicial to Defendants and irrelevant to the material facts in dispute here." Def. Mot. 16. In particular, ███████████████

████████████████████████████████████████

████████████████████████

The SEC agrees with Defendants on this point. In fact, the SEC has not sought to offer any such evidence in this case,[8] nor has it made arguments related to other fraud cases in this litigation. Defendants, on the other hand, injected the FTX scandal into this case in their summary judgment briefing. Def. Mot. for Summ. J. at 2, ECF No. 100 (October 27, 2023) (arguing that this case is not "like FTX."). Just as the SEC will not submit evidence comparing Defendants' fraudulent schemes to that of other notorious frauds, Defendants should not be

---

[8] ████████████████████████████████████████████

████████████████████████████████████████ Ex. 33 to SEC

Motions *in Limine* (PX 123b). The SEC does not seek to admit ███████████ deposition testimony as evidence, nor does it expect that ██████████ will testify regarding fraud cases unrelated to Defendants' schemes at trial. As for the recorded calls, and as the SEC explained in its motions *in limine*, the SEC only seeks to admit certain portions of those calls and does not intend to offer the portions cited by Defendants into evidence. *Id.*

permitted to present evidence or argument that their conduct is dissimilar from unrelated fraud cases.

## VI.   Certain Audio Recordings are Admissible.

█████████████████████████████████████████████████████████

████████ Def. Mot. At 17-19. For the reasons set forth in the SEC's own motion (Motion *in Limine* No. 12, ECF No. 188 at 34-38), the Court should reject Defendants' effort to exclude the recordings. Indeed, courts routinely admit the statements in audio recordings that are against the declarant's interest. *See, e.g., United States v. Taylor*, 802 F. App'x 604, 607-09 (2d Cir. 2019); *United States v. Soto*, 2014 WL 1694880, at *5-6 (S.D.N.Y. April 28, 2014). The same is true for statements in audio recordings that are made by a co-conspirator in furtherance of a conspiracy. *See, e.g., Yaron v. United States*, 586 F. App'x 819, 821 (2d Cir. 2014); *In re 650 Fifth Ave. and Related Properties*, 2017 WL 11490676, at *1-2 (S.D.N.Y. June 5, 2017).

Defendants' ██████████████████████████████ is also without merit. As an initial matter, the SEC is not seeking to admit the statements under Federal Rule of Evidence 807. Nor would their admission violate the Confrontation Clause. To the extent courts in this Circuit review the trustworthiness of statements – such as those here – that inculpate both the declarant and Defendants, they evaluate whether:

- the statement "inculpated both the defendant and declarant equally";
- the declarant had a reason to lie;
- the statements were made in private and not under official interrogation, and thus were not made to curry favor with authorities.
- the statements were made to curry favor with the person to whom the declarant was speaking.

*United States v. Sasso*, 59 F.3d 341, 349-50 (2d Cir. 1995); *see also United States v. Soto*, 2014 WL 1694880, at *5 (S.D.N.Y. April 28, 2014) (to admit a statement against interest that also implicates a third party, "the Government must show that 'the statement was made to a person

whom the declarant believes is an ally, not a law enforcement official,'" and the inculpatory statements regarding the declarant and the defendant were equally reliable) (quoting *Sasso*, 59 F.3d at 349). Here, the declarants were talking to ███████████, not a law enforcement official, and had no incentive to misrepresent or slant the facts. The statements certainly implicated the declarant and Defendants equally, as they were jointly engaged in an effort to mislead the public. That multiple declarants repeated essentially the same statement reinforces its reliability.

**VII.     Reference to Defendants' and Others' Beliefs about the Legality of Chai's Use of The Blockchain Under Korean Law is Admissible.**

Defendants seek to exclude any reference to Korean law or the legality of Chai's purported use of blockchain technology as unfairly prejudicial under Fed. R. Evid. 403 because "Chai's motivations and beliefs about its operations under Korean law in 2022" are not relevant.[9] Def. Mot. 21-22. Defendants' motion should be denied.

First, regardless of whether *Chai's* understanding of Korean law at any point in time is relevant, *Defendants'* understanding of Korean law at the time they were developing and promoting Chai is key to scienter, which is a core element of this case.[10] While Defendants pretend as if Chai and Terraform were unrelated, Kwon and Daniel Shin co-founded and operated Chai together during a time when Mr. Shin was also the CEO of Terraform.

---

[9] At the outset, Defendants seek to exclude as inadmissible hearsay, specific statements by Chai following the May 2022 crash in which Chai denied to its investors and the public that it had used the Terra blockchain for its payment processing business. Def. Mot. 19-21. The SEC does not intend to introduce these statements at trial to prove the truth of the matter asserted.

[10] Defendants' claims of "unfair surprise" are belied by their own citations to SEC pleadings, including the Amended Complaint, that expressly reference Defendants' communications about Korean legal requirements and the impact it had on decisions relating to Chai.  Def. Mot. 19, 22.

