EXHIBIT 2

Case 1:23-cv-01346-JSR Document 203-2 Filed 03/18/24 Page 2 of 20
Case 1:11-cv-07388-JSR Document 89-2 Filed 07/31/12 Page 2 of 19

Court Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
U.S. SECURITIES AND EXCHANGE       :
COMMISSION,                         :
                                    :        11 Civ. 7388 (JSR)
            Plaintiff,              :
                                    :
       -v-                          :
                                    :
BRIAN STOKER,                       :
                                    :
            Defendant.              :
------------------------------------------------------------- x

# THE COURT'S INSTRUCTIONS OF LAW TO THE JURY



# TABLE OF CONTENTS

## I. GENERAL INSTRUCTIONS

1. Duty of the Court

2. Duty of the Jury

3. Duty of Impartiality

4. Burden of Proof; Preponderance of the Evidence

5. Direct and Circumstantial Evidence

6. Witness Credibility

7. Expert Testimony

## II. LIABILITY

8. Liability in General

9. The SEC's Claim under Section 17(a)(2)

10. The SEC's Claim under Section 17(a)(3)

## III. CONCLUDING INSTRUCTIONS

11. Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications with the Court

12. Verdict; Need for Unanimity; Duty to Consult

# I. GENERAL INSTRUCTIONS

## INSTRUCTION NO. 1

### Duty of the Court

We are now approaching the most important part of this case, your deliberations. You have heard all of the evidence in the case, as well as the final arguments of the parties. Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your deliberations. As I told you at the start of this case, and as you agreed, it is your duty to accept my instructions of law and apply them to the facts as you determine them.

Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you. Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them not only so that you can follow them as I read them to you now but also so that you can have them with you for reference throughout your deliberations. In listening to them now and reviewing them later, you should not single out any particular instruction as alone stating the law, but you should instead consider my instructions as a whole.

1

## INSTRUCTION NO. 2

### Duty of the Jury

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely upon your own recollection of the evidence. To aid your recollection, we will send you all the exhibits at the start of your deliberations, and if you need to review particular items of testimony, we can also arrange to provide them to you in transcript or read-back form. But please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence.

The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence and the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted either here in court or in the depositions that were read into evidence. Please remember that questions, although they may provide the context for answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection. Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Likewise, you may not consider anything you

heard about the contents of any exhibit that was <u>not</u> received in evidence.

It is the duty of each side of a case to object when the other side offers testimony or other evidence that the first side believes is not properly admissible. The parties also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All such questions of law must be decided by me. You should not show any prejudice against any attorney or party because the attorney or party objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

I also ask you to draw no inference from my rulings or from the fact that upon occasion I asked questions of certain witnesses. My rulings were no more than applications of the law and my questions were only intended for clarification or to expedite matters. You are expressly to understand that I have no opinion as to the verdict you should render in this case.

## INSTRUCTION NO. 3

### Duty of Impartiality

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartiality. You are not to be swayed by rhetoric or emotional appeals.

The fact that the Securities and Exchange Commission (the "SEC") is a governmental agency entitles the SEC to no greater consideration than that accorded any other party. By the same token, it is entitled to no less consideration. All parties, whether the Government or individuals, stand as equals at the bar of justice.

Please also be aware that the question of possible penalties in this case is the province of the judge, not the jury, and therefore it should not in any way enter into or influence your deliberations. Your duty is to weigh the evidence and not be affected by extraneous considerations.

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence.

4

INSTRUCTION NO. 4

Burden of Proof; Preponderance of the Evidence

The plaintiff here, the Securities and Exchange Commission, is suing the defendant, Brian Stoker for two alleged violations of the federal securities laws. As to each of its two claims, the SEC has what we call the "burden of proof," which is the burden of proving the essential elements of that claim by a preponderance of the credible evidence.

The "credible evidence" means such testimony, exhibits, or other evidence that you find worthy of belief. To establish an element of a claim by a "preponderance" of credible evidence means to prove that element is more likely true than not true. It does not mean the greater number of witnesses, or how much time either side employs in the trial. The phrase refers to the quality of the evidence, its persuasiveness in convincing you of its truth.

