UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

TERRAFORM LABS PTE LTD. and
DO HYEONG KWON,

Defendants.

No. 1:23-cv-1346 (JSR)

---

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR.
MATTHEW EDMAN IN HIS SUPPLEMENTAL EXPERT REPORT**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 1

ARGUMENT ........................................................................................................... 5

I.    Legal Standard ............................................................................................. 5

II.   The Testimony of Defendants' Own Former Employee Does Not Constitute "Newly Discovered" Evidence Under Federal Rule 60(b) ................................................ 6

III.    Defendants' Disagreements with Dr. Edman's Interpretation of the  Evidence is not a Legitimate Basis Upon Which to Exclude His Testimony ............................................ 7

IV.   Dr. Edman Offers No Opinions on Mr. Kim's Credibility ...................................... 11

V.    Dr. Edman's Supplement Offers No "Impermissible Narrative Testimony" ................... 14

VI.    Defendants' Arguments About "Processing" and  "Settlement" Have Already Been Rejected by the Court .......................................................................................... 16

VII.    Defendants' Half-Hearted Attempt to Revive Mr. Unny's Excluded Opinions Should Be Rejected ........................................................................................................... 17

CONCLUSION ....................................................................................................... 19

TABLE OF AUTHORITIES

**Cases**

*Ajala v. W.M. Barr & Co., Inc.*, 2018 WL 6322147 S.D.N.Y. Dec. 4, 2018) ............................... 9

*Bank of New York Mellon Tr. Co., Nat'l Ass'n for Registered Certificate Holders of Morgan Stanley Capital I Inc. v. Morgan Stanley Mortg. Capital, Inc.*, 2017 WL 733225 (S.D.N.Y. Feb. 10, 2017) ...................................................................................................................................... 9

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) ........................................... 6, 11

*Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*, 2023 WL 6446147 (S.D.N.Y. Oct. 3, 2023) ............................................................................................................................................... 5

*In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018) ...... 9, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15044626 (E.D.N.Y. Oct. 26, 2022) ............................................................................................................. 13

*Lurch v. Chaput*, 2023 WL 5609097 (S.D.N.Y. Aug. 30, 2023) ................................................. 6

*Maher v. Monahan*, 1999 WL 33459 (S.D.N.Y. Jan. 26, 1999) ................................................. 5

*Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44 (S.D.N.Y. 2022) ................................. 6

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ................................................. 5, 13, 14

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ................................................. 5

*Royal Ins. Co. of Am. v. Joseph Daniel Const., Inc.,* 208 F. Supp. 2d 423 (S.D.N.Y. 2002) ....... 10

*SEC v. Allaire,*  2019 WL 6114484 (S.D.N.Y. Nov. 18, 2019) ................................................. 5

*SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ................ *passim*

*SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) ................................................................. 6

*United States v. Napout*, 963 F.3d 163 (2d Cir. 2020) ................................................................. 5

**Rules**

Fed. R. Civ. P. 26(e) ...................................................................................................................... 3

Fed. R. Evid. 702 .................................................................................................................. 10, 18

Fed. R. Evid. 702 advisory committee's note to 2000 amendment ............................................. 10

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to Defendants' motion exclude the opinions and testimony of Dr. Matthew Edman (ECF No. 197).

## BACKGROUND

Defendants' latest attempt to exclude Dr. Matthew J. Edman's opinions about Defendants' fraudulent Chai scheme should be denied for being just as meritless as their previous two attempts. Moreover, their half-hearted, one paragraph plea to resurrect their disqualified expert, Mr. Raj Unny, who the Court has already twice excluded for being unqualified and offering speculative testimony, merits no consideration. Like Defendants' four previous *Daubert* related motions, this one should also be denied.

The SEC has proffered Dr. Edman—and the Court has already found him qualified to testify—as an expert. He has a Ph.D. in Computer Science from Rensselaer Polytechnic Institute, has authored or co-authored multiple research papers in peer-reviewed conferences and journals related to cryptography, and has served in various key roles in which he investigated cyber fraud. Edman Expert Report, ¶¶ 3-4, 6 (ECF No. 87-2). Many of the investigations he conducted on behalf of clients involved the investigation and analysis of addresses and transactions related to several different crypto assets, including Bitcoin and Ethereum. *Id*. ¶ 7.

Relying on his expertise, Dr. Edman examined the source code associated with the LP Server to determine its functionality, how it related to and interacted with the Terra, and historical changes made to its source code. *Id*. ¶ 10. He also analyzed Terra blockchain activity to identify purported Chai transactions generated by the LP Server; the proportion of overall activity on the blockchain associated with purported Chai transactions; and, whether such transactions represented the processing and settlement of "real world" Chai transactions. *Id*.

