UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>v.<br><br><br>TERRAFORM LABS PTE. LTD. and DO HYEONG KWON,<br><br><br><br>              Defendants. | Civil Action No. 23 Civ. 1346 (JSR)<br><br><br>Hon. Jed S. Rakoff |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. EDMAN IN HIS SUPPLEMENTAL EXPERT REPORT**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.    Dr. Edman's Opinion Should be Excluded in its Entirety ................................... 1

    A.    Mr. Kim's Testimony is Newly Discovered Evidence ........................... 2

    B.    Mr. Kim's Testimony Is Now the Only Evidence in Record as to the Operation of Chai and Shows Dr. Edman's Key Assumption is Unsupported .................. 3

II.    Dr. Edman's Supplemental Opinion Should be Excluded in Its Entirety .......................... 5

    A.    Dr. Edman Impermissibly Weighs Mr. Kim's Credibility ....................... 6

    B.    Dr. Edman Presents Impermissible Narrative Testimony ....................... 7

    C.    Dr. Edman Cannot Opine as to Processing and Settlement As a Term of Art After the SEC Disclaimed Dr. Edman Was Using the Terms in This Manner ............ 7

    D.    Raj Unny Would Help the Trier of Fact Understand "Processing" and "Settlement," the Meaning of Which is Squarely at Issue in this Case ........................... 8

CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bissonette v. Marine Midland Bank,*
  No. 98-CV-944, 2000 WL 246273 (N.D.N.Y. Mar. 2, 2000) .................................................. 2

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ......................................................................................................... 5

*Hunt v. CNH Am. LLC*,
  511 F. App'x 43 (2d Cir. 2013) ................................................................................................ 4

In re Blech Sec. Litig.,
  No. 94 CIV. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) .......................... 6, 7

*Lurch v. Chaput*,
  No. 16 CIV. 2517 (AT), 2023 WL 5609097 (S.D.N.Y. Aug. 30, 2023) ................................. 2

*Reese v. United States*,
  408 F. Supp. 3d 533 (S.D.N.Y. 2019) ...................................................................................... 2

*Tyger Const. Co. v. Pensacola Const. Co.*,
  29 F.3d 137 (4th Cir. 1994) ...................................................................................................... 5

*United States v. Scop*,
  846 F.2d 135 (2d Cir.) .............................................................................................................. 5

**Other Authorities**

Bank for Int'l Settlements: Comm. On Payments and Market Infrastructures,
  "Distributed ledger technology in payment, clearing and settlement," (Feb.
  2017), https://bit.ly/46HlPL3 .................................................................................................... 6

C. Wright and A. Miller, 11 Federal Practice and Procedure 182, § 2859 (1973
  ed.) ............................................................................................................................................ 2

Fed. R. Evid. 403 ............................................................................................................................ 4

Fed. R. Evid. 702 ............................................................................................................................ 4

U.S. Dep't of State, *South Korea (Republic of Korea) Judicial Assistance
  Information* (last accessed Mar. 20, 2024), https://bit.ly/3x6UVzd ......................................... 2

Defendants[1] respectfully submit this Reply in support of their motion to exclude the opinions and testimony of Dr. Matthew Edman.

## INTRODUCTION

The SEC's Opposition attempts to recast Defendants' motion to exclude Dr. Edman's opinions in their entirety as "rehashing" prior arguments and completely ignores the impact of the newly-obtained witness testimony from Paul Kim, which it felt compelled to respond to with a supplemental expert report. At the outset, the SEC argues that Defendants' motion must be denied because Defendants had notice of Mr. Kim's testimony—failing to explain how the fact that both sides knew the request for Mr. Kim's testimony has anything to do with whether what Dr. Edman opines about the substance of that testimony is admissible. The SEC then mischaracterizes Defendants argument as a factual dispute, but omits that Mr. Kim's testimony introduces new, *unrebutted* facts that obliterate Dr. Edman's core assumption that the LP Server was a "closed system." A proposed expert with no firsthand knowledge disagreeing with the sworn testimony of a witness with firsthand factual knowledge is not a factual dispute.

