UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. TERRAFORM LABS PTE LTD. and DO HYEONG KWON, Defendants. | No. 1:23-cv-1346 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF THE SEC'S
MOTION FOR FINAL JUDGMENT AGAINST DEFENDANTS**

**Table of Contents**

INTRODUCTION……………………………………………………………………1

ARGUMENT…………………………………………………………………………2

I.   The Court Should Permanently Enjoin and Impose Third-Tier Civil Penalties Against
     Defendants, and Enter an Officer-and-Director Bar Against Kwon …………………..2

     A.  Obey-the-Law and Conduct-Based Injunctions Are Warranted………..…..……2

     B.  The Court Should Impose $420 Million and $100 Million As Civil Penalties….…5

     C.  The Court Should Impose an Officer-and-Director Bar Against Kwon and Direct Him
         to Provide a Sworn Accounting……………………..……………………………..7

II.   Defendants Should Disgorge $4,192,397,846 and Pay Prejudgment Interest………...8

III.  The Court Should Rule That the Monetary Remedies Imposed Upon Terraform are Non-
      Dischargeable in Bankruptcy………………………………………………………14

CONCLUSION……………………………………………………………………...15

## Table of Authorities

<u>Cases</u>

*Archer v. Warner,* 538 U.S. 314 (2003)…………………………………………………14

*Cohen v. de la Cruz,* 523 U.S. 213, 215 (1998)……………………………………………14

*Field v. Mans*, 516 U.S. 59 (1995)……………………………………………………14

*In re Bilzerian*, 153 F.3d 1278 (11th Cir. 1998)……………………………………………14

*In re Bocchino*, 794 F.3d 376 (3d Cir. 2015)……………………………………………14

*In re Braniff Int'l Airlines*, 164 B.R. 820 (Bankr. E.D.N.Y. 1994) ………………………15

*In re Lehman Bros. Holdings Inc.*, 2018 WL 3869606 (Bankr. S.D.N.Y. Aug. 13, 2018)…15

*In re Fusion Connect, Inc.*, 634 B.R. 22 (S.D.N.Y. 2021)………………………………14

*In re Hawker Beechcraft, Inc.*, 515 B.R. 416 (S.D.N.Y. 2014)……………………………14

*Liu v. SEC,* 591 U.S. 71 (2020)…….………………………………………….......8,13

*Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189 (1881)…………………………………13

*SEC v. Alpine Sec. Corp.,* 413 F. Supp. 3d 235 (S.D.N.Y. 2019)…………………………3

*SEC v. Alpine Sec. Corp.,* 982 F.3d 68 (2d Cir. 2020)………………………………………3

*SEC v. Amerindo Investment Advisors, Inc.,* 2014 WL 2112032 (S.D.N.Y. May 6, 2014)….5

*SEC v. Amerindo Investment Advisors, Inc.,* 639 F. App'x 752 (2d Cir. 2016)...………….5

*SEC v. Cavanagh,* 155 F. 3d 129, 135 (2d Cir. 1998)………………………………………3

*SEC v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2011)………………………………………5

*SEC v. Cope,* 2021 WL 653088 (S.D.N.Y. Feb. 19, 2021)……………………………....8

*SEC v. DeFrancesco*, 2023 WL 6965051 (S.D.N.Y. Oct. 23, 2023)………………………..3

*SEC v. de Maison*, 2021 WL 5936385 (2d Cir. Dec. 16, 2021)……………………………13

*SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450 (2d Cir. 1996)……………………...8,12,13,14

*SEC v. Fowler,* 6 F. 4th 255 (2d Cir. 2021)…………………………………………8, 9

*SEC v. Gallison*, 2023 WL 3090857 (S.D.N.Y. Apr. 26, 2023)………………………......7

*SEC v. Inorganic Recycling Corp.,* 2002 WL 1968341 (S.D.N.Y. Aug. 23, 2002)………...8

*SEC v. Jankovic,* 2018 WL 301160 (S.D.N.Y. Jan. 4, 2018)………………………………12

*SEC v. Lybrand*, 2000 WL 913894 (S.D.N.Y. July 6, 2000)………………………………8

*SEC v. Mattera,* 2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013)……………………………....2