Documents and communications establish that Terraform personnel, including Kwon and Shin, believed that Korean regulations impacted Chai's ability to use blockchain technology for its payment processing business. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████. *See, e.g.*, Ex. 32 to SEC Mot. *in Limine*, PX 122b (20:3-22:5); Ex. XX to [SEC Opposition], PX 150a, 150b. This evidence tends to demonstrate that Defendants knew their representations about Chai's use of the blockchain were false because they did not believe Korean law permitted Chai to process and settle transactions on the blockchain. Such evidence is directly relevant and is not "unfairly prejudicial" under Fed. R. Evid. 403.[11]

        Second, to the extent Defendants intend to question ███████████████████

████████████████████████████ then fairness requires that he be permitted to provide context and explanation for those communications, which will require the introduction of evidence of the Korean investigation and prosecution of Shin and others relating to Defendants' misstatements about Chai's use of the blockchain. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1296 (2d Cir. 1991) (finding that otherwise inadmissible evidence may be elicited once "the door had been opened to correct [a] false impression"); *SEC v. Genovese*, 2022 WL 16748779, at *2 (Nov. 7, 2022, S.D.N.Y) (finding a defendant "will open the door to evidence" that has been excluded, if necessary to rebut an inference created by defendant).

## VIII.   That Defendants Sold Securities Without Registration is Relevant to their Fraudulent Conduct

---

[11] Defendants' cited authority is inapposite because these cases excluded evidence that was already determined to be not significant to proving any element at issue. *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *4-5 (S.D.N.Y. Dec. 3, 2015) (Excluding evidence that "sheds little or no light on any facts in dispute in this case"); *People of State of NY v. Adorno*, 1987 WL 19642, at *3-4 (S.D.N.Y. Oct. 29, 1987) (excluding evidence that was "deemed inadmissible as irrelevant under Fed. R. Evid. 401"); *United States v. Gardell*, 2001 WL 1135948, at *6 (S.D.N.Y. Sept. 25, 2001) (excluding evidence with "minimal probative value").

Defendants' assertion that their unregistered sale of securities is irrelevant to the fraud claims against them lacks merit. They argue that because the Court already found Defendants liable for the unregistered offers and sales of securities (*Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *16), the Court "should exclude any references to TFL's unregistered sales of securities." Def. Mot. at 22. However, Defendants' sale of unregistered securities is "admissible as demonstrating a connected or inseparable transaction from the" fraud claims against them. *United States v. Wexler*, 621 F.2d 1218, 1226 (2d Cir. 1980).

Indeed, evidence regarding Defendants' unregistered sales of securities will be introduced to "'complete the story of the [fraud] on trial by proving its immediate context of happenings near in time and place.'" *United States v. Levy*, 731 F.2d 997, 1004 (2d Cir. 1984) (quoting *United States v. O'Connor*, 580 F.2d 38, 41 (2d Cir.1978)); *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.") (quoting *United States v. Gonzalez,* 110 F.3d 936, 942 (2d Cir.1997)).

Federal Rule of Evidence 404(b)(2) permits evidence of other wrongs for a purpose other than propensity "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. Evid. R. 404(b)(2). The Second Circuit "include[s] under the rubric of the plan exception 'evidence offered to show the existence of a definite project intended to facilitate completion of the [fraud] in question.'" *Levy*, 731 F.2d at 1004 (quoting *O'Connor*, 580 F.2d at 41)). As is evident from the allegations in the SEC's complaint, Defendants' unregistered sale of securities were not a separate "other act," but were

inextricably linked with their fraudulent scheme. *See e.g.*, Am. Compl., ¶ 5 ("Defendants also engaged in a fraudulent scheme to mislead investors about the Terraform blockchain and its crypto asset securities."); ¶ 6 ("Terraform and Kwon also misled investors about one of the most important aspects of Terraform's offering – the stability of UST, the algorithmic 'stablecoin' purportedly pegged to the U.S. dollar.").

Moreover, a reasonable jury could conclude that Defendants' failure to register their offerings and sales of securities under Securities Act Section 5 was part of their plan to commit securities fraud. As the Supreme Court has noted, "the [Securities] Act was described as an Act 'to provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes.'" *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 728 (1975); *see also SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953) ("The design of the statute is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions."). Thus, the jury could find that Defendants were more easily able to engage in their fraudulent schemes and make misrepresentations to the investing public, than if they had subjected themselves to the scrutiny that accompanies registration with the SEC. As such, not only is evidence of Defendants' sale of unregistered securities relevant, the "probative value" of such evidence is not "substantially outweighed" by the "unfair prejudice" to Defendants. Fed. R. Evid. 403.