INSTRUCTION NO. 5

Direct and Circumstantial Evidence

In deciding whether a party meets its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a disputed fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside. Then later, as you were sitting here, someone walked in with a dripping wet umbrella and, soon after, somebody else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

6

INSTRUCTION NO. 6

Witness Credibility

It must be clear to you by now that the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank and forthright; or, did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

7

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

## INSTRUCTION NO. 7

### Expert Testimony

The law permits parties to offer testimony from witnesses who by education or experience profess to expertise in a specialized area of knowledge. In this case, Dr. Dwight Jaffee and Dr. Jonathan Neuberger have been offered as expert witnesses. Expert testimony is presented to you on the theory that someone who is learned in the field may be able to assist you in understanding specialized aspects of the evidence.

However, your role in judging credibility and assessing weight applies just as much to experts as to other witnesses. When you consider the expert opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, an expert witness necessarily bases his or her opinions, in part or in whole, on what the expert learned from others, and you may conclude that the weight given the expert's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of an expert were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of an expert is questionable, or if the opinion of the expert is outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of the expert, either entirely or in part. On the other hand, if you find that an expert is credible, and that the expert's opinions are based on sufficient data, education, and experience, and that the other evidence does not give you reason to doubt the expert's conclusions, you may, if you wish, rely on that expert's opinions and give them whatever weight you deem appropriate.

## II. LIABILITY

## INSTRUCTION NO. 8

### Liability in General

With these preliminary instructions in mind, let us turn to the SEC's two claims against Mr. Stoker. Each of the SEC's claims against Mr. Stoker allege that Mr. Stoker engaged in negligent conduct related to the offer or sale of securities. The first claim is brought under Section 17(a)(2) of the Securities Act of 1933 and the second is brought under Section 17(a)(3) of that same act. I will discuss each of these claims in more detail shortly.

In assessing each of these claims, you must determine, in accordance with my instructions, whether the SEC has proved the essential elements of that claim by a preponderance of the credible evidence. This is known as establishing "liability." In assessing liability, you should consider only what the evidence proves, or fails to prove, as to Mr. Stoker, and you should not concern yourself in any way with whether any other person may or may not be liable, since the only person here on trial is Mr. Stoker.

If you find that Mr. Stoker is liable on a given claim, then, and only then, will the Court determine what relief, such as the payment of money, should be given by Mr. Stoker to the SEC on that claim. The determination of such relief is for the Court and should not play any part in your deliberations.

INSTRUCTION NO. 9

The SEC's Claim under Section 17(a)(2)

In order to prevail on its first claim, which is brought under Section 17(a)(2) of the Securities Act of 1933, the SEC must prove by a preponderance of the evidence each of the following three elements:

First, that in connection with the offer or sale of any security, Mr. Stoker obtained money or property, directly or indirectly, by means of a material misrepresentation or a material omission;

Second, that in so doing Mr. Stoker acted negligently; and

Third, that in so doing Mr. Stoker used or caused to be used the mails or an instrumentality of interstate commerce.

Let me say a few words about each of these elements:

Starting with the first element, it is undisputed that the CDO-squared at issue here, known as Class V Funding III (or "Class V III"), is a security. Therefore, the "in connection with" requirement is satisfied if you find that there was some relation between Mr. Stoker's alleged conduct, as described below, and the offer or sale of an interest in Class V III.

The conduct must consist of at least one material misrepresentation or material omission by means of which Mr. Stoker obtained money or property. However, while it is only necessary for the SEC to prove *one* material misrepresentation or omission, you must all be unanimous in agreeing that this particular misrepresentation or omission was misleading and material and was used by Mr. Stoker to obtain money or property.

A "misrepresentation" is a statement that is either untrue or misleading, and an

11

"omission" is a failure to state a fact that is required to be stated in order to make what is stated not misleading. The specific misrepresentations and omissions here charged are those relating to the Offering Circular and the "Pitch Book" that SEC counsel referred to in his closing argument.

A misrepresentation is "material" if there is a substantial likelihood that a reasonable investor in Class V III would have considered it important in deciding whether or not to buy or sell that security. An omission is "material" if there is a substantial likelihood that a reasonable investor in Class V III would have viewed the disclosure of that fact as significantly altering the total mix of information available to a reasonable investor in deciding whether to buy or sell that security. Because the applicable law forbids the making of material misrepresentations or material omissions in such circumstances, it does not matter whether the investors to whom they were made were sophisticated or unsophisticated.