Dr. Edman formed the opinion that the LP Server controlled the private keys associated with the purported Chai transactions, such that these transactions were created by Terraform's LP Server rather than by individual users of the Terra blockchain.  *Id.* ¶ 11.  The transactions created on the Terra blockchain by the LP Server, he found, constituted over 45 percent of native token transfers between users on the Terra blockchain between June 2019 and May 2022.  *Id.* He also concluded, among other things, that these purported Chai transactions occurred within a closed system of Terra blockchain wallet addresses.  *Id.*

Defendants also proffered their own supposed expert, Mr. Raj Unny, who attempted to rebut Dr. Edman's opinions by offering his own blockchain analysis.  As the Court has observed, this blockchain analysis was central to Mr. Unny's opinions, yet he had that analysis performed by others "whose qualifications or methodology Mr. Unny did not know at all."  *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *11 (S.D.N.Y. Dec. 28, 2023).

Following *Daubert* briefing and a hearing, on December 28, 2023, the Court issued a thorough, well-reasoned opinion denying Defendant's motion to exclude Dr. Edman and granting the SEC's motion to exclude Mr. Unny.  Defendants moved to reconsider, rehashing all their original arguments as to Dr. Edman and Mr. Unny, but also arguing that that the Court ignored purportedly undisputed evidence and failed to apply the current version of Federal Rule of Evidence 703.  *See e.g.,* Defendants' Edman Mot. for Reconsideration at 8 (asserting that the Court's "Opinion ignores uncontested facts that the LP Server is in the possession of Chai, not TFL."); at 2 ("*the Court's decision* did not account for an intervening change in the controlling law—Federal Rule of Evidence 702.") (ECF No. 157) (emphasis added).  Both these contentions were baseless, and the Court properly disposed of both motions for reconsideration in one sentence.  *See* Jan. 11, 2024 Order Denying Motions for Reconsideration (ECF No. 160).

Following the Court's denial of Defendants' reconsideration motions, Paul Kim, who at various points was employed by Terraform, Chai, and Gaza Labs, was deposed on January 15, 2024 in South Korea pursuant to a letter of request ("LOR") issued by the Court.  Mr. Kim testified in a South Korean court and was questioned by Korean lawyers.  The proceeding was conducted in Korean and later translated into English.  At the hearing, Paul Kim testified that he is *currently a criminal defendant* in South Korea for his role in the same Chai fraud at issue here. *See* Paul Kim Transcript at 86-87 (attached as Exhibit 1).  Paul Kim admitted to the presiding judge near the end of his testimony that in preparing for his criminal case concerning the Chai fraud he "was told which terms might not sound good in court, such as 'duplicate,' 'copy,' 'simple,' things like that, 'impossible,' and things like that, since I am not an expert in these areas," and thus he admitted he was advised to be careful of using such words when he testified. *Id*. at 93.

On February 16, 2024, we advised the Court during a call to chambers that Dr. Edman planned to issue a supplement to address Paul Kim's testimony pursuant to Fed. R. Civ. P. 26(e). Although such a supplement is only required if "in some material respect the [previous expert report] is incomplete or incorrect," (Fed. R. Civ. P. 26(e)(1)(A)), in the interest of transparency, Dr. Edman sought to issue a brief supplement to notify Defendants that he had considered the testimony of Paul Kim.  Counsel for Terraform told Chambers that it reserved the right to seek leave to depose Dr. Edman regarding his supplement but never actually sought to do so.

On February 27, 2024, Dr. Edman issued his supplemental report.  Importantly, he stated, "I have reviewed and considered the translation of the transcript of Mr. Kim's testimony . . . as well as the exhibits referenced in his testimony.  *Nothing in Mr. Kim's testimony or the exhibits referenced therein causes me to revise the opinions I have previously offered in this matter for*

*the reasons described in this supplemental report*." Edman Supplement at ¶ 4 (attached as Exhibit 2) (emphasis added). As such, Dr. Edman neither revised the opinions in his original report nor offered any new opinions. Instead, he offered a detailed analysis as to why Mr. Kim's testimony did not alter his existing opinions.

Now, Defendants move for the third time both to exclude Dr. Edman and to revive their disqualified expert, Mr. Unny. Defendants are clearly worried about Dr. Edman taking the stand and laying out for the jury a technical explanation as to how Defendant's Chai fraud scheme worked. Yet, their present motion once more reflects a fundamental misunderstanding of how expert testimony works in federal courts. At its core, Defendants' motion rests on the mistaken belief that in forming opinions expert witnesses must blindly accept the opposing party's view of the facts. But that is not law. Instead, experts use their professional expertise and training to evaluate the facts and data made available to them, and render opinions based on that evaluation.