The SEC's arguments against the exclusion of the opinions in the Supplemental Report similarly fail. Dr. Edman's weighing of Mr. Kim's testimony constitutes an improper evaluation of Mr. Kim's credibility. And the SEC cannot justify Dr. Edman's creation of a factual narrative when he omits relevant portions of Mr. Kim's testimony adjacent to the testimony that Dr. Edman cites. Further, Dr. Edman should not be permitted to opine as to "processing" and "settlement" as terms of art after the SEC disclaimed that he was doing so. Finally, Mr. Unny's testimony as to processing and settlement will assist the jury because both the SEC's statement of the case and Mr. Kim's testimony places the definitions of these terms squarely at issue.

## ARGUMENT

### I.    Dr. Edman's Opinion Should be Excluded in its Entirety

---

[1] Capitalized terms not defined herein have the meanings set forth in Defendants' Memorandum in Support of Defendants' Motion to Exclude the Opinions and Testimony of Dr. Matthew Edman in his Supplemental Report ("Mot."), ECF No. 197. References to the SEC's Opposition to Defendants' Motion to Exclude Opinions and Testimony of Dr. Matthew J. Edman in his Supplemental Report, ECF No. 206, are in the form "Opp. xx."

1

### A. Mr. Kim's Testimony is Newly Discovered Evidence

Rule 60(b)(2) allows for rehearing of a prior disposition upon "newly discovered evidence which by due diligence could not have been discovered in time" for the disposition at issue. Fed. R. Civ. P. 60(b). To prevail, the movant must prove the following:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching."

*Reese v. United States*, 408 F. Supp. 3d 533, 535 (S.D.N.Y. 2019).

The standard is satisfied here. Previously unavailable deposition testimony, like Mr. Kim's testimony in this case, constitutes newly discovered evidence. *See*, *e.g.*, *Bissonette v. Marine Midland* Bank, No. 98-CV-944, 2000 WL 246273, at *4 (N.D.N.Y. Mar. 2, 2000) ("previously unavailable deposition testimony" constitutes "newly discovered evidence" to warrant a rehearing of a prior order dismissing the plaintiff's claims).[2] There was no justifiable ignorance, as Defendants could not have obtained Mr. Kim's testimony any sooner because the parties had to resort to the time-consuming Hague Convention process. There is no dispute that Mr. Kim's testimony is admissible; both parties have offered it. And as discussed further below, his testimony is not cumulative or impeaching and would have changed the outcome of the Daubert motions. Mr. Kim's testimony is the only admissible evidence in this case about how Chai operates, and his testimony not only states that Chai processed and settled transactions on the blockchain (Ex. 1 to Mot., Kim Tr. at 79, ECF No. 197-1), it negates Dr. Edman's core assumption underpinning his conclusion that the LP Server was a "closed system"—that the wallets "controlled" by the LP Server were not managed on behalf of Chai users and merchants. *See infra* Section I.B.

The SEC's challenge to Defendants' prior notice of Mr. Kim's testimony fails. The SEC does not explain how Defendants could have circumvented the Hague Convention process in light

---

[2] Although the motion for rehearing in *Bissonnette* was brought under Rule 59, the standard for newly discovered evidence' is the same under Rule 59 and Rule 60(b). C. Wright and A. Miller, 11 Federal Practice and Procedure 182, § 2859 (1973 ed.).

2

of the SEC's position that voluntary depositions are not permitted in Korea,[3] which the SEC itself recently argued to preclude C.J. Han's voluntary written deposition; the SEC cannot have it both ways. And the case cited by the SEC, *Lurch v. Chaput*, No. 16 CIV. 2517 (AT), 2023 WL 5609097 (S.D.N.Y. Aug. 30, 2023), is inapplicable. *Lurch* involved a report that existed at the time of the relevant disposition. *Id.* at *2.

### B. Mr. Kim's Testimony Is Now the Only Evidence in Record as to the Operation of Chai and Shows Dr. Edman's Key Assumption is Unsupported

Mr. Kim's testimony introduces new, unrebutted facts that establish that the Chai components and inputs into the LP Server operate in a manner that contradict Dr. Edman's core unsupported assumption that the LP Server was a "closed system." The SEC mischaracterizes Defendants' arguments as rehashing prior arguments and a simple dispute over facts—ignoring Mr. Kim's sworn testimony that the wallets Dr. Edman *assumes* were "controlled" by the LP Server were actually managed on behalf of users and merchants. In light of the fact that Mr. Kim's testimony is the only admissible evidence in the record as to the operation of Chai, Dr. Edman's assumption of "control" of these is unsupported by any evidence and thus speculative.