*SEC. v. Murray*, 2013 WL 839840 (E.D.N.Y. Mar. 6, 2013)……………………………..12

*SEC v. Musella*, 748 F. Supp. 1028 (S.D.N.Y. 1989)……………………………………...14

*SEC v. Musella* 898 F.2d 138 (2d Cir. 1990)……………………………………………14

S*EC v. Owings Group LLC,*  2021 WL 1909606 (D. Md. May 12, 2021)………………...12

*SEC v. Oxford Capital Sec. Inc.,* 794 F. Supp. 104 (S.D.N.Y. 1992)………………………8

*SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)………………………………………….....7

*SEC v. Rajaratnam,* 918 F.3d 36 (2d Cir. 2019)…………………………………………...5

*SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013)…………………………………………...5

*SEC v. Rinfret*, 2020 WL 6559411, (S.D.N.Y. Nov. 9, 2020)……………………………...8

*SEC v. Rosenthal*, 426 F. Appx 1 (2d Cir. 2011)………………………………………….9

*SEC v. StratoComm Corp.,* 89 F. Supp. 3d 357 (N.D.N.Y. 2015)…………………………13

*SEC v. Terraform Labs Pte. Ltd*., 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023)………….1, 10

*SEC v. Universal Exp., Inc.*, 646 F. Supp. 2d 552 (S.D.N.Y. 2009)……………………….6

*SEC v. Zubkis*, 2005 WL 1560489 (S.D.N.Y. June 30, 2005)……………………………...12

<u>Statutes</u>

15 U.S.C. § 77t(b)………………………………………………………………………….2

15 U.S.C. § 78u(d)………………………………………………………………….2,5,7,8

15 U.S.C. §§ 77t(d)……….....……………………………………………………………5

15 U.S.C. §§ 77t(e)………….……………………………………………………………7

15 U.S.C. § 78t(a) ………...…………………………………………………………..13

11 U.S.C. § 523(a)(2)(A)………………………………………………………………14

11 U.S.C. § 523(c)……………………………………………………………………...14

11 U.S.C. §1141(d)(6) …………………………………………………………………14

26 U.S.C. § 6621(a)(2)…………………………………………………………...……..14

28 U.S.C. § 1334………………………………………………………………………..15

28 U.S.C. § 1409(a)……………………………………………………………………..15

iii

Rules

Fed. R. Civ. P. 15(b)(2)…………………………………………………………..7

Fed. R. Civ. P. 54(c) …………………………………………………………..7

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in support of its Motion for Final Judgment Against Defendants Terraform Labs Pte. Ltd. ("Terraform") and Do Hyeong Kwon ("Kwon," collectively, "Defendants").

## **INTRODUCTION**

A jury found Kwon and Terraform liable for intentionally and recklessly orchestrating one of the largest securities frauds in U.S. history. Defendants' two fraudulent schemes involving dozens of false and misleading statements about the stability and use of their "ecosystem" culminated in the collapse of their crypto empire in May 2022. Investors lost everything—over $40 billion in market value was erased nearly overnight—while Defendants made over $4 billion in ill-gotten gains (and likely much more) from their illegal conduct.

To deprive Defendants of the staggering proceeds from their fraud and deter future violations, the Commission seeks a final judgment: (1) enjoining them from further violation of Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; (2) jointly and severally ordering them to pay disgorgement of $4,192,147,847 plus $545,748,909 in prejudgment interest; (3) ordering Terraform and Kwon to pay a $420 million and a $100 million civil penalty, respectively; (4) imposing a conduct-based injunction on Defendants, and an officer-and-director bar on and a sworn accounting from Kwon; and (5) holding that the fraud-related monetary remedies imposed on Terraform are non-dischargeable in bankruptcy.

The Court's ruling that Defendants violated the registration requirements of the federal securities laws, *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023), alone provides a basis for much of the relief the SEC seeks. But the overwhelming evidence

adduced at trial and the jury's lightning-fast verdict further compel the imposition of these remedies.

Specifically, Defendants were held to have violated the anti-fraud provisions of the securities laws with scienter—with the jury expressly finding that Kwon acted intentionally and Terraform recklessly—and the evidence at trial established that this conduct occurred over the course of years and caused devastating losses. Moreover, Defendants have not shown remorse for their conduct, nor can there be any doubt that they are in position where additional violations are not only possible but likely are already occurring. Terraform's new CEO took the stand in a stunning display of chutzpah and attempted to garner sympathy by noting that Terraform had distributed a new version of their token—LUNA 2.0—to their victims, all the while continuing to spend the millions they had reaped from investors and engaging in additional unregistered distributions of these securities.