IX.    **SEC Witnesses Sunny Kim and William Connolly Should Not Be Excluded**

Defendants move to preclude the SEC from calling two SEC employees, William Connolly (an SEC fraud analyst) and Sunny Kim (an attorney in the SEC's Office of International Affairs) under Fed. R. Civ. P. 37(c)(1). Def. Mot. 24. The purported basis for

exclusion is that the witnesses were not included on the SEC's Initial Disclosures under Rule 26.
*Id*. Defendants' motion should be denied for two reasons. First, as the SEC has already told
Defendants, William Connolly may be called as a witness for the limited purpose of
authenticating Plaintiffs' Exhibit 93a ("PX 93a"), attached as Ex. B, a public communication
posted by Kwon to Discord. If Defendants stipulate to the authenticity of PX 93a, there will be
no reason to call Mr. Connolly. Defendants are also wrong to suggest that testimony of the type
provided by Mr. Connolly was undisclosed or somehow "expert testimony." Def. Mot. 24. The
SEC's Initial Disclosures stated that the SEC may call witnesses for this very purpose. ECF No.
188-20 at 3, Ex. T. Even if testimony of the type that will be offered by Mr. Connolly had not
been disclosed (and it was), there would still no basis to exclude Mr. Connolly from testifying
for the limited purpose of authenticating PX 93a. *Cf. Allen v. City of New York*, 2016 WL
345578, at *2 n.4 (S.D.N.Y. Jan. 27, 2016), *aff'd in part, vacated in part on other grounds*, 695
F. App'x 614 (2d Cir. 2017) (finding that "there is no reason to eliminate [witness's] role simply
as a custodian of records" even though witness was not listed on Rule 26 disclosures).

Defendants' effort to exclude Sunny Kim from testifying fare no better. As the SEC has
disclosed to Defendants, Ms. Kim will not be called in the SEC's case-in-chief and may only
testify in the SEC's rebuttal case regarding the procedures used during Paul Kim's testimony
taken in South Korea pursuant to the Court's Letter of Request ("LOR"). The SEC was under no
obligation to disclose Ms. Kim's testimony in its Initial Disclosures, given that Mr. Kim's
testimony was not conducted until January 15, 2024, after the discovery period closed. Indeed,
the SEC disclosed to Defendants that Ms. Kim was a potential rebuttal witness on January 8,
2024, before Paul Kim even testified on January 15, 2024. Because Ms. Kim is a rebuttal witness

whose name could not have been disclosed earlier than it was, there is no basis to exclude her from testifying under Rule 37(c)(1).

## X.   William Chen's Written Statements Regarding Chai Are Admissible as Statements of a Party Opponent Under Fed. R. Evid. 801(d)(2)

William Chen is a former Terraform employee who reported directly to Kwon, Terraform's Chief Executive Officer. Ex. C, Chen Dep. at Tr. 30:19-20. Defendants have sought to designate large portions of Chen's testimony for use at trial, including on Chen's understanding of Chai.[12] ECF No. 188-18. Notwithstanding their own designations of Chen's testimony, Defendants argue that the SEC may not use at trial Chen's contemporaneous statements that Chai did actually not use the Terraform blockchain. For example, Chen exchanged the following messages with Sarah Kim, another Terraform employee:



---

[12] Defendants also included Chen on their list of trial witnesses. ECF No. 188-20.

ECF No. 187-2 (SEC Trial Exhibit 257); *see also* ECF No. 187-3 (SEC Trial Exhibit 370) ███

███████████████████████████████████████████████████████

███████████████████████████████████; ECF No.

187-4 (SEC Trial Exhibit 371); ECF No. 187-5 (SEC Trial Exhibit 375), Ex. 187-6 (SEC Trial

Exhibit 377), and Ex. 187-7 (SEC Trial Exhibit 640). And while Chen spent his testimony

distancing himself from his own statements, his explanations were fanciful at best. *See, e.g.,* Ex.

C at Tr. 76:4-88:21.

  Defendants cannot have it both ways. Having sought to designate Chen's deposition

testimony on Chai that Defendants apparently believe is favorable to their case, Defendants

cannot then preclude the SEC from using relevant contemporaneous documentary evidence on

the same topic. Defendants first argue that Chen's messages with other Terraform employees are

inadmissible hearsay, Def. Mot. 3, but the chats are admissible as non-hearsay statements of a

party opponent under Federal Rule of Evidence 801(d)(2)(D). That rule provides that a statement

is not hearsay when it is made by a party-opponent's "agent or servant concerning a matter

within the scope of the agency or employment, [and] during the existence of the relationship."

Fed. R. Evid. 802(d)(2)(D). In order to show that a statement falls within this rule and is

therefore not hearsay, the party seeking admission must show "(1) the existence of the agency

relationship, (2) that the statement was made during the course of the relationship, and (3) that it

relates to a matter within the scope of the agency." *Attis v. Solow Realty Dev. Co.*, 522 F.Supp.2d

623, 630, n.3 (S.D.N.Y. 2007) (Rakoff, J.) (citing *Pappas v. Middle Earth Condo. Ass'n,* 963

F.2d 534, 537 (2d Cir. 1992)).

  The elements are easily met here. Defendants concede that Chen was an employee (and

therefore an agent) of Terraform and that the statements were made while he was so employed.