Whether something was material must be assessed on the basis of the circumstances existing at the time Class V III was offered for investment, rather than as they might be viewed subsequently. Please note, however, that the SEC does not have to show that a reasonable investor in Class V III would have made a different purchasing or selling decision if there had been no material misrepresentation or material omission. Nor is the SEC required to prove that any investor actually relied on one or more misrepresentations or omissions or that one or more misrepresentations or omissions caused any investor to lose money. Instead, the SEC must only show that there is a substantial likelihood that a reasonable investor in Class V III would have considered the misrepresentation or omission important in making his or her investment decision.

In order to demonstrate that Mr. Stoker obtained money or property "by means of" one or

12

more materially misleading statements or omissions, the SEC need not prove that Mr. Stoker himself made the statements or omissions, but only that he used the statements or omissions to obtain money or property. In order to demonstrate that Stoker obtained money or property, directly or indirectly, the SEC must prove either that Stoker obtained money or property for his employer, Citigroup, *or*, alternatively, that Stoker personally obtained money for himself.

If you find that the SEC has proved the first element – that, in connection with the offer or sale of an interest in Class V III, Mr. Stoker obtained money or property, directly or indirectly, by means of a material misrepresentation or a material omission – you must consider the second element, that is, whether in so doing, Mr. Stoker acted negligently. "Negligence" is the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances. Negligence may consist either of *doing* something that a reasonably careful person *would not do* under like circumstances, or in *failing* to do something that a reasonably careful person *would do* under like circumstances.

In the context of this case, the SEC must prove that Mr. Stoker negligently used a material misrepresentation or material omission to obtain money or property, directly or indirectly, for Citigroup or himself. In deciding whether Mr. Stoker acted negligently, you may consider any evidence of industry practice, custom, or standards as they pertained to a reasonably prudent person in Mr. Stoker's position at the time Class V III was being marketed. However, while such industry practices and the like are relevant, they are not controlling. The controlling standard is, I repeat, what a reasonably careful person in Mr. Stoker's position would do or not do under like circumstances.

Finally, with respect to the third element, the SEC must prove by a preponderance of the

13

evidence that Mr. Stoker knowingly used, or caused to be used, the mails or an instrumentality of interstate commerce in furtherance of the alleged negligent conduct. The term "instrumentality of interstate commerce" means, for example, telephone, fax machine, or other form of electronic communication, including e-mails. It is not necessary that any misrepresentation or omission actually occurred during the use of the mails or instrumentality of interstate commerce. What is required is that the mails or instrumentality of interstate commerce was used in some phase of the transaction.

INSTRUCTION NO. 10

The SEC's Claim under Section 17(a)(3)

In order to prevail on its second claim, brought under Section 17(a)(3) of the Securities Act of 1933, the SEC must prove by a preponderance of the evidence each of the following three elements:

First, that in connection with the offer or sale of a security, Mr. Stoker engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon the investor;

Second, that in so doing Mr. Stoker acted negligently; and

Third, that in so doing Mr. Stoker used or caused to be used the mails or an instrumentality of interstate commerce.

With respect to the first element of the SEC's Section 17(a)(3) claim, the words "security" and "in connection with" have the same meanings I described above in relation to the first claim. For this second claim, however, the SEC must prove, by a preponderance of the evidence, that Mr. Stoker engaged in deceptive conduct that went beyond the use of material misrepresentations or material omissions that were part of the claim under Section 17(a)(2). Those misrepresentations or omissions can form part of that course of conduct, but they cannot be the entirety of that course of conduct. Specifically, you must find that Mr. Stoker took additional steps that helped to deceive or defraud investors in Class V III.

With respect to the second and third elements of this claim, I have previously instructed you as to the meanings of "negligently" and using the mails or an instrumentality of interstate commerce. Those instructions apply equally here.

15

## III. CONCLUDING INSTRUCTIONS

### INSTRUCTION NO. 11

### Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications with the Court

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law, and a verdict form on which to record your verdict. In addition, we will send into the jury room all of the exhibits that were admitted into evidence. If you want any of the testimony, that can also be provided, either in transcript or readback form. But, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony.

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the Marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

INSTRUCTION NO. 12

Verdict; Need for Unanimity; Duty to Consult

You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case; and your verdict must be unanimous. In deliberating, bear in mind that while each juror is entitled to his or her opinion, each should exchange views with his or her fellow jurors. That is the very purpose of jury deliberation -- to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your view simply because you are outnumbered. However, you should not hesitate to change or modify an earlier opinion which, after discussion with your fellow jurors, now appears to you erroneous.

In short, your verdict must reflect your individual views and it must also be unanimous.

This completes my instructions of law.

17