Likewise, Defendants misapprehend the law when they suggest that in instances in which Dr. Edman—a Ph.D. Computer Scientist—does not fully accept the recollection of a lay witness that is at odds with the technical data he reviewed in preparing his report, he is somehow opining as to the "credibility" of that witness. Dr. Edman does not and will not offer any opinions at trial about whether Paul Kim is a credible witness. Strangely, Defendants accuse Dr. Edman of assessing Mr. Kim's credibility in the very few instances when Dr. Edman's opinions diverge from Mr. Kim's recollection but then turn around and accuse Dr. Edman of improperly offering a factual narrative when he cites the multiple instances in which Mr. Kim's testimony corroborates his existing opinions. But Dr. Edman does not and will not offer any narrative discussion of Mr. Kim's testimony, as Defendants wrongly suggest. Instead, as is self-evident from his

supplement, he offers a detailed disclosure as to why his opinions remained unchanged following his review of Paul Kim's testimony.

Defendants' latest *Daubert* motion should be denied.

## **ARGUMENT**

I.   <u>Legal Standard</u>

Defendants fail to include the most basic piece of information that should be present in any motion filed in federal court: *the applicable legal standard.  See Maher v. Monahan*, 1999 WL 33459, at *2 (S.D.N.Y. Jan. 26, 1999) ("[W]hen making a motion of this sort, the moving party is required to include a memorandum of law addressing the applicable legal standards. . . . Defendants have failed to do so, and have made no reference whatever to the purported legal bases for the relief that they seek.") (citing prior version of Local Civil Rule 7.1).  It is not hard to see why Defendants want to obscure the applicable standard—"[i]n this Circuit, relief under Rule 60(b) is considered 'extraordinary' . . . and 'is generally not favored.'"  *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*, 2023 WL 6446147, at *1 (S.D.N.Y. Oct. 3, 2023), *appeal docketed*, No. 23-7294 (2d Cir. Oct. 6, 2023) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994) and *SEC v. Allaire*,  2019 WL 6114484, at *2 (S.D.N.Y. Nov. 18, 2019), *aff'd sub nom. SEC v. Romeril*, 2021 WL 4395250 (2d Cir. Sept 27, 2021)).  "Accordingly, Rule 60(b) 'may only be invoked if the moving party [can demonstrate] exceptional circumstances' meriting such extraordinary relief. "  *Id*. (quoting *Paddington Partners*, 34 F.3d at 1142).

"The admissibility of expert testimony in the federal courts is governed principally by Rule 702 of the Federal Rules of Evidence."  *United States v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020) (quoting *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005)).  The trial court acts as a gatekeeper in determining whether to admit expert testimony.  *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 597 (1993).  "To determine whether a proposed expert's testimony passes muster under Rule 702, this Court must inquire into: (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact."  *SEC v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (collecting cases).

## II.   The Testimony of Defendants' Own Former Employee Does Not Constitute "Newly Discovered" Evidence Under Federal Rule 60(b)

This Court has already held that Dr. Edman's testimony is reliable and that "Dr. Edman may testify at trial."  *Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *10.  Defendants' argument that Paul Kim's testimony constitutes grounds for the Court to reverse its prior ruling pursuant to Rule 60(b) fails for many reasons.

As a threshold matter, the testimony of Paul Kim—Terraform's own former employee and the person responsible for programming the LP Server on its behalf—cannot be described as "newly discovered" under Rule 60(b).  "Generally, if a party has notice that particular evidence exists, the party cannot claim that the evidence is newly discovered."  *Lurch v. Chaput*, 2023 WL 5609097, at *2 (S.D.N.Y. Aug. 30, 2023).  Defendants do not cite a single case decided under Rule 60 in support of their motion,[1] much less offer a citation to any case, in which a court has held that the testimony of a party's own former employee constitutes newly discovered evidence sufficient to warrant the extraordinary relief of setting aside a *Daubert* ruling under Rule 60(b).

Indeed, other than in their section heading, Defendants do not describe Paul Kim as "newly discovered."  *See* Def. Mot. at 3.  Instead, they try to alter the legal standard and refer to

---

[1] The one case they cite in the section of their motion containing their Rule 60 argument does not even mention Rule 60.  *See* Def. Mot. at 5 (citing *Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 48–50 (S.D.N.Y. 2022)).  *Navigators Ins. Co*., was a case involving an expert who was excluded for offering legal analysis of an insurance policy, which is the province of the court.  *Id.* at 49.

his testimony as "newly developed."  *See* Def. Mot. at 3, 5.  But "newly developed" does not

meet Rule 60.  This deficiency alone is sufficient to deny Defendants' motion.