Mr. Kim testified as to how Chai operated and walked through how a payment is processed and settled on the blockchain when a user makes a payment or conducts a transaction using the Chai payment system. When a user makes a purchase,[4] the lp.claimDON function is executed on the Chai side and the inputs necessary to execute a user's transaction such as "amount," "from," and "to" are sent to the LP Server. Kim Tr. at 65-66 ("When Chai app's API executes this lp.claimDON function, the inputs necessary for the user's transaction such as "amount," "from," and "to" are put into the endpoint on the LP server side. Is this correct? A. Yes, correct. They go

---

[3] *See* U.S. Dep't of State, *South Korea (Republic of Korea) Judicial Assistance Information* (last accessed Mar. 20, 2024), https://bit.ly/3x6UVzd ("[D]epositions of such willing witnesses in the Republic of Korea must be undertaken pursuant to a request to the Korean Central Authority for the Hague Evidence Convention and in the context of the Republic of Korea court system.").

[4] Kim Tr. at 66 ("Q. Therefore, when the user makes a payment, or conducts a transaction, or does the top-up, which you mentioned, using the Chai app, Chai app's API sends over the data needed to conduct a blockchain transaction in the equivalent amount to the endpoint on the LP server side. A. Yes, correct.").

into the queue for standby."). The system creates a Terra wallet for every new Chai user to use to execute transactions onto the blockchain. Kim Tr. at 68 ("Q. When there is a new Chai user, does the LP server create a Terra wallet for that new Chai user on the blockchain? A. Yes. It calls a certain LP-related module ClaimDON function to launch, open, launch a Terra wallet connected to the Chai user on the blockchain."). The input sent to the LP Server then executes the transaction on the Terra blockchain. *Id.*

The SEC omits key portions of Mr. Kim's testimony about the operation of Chai that contradict Dr. Edman's core assumption—that the LP Server operated wallets on behalf of users and merchants. Dr. Edman opines that, based on his opinion that the LP Server "controlled" every purported Chai user wallet, the "on-chain transactions were merely the LP Server moving funds between wallets under its control," and the LP Server was thus a "closed system." Corrected Expert Report of Dr. Matthew J. Edman ¶ 66, ECF No. 97-2. His opinion rests on the assumption that the LP Server does not control these wallets on behalf of merchants and users. *See generally id.* This assumption was exposed during his deposition, during which Dr. Edman admitted that it was "possible" for the LP Server to execute Chai transactions using wallets managed on behalf of users—custodial wallets.[5] Dep. Tr. at 194:15–195:02 ("If a consumer with a Chai account delivered and supplied the inputs to the LP Server to pay a particular merchant a particular amount of money, isn't it possible that those wallets would serve as custodial wallets? A. That's possible….").

Mr. Kim's testimony establishes that custodial wallets *were* used. Mr. Kim testified that the Chai system not only created a Terra wallet for every new Chai user to use to execute transactions onto the blockchain, Kim Tr. at 68, but also confirmed that the LP Server managed these wallets ***on behalf of*** users and merchants. Kim Tr. at 80 ("Q. And this was briefly mentioned earlier, but blockchain wallet addresses, QR codes, personal keys, etc. were all created and

---

[5] Dr. Edman defined "custodial wallets" as "a wallet that somebody else manages on your behalf." Ex. D to Edman Daubert Mot., September 20, 2023 Dep. Tr. of Matthew J. Edman ("Edman Dep. Tr"). at 143:03–06, ECF No. 97-3.

4

managed on the backend, so users did not need to manage them separately, correct? A. Yes, correct. … Q. Was this the same for the merchant wallets? A. Yes."). Mr. Kim further confirmed that this process facilitated transfers of value between user and merchant wallets. Kim Tr. at 70 ("Q. In that case, *is it true that certain value, value was transferred between the user's wallet and the merchant's wallet, in other words, an account of some sort*? A. *Yes*. They are transfer records of KRT token stablecoins.") (emphasis added). Notably, Mr. Kim's testimony that the wallets were managed for the users and merchants and the Chai system effected transfers of value between these wallets establishes that those transfers fall squarely within Dr. Edman's definition of processing and settlement. Edman Dep. Tr. at 183:5–21 (defining "processing and settlement" "to mean the transfer of funds from a Chai user to the possession of the merchant.").