The Court should send an unequivocal message that this sort of brazen misconduct, and Defendants' misbegotten attempt to excuse their behavior by crafting new rules and standards of behavior for crypto markets in contravention of the federal securities laws, *cf.* Trial Tr. at 1445, will not be tolerated.

## **ARGUMENT**

I.      The Court Should Permanently Enjoin and Impose Third-Tier Civil Penalties
        Against Defendants, and Enter an Officer-and-Director Bar Against Kwon.

     A.      Obey-the-Law and Conduct-Based Injunctions Are Warranted.

Courts are specifically authorized by statute to impose injunctive relief on those who violate the federal securities laws, 15 U.S.C. §§ 77t(b), 78u(d)(1), 78u(d)(5), including injunctions proscribing specific conduct. *E.g.*, *SEC v. Mattera*, 2013 WL 6485949, at *18

(S.D.N.Y. Dec. 9, 2013) (imposing a "stricter" injunction on recidivist, forbidding him from "participating in the issuance, offer, or sale of any security.").

   In determining whether to impose injunctions, courts consider:

> (1) The fact that the defendant has been found liable for illegal conduct;
> (2) the degree of scienter involved; (3) whether the infraction is an
> isolated occurrence; (4) whether defendant continues to maintain that
> his past conduct was blameless; and (5) whether, because of his
> professional occupation, the defendant might be in a position where
> future violations could be anticipated.

*SEC v. Alpine Sec. Corp.*, 413 F. Supp. 3d 235, 251 (S.D.N.Y. 2019), *aff'd*, 982 F.3d 68 (2d Cir. 2020) (quoting *SEC v. Cavanagh*, 155 F. 3d 129, 135 (2d Cir. 1998)). Injunctive relief is "particularly appropriate 'where a violation was founded on systemic wrongdoing'" and where the defendant is likely to engage in further misconduct. *Id.* (citation omitted).

   Here, all factors overwhelmingly favor imposing obey-the-law injunctions and an injunction prohibiting Defendants from (i) participating, directly or indirectly, in the purchase, offer, or sale of any crypto asset securities, including but not limited to UST, MIR, LUNA, wLUNA, and LUNA 2.0 or (ii) engaging in activities for purposes of inducing or attempting to induce the purchase, offer, or sale of any crypto asset securities by others.

   *First*, the Court previously held that Defendants violated Section 5 of the Securities Act and the jury further held Defendants liable for violating the anti-fraud provisions. ECF Nos. 149, 229. *Second*, the jury found that both Defendants acted with scienter. *See* ECF No. 229; *see also SEC v. DeFrancesco*, 2023 WL 6965051, at *8 (S.D.N.Y. Oct. 23, 2023) (Rakoff, J.) ("Scienter can be shown by motive and opportunity *or* recklessness . . . ."). *Third*, Defendants' conduct was not isolated, but was carefully planned and executed, involved numerous deceptions and dozens

of misstatements, and unfolded over a period of years. ECF No. 217 at 16-24.[1] *Fourth*, Defendants' have refused to accept responsibility for their misconduct. Kwon has fled from justice and been caught with forged passports. *See* SEC Motions *in Limine* at 17 (ECF No. 188) and Exhibits 10 and 11. Perhaps worse still, at trial Defendants attempted to excuse their behavior by pointing to a so-called "community vote" by those "who held UST or Luna prior to the depeg" (which includes, presumably, Defendants as the overwhelmingly largest single holders of these assets, *see* Stipulation No. 5, Trial Tr. 237 ("[S]ince the inception of Luna, Terraform owned hundreds of millions of Luna tokens")) and that, based on this unaudited, anonymous, self-serving vote they decided to distribute *billions more tokens* to victims, in unregistered transactions, while retaining hundreds of millions of proceeds for themselves. *Id.* at 1466-69, 1490-91.

*Finally*, for similar reasons Defendants are poised to commit further violations—if they have not committed them already. Defendants admit that their business is ongoing and that they purport to bring value to this new crypto token that has all the hallmarks of the previous version. Tr. 1468-69, 1489-90 (CEO Amani testified that Terraform "is still working to build for those people today. We still have a community, they have their tokens, and we continue on."). Defendants also acknowledged that they are continuing to sell this token. *See* Trial Tr. 1489:23-1490:11 ("Q. You're providing the Luna to the liquidity pool from which the investor purchases it, right? A. Maybe you can put it that way.").