Def. Mot. 3. And there is no question that Chen was sufficiently senior given that he reported to Kwon directly. Defendants only dispute that Chen's statements related to a matter within the scope of his employment. *Id*. Defendants are incorrect. Chen testified that understanding how Chai operated was part of his job responsibilities at Terraform. Ex. C, Tr. 56:1-11 (Chen testifying that he "wanted to understand how [Chai and the Terraform blockchain] connected so I could – so I could help out, as it was my job."). ████████████████

████████████████████████████████████

████████████████████████████████

████████████████ *Id*. at 147:4-7. Given all this testimony, Chen's statements to his co-worker that Defendants seek to exclude, including that Chai "doesn't need Terra to work," that LP Server "copies Chai's transactions" onto the Terraform blockchain, and that the "2M terra users [utilizing Chai] are actually one user [c]ontrolling 2m accounts" are within his scope of his employment and therefore are admissible. *Attis*, 522 F. Supp. 2d at 629, n.3.

Defendants also seek to exclude Chen's contemporaneous statements regarding Chai under Fed. R. Evid. 602 for an alleged lack of personal knowledge, Def. Mot. 2-3, even though Defendants have sought to designate the portion of Chen's deposition testimony on Chai that they believe support their litigation positions. Defendants never explain why Chen has personal knowledge with respect to Chai for the portions they seek designate, but somehow lacks it when the SEC seeks to use Chen's contemporaneous statements on the same topic. Nor do Defendants provide authority for their argument that Chen cannot testify because he was not the "most knowledgeable person" about Chai, Def. Mot. 2, which is plainly not required by the rules. And Chen's testimony that, as part of his job responsibilities, he sought to understand how Chai and the blockchain "connected" means he had the requisite personal knowledge to make internal

statements concerning the same topic. Ex. C, Chen Tr. 56:1-11; Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").

Finally, Defendants argue that Chen's statements should be excluded because they are prejudicial and relate to "issues at the heart of the SEC's fraud claim." Def. Mot. 3. Although it is true that Chen's contemporaneous statements corroborate the SEC's fraud claims, that is not a basis to exclude the statements from evidence. *Hart v. RCI Hosp. Holdings, Inc.*, 90 F.Supp.3d 250, 282 (S.D.N.Y. 2015) ("[A]ny prejudice the defendants may experience as a result of admission of these statements and testimony about them is, on the present record, not *unfair* prejudice, but instead derives from the probative value that these statements have for aspects of plaintiffs' case."); *see also Old Chief,* 519 U.S. at 193 ("[T]he question under Rule 403 is one of 'unfair' prejudice—not of prejudice alone . . . 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.").

At bottom, Defendants seek to use Chen's statements for a number of topics, including to explain Chai's connection to the Terra blockchain. ECF No. 188-18 (designating Ex. C, Chen Tr. 74:20 – 75:15). Should the Court permit Defendants to use Chen's live or designated testimony then the SEC must be permitted to use the relevant exhibits to cross-examine Chen on his prior contemporaneous non-hearsay statements. Without question, Chen's prior statements made within the scope of his employment directly contradict his deposition testimony and go to the heart of his credibility as a witness. For the foregoing reasons, should the Court permit the Defendants to designate Chen's testimony or call him as a witness then the Court should deny Defendants' motion *in limine* and admit ECF No. 187-2 (SEC Trial Exhibit 257); ECF No. 187-3 (SEC Trial Exhibit 370); ECF No. 187-4 (SEC Trial Exhibit 371); ECF No. 187-5 (SEC Trial Exhibit 375), Ex. 187-6 (SEC Trial Exhibit 377), and Ex. 187-7 (SEC Trial Exhibit 640).

**XI.     The SEC Does Not Intend To Introduce Evidence Related to Any Other U.S. Government Agency's Investigation**

Defendants move to preclude any reference to the Federal Bureau of Investigation

("FBI"), Department of Justice ("DOJ"), or any U.S. government agency other than the SEC.

With the exception of the Kwon's Montenegrin conviction (Ex. 11 to SEC Mot. *in Limine*, SEC

Trial Exhibit 55a), which is admissible under Fed. R. Evid. 609 as described above, the SEC

does not intend to introduce evidence of any U.S. government agency other than the SEC.

**XII.    The Court Should Not Exclude the SEC's Summary Witnesses**

Defendants argue that the SEC summary witness testimony should be "limited to

authentication of summary exhibits," because the SEC's summary witness testimony would

amount to "a closing argument." Def. Mot. 4-5. Defendants mischaracterize the SEC's intended

use of summary witness testimony, which fully complies with Fed. R. Evid. 1006.

**A.     Legal Standard**

Summary evidence, including the testimony of summary witnesses, is admissible under

Federal Rules of Evidence 1006 and 611(a), to aid the jury with deciphering and organizing

voluminous documents, complex facts, and fragmented evidence. Fed. R. Evid. 1006; *United*

*States v. McElroy*, 587 F.3d 73, 81-82 (1st Cir. 2009) (discussing admissibility of summary

evidence under Rules 1006 and 611(a) "to clarify complex testimony and evidence"). A

summary witness may "help the jury organize and evaluate evidence which is factually complex

and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial."

*United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983); *Fagiola v. Nat'l Gypsum Co AC*

*& S Inc.*, 906 F.2d 53, 57 (2d Cir. 1990) (describing chart as "quintessential summary" that was

"used to facilitate the jury's deliberations and to avoid forcing the jury to examine boxes of

documents in order to make simple calculations"). The Second Circuit has "repeatedly

approved" this "common procedure." *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977).