III.    Defendants' Disagreements with Dr. Edman's Interpretation of the
        Evidence is not a Legitimate Basis Upon Which to Exclude His Testimony

Putting aside this fatal procedural flaw in Defendants' motion, their argument about Chai

components that Dr. Edman supposedly failed to consider is just a rehash of their twice-rejected

*Daubert* arguments.  *See* Def. Mot. at 2 ("As previously briefed . . . ").  Defendants argue now

that Mr. Kim's testimony supports their twice-rejected theory that there were other components

of Chai that Dr. Edman should have reviewed before offering his opinions, rendering Dr.

Edman's testimony unreliable and therefore excludable under Daubert and Rule 702.  Def. Mot.

at 3-5.  They are wrong both because Dr. Edman explains in his supplement how Paul Kim's

testimony in large part *supports* the opinions he has already offered, and because such factual

disagreements are not a proper basis for exclusion under 702.

The Court already ruled in denying Defendants' *Daubert* motion, these purported other

components were *not necessary* for Dr. Edman to reach his conclusions:

> Defendants next contend that Dr. Edman failed to consider
> sufficient data because he did not "examine each component of the
> Chai payment system, its data or logs, and the data that was input
> into the LP Server that resulted in the blockchain transactions." . . .
> The rub is that Dr. Edman did not "have enough information to say
> for certain whether or not the underlying transactions were real."
>  . . .  But all that meant was that Dr. Edman could not say whether
> the purported Chai transactions replicated on the Terra blockchain
> were real Chai transactions that had elsewhere occurred through
> traditional means of payment or were entirely fake transactions
> . . . .  *The answer to that question had no bearing on Dr. Edman's
> conclusions, nor is it relevant to the ultimate issue of whether
> defendants fraudulently misrepresented that Chai used the
> Terraform blockchain to process transactions*.

*Terraform Labs Pte. Ltd*., 2023 WL 8944860, at 8 (emphasis added).  As the Court also held,

"[q]uite aside from the notable fact that the information that defendants criticize Dr. Edman for

not considering is information that defendants were unable to produce,[2] Dr. Edman was able to reach his conclusions based on the LP Server source code and public blockchain data." *Id*. In short, "Defendants provide no satisfying account of why the information Dr. Edman relied on was insufficient to conclude that the LP Server replicated purported Chai transactions." *Id*.

Defendants now attempt to recast these *same exact arguments* with the added gloss of Mr. Kim's testimony but point to nothing that could possibly alter the Court's conclusion that Dr. Edman had sufficient information to draw his conclusions about the operation of the LP Server. Defendants appear to argue that Dr. Edman's expert opinions are somehow at odds with the fact testimony of Mr. Kim and are therefore unreliable. Def. Mot. at 3. They claim that Mr. Kim's testimony shows that other components of the Chai system would have been important to Dr. Edman's analysis. *Id*. In large part, Defendants rely upon a leading and argumentative question posed by their own counsel during Mr. Kim's testimony, in which counsel said, "Q. *To sum up*, Chai utilized the blockchain technology to process and settle transactions through partnership with Terraform Labs. Is this understanding correct?." Kim Tr. at 80 (Exhibit 1) (emphasis added). Kim responded in the affirmative to this leading question but as Dr. Edman explains in his supplement, Mr. Kim also testified substantively as to facts that support Dr. Edman's conclusion that Chai user and merchant transactions were *not* processed and settled on the blockchain, including:

> (1) Chai maintained its own database "ledger" which it relied on for verifying Chai users and transactions; (2) the LP Server's role was to receive changes to the ledger information from Chai and generate KRT transactions on the Terra blockchain; (3) Chai could

---

[2] Defendants' failure to produce this data and their inaccurate statements to the Court denying a corporate relationship between Defendants and the companies they claim possess the data (which are contradicted by their own documents and public records), is the subject of the parties' respective motions *in limine* regarding the LP Server.

> (and did) continue processing transactions even when the LP
> Server or the Terra blockchain "went down" on multiple
> occasions; and, (4) Chai merchants were settled in Korean Won
> rather than on the Terra blockchain.

Edman Supplement, at 9, n. 8 (Exhibit 2).