Mr. Kim's testimony renders Dr. Edman's opinion *at best* speculative. This is not, as the SEC claims, a dispute over facts. Mr. Kim's testimony introduced direct evidence as to the operation of Chai that completely displaced Dr. Edman's *assumptions* as to the LP Server's "control" of user and merchant wallets. Mr. Kim's testimony is the only admissible evidence in this case about the operation of Chai, whereas Dr. Edman has no evidentiary support for his core assumption that the LP Server was a "closed system" and did not process and settle transactions on the blockchain. Such an unsupported assumption is not only speculative under Rule 702 but, when presented through purported expert opinion, is likely to mislead a jury. Dr. Edman's opinions thus must be excluded under both *Daubert* and Rule 403. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion."); *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) (trial court erred in admitting expert testimony which was "based on assumptions which find no support in the record."); *see also Hunt v. CNH Am. LLC*, 511 F. App'x 43, 47 (2d Cir. 2013) (affirming exclusion of an expert because the expert "relied on assumptions not based on evidence and was 'unsupported and internally inconsistent' and was thus speculative and prejudicial") (internal citations omitted).

II.     **Dr. Edman's Supplemental Opinion Should be Excluded**

### A. Dr. Edman Impermissibly Weighs Mr. Kim's Credibility

The SEC attempts to recast Dr. Edman's statement as a misunderstanding and misrepresents the applicable law. The Second Circuit has recognized "[w]here such facts or data are based on the trial testimony of a witness whose credibility is not in dispute, the expert need not make a judgment about credibility." *United States v. Scop*, 846 F.2d 135, 143 (2d Cir. 1988). However, "[w]here the credibility of the witness is an issue, the expert may assume the truth of his or her trial testimony and thereafter offer an opinion based on the substance of the testimony. There is thus no need for an expert to make, much less state to the jury, an assessment of credibility when offering an opinion based on trial testimony." *Id.*

Here, Dr. Edman is affirmatively ***challenging*** the truth of Mr. Kim's testimony. Nowhere is this clearer than his evaluation of Mr. Kim's testimony that Chai uses blockchain technology to process and settle transactions. Dr. Edman acknowledges Mr. Kim's clear and unequivocal testimony, but then states that "Chai user and merchant transactions were *not* processed and settled on Terra blockchain." Ex. 2 to Mot., Supp. Report ¶ 24 n.8 (emphasis added). In making this statement, he weighs certain portions of Mr. Kim's testimony against each other, such as Mr. Kim's testimony that Chai maintained its own database ledger, and chooses which to credit. Such an exercise clearly involves credibility determinations that Dr. Edman is not permitted to make. Dr. Edman's opinion thus makes outright judgments or inferences as to Mr. Kim's credibility—an exclusive function of the jury. *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2003 WL 1610775, at *21 (S.D.N.Y. Mar. 26, 2003) ("[E]vidence is not helpful if it draws inferences or reaches conclusions within the jury's competence or within the exclusive function of the jury.").

The SEC's attempt to recast Dr. Edman's assertion that Mr. Kim's testimony was "vague and unsupported" fails. Notably, the SEC makes no attempt to distinguish *Reno v. Cnty. of Putnam*, No. 16 Civ. 5179 (LMS), 2020 WL 206466 (S.D.N.Y. Jan. 14, 2020) and *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002). Dr. Edman's evaluation of Mr. Kim's credibility renders Dr. Edman's supplemental opinion speculative and unreliable.