---

[1]  The evidence showed Defendants' false and misleading statements about Chai's supposed use of the Terraform blockchain began in June 2019, *see* PX 87; PX88, and their lies about the supposed "self-healing" Terraform algorithm that set UST's price at $1.00, continued through May 2022, *see* PX57; PX58; PX59B; PX74.

This frank acknowledgment of likely recidivism makes urgent that the Court impose the requested injunctions. In particular, the proposed conduct-based injunction will specifically prohibit Defendants from engaging in essentially the same behavior that led to the massive fraud for which the jury found them liable.

B.     The Court Should Impose $420 Million and $100 Million As Civil Penalties

The Court may and should also impose civil money penalties for Defendants' violations. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3)(B). Civil penalties "achieve 'the dual goals of punishment of the individual violator and deterrence of future violations.'" *SEC v. Coates*, 137 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2011) (citation omitted). There are three tiers of monetary penalties, with the highest tier proper where, as here, the violation involved fraud and substantial losses to other persons. *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013) (citing 15 U.S.C. §§ 77t(d), 78u(d)(3)). A third-tier penalty *for each violation* shall not exceed the gross amount of pecuniary gain. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3). Gross pecuniary gain is similar to disgorgement but with the deduction of expenses. *SEC v. Amerindo Investment Advisors, Inc.*, 2014 WL 2112032, *11 (S.D.N.Y. May 6, 2014), *aff'd*, 639 F. App'x 752 (2d Cir. 2016). To determine an appropriate penalty, courts consider all the facts, including those as to injunctions, and "whether the penalty should be reduced due to the defendant's current and future financial condition." *SEC v. Rajaratnam*, 918 F.3d 36, 44-45 (2d Cir. 2019).

Third-tier penalties are warranted here for many of the same reasons injunctions are proper and given the evidence at trial of the devastating losses to investors that resulted from Defendants' conduct. Nader George—who was convinced by Defendants' reassurances to take out a $400,000 loan to invest—lost almost everything. *See* Trial Tr. 973-974. Arash Vakil lost $175,000 based on Defendants' false representations regarding the stability of UST. *Id.* at 133-135. And Boris Revsin's company, Republic Capital, lost the majority of the $35.9 million it

invested, based on Defendants' lies. *Id.* at 276. Terraform's collapse was so devastating that even though Terraform claims to have spent $3 billion trying to save the peg (and its own empire) it was unable to do so. *Id.* at 1583-85.

Nor have Defendants adduced any credible evidence of their inability to pay and all the available evidence suggest they are able to pay significant fines. Terraform acknowledges that it has access to at least $150 million, Trial Tr. 1490. Terraform transferred more than $165 million to the Dentons law firm within one year prior to the filing of bankruptcy, and Dentons billed Terraform more than $86 million in fees and costs during that time. *See* Application of Debtor to Retain Dentons at 9, *In re Terraform Labs PTE Ltd.*, 24-10070-BLS (Bankr. Del. Feb. 13. 2024) (ECF No. 60) (attached as Exhibit 1).[2] They have also been paying their new CEO, Amani, $3 million a year. Trial Tr. 190.

The SEC respectfully seeks a $420 million penalty against Terraform and a $100 million penalty against Kwon. These amounts are a little more than ten percent and two percent, respectively, of Defendants' ill-gotten gains, which are discussed in detail below, but are significant amounts that serve the deterrent and punitive purposes of the statute. *See SEC v. Universal Exp., Inc.*, 646 F. Supp. 2d 552, 568 (S.D.N.Y. 2009) (third-tier penalties appropriate for defendant who violated Section 5 and whose "dissemination of materially false information create[d] a significant risk of substantial loss). *Id.*

---

[2]  To resolve Dentons' retention application in the Bankruptcy proceedings, Terraform agreed to an order requiring Dentons to transfer $48 million it had received as a retainer to Terraform's debtor-in-possession account. *See* Order Granting Retention of Dentons at 3, *In re Terraform Labs PTE Ltd.*, 24-10070-BLS (Bankr. Del. March 12, 2024) (ECF No. 179).