Whether to admit summary evidence is a decision that lies squarely within the Court's discretion.

*Fagiola*, 906 F.2d at 56.

### B.      The SEC Witnesses are Proper Summary Witnesses

The SEC has notified Defendants that Matthew Lambert, an SEC accountant,[13] will offer

the following summary testimony:

- Introduce a timeline summarizing evidence relating to Jump's loan agreements
  with Terra, including communications between Jump and Terraform leading up to
  and following the May 2021 depeg event; and

- Summarize evidence through introduction of a chart containing certain public
  statements made by Terraform and Kwon relating to the May 2021 depeg,
  significant listings of Terraform securities on crypto asset trading platforms,
  purchases by investors, and evidence summarizing the growth in market
  capitalization of Terraform securities LUNA and UST leading up to and
  following the May 2021 depeg.

ECF No. 185-14. This is standard summary witness testimony permitted by Rule 1006. *United*

*States v. Quattrone*, 441 F.3d 153, 168 n.17 (2d Cir. 2006) ("testimony regarding summaries of

emails and phone calls") *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020) (admitting

summary timeline as substantive evidence). Defendants never reference the SEC's disclosure

regarding Mr. Lambert, nor do they explain why it does not comport with Rule 1006. Def. Mot.

5. Rather, Defendants challenge Mr. Lambert's testimony because he is not employing his

specialized knowledge in accounting, *id*. at 6, while also suggesting (with no explanation) that

Mr. Lambert is "an undisclosed expert." *Id.* The Court should reject these contradictory

arguments. Mr. Lambert is a proper summary witness *because* he is not employing specialized

---

[13]  The SEC initially intended to use George O'Kane (who is accountant not an "attorney Branch
Chief" as Defendants wrongly state, Def. Mot. 5) but replaced him with Mr. Lambert after the
trial date was moved.

knowledge. *United States v. Booth*, 2022 WL 3139651, at *3 (S.D.N.Y. Aug. 4, 2022) (Rakoff, J.) (allowing summary witness testimony because the testimony was "not statements of opinion based on 'scientific, technical, or other specialized knowledge,' Fed. R. Evid. 702, but rather a straightforward description of the documents[.]"). Mr. Lambert's testimony is also nothing like the testimony at issue in the cases cited by Defendants. Those cases involved the attempted use of expert witness testimony under the guise of summary witness testimony, *i.e.*, "as an end-run around the Government's expert witness disclosure obligations." *See, e.g., United States v. Barnwell*, 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017). There is no such end-around here – Mr. Lambert is not testifying as an expert and the subject matters of his testimony have been disclosed. *Id.* ("To avoid any potential prejudice, the Court orders the Government to disclose a summary of her expected summary testimony in advance of trial.").

Defendants' challenge to testimony of the SEC's second summary witness, Christopher Ferrante, fares no better. Mr. Ferrante is also an accountant and will testify regarding exhibits,[14] charts, including a timeline, that makes evidence more accessible to the jury, as permitted under Rule 1006. *SEC v. Lek Securities Corp.*, 2019 WL 3034888 at *3 (S.D.N.Y. July 11, 2019) (Summary witnesses make "critical evidence more accessible to the jury," they are "not testifying as experts" and there is no such "duty to disclose them as expert witnesses."). As Defendants acknowledge, the SEC has already provided to Defendants a summary of Mr. Ferrante's expected testimony, along with the summary charts, timelines, and exhibits that he may introduce. As the summary makes clear, Mr. Ferrante's expected testimony will hardly be a

---

[14] Both Mr. Lambert and Mr. Ferrante will likely read relevant portions of admissible evidence into the record, which is an appropriate use of summary witness testimony. *Booth*, 2022 WL 3139651, at *3 (allowing summary witness testimony when it consisted of a "straightforward description of the documents[.]").

"closing argument," as Defendants argue, and is nothing like the testimony discussed in the cases

cited by Defendants. *See, e.g.,* *United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004) (DEA

agent "interpreted [telephone] calls that the jury heard and the calls that the jury did not hear"

and thereby "usurped the function of the jury to decide what to infer from the content of the

calls.").

Finally, Defendants take issue with both witnesses' credentials, suggesting their

testimony will "add[] a[ ] gloss of expertise," or "lend an aura of credibility" to the testimony.

Def. Br. 5 (quoting *Barnwell*, 2017 WL 1063457, at *3). But Courts routinely reject that

argument, holding that witnesses with qualifications similar to Mr. Ferrnate and Mr. Lambert are

appropriate summary witnesses. *United States v. Hamaker*, 455 F.3d 1316, 1332 (11th Cir. 2006)

("[T]he fact that Odom is a financial expert does not in and of itself require that his testimony

about financial records be treated as expert testimony."); *United States v. Stierhoff*, 500

F.Supp.2d 55, 68 (D.R.I. 2007) (finding that summary witness, "although presumably qualified

as an expert, did not go beyond his role as a summary witness"); *see also United States v. Rigas*,

490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge . . . does not render his

testimony 'expert' as long as it was based on his investigation . . . and was not rooted exclusively

in his expertise.").