Another court in this district explained why wasteful motions such as this one, which try to turn factual arguments into grounds for exclusion, not only should be rejected out of hand but cause many judges to view *all Daubert* motions skeptically:

> Next, Defendants argue that [the expert's] opinions are speculative,
> internally inconsistent, and contradicted by the evidence. The
> Court will not waste time on this, except to say that this part of
> their *Daubert* motion, "like so many such motions, is nothing more
> than a 'we do not agree with his opinion so it is junk science'
> motion, of the sort that causes this and many judges to view all
> *Daubert* motions with a certain degree of skepticism." . . . . Here,
> Defendants' disagreements with Plaintiffs' expert are appropriate
> subjects for cross-examination.

*In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 174 (S.D.N.Y. 2018) (quoting *Bank of New York Mellon Tr. Co., Nat'l Ass'n for Registered Certificate Holders of Morgan Stanley Capital I Inc. v. Morgan Stanley Mortg. Capital, Inc.*, 2017 WL 733225, at *1 (S.D.N.Y. Feb. 10, 2017)).

Defendants ask this Court not only to accept Mr. Kim's testimony as the undisputed truth in this case (less than a week before a jury trial is set to begin) but to also accept *their lawyers' technical interpretation* of Paul Kim's testimony as established fact. *See* Def. Mot. at 3-5 (describing Defendants' subjective and technical interpretation of Paul Kim's testimony). Courts in this district routinely reject *Daubert* motions based on assertions that an expert's opinions are "unreliable" because one party contends that it is "counter to the weight of the evidence." *See e.g.*, *Ajala v. W.M. Barr & Co., Inc.*, 2018 WL 6322147, at *4 (S.D.N.Y. Dec. 4, 2018) (rejecting *Daubert* challenge based on argument that expert's opinion was contrary to factual record).

Indeed, the Advisory Committee Notes to Rule 702 expressly note that disagreements over facts *are not* an appropriate basis for excluding expert testimony:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

*See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *see also Royal Ins. Co. of Am. v. Joseph Daniel Const., Inc.,* 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) ("The district court is not charged with weighing the correctness of an expert's testimony, nor must the court choose between the testimony of competing expert witnesses.").

Here, Defendants' arguments about what they think Mr. Kim's testimony shows is a quintessential disagreement over facts. In fact, some of those disputes are over "facts" that Defendants invented. They claim (without citation) that Mr. Kim offered "unrebutted factual testimony that the LP Server was not a 'closed system' of wallets." Def. Mot. at 2. Yet, Mr. Kim *never discussed* in his testimony whether the LP Server was a "closed system" of wallets or not.[3] Defendants, however, unwittingly highlight Paul Kim testimony that corroborates the central premise of Dr. Edman's opinions. Specifically, they state that Mr. Kim confirmed "that the LP Server created Terra wallets for new Chai users, and that the LP Server executed transactions on behalf of Chai users and merchants." *Id.* at 1-2. Defendants further note Mr. Kim testified that "Chai and Terraform were in a collaborative relationship where transactions occurring on Chai were generated on the Terra blockchain as KRT transactions." *Id.* at 5.

---

[3] Defendants also confusingly argue about whether *Chai*, the fiat-based payment application was a "closed system." Def. Mot. at 3-4. Dr. Edman offered no opinions about whether Chai was a closed system, instead he opines that the LP Server operated a closed system of user and merchant wallets that replicated Chai transactions on the Terra blockchain.

This testimony is consistent with Dr. Edman's expert opinion that the LP server was replicating Chai transactions onto the Terra blockchain where they appeared as KRT transactions, which the Court has already held to be reliable under *Daubert*. *See Terraform Labs Pte. Ltd.*, No. 2023 WL 8944860, at 8 ("After reviewing the source code of Terraform's 'LP Server,' Dr. Edman concluded that the 'primary functionality' of the LP Server software 'was to replicate purported Chai user and merchant transactions onto the Terra blockchain.'"). Defendants' argument to the contrary—that they believe Mr. Kim's testimony somehow undermines Dr. Edman's opinions—is the reason we have trials. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

IV.   <u>Dr. Edman Offers No Opinions on Mr. Kim's Credibility</u>

Defendants also argue that Dr. Edman is improperly commenting on Paul Kim's credibility in his supplement, but he is doing no such thing. As previously noted, Dr. Edman has explained in his supplement that Mr. Kim's fact testimony in large part supports his previously expressed opinions, which remain unchanged. In the couple instances that Defendants point to in which Dr. Edman did not accept Mr. Kim's version of the facts, it was because he views them as contrary to contemporaneous records. The implication of Defendants' position is, in essence, that disagreement about the facts between an expert and a fact witness is not permitted because any such divergence supposedly improperly impugns the credibility of the witness. None of this is correct.