### B.     Dr. Edman Presents Impermissible Narrative Testimony

The SEC argues that Dr. Edman's selective quotation of Mr. Kim's testimony is not a factual dispute but an attempt to "in effect simply accumulate[e] and put[] together [its own]'story.'" *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-CV-8645 (KBF), 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018). That is wrong. The SEC's claim that Defendants "point to no actual example of Dr. Edman offering a 'factual narrative'" is belied by Dr. Edman's selective quotation and consistent omission of portions of Mr. Kim's testimony directly adjacent to portions to which he cites that all cover the same topic; such cherry-picking is the very definition of constructing an improper narrative. For example, the SEC points out that Mr. Kim's testimony that Chai transactions "were real KRT transactions and not a mere copy," which Dr. Edman omitted but Defendants referenced in their memorandum, was consistent with Dr. Edman's opinion that KRT transactions were actually occurring on the Terra blockchain. The SEC neglects to mention that Dr. Edman omits Mr. Kim's testimony in the ***very next sentence*** that value was transferred between the user's wallet and the merchant's wallet (Kim Tr. at 70), and that the LP Server managed wallets on behalf of users and merchants. Kim Tr. 80. Taken together, these statements establish that value was transferred from a user's wallet to a merchant's wallet and thus undercut Dr. Edman's core conclusion that Chai did not process and settle transactions on the blockchain. Such selective quotation does not require specialized knowledge and is precisely why experts are not permitted to present a factual narrative of interesting or useful documents for a case.

### C.     Dr. Edman Cannot Opine as to Processing and Settlement As a Term of Art After the SEC Disclaimed Dr. Edman Was Using the Terms in This Manner

The SEC's argument that Mr. Kim was using the terms processing and settlement in the same manner as Dr. Edman is wrong. *First*, the SEC curiously challenges Mr. Kim's experience with financial payment systems, ignoring the undisputed evidence that Mr. Kim served as the "Head of Engineering" for Chai (Kim Tr. at 12), a financial payment system. Mr. Kim's references to processing and settlement throughout his testimony were clear. *See*, *e.g.*, Kim Tr. at 35 ("Q. The ledger information is in Chai - doesn't this mean that the ledger is Chai's ledger? A. Yes,

7

withdrawal, top-up, cancellation, things related to *settlement with merchants* in addition to payments."), at 38 ("the content that was passed on through the LP module, through the LP dispatcher to the LP server was *processed* on the Terra blockchain."), at 75–76 ("Q. Item d. And 14 days that Do Kwon mentioned here was a typical settlement period of Chai merchants, correct? A. It was a *settlement cycle*."). He was uses as they are employed in the financial services industry, where these have a defined meaning. And there is no evidence that Mr. Kim was aware of Dr. Edman's unique definition of processing and settlement as the "transfer of funds from a Chai user to the possession of the merchant" (Edman Dep. Tr. at 183:5–21). . Had the SEC wanted Mr. Kim to address Dr. Edman's usage, it could have asked him to do so. As a result, Dr. Edman's opinion of Mr. Kim's testimony as to processing and settlement requires that Dr. Edman analyze the technical meaning of processing and settlement. To conduct this analysis, Dr. Edman must have the necessary expertise to do so.

That the SEC realizes this is proven by its attempt to backtrack and argue that Dr. Edman *is* qualified to opine as to processing and settlement because of his "experience" in the financial services industry. But the SEC never identified any experience that Dr. Edman has in processing and settlement in financial payment systems like Chai. Dr. Edman has no education related to financial payment systems or the financial industry. Edman Report ¶¶ 1–9 and Ex. 1 (Edman CV). He has never studied credit card systems, banking systems, or payment systems like Chai or PayPal. Edman Dep. Tr. at 18:17–25, 19:02–10, at 20:03–13. And his work experience in the financial services industry is limited to serving as a "Senior Vulnerability Engineer" at Bloomberg where he did not work on payment applications. *Id.* at 25:19–26:11. Dr. Edman demonstrated no relevant expertise, and the SEC properly disclaimed his qualification to opine on the terms processing and settlement as terms of art. It cannot now change its tune.

       **D.**    **Raj Unny Would Help the Trier of Fact Understand "Processing" and "Settlement," the Meaning of Which is Squarely at Issue in this Case**

The SEC's argument that Defendants "offer no reason" for Mr. Unny to be permitted to testify completely ignores Mr. Kim's testimony using processing and settlement as terms of art.