C.   The Court Should Impose an Officer-and-Director Bar
     Against Kwon And Direct Him to Provide a Sworn Accounting

The law also authorizes courts to prohibit a person from serving as an officer or director

of a publicly held company if the person violated the anti-fraud provisions and that person's

conduct demonstrates "unfitness" to serve. 15 U.S.C. §§ 77t(e), 78u(d)(2), 78u(d)(5). As with

other remedies in SEC cases, courts have "substantial discretion in deciding whether to impose"

such a bar. *SEC v. Gallison*, 2023 WL 3090857, at *3 (S.D.N.Y. Apr. 26, 2023) (citations

omitted). The factors courts consider are similar to those considered with respect to injunctive

relief and civil penalties, with the added factor of "the defendant's economic stake in the

violation." *Id*. (quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)). For all the reasons that

injunctive relief and civil penalties should be imposed against Kwon, combined with his 92

percent ownership of Terraform, a permanent officer-and-director bar should be imposed against

him.

Moreover, although the SEC did not specifically seek an officer-and-director bar in its

complaint, it sought all equitable relief appropriate or necessary for the benefit of investors and

the evidence adduced at trial clearly went to the relevant factors, including Kwon's fitness to

serve. Kwon, accordingly, had every opportunity to present evidence in his defense, including

evidence tending to refute these factors. *See also* Fed. R. Civ. P. 15(b)(2) ("When an issue not

raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all

respects as if raised in the pleadings."); Fed. R. Civ. P. 54(c) (final judgment should include

relief to which party is entitled even if not demanded in pleadings).

The SEC also requests that the Court order Kwon to provide a sworn accounting of any

assets maintained or controlled directly or indirectly by him, any immediate family member or

agent, including, but not limited to any accounts and/or assets held in the name of the Luna

Foundation Guard ("LFG"). This other form of equitable relief is proper under the circumstances, including to ensure an accurate measure of funds Kwon obtained as the result of violative activity and his current financial resources.  *See, e.g., SEC v. Lybrand*, 2000 WL 913894, at *12 (S.D.N.Y. July 6, 2000); *SEC v. Oxford Capital Sec. Inc*., 794 F. Supp. 104, 105-06 (S.D.N.Y. 1992). Kwon's assets are particularly difficult to track as they are likely almost entirely overseas and/or in the form of crypto assets and, unlike Terraform's, not currently under bankruptcy court jurisdiction.

## II.    Defendants Should Disgorge $4,192,147,847 and Pay Prejudgment Interest

Courts are also authorized to order disgorgement of unjust enrichment in SEC enforcement actions. *See* 15 U.S.C. §§ 78u(d)(3), (d)(5), (d)(7); *see also Liu v. SEC*, 591 U.S. 71, 74-75 (2020) ("[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] §78u(d)(5)."). The "primary purpose of disgorgement … is to deprive violators of their ill-gotten gains."  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996).

"In general, the amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (cleaned up). "If the disgorgement amount is generally reasonable, any risk of uncertainty about the amount falls on the wrongdoer whose illegal conduct created that uncertainty." *Id*. (cleaned up); *see also SEC v. Rinfret*, 2020 WL 6559411, at *5 (S.D.N.Y. Nov. 9, 2020) ("The SEC is not required to establish with certainty the disgorgement amount, but need only present a 'reasonable approximation of profits causally connected to the violation.'") (quoting *First Jersey Sec.*, 101 F.3d at 1475); *SEC v. Cope*, 2021 WL 653088, at *2 (S.D.N.Y. Feb. 19, 2021) ("'Because of the difficulty of determining with certainty the extent to which a defendant's gains resulted from his frauds the court need not determine the amount of such gains

with exactitude.'") (cleaned up). Moreover, the defendant's financial condition is not material to assessing disgorgement. *See SEC v. Inorganic Recycling Corp.*, 2002 WL 1968341, at *4 (S.D.N.Y. Aug. 23, 2002). Finally, it is the defendant's burden "to identify any … 'legitimate' business expenses that, consistent with *Liu*, should have been deducted from an otherwise reasonable disgorgement amount." *Fowler*, 6 F.4th at 267.

The SEC asks the Court to order Defendants to pay $4,192,147,847 on a joint-and-several basis, comprised of four components: (i) $65,215,692, the ill-gotten gains from Defendants' unregistered offers and sales of LUNA to institutional investors, through Terraform and its wholly owned subsidiary, Terraform Labs Limited, *see* Decl. of Avron Elbaum ("Elbaum Decl.") at ¶ 6(a); (ii) $4,270,000, the ill-gotten gains from unregistered offers sales of MIR to institutional investors, through Terraform and Terraform Labs Limited, *see id.* ¶ 6(b); (iii) $1,833,388,886, the ill-gotten gains from Defendants' sales of LUNA and UST, through the LFG (an entity controlled by Defendants) further broken down into $847,400,000 in sales via various contracts (*see id.* ¶ 6(c)) and $985,988,886 via an LFG contract with Genesis Asia Pacific PTE LTD ("Genesis") (*see id.* ¶ 6(d)); and (iv) $2,289,273,269 in *net* sales of UST to investors by Terraform on crypto asset trading platforms from June 2021 to May 2022. *See id.* ¶ 6(e).