## XIII.   Kwon's May 23, 2021 Statements are Admissible

Defendants seek to exclude Kwon's May 23, 2021 twitter thread, including his (a)

statements that "nobody . . . could believe" that "UST[']s growth [is] manipulated by Terraform

Labs," (b) statements purporting to explain how "the protocol(s) have responded" to UST's drop

in price, and (c) statements that "none of [the] fundamentals in this ecosystem have changed"

because "the ecosystem is significant de-risked for having survived one of the worst market

crashes in crypto." *See* SEC Trial Exhibit 56, Ex. KK to Def. Mot. *in Limine*; SEC 56.1 Stmt.,

ECF No. 72, ¶ 209. Defendants argue that Kwon's May 23 statements at 3:31 am Eastern

Daylight Time[15] are inadmissible because they are supposedly not "actionable." According to

Defendants, because these statements were made hours before Kwon's May 23 communications

with Kariya and Jump's May 23 "manual[ ] trading" of millions of UST to restore UST's $1.00

peg, they cannot form the basis of a fraud verdict. *Id.* In other words, Defendants contend,

Kwon's May 23 statements are inadmissible because they were not false "at the time [they were]

made." Def. Mot. 7 (quoting *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278,

290 (S.D.N.Y. 2014)).

     Defendants are wrong in multiple respects. Fundamentally, the standard for admissibility

is just that—admissibility—not actionability. Even if Kwon's May 23 statements were not

themselves actionable (and they are for the reasons set forth below), the statements are

admissible as non-hearsay statements of a party opponent under Fed. R. Evid. 801(d)(2). They

are also highly relevant evidence of Defendants' scienter and the materiality of their later

misstatements, including false and misleading statements Defendants made the day after the

secret deal with Jump. *See* Ex. D (SEC Trial Ex. 74) (Terraform's May 24 tweet: "Terra's not

going anywhere, frens. $1 parity on UST already recovered" along with an invitation to "[p]ost

your favorite diamond hands GIFs and memes below."); Ex. E (SEC Trial Ex. 75) (Kwon's May

24 tweet: "I see. Back to work" accompanied by a screenshot reflecting UST's price as a $1.00);

Ex. F (Terraform May 24 tweet touting the "algorithmic, calibrated adjustments of economic

parameters" over the "stress-induced decision-making of human agents in time of market

volatility," and describing the reliability of the UST $1.00 peg as the "lynchpin for the entire

---

[15]  In Singapore, where Kwon was located at the time, the time was 2:31 pm.

[Terraform] ecosystem" that had supposedly proven its reliability in a "black swan" event that was "as intense of a stress test in live conditions as can ever be expected.").

Having told the investing public on May 23 that Terraform Labs did *not* manipulate UST and that the Terraform ecosystem was "derisked" due to the "protocols," Kwon knew that it was false and misleading to tout UST's recovery the following day, without mentioning Jump's intervention. Perhaps Defendants will argue to the jury that the statements cannot be the basis of a finding of liability (though that argument would be incorrect), but "the Court cannot preclude [the] admission" of relevant evidence based on arguments regarding "how much weight [ ] the jury [should] afford" the evidence, *Fed. Ins. Co. v. Mertz*, 2016 WL 1572995, at *2 (S.D.N.Y. Apr. 18, 2016), which is essentially what Defendants are doing here.

Moreover, the statements at issue *are* actionable. Kwon's statements that the "fundamentals of [Terraform's] ecosystem have not changed" and that the "ecosystem is significant derisked" were false and misleading when made, as demonstrated by Kwon brokering a secret deal with Jump just hours later to prop up UST's price,[16] after which Jump immediately started buying massive amounts of UST. *See* SEC 56.1 Stmt., ECF No. 72, ¶ 210; Ackley Declaration, ECF No. 90, ¶ 12. Contrary to his statements, Kwon knew that "one of the worst crypto crashes ever" had in fact changed Terraform's fundamentals and increased (not decreased) risk, as evidenced by his effort to arrange Jump to intervene just hours later. *Id.*; *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir. 1984) ("The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in making securities transactions— to make sure that buyers of securities get what they think they are getting[.]").

---

[16] Kwon called Kariya in the morning on May 23, at 9:10 Central Daylight Time, and Jump started its manual purchases of UST just 20 minutes later, at 9:30 Central Time. *See* SEC 56.1 Stmt., ECF No. 72, ¶ 210; ECF No. 90, ¶ 12.

Kwon's statements are also actionable omissions, because Kwon's public tweets that Terraform was *not* "manipulating" UST and that the "protocol responded" misleadingly omitted his plan to manipulate UST through a deal with Jump just hours later. *SEC v. Thompson*, 238 F.Supp.3d 575, 597 (S.D.N.Y. 2017) ("Section 10(b), Rule 10b–5 and Section 17(a) require that when a company (or individual) 'speaks,' it must disclose all information necessary to make its statement(s) not materially misleading—even where there is otherwise no independent duty to disclose.").