For instance, Defendants accuse Dr. Edman of commenting on Mr. Kim's credibility when he notes that, contrary to Mr. Kim's testimony, other evidence produced by Defendants— *including Mr. Kim's own contemporaneous statements*—show that Defendants' private Tempura

blockchain was in fact used at one point.  Def. Mot. at 6; *see also* Edman Supp. at ¶¶ 35-36

("The commit history for the LP Server source code indicates that functionality related to the

Tempura blockchain—which created transactions denominated in 'don'—was not removed from

the LP Server until December 2019.") (citing Edman Expert Report, ¶¶ 44-45).  Dr. Edman was

simply explaining why his opinions from his original expert report remained unchanged

following Mr. Kim's testimony.  He did not comment and will not comment, at trial, on Mr.

Kim's credibility.

Defendants also accuse Dr. Edman of commenting on Mr. Kim's credibility when he

discusses a portion of Mr. Kim's testimony transcript that is confusing to read at best.  *See* Def.

Mot. at 6 (discussing "vague and unsupported" testimony).  But again, as Dr. Edman makes clear

in his supplement, he is not commenting on Paul Kim's credibility.  He is instead explaining that

the transcript of the testimony is difficult to understand.[4]  *See* Edman Supp. at ¶ 31.  As Dr.

Edman explains:

> In his testimony, Mr. Kim was asked "*if a certain claim service
> (sic) with regard to the merchants finally came to be made in
> December 2019, isn't it correct that the functions related to the
> merchants did not exist on the Chai app or things like that before
> then?*" Mr. Kim asserted, "*No, that is not correct. They existed.*" . .
> . . While it is not clear from his testimony, I will address the
> possibility that Mr. Kim was implying that merchant transactions
> did, in fact, occur on the Terra blockchain prior to December 2019.

*Id*. (quoting Kim Tr. at 89) (emphasis added).

Dr. Edman was not stating that Mr. Kim's testimony was not credible.  Instead, he was

explaining that while it is unclear what was actually being discussed in that questioning, *if* Mr.

Kim was testifying that merchant transactions did occur on the Terra blockchain prior to

---

[4]  It is not unexpected that some snippets of highly technical testimony, taken in Korean and
translated into English, might be slightly unclear.

December 2019, his own expert review of Defendants' technical data showed otherwise. Specifically, Dr. Edman's analysis of Defendants' *own* blockchain and his review of Defendants' *own* LP Server source code showed that such merchant transactions did not appear on the blockchain until December 2019.  *See* Edman Supp. at ¶¶ 32-33.  Once again, Dr. Edman was offering no opinions on Mr. Kim's credibility but instead explaining why his own expert opinions remained unchanged following Mr. Kim's testimony.  *Id.*

Defendants cite the Second Circuit's decision in *Nimely* for the proposition that expert testimony that purports to evaluate a witness's credibility is inadmissible.  *See* Def. Mot. at 6. Although Defendants have accurately stated this basic principle, their motion reflects that they fail to grasp its meaning.  *Nimely* concerned an expert witness who stated in his "direct testimony stated that he 'rejected' the possibility that" the police officers whose conduct was at issue in that excessive force case "had lied, and explained various reasons why police officers have no incentive to give false statements in excessive force cases."  414 F.3d at 398.  On cross-examination the expert "reiterated his conclusion that the police officers were 'telling the truth as they perceived it.'"  *Id.*  Here, Dr. Edman has expressed *no views* on whether Mr. Kim was being truthful in his testimony—he only explained why, considering Mr. Kim's testimony (which he believed mostly corroborated the opinions he already expressed), his own opinions remained unchanged.

Other courts have flatly rejected the same interpretation of *Nimely* offered by Defendants. The court in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15044626, at *46 (E.D.N.Y. Oct. 26, 2022), rejected a *Daubert* challenge and ruled that the defendants were simply pointing to places where the plaintiff's expert explained that a witness's deposition testimony was at odds with other evidence the expert had evaluated and claiming it

amounted to a "credibility" evaluation.  The court explained why such expert testimony is plainly not an improper credibility assessment:

> However, the challenged paragraph does not contain an evaluation of witness credibility. The fact that [the expert] disagrees with testimony from the former [CEO] does not mean that he "comment[s] directly, under the guise of expert opinion, on the credibility of . . . testimony." . . . . Rather, the former CEO's testimony is a proper matter for cross-examination. . . . Notably, [the expert] may not testify on cross-examination that he disagrees with the former CEO's testimony because the former CEO did not testify credibly; *rather, he will have to describe whatever substantive reasons he may have for disagreeing with the testimony*. However, the challenged paragraph does not actually contain an evaluation of a witness's credibility.