8

Contrary to the SEC's assertion that technical definitions of processing and settlement would "decidedly not help the trier of fact to understand the evidence," (Opp. 18), Mr. Unny can assist the jury in understanding the different methods in which payment systems can process and settle payments and how the mechanics of Chai explained by Mr. Kim are consistent with such processing and settlement. For example, not only does Dr. Edman testify as to Mr. Kim's use of processing and settlement, but opines that Mr. Kim's testimony supports his opinion because it shows that "Chai relied on its own database for verifying information and balances, rather than the Terra blockchain." Suppl. Report ¶¶ 14, 19. However, Mr. Unny would explain that this is consistent with processing and settlement on the blockchain and the views of officials of the Bank of Korea and the Federal Reserve. The Bank for International Settlements ("BIS") has noted that on settlement arrangements in distributed ledger technology include "transferring digital representations of a physical asset that is held in custody (ie the ledger is recording transfers of assets held elsewhere)."[6] Thus, the recording of the transfer of assets—like information and balances—on Chai is consistent with processing and settling on the blockchain.

Given that the SEC's fraud claims assert misstatements and omissions as to Defendants' representations about the *processing and settlement* of payments on the blockchain (Joint Pretrial Consent Order, Section I (alleging that Defendants deceived investors into believing that Chai "used the Terraform blockchain to process and settle payments")) and Mr. Kim's testimony explains the processing and settlement about which the SEC complains, those meanings are squarely at issue in this case. Mr. Unny's expertise and testimony as to processing and settlement[7]

---

[6] Bank for Int'l Settlements: Comm. On Payments and Market Infrastructures, "Distributed ledger technology in payment, clearing and settlement," (Feb. 2017), p.15 https://bit.ly/46HlPL3.

[7] The SEC also takes out of context statements made by Mr. Unny during his deposition about the BIS Committee on Payments and Market Infrastructures to try to undercut Mr. Unny's expertise regarding processing and settlement. But Mr. Unny has direct personal experience with financial payment systems, such as serving as the Principal Technologist at Nokia, in which Mr. Unny helped create Nokia Money, "a mobile payments system that allowed users of Nokia mobile phones in emerging markets to send payments to merchants, companies, and other mobile

will help the jury understand what the terms mean and how certain characteristics of Mr. Kim's testimony as to the mechanics of Chai may be consistent with these processes.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the opinions and testimony of Dr. Matthew Edman in their entirety or, in the alternative, exclude the opinions and testimony set forth in the Supplemental Report and permit Raj Unny to testify as to the technical definitions of "processing" and "settlement."

---

phone users." Ex. A to Defs' Opp. to the Mot. to Exclude the Testimony and Opinions of Raj Unny, Expert Report of Raj Unny ("Unny Report") ¶ 6, ECF No. 109-1. [[It also ignores that Mr. Unny was familiar with BIS and knew it was "a reputable organization ... when it comes to blockchain processing and settlement," Ex. C to Unny Opp., October 9, 2023, Dep. Tr. of Raj Unny ("Unny Dep. Tr.") at 213:12–20, ECF No. 109-2, and confirmed that the BIS "provide[s] Central Banks with a platform for responsible innovation and knowledge sharing, in-depth analysis and insights on core policy issues, sound and competent financial services." *Id.* at 227:12–228:01. Mr. Unny further confirmed that the members of the committee include "several of the Central Banks of some of the largest economies in the world," like "the Federal Reserve Bank of New York" and "the Board of Governors of the Federal Reserve System." *Id.* at 225:08–226:15. ]][[I would delete the bracketed materials]]

Date: March 20, 2024            Respectfully submitted,

*/s/Mark G. Califano*

**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
Louis A. Pellegrino
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com
david.kornblau@dentons.com
louis.pellegrino@dentons.com

Mark G. Califano
Melissa Gomez-Nelson (admitted *pro hac vice*)
Matthew A. Lafferman (admitted *pro hac vice*)
1900 K Street, NW
Washington, DC 20006
Tel: (202) 496-7500
mark.califano@dentons.com
melissa.gomeznelson@dentons.com
matthew.lafferman@dentons.com

*Counsel for Defendant Terraform Labs Pte. Ltd.*

*/s/ David Patton*

**KAPLAN HECKER & FINK LLP**
David Patton
Michael Ferrara
Andrew Chesley
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
dpatton@kaplanhecker.com
mferrara@kaplanhecker.com
achesley@kaplanhecker.com

*Counsel for Defendant Do Hyeong Kwon*

## CERTIFICATE OF SERVICE

I, Mark G. Califano, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on March 20, 2024.

*/s/ Mark G. Califano*
Mark G. Califano