These amounts represent a reasonable approximation of Defendants' ill-gotten gains. Notably, although "the SEC is not required to trace specific funds," *SEC v. Rosenthal*, 426 F. App'x 1, 3 (2d Cir. 2011), the SEC has traced over 99% of the funds sought, through in-depth analysis of Terraform-affiliated crypto asset wallets and bank accounts. *See* Elbaum Decl. at ¶ 7 (tracing $4,183,688,314 of $4,192,147,847); *see generally* Declaration of Donald Battle ("Battle Decl.") (detailing crypto asset tracing).

The first two components of the requested disgorgement amount are for the most part the specific ill-gotten gains from Defendants' Section 5 violations. Most of the $65 million in the first component are the institutional sales found by the Court to have violated Section 5. *See Terraform*, 2023 WL 8944860, at 15 (holding that "Terraform sold LUNA tokens directly to institutional investors through sales agreements" and "provided loans of tens of millions of LUNA tokens to trading firm Jump" to "improve liquidity of LUNA in secondary trading markets."); *see also* Elbaum Decl. ¶ 6(a) and Ex. 1. The remaining portion of component one are unregistered sales that occurred during the time period when the evidence showed Defendants defrauded investors with misrepresentations concerning the Terra blockchain's use of Chai. *See id.* The second component represents the more than $4.2 million in ill-gotten gains from unregistered sales of MIR that the Court ruled violated Section 5. S*ee Terraform*, 2023 WL 8944860 at 16 ("a Terraform subsidiary sold MIR tokens directly to purchasers through 'Simple Agreements for Farmed Tokens,' or SAFTs" without restricting resales "in secondary trading markets or to U.S. investors"); Elbaum Decl. ¶ 6(b) and Exhibit 2.

The third component, the more than $1.8 billion in sales of LUNA and UST to investors by LFG, *see* Elbaum Decl., ¶ 6(c) and (d) and Exhibit 3, an entity controlled by Defendants, in early 2022 (which is when Defendants were deceiving investors as to the stability of UST) is also properly considered ill-gotten gains to Defendants. The evidence shows that LFG entered into roughly three dozen contracts for sales of LUNA and UST for nearly $850 million in Bitcoin and other crypto assets. Battle Decl. ¶¶ 25-26. The occurrence of each of these transactions has been verified on the blockchain, with publicly viewable blockchain identifiers, with funds traced to wallet addresses that the evidence shows are controlled by or affiliated with Terraform. *Id*. In

addition, the evidence shows that LFG made approximately $986 million in additional UST sales to Genesis Trading in April 2022. Battle Decl. ¶ 27.

Although these sales were made through LFG, they are properly considered ill-gotten gains to Defendants from their violations. The evidence is indisputable that LFG was simply a tool through which Defendants raised money from investors and thus its sales proceeds were either received directly by Defendants or were under their control.

The parties stipulated that "Defendants directed the movement of funds and/or assets from [LFG] wallet addresses and accounts that held LFG funds and/or assets." Stip. 11, Trial Tr. 237. Terraform's current CEO, moreover, confirmed that he understood that Terraform controlled the crypto asset wallet addresses for LFG and exercised that control for Defendants' benefit including deploying billions in capital in LFG's accounts when UST lost its peg in May 2022. *Id*. 1463, 1478. Terraform's former head of communications confirmed all of this when he explained that Kwon called him to say that Terraform was going deploy $1.5 billion from LFG to support the peg, which Terraform subsequently announced using the LFG Twitter account. *Id*. 1109-10. Similarly, Defendants' own expert witness conducted a detailed analysis as to how Terraform and LFG together spent $3 billion "trying to cause the price of UST to repeg to a dollar." *Id*. at 1583-85. Accordingly, Defendants did not shy away from confirming for the jury that Terraform and LFG were the same entity. *Id*. at 66:1-5 (Kwon "authorized Terraform – he owned most of it – to spend billions of dollars' worth of resources to try to protect the value of those cryptocurrencies," referring to the deployed LFG funds).