Defendants also state that Kwon's May 23 tweets are "irrelevant" and "highly prejudicial," but they never develop (or cite any legal authority to support) either argument, focusing exclusively on the different question of whether the statements are "actionable." *Compare* Def. Mot. 6-7; *with Dodson v. CBS Broad. Inc.*, 423 F.Supp.2d 331, 335 (S.D.N.Y. 2006) (denying motion to exclude time-barred evidence when it "tends to make the existence of the plaintiff's remaining claims more probable and lends background to plaintiff's theory of the case."); *Bourdages v. Metals Ref. Ltd.*, 1984 WL 1209, at *6 (S.D.N.Y. Nov. 1, 1984) ("plaintiffs' argument confuses what is admissible with what is actionable."). As described above, Kwon's May 23 are relevant to critical issues in the case, including materiality and scienter for Defendants' later misstatements. Accordingly, the Court should deny Defendants' motion *in limine* to exclude Kwon's May 23 statements in SEC Trial Exhibit 56.

## XIV. The Court Should Permit References to Defendants' Failure to Produce the LP Server and Should Preclude Defendants From Attempts to Shift Blame for this Failure to the SEC

The SEC alleges that Defendants used a device called the LP Server to replicate purported Chai transactions onto the Terraform blockchain, as part of their fraud to create the illusion that their blockchain was more active than it really was. Am. Compl., ¶¶ 135-136.

Defendants have filed a motion *in limine* seeking to preclude the SEC from referencing that Defendants failed to produce the LP Server during discovery. However, Defendants' motion rests on inaccurate statements about the connections between Defendants, Gaza Labs (later known as Kernel Labs), and Chai in order to create the impression that Defendants had an arms-length relationship with these other companies, such that it would have been impossible for them to obtain and access this data.

As the Court is aware, Defendants have consistently attempted to shift their failure to produce the input data to the "LP Server" onto the SEC. *See Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *8. For example, in their failed motion to exclude Dr. Edman, Defendants *blamed the SEC* for their own failure to produce the LP Server inputs. *See* Def. *Daubert* Mot. at 14. However, the Court rejected that argument both because the missing information was irrelevant to Dr. Edman's conclusions and because Defendants were the ones unable to produce the information. *See Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *8.

In support of their *in limine* motion, Defendants now rely on a sworn declaration from their counsel that "Dentons made efforts to obtain access to the LP Server data in connection with this litigation but was prevented from gaining such access." Decl. of Douglas Henkin in Support of Defs. Suppl. Mots. *In Limine* (Henkin Supp. Decl.), ¶ 2. Specifically, counsel states that Dentons contacted the law firm of Bae, Kim, & Lee, "*counsel for the owner of Kernel Labs*," but they declined to provide the requested information. *Id.* (emphasis added). What the declaration does not mention is that ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████ (attached as

Exhibit G) (emphasis added). Defendants offer no explanation as to why the law firm that

advised them on the Chai project refused to provide them access to Chai-related data.

Defendants next claim that their own employee, Natalie Luu, was mistaken when she

referred to Kernel Labs – the entity Dentons purportedly attempt to contact as to the server – as

"Terraform Labs' Korea Office." Def. Mot. at 8 (Dkt No. 186). Once again, Defendants omit

critical facts from the discussion. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ attached as Exhibit H). Months earlier, Ms. Luu had shared a similar presentation

with Kwon that also stated that Kernel Labs is Terra's Korea Office. *See* March 17, 2022 chat

(attached as Exhibit I). Further, ████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████ at 8, 16

(attached as Exhibit J).

Moreover, there is significant, additional evidence regarding the close relationship

between Defendants and Kernel Labs. Indeed, Kernel Labs corporate records show that it was

located in the ***same offices*** as Terraform from 2019 to at least May 2022. From June 2019 until

July 2020, Kernel Labs (then Gaza Labs) was located at 4th Floor, 16 Seongsui-ro 20-gil,

Seongdong-gu, Seoul. *See* English Translation of Kernel Labs Inc. Corporate Registration at 1

(attached as Exhibit K) ("Kernel Labs Corp. Reg."). This is the *exact same address* (including

floor) that Terraform listed as its own when it entered into an agreement to list the LUNA token

on the Binance crypto asset exchange in 2020. *See* Listing Services Agreement at ¶ 16 (attached

as Exhibit L) (providing that notice should be sent to Do Kwon at this address). Kernel Labs then moved to 9-16 Yeonmujang 5-gil, Seongdong-gu, Seoul in July 2020 and remained there until May 2022. Kernel Labs Corp. Reg. at 1 (Exhibit K). In a July 2021 email, Do Kwon instructed Terraform's Finance Manager to provide Terraform's mailing address to a venture partner. *See* July 2021 email string with Lightspeed Venture Partners (attached as Exhibit M). She informed the venture partner that Terraform's address was also 9-16 Yeonmujang 5-gil, Seongdong-gu, Seoul. *Id*.