*Id*. (quoting *Nimely*, 414 F.3d at 398) (emphasis added).

The same applies here.  If asked at trial about Mr. Kim's testimony, Dr. Edman will not comment on his credibility, only his substantive reasons for agreeing or disagreeing with particular points.  Expert testimony would be pointless if experts were simply required to agree with everything any fact witness says, as Defendants appear to suggest.[5]

V. <u>Dr. Edman's Supplement Offers No "Impermissible Narrative Testimony"</u>

Defendants make the puzzling argument that Dr. Edman's supplement—in which he offers technical explanations based on specialized knowledge as to why Mr. Kim's testimony did not cause him to change the expert opinions in his original expert reports—constitutes "impermissible narrative testimony."  Def. Mot. at 7-10.  Defendants' argument in this regard is difficult to follow, as they point to no actual example of Dr. Edman offering a "factual narrative."  Instead, they once again (as with their purported "Rule 60" arguments) point to places in which their lawyers disagree with Dr. Edman's reading of Mr. Kim's testimony. *See e.g. id*. at 8 ("But Dr. Edman ignores and omits testimony by Mr. Kim that explains that Chai

---

[5] It would also often be paradoxical, as fact witnesses frequently contradict each other.

was able to process transactions while the LP Server and/or Terraform blockchain was offline by queuing transactions for processing once everything was back online.").  As explained above, challenges that an expert's opinions are "inconsistent" with the evidence are for cross-examination and are ones that courts "do not waste time on" in deciding *Daubert* motions.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 174.

Ironically, while accusing Dr. Edman of "attempt[ing] to parse and rewrite Mr. Kim's testimony," (Def. Mot. at 7) (without giving any examples) Defendants spend pages of their brief block quoting Mr. Kim's testimony and trying to explain what he really meant.  *Id*. at 8-9 (describing Mr. Kim's testimony as "benign").  For instance, Defendants quote a lengthy exchange in which Mr. Kim testified in part that Chai transactions on the Terra blockchain "*were real KRT transactions, and not a mere copy*."  *Id*. at 9 (emphasis in Defendant's motion).  This is a strange point to emphasize because Dr. Edman never disputed that KRT transactions were actually occurring on the Terra blockchain.  His opinion was instead that these KRT transactions were occurring on the Terra blockchain between a closed system of wallets that only interacted with each other, and that Chai merchants and customers never actually received that value in KRT on the Terra blockchain because the LP Server controlled all of the wallets.  *See Terraform Labs Pte. Ltd*., 2023 WL 8944860, at *8 (noting that Dr. Edman's "review revealed, the purported Chai user transactions occurred within a closed system of Terra blockchain wallet addresses, and so the purported Chai transactions on the Terra blockchain represented transfers between wallet addresses controlled by Terraform Labs rather than the processing and settlement of Chai transactions between Chai users and merchants.") (cleaned up).

VI.   Defendants' Arguments About "Processing" and
      "Settlement" Have Already Been Rejected by the Court

Defendants try to mount a backdoor challenge to the Court's *Daubert* ruling concerning Dr.

Edman's use of the terms "processing" and "settlement,"[6] by arguing that *Mr. Kim* was somehow

using those terms differently than Dr. Edman, and that therefore Dr. Edman should not be

permitted to address Mr. Kim's testimony in that regard.  *See* Def. Mot. at 10-11.  The Court,

however, in rejecting Defendants' first *Daubert* motion explained why Defendants' arguments in

this regard are "puzzling":

> Defendants also make the puzzling argument that "Dr. Edman's
> methodology used in forming his opinions fatally lacks any
> definition of 'processing and settlement' or a framework (let alone
> an industry-recognized one) for evaluating the meaning of
> 'processing and settlement' within the Chai payment system." . . .
> But Dr. Edman did not refer to the "processing and settlement" of
> payments as a term of art. *He "instead was using it to describe that
> Chai merchants were not being paid by their customers on the
> Terra blockchain."*

*Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at 9 (emphasis added).