In addition, the evidence also showed that Defendants used LFG as a conduit to sell investors more than $1.8 billion in crypto asset securities in 2022 while engaged in the fraudulent schemes for which they were held liable. Where, as here, a defendant uses an entity as the

vehicle for his fraud, "the court may use that entity's profits as a measure of the appropriate disgorgement." *SEC. v. Murray*, 2013 WL 839840, at *2 (E.D.N.Y. Mar. 6, 2013) (holding that profits of non-party corporation used by defendant as a "conduit" for illegal scheme could be considered in calculating disgorgement); *accord SEC v. Jankovic,* 2018 WL 301160, at *6 (S.D.N.Y. Jan. 4, 2018); *see also First Jersey Secs., Inc.*, 101 F.3d at 1475-76 (defendant held liable with corporate entity of which he was the sole owner and which he controlled); *SEC v. Owings Group LLC*, 2021 WL 1909606, at *4 (D. Md. May 12, 2021) (holding that *Liu* "did not suggest that ordering individuals to disgorge funds received by corporate entities under their control is improper."); *SEC v. Zubkis*, 2005 WL 1560489, at *5 (S.D.N.Y. June 30, 2005) (Where company is an alter ego for defendant "the Court should not give effect to its corporate form where doing so would frustrate the Commission's enforcement of securities law.").

Last, the fourth component is comprised of nearly $2.3 billion in sales of UST to investors by Terraform from June 2021 through May 2022, when Defendants defrauded investors regarding the stability of UST. *See* Elbaum Decl., ¶ 6(e). Specifically, the trial evidence showed that Defendants lied about the stability of UST in May 2021 by suggesting that its proprietary algorithm had restored UST's $1.00 peg, when in fact Defendants struck a secret side deal with Jump Trading to manipulate UST's price back to $1.00. Having misled the investing public about the stability of UST, Defendants then cashed in by selling the equivalent of $2.3 billion of UST to unsuspecting investors through crypto asset trading platforms from June 2021 through May 2022. *See* Battle Decl., ¶ 19. Specifically, Terraform's accounts with crypto asset trading platforms Binance.com, Bitfinex, and Kucoin accounts sold a net value of nearly $2.3 billion UST. *See id.*

This total, nearly $4.2 billion in disgorgement sought by the SEC is a conservative measure of Defendants' ill-gotten gains. Terraform *sold* more than $24.73 billion in in LUNA and MIR through crypto asset trading platforms to investors from January 1, 2021 through May 31, 2022 *See* Battle Decl. ¶ 23. Even though Terraform also *bought* similar amounts of those crypto asset securities on the platforms, such purchases would not qualify as "legitimate expenses" to be deducted from disgorgement under *Liu*. In *Liu*, the Supreme Court recognized an exception to the requirement that expenses be deducted from disgorgement that applies "when the 'entire profit of a business or undertaking' results from the wrongful activity." *Liu*, 591 U.S. at 92 (quoting *Root v. Lake Shore & M.S. Ry. Co*., 105 U.S. 189, 203 (1881)); *see also SEC v. de Maison*, 2021 WL 5936385 (2d Cir. Dec. 16, 2021), at *3 n.1 ("The essence of the fraud here was the sale by de Maison of unregistered, essentially worthless stock. Thus, all of the proceeds from the sale — the gross revenue obtained from the fraud — were due to de Maison and came to the accounts that she designated. It is arguable that amounts distributed to co-conspirators should not reduce the 'net profits' that should be disgorged."). Under this principle, the Court could order the full $24.45 billion to be included in the disgorgement award.

The disgorgement order, moreover, should be imposed on a joint and several basis against both Defendants. The jury found Kwon liable under Section 20(a) of the Exchange Act as a control person of Terraform, which provides that any person who "directly or indirectly, controls any person … shall … be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a); *SEC v. StratoComm Corp.*, 89 F. Supp. 3d 357, 367 (N.D.N.Y. 2015) (holding that joint and several liability for disgorgement was appropriate when "a defendant is found liable as a 'controlling person' of another defendant entity"); *see also First Jersey Sec., Inc.*, 101 F.3d at 1475) (upholding disgorgement on a joint and several basis of a

firm and owner/chief executive officer "where a firm received gains through its unlawful conduct and where its owner and chief executive officer has collaborated in that conduct").