Connections between Kernel Labs (when it was called Gaza Labs) and Defendants were not limited to sharing multiple addresses. For example, Defendants have listed Stanford Liu on their witness list. In October 2019, ███████████████████████████████████ ███████████████████████████████████████████████████████████ (attached as Exhibit N). Additionally, Gaza Labs obtained a patent in Korea for an invention entitled "Method and apparatus for providing stable coin service on blockchain."[17] *See* Gaza Labs patent at 1 (attached as Exhibit O). Do Kwon and Terraform's former head of research, Nikolaos Platias, are listed as the only two inventors on the Gaza Labs patent.  *Id*.

The overlapping relationship between Defendants and Kernel Labs (Gaza Labs) was confirmed by the recent deposition in Korea of Paul Kim, the Terraform employee who created and maintained the LP Server. Mr. Kim testified that he was at various times a Gaza Labs employee, a Chai employee, and a Terraform employee. *See* Kim Tr. at 8, 16 (attached as Exhibit P). It was his understanding that Kwon and Chai CEO Daniel Shin jointly managed Gaza Labs. *Id*. at 6. Defendants nonetheless state in their motion that Terraform's CEO Chris Amani

---

[17]  This English translation of the Gaza Labs patent was obtained via the Korea Intellectual Property Rights Information Service (KIPRIS), which is a web-based service provided by the Korean Intellectual Property Office (KIPO).

"was unaware of *any affiliate relationship* between TFL and Kernel Labs." Defs. Supp. Mot. *In Limine* at 9 (ECF No. 186) (emphasis added). Yet



at 2-3 (attached as Exhibit Q).

*Id*. at 2, 44. All of this evidence plainly disproves Defendants' that these companies were unrelated. *See e.g.*, Defs. Supp. Mot. *In Limine* at 9 (Dkt No. 186) ("Ms. Luu's one-off misstatement cannot create a corporate relationship that does not *and did not exist*.") (emphasis added).

Strangely, even though Defendants claim that they contacted Kernel Labs to obtain the LP Server data, they also suggest that Chai had responsibility for the LP Server by misleadingly pointing to emails and invoices *from 2018* suggesting that responsibility for paying for the LP Server rested with Chai. *See* Defs. Supp. Mot. *In Limine* at 9 (ECF No. No. 186).[18] But Chai began as part of Terraform, and until early 2020, the companies were closely associated with each other, sharing office space and overlapping personnel. *See* SEC 56.1 Statement, ¶¶ 150, 153 (Dkt. No. 72).[19] Indeed, the two companies were so interrelated that even after early 2020,

---

[18] As the SEC explains in detail in our motion *in limine* regarding the LP Server, Defendants initially stated in response to interrogatories served by the SEC its belief that Chai owned the LP Server but that it did not know the location or custodian of the LP Server. *See* SEC Motions *In Limine* at 21-22. However, near the end of discovery Defendants claimed to have realized that Gaza Labs hosted the LP Server on a cloud service it subscribed to through a company called Naver. *Id*. at 22. As such, they amended their interrogatory responses to remove any mention of Chai owning the LP Server. *Id*.

[19]

*See* SEC 56.1 Statement, ¶ 153 (Dkt. No. 72).

████████████████████████████████████████████. *See* Oct. 27,

2020 DHL email (attached as Exhibit R).

Paul Kim also confirmed that Terraform and Chai had overlapping employees and shared office space. *Id*. at 31. Most significantly, Kim testified that though that his affiliation changed over various points from "Gauza" Labs to Chai Corporation and then to Terraform, *he always had access to the LP Server*. Kim Tr. 52-53 (Exhibit S).[20] Thus, whatever the reason Defendants failed to produce the LP Server during discovery, their lack of connection to the entities that controlled the LP Server is neither a valid nor credible excuse.

Federal Rule of Civil Procedure 37(e)(1) provides in relevant part that "if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."

Given the overwhelming evidence as to Defendants connections to Kernel (Gaza) Labs and Defendants' *own arguments* about how critical the LP Server inputs are to the Chai case against them, the Court should find that Defendants failed to take reasonable steps to preserve this data, and that their failure was prejudicial to the SEC. Alternatively, if the LP Server inputs are not relevant, given Dr. Edman's ability to formulate his opinions without them as recognized by the Court, *Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *8, then the Court should preclude Defendants from making arguments to the jury about the missing LP Server inputs. However,

---

[20] Moreover, ██████████████████████████████████████████████████████████████

██████████████████████████████ Edman Report, ¶ 35 (ECF No. 87-2).

under no circumstances should Defendants be permitted to benefit from their own abject failure to preserve this data by suggesting to the jury that somehow the SEC is to blame.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motions *in Limine*.

Dated:  March 11, 2024                    Respectfully submitted,

                                                      /s/ James P. Connor
                                                      Christopher J. Carney
                                                      James P. Connor, admitted *pro hac vice*
                                                      Carina Cuellar, admitted *pro hac vice*
                                                      Laura E. Meehan
                                                      Devon L. Staren, admitted *pro hac vice*
                                                      Attorneys for Plaintiff
                                                      U.S. SECURITIES AND EXCHANGE
                                                      COMMISSION
                                                      100 F Street NE
                                                      Washington, DC 20549
                                                      Tel: (202) 551-8394
                                                      Email: connorja@sec.gov

Of counsel:
Roger L. Landsman
100 F Street NE
Washington, DC

40