Defendants argue that "[i]t is thus clear that Mr. Kim was using the terms processing and

settlement as they are used in the financial industry in his personal experience working as a

software engineer for Chai, a payments system."  Def. Mot. at 11.  For this proposition,

Defendants rely solely on *ipse dixit* and point to nothing to suggest that Mr. Kim has *any*

expertise in the finance industry and was thus using these words as financial terms of art.  In fact,

Mr. Kim never defines what he means by "processing" and "settlement."  Instead, the testimony

of Mr. Kim's to which Defendants cite show him *describing the same replication of transactions*

---

[6]  Defendants failed to raise this issue in the motion for reconsideration they filed in January
2024, and have therefore waived any right to seek reconsideration of the Court's ruling in that
regard.  *See generally* Def. Edman Mot. for Recon. (ECF No. 157); *see also* Local Civil Rule 6.3
(Motions for Reconsideration or Reargument).

*on to the blockchain described by Dr. Edman*. *See* Def. Mot. at 10 ("For example, Mr. Kim explained that all information related to 'settlement with merchants' was 'passed on to the LP server, which then makes associated KRT transactions.'").

After suggesting without any support that Mr. Kim was using the terms "processing" and "settling" as terms of art, Defendants rehash the arguments they made in their failed *Daubert* motion about Dr. Edman's purported lack of expertise in the financial sector.  Def. Mot. at 11. Not only did they fail to seek timely reconsideration of this argument in their motion for reconsideration, but they repeat the same misrepresentations to the Court regarding Dr. Edman's qualifications and experiences in the financial payment sector that the SEC already debunked in its opposition to their *Daubert* motion.  *See* SEC Opp. to Edman *Daubert* Mot. at 7-11 (extensively detailing Dr. Edman's experience, including in the financial services industry, where among other experiences he worked in a senior technical role at Bloomberg LP, a "global *financial services*, software, and media company based in New York.") (ECF No. 110).

Defendants' retread of their baseless "processing and settlement" argument should be rejected.

VII.   Defendants' Half-Hearted Attempt to Revive
       <u>Mr. Unny's Excluded Opinions Should Be Rejected</u>

In a throwaway paragraph at the end of their motion, Defendants propose that the Court reverse its *two* prior decisions precluding Mr. Unny from testifying.  Def. Mot. at 11-12.  This argument is both unsupported by citation to any authority and is meritless.  Nothing that Defendants' former employee testified to in Korea can transform Mr. Unny into a qualified witness. *See Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at 11 ("The Court grants the SEC's

motion to exclude Mr. Unny's testimony because he has not demonstrated sufficient expertise in blockchain analysis to opine on Dr. Edman's conclusions. . . .").

Defendants also repeat the same arguments they made in their motion to reconsider Mr. Unny's exclusion, in which they contended that Mr. Unny's opinions regarding "processing and settlement" do not require any expertise in blockchain analysis. *See* Def. Mot. at 12 n. 7.  As the SEC previously explained in response to Defendants' motion for reconsideration, given the Court's ruling that "Dr. Edman did not refer to the 'processing and settlement' of payments as a term of art.  He 'instead was using it to describe that Chai merchants were not being paid by their customers on the Terra blockchain,'" (*Terraform Labs Pte. Ltd.,* 2023 WL 8944860, at *9), Mr. Unny's purported understanding of the "technical definitions" of these terms would decidedly *not* "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The Court denied Defendants' motion for reconsideration "essentially for the reasons stated by the SEC" in its response to that motion.  Defendants offer no reason the Court should reconsider its reconsideration ruling.  Mr. Unny should not be permitted to testify.[7]

---

[7] In previous briefing on this issue, Defendants had pointed to Mr. Unny's citations to a report by the Bank for International Settlements ("BIS") Committee on Payments and Market Infrastructures ("CPMI") as evidence of his expert understanding of how the terms "processing" and "settlement" are used in the financial sector.  However, when he was asked at his deposition about that committee, the following exchange occurred:

> Q. And the Committee on Payments and Market Infrastructure, or the CPMI, within the Bank for International Settlements, what is that?
>
> A. It's what it says. It's a committee.
>
> Q. And what does the committee do?
>
> A. I don't know. I wasn't part of the committee.

Unny Deposition, 211:19-212:14 (ECF No. 110-6).

CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated:  March 19, 2024                           Respectfully submitted,

                                                 /s/ Christopher J. Carney
                                                 Christopher J. Carney
                                                 James P. Connor, admitted *pro hac vice*
                                                 Carina A. Cuellar, admitted *pro hac vice*
                                                 Roger J. Landsman, admitted *pro hac vice*
                                                 Laura E. Meehan
                                                 Devon L. Staren, admitted *pro hac vice*


                                                 Attorneys for Plaintiff
                                                 U.S. SECURITIES AND EXCHANGE
                                                 COMMISSION
                                                 100 F Street NE
                                                 Washington, DC 20549
                                                 Tel: (202) 551-2379
                                                 Email: carneyc@sec.gov