In addition, Defendants should also be required to pay prejudgment interest of $545,748,909, which was conservatively calculated from the date of collapse of Terraform through April 1, 2024, even though the Court's judgment will be entered in May, using the I.R.S. tax underpayments rate under 26 U.S.C. § 6621(a)(2). (Elbaum Dec. ¶¶ 8-10, Ex. 4); *see also First Jersey Sec*, 101 F.3d at 1476. When determining whether to order prejudgment interest, "the remedial purpose of the statute . . . takes on special importance," *id*., and it is particularly proper to award it for *scienter*-based violations, *SEC v. Musella,* 748 F. Supp. 1028, 1043 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990).

III.   The Court Should Rule That the Monetary Remedies
       <u>Imposed Upon Terraform are Non-Dischargeable In Bankruptcy</u>

The SEC respectfully requests that the Court hold that Terraform's securities fraud monetary remedies are not dischargeable in bankruptcy. Section 1141(d)(6) blocks discharge of government-owed debts "obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. §§ 523(a)(2)(A); 1141(d)(6). Debts "obtained by fraud" encompass "all liability arising from fraud." *Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998); *see Archer v. Warner*, 538 U.S. 314, 321 (2003) ("all debts arising out of fraud are excepted from discharge, no matter what their form") (cleaned up). Courts construe "false pretenses, a false representation, or actual fraud" as containing the "elements that the common law has defined them to include." *Field v. Mans*, 516 U.S. 59, 69 (1995). To satisfy common law fraud's proximate cause requirement, a government exercising police power need not show personal loss; establishing investor harm or a likelihood of reliance-based loss from the misrepresentation suffices. *In re Fusion Connect, Inc.*, 634 B.R. 22, 30 (S.D.N.Y. 2021) (FCC-assessed fraud penalty non-dischargeable under section

1141(d)(6)); *see In re Bilzerian*, 153 F.3d 1278, 1282 (11th Cir. 1998); *In re Bocchino*, 794 F.3d 376, 383 (3d Cir. 2015).

While individual bankruptcy fraud dischargeability challenges are subject to 11 U.S.C. § 523(c)'s procedural requirements, a court in this district has held section 1146(d)(6) is "self-executing." *In re Hawker Beechcraft, Inc.*, 515 B.R. 416, 425-32 (S.D.N.Y. 2014); *see also In re Braniff Int'l Airlines*, 164 B.R. 820, 831 (Bankr. E.D.N.Y. 1994) (dischargeability may be resolved by motion if "the record has been adequately developed"). The SEC nevertheless seeks an affirmative dischargeability determination. While Terraform has a pending Delaware chapter 11 reorganization proceeding, this Court's record familiarity leaves it best positioned to make that determination. It may do so because it has "original . . . jurisdiction" over "civil proceedings arising under [the Bankruptcy Code]," 28 U.S.C. § 1334, which the bankruptcy venue statute imposes no bar to exercising. *See* 28 U.S.C. § 1409(a); *In re Lehman Bros. Holdings Inc.*, 2018 WL 3869606, at *10 (Bankr. S.D.N.Y. Aug. 13, 2018) (§ 1409(a)'s grant of venue is "permissive"). And judicial efficiency considerations provide a powerful venue-based justification for doing so. Alternatively, if the Court declines to address section 1141(d)(6) now, the SEC requests it find that $4,122,662,154 of the disgorgement, the entire $420 million penalty against Terraform, and any interest applicable thereto, are based on actual fraud under Section 17 of the Securities Act and Section 10(b) of the Exchange Act to aid in a future dischargeability determination.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the SEC's Motion for Final Judgment against Defendants and enter a Final Judgment in the form attached hereto as Appendix A.

Dated:  April 19, 2024                Respectfully submitted,

                                      /s/ Christopher J. Carney
                                        Christopher J. Carney
                                        James P. Connor, admitted *pro hac vice*
                                        Carina A. Cuellar, admitted *pro hac vice*
                                        Roger J. Landsman, admitted *pro hac vice*
                                        Laura E. Meehan
                                        Devon L. Staren, admitted *pro hac vice*
                                        Attorneys for Plaintiff
                                        U.S. SECURITIES AND EXCHANGE
                                        COMMISSION
                                        100 F Street NE
                                        Washington, DC 20549
                                        Tel: (202) 551-2379
                                        Email: carneyc@sec.gov

Of Counsel:

Alistaire Bambach
Michael Kelly
Therese A. Scheuer
William M. Uptegrove