**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 23-cv-1346 (JSR) |
| Plaintiff, | |
| v. | |
| TERRAFORM LABS PTE. LTD. and DO HYEONG KWON, | Hon. Jed S. Rakoff |
| Defendants. | |

**MEMORANDUM OF DEFENDANT TERRAFORM LABS**
**REGARDING POTENTIAL REMEDIES**

## **TABLE OF CONTENTS**

**Page(s)**

Table of Authorities ................................................................................................................ ii

I.     Any Remedy Must Be Based Solely on Token Sales the SEC Proves Occurred in the
       United States ........................................................................................................... 1

II.    No Injunctive Relief Should Be Entered Against TFL ............................................ 3

III.   The SEC Is Not Entitled to Disgorgement ............................................................. 8

IV.    Potential Civil Penalty ........................................................................................... 9

       A.     Penalty Amount "Per Violation" .................................................................. 10

       B.     Penalty Amount Based on Gross Pecuniary Gain ........................................ 12

       C.     The Haligiannis Factors Weigh in Favor of a Lower Penalty ...................... 13

V.     Conclusion ............................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron v. SEC*,
  446 U.S. 680 (1980)........................................................................................................7

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)............................................................................................3

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..........................................................................................3

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)........................................................................................................7

*Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
  147 F.3d 118 (2d Cir. 1998), *abrogated on other grounds by Morrison*, 561
  U.S. 247 .......................................................................................................................11

*Liu v. SEC*,
  140 S. Ct. 1936 (2020)...........................................................................................2, 8, 9

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010)................................................................................................ *passim*

*Negrete v. Citibank, N.A.*,
  759 F. App'x 42 (2d Cir. 2019) .....................................................................................8

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
  763 F.3d 198 (2d Cir. 2014)..........................................................................................3

*In re Petrobras Secs.*,
  862 F.3d 250 (2d Cir. 2017)..........................................................................................3

*SEC v. Amerindo Inv. Advisors, Inc.*,
  No. 05 Civ. 5231 (RJS), 2013 U.S. Dist. LEXIS 49805 (S.D.N.Y. Mar. 11,
  2013) .............................................................................................................................1

*SEC v. Aragon Capital Mgmt.*,
  672 F. Supp. 2d 421 (S.D.N.Y. 2009), *vacated in part on other grounds sub
  nom. SEC v. Rosenthal*, 650 F.3d 156 (2d Cir. 2011), 426 Fed. Appx. 1 (2d
  Cir. 2011) ......................................................................................................................5

*SEC v. Bangor Punta Corp.*,
  331 F. Supp. 1154 (S.D.N.Y. 1971)..............................................................................5

*SEC v. Bausch & Lomb, Inc.*,
  565 F.2d 8 (2d Cir. 1977) ......................................................................................4

*SEC v. Cavanagh*,
  155 F.3d 129 (2d Cir. 1998) ...............................................................................4, 5

*SEC v. ClearOne Communs., Inc.*,
  No. 2:03CV55K, 2003 U.S. Dist. LEXIS 28743 (D. Utah Mar. 14, 2003) .............................5

*SEC v. DiBella*,
  No. 3:04cv1342 (EBB), 2008 U.S. Dist. LEXIS 109378 (D. Conn. Mar. 13, 2008) ......................................................................................................6

*SEC v. Franklin Atlas Corp.*,
  171 F. Supp. 711 (S.D.N.Y. 1959) .........................................................................6

*SEC v. Goldman Sachs & Co.*,
  790 F. Supp. 2d 147 (S.D.N.Y. 2011) ......................................................................1

*SEC v. Govil*,
  86 F.4th 89 (2d Cir. 2023) ...................................................................................7

*SEC v. Haligiannis*,
  470 F. Supp. 2d 373 (S.D.N.Y. 2007) ...................................................................9, 13

*SEC v. Jean R. Veditz Co.*,
  No. 125-393, 1957 U.S. Dist. LEXIS 4148 (S.D.N.Y. Nov. 19, 1957) ..................................5

*SEC v. John Adams Trust Corp.*,
  697 F. Supp. 573 (D. Mass. 1988) ..........................................................................6

*SEC v. Lek Secs. Corp.*,
  612 F. Supp. 3d 287 (S.D.N.Y. 2020), *aff'd sub nom. SEC v. Vali Mgmt. Partners*, 2022 U.S. App. LEXIS 16518 (2d Cir. June 15, 2022) ...........................................12

*SEC v. Petrofunds, Inc.*,
  414 F. Supp. 1191 (S.D.N.Y. 1976) .........................................................................6

*SEC v. Reserve Mgmt. Co.*,
  No. 9 Civ. 4346, 2013 U.S. Dist. LEXIS 141018 (S.D.N.Y. Sept. 30, 2013) ........................10

*SEC v. Ripple Labs, Inc.*,
  2022 WL 762966 (S.D.N.Y. Mar. 11, 2022) ................................................................11

*SEC v. Ripple Labs, Inc.*,
  No. 20-CV-10832 (AT), 2023 WL 4507900 (S.D.N.Y. July 13, 2023) ....................................4

*SEC v. Terraform Labs Pte. Ltd.*,
No. 23-CV-1346 (JSR), 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) .................4, 10, 11, 12

*SEC v. Texas Gulf Sulphur Co.*,
312 F. Supp. 77 (S.D.N.Y. 1970) ......................................................................5, 6

*SEC v. Texas International Co.*,
498 F. Supp. 1231 (N.D. Ill. 1980) ...........................................................................5

*SEC v. Torr*,
87 F.2d 446 (2d Cir. 1937)......................................................................................5

*SEC v. Unifund SAL*,
910 F.2d 1028 (2d Cir. 1990)....................................................................................7

*SEC v. Westport Capital Mkts.*,
LLC, 547 F. Supp. 3d 157 (D. Conn. 2021) ......................................................5, 6

*Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l Ltd.*,
383 F. Supp. 2d 428 (S.D.N.Y. 2003)......................................................................8

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953)..................................................................................................3

*Williams v. Binance*,
96 F.4th 129 (2d Cir. 2024) .....................................................................................3

**Rules and Statutes**

17 C.F.R. 230.901 ...................................................................................................11

17 C.F.R. 240.10b-5..........................................................................................1, 10

15 U.S.C. §§ 77a-77aa ..............................................................................................2

15 U.S.C. § 77b(a)(1)................................................................................................4

15 U.S.C. § 77e(a).....................................................................................................10

15 U.S.C. § 77e(c).....................................................................................................10

15 U.S.C. § 77t(d) ......................................................................................................9

15 U.S.C. § 77t(d)(2) .....................................................................................9, 10, 12

15 U.S.C. § 77t(d)(2)(B)...........................................................................................10

15 U.S.C. § 77t(d)(2)(C) ..........................................................................................10

iv

15 U.S.C. § 78a ............................................................................................................. 1

15 U.S.C. § 78c(a)(10) ................................................................................................. 4

15 U.S.C. § 78u(d)(3) ................................................................................................... 9

15 U.S.C. § 78u(d)(3)(A)(ii) .................................................................................... 2, 8

15 U.S.C. § 78u(d)(3)(B) ...................................................................................... 2, 9, 12

15 U.S.C. § 78u(d)(3)(B)(ii) ...................................................................................... 10

15 U.S.C. § 78u(d)(3)(B)(iii) ..................................................................................... 10

**Other Authorities**

89 Fed. Reg. 1970 (Jan. 11, 2024) ............................................................................ 10

Joseph Pardue, *International Approaches to Blockchain Technologies: The Choice Between Legal Curtailment and Expansion,* 56 INT'L LAWYER 377 (2023) .................................................................................................................... 2

Kevin Werbach, *Digital Asset Regulation: Peering into the Past, Peering into the Future*, 64 WM. & MARY L. REV. 1251 (2023) ...................................................... 2

Defendant Terraform Labs Pte. Ltd. ("TFL") submits this memorandum concerning potential remedies. Because the Court ordered the parties to submit their initial remedies briefs simultaneously, TFL does not yet know the specific remedies sought by the SEC. Accordingly, TFL discusses the forms of relief pled in the Amended Complaint, without relieving the SEC of its burden of proof to establish the availability and appropriateness of any relief it requests.[1]

## I.  ANY REMEDY MUST BE BASED SOLELY ON TOKEN SALES THE SEC PROVES OCCURRED IN THE UNITED STATES

A critical issue that the Court must determine in connection with any potential remedy is the extent to which conduct at issue occurred within the territorial jurisdiction of the U.S. The SEC bears the burden of proof on this issue,[2] which neither this Court's summary judgment decision nor the jury's verdict addressed. The vast majority of the conduct at issue, including token offers and sales, took place outside of the U.S. Such conduct cannot be the basis for any remedial sanction because it does not violate the federal securities laws, which apply "only within the territorial jurisdiction of the United States." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal citations and quotations omitted).

In *Morrison*, the Supreme Court held that this determination is not jurisdictional, but rather goes to the *merits* of the SEC's claims. "[T]o ask what conduct § 10(b) [of the Securities Exchange Act of 1934] reaches is to ask what conduct § 10(b) prohibits, which is a merits question." *Id.* at 254. *Morrison* made clear that the same limitation also applies to the SEC's claims under the

---

[1] TFL reserves its right to appeal all liability findings against it, including on the ground that the case should be dismissed because the tokens at issue are not securities.

[2] *See, e.g., SEC v. Amerindo Inv. Advisors, Inc.,* No. 05 Civ. 5231 (RJS), 2013 U.S. Dist. LEXIS 49805, at *11-12 (S.D.N.Y. Mar. 11, 2013); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 159 (S.D.N.Y. 2011). For example, the SEC has not established that the Terra blockchain and its associated protocols, including the mint-burn mechanism, are U.S.-based for *Morrison* purposes, because they are not.

Securities Act of 1933. *See id.* at 268. Thus, if an offer or sale of a security occurs outside the territorial jurisdiction of the U.S., it *does not violate* the federal securities laws that are the bases for the SEC's claims. A U.S. court cannot impose any type of remedy on the basis of conduct that is not a "violation." *See, e.g.,* 15 U.S.C. § 78u(d)(3)(A)(ii) (authorizing disgorgement only when the defendant received unjust enrichment "as a result of such violation"); *id.* § 78u(d)(3)(B) (providing that the amount of a civil penalty is determined "for each violation"); *see also Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020) (disgorgement must be "tethered to a wrongdoer's net *unlawful* profits") (emphasis added)).

As *Morrison* explained, the territorial limitation of the federal securities statutes at issue is particularly important because "the probability of incompatibility with the applicable laws of other countries is so obvious … ." 561 U.S. at 269. International comity concerns are critical in this case, as "[s]ignificant differences in regulatory approaches to cryptocurrencies exist worldwide as governments grapple with the fast-paced development of the digital asset sector." Kevin Werbach, *Digital Asset Regulation: Peering into the Past, Peering into the Future*, 64 WM. & MARY L. REV. 1251, 1274 (2023) ("*Digital Asset Regulation*"); *see also* Joseph Pardue, *International Approaches to Blockchain Technologies: The Choice Between Legal Curtailment and Expansion*, 56 INT'L LAWYER 377 (2023). For example, Singapore, where TFL is incorporated, is "considered one of the crypto-friendliest nations and home to many startups." *Digital Asset Regulation* at 1277. *Morrison* mandates that each sovereign nation be left free to regulate crypto transactions as it sees fit, without interference from a U.S. regulatory regime that Congress did not intend to apply extraterritorially.

Here, the SEC has not yet established that any token sales fall within the territorial reach of the federal securities laws at issue. *Morrison* limited that reach to (1) "transactions in securities

listed on domestic exchanges" or (2) "domestic transactions in other securities." 561 U.S. at 267. The first prong is restricted to transactions in securities listed *and traded* on a U.S. exchange.[3] Under the second prong, a "domestic transaction" occurs only where irrevocable liability was incurred or title was transferred within the U.S.[4] This prong requires "individualized" proof, including "who sold … the relevant securit[y], how th[e] transaction[ was] effectuated, and what forms of documentation might be offered in support of domesticity." *In re Petrobras Secs.*, 862 F.3d at 273.

TFL has identified only 20 purchases of LUNA and MIR from TFL or its B.V.I. subsidiary, Terraform Labs Limited ("TLL"), totaling approximately $1.7 million, by purchasers whose token sale agreements identified them as U.S. residents. Amani Decl., Apr. 19, 2024, Ex. A. The SEC has the burden to prove with admissible evidence which, if any, of those purchases meet the *Morrison* criteria and otherwise fall within the liability findings of the Court and jury. *See supra* note 2. This Court may fashion remedies based only on the specific transactions on which the SEC carries its burden of proof, because under *Morrison* any extraterritorial conduct by TFL did not violate the federal securities laws.

## II.    NO INJUNCTIVE RELIEF SHOULD BE ENTERED AGAINST TFL

For an injunction to be warranted, there must be "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). "[T]he purpose of an injunction" is not to

---

[3] *See In re Petrobras Secs.*, 862 F.3d 250, 262 (2d Cir. 2017); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179–81 (2d Cir. 2014).

[4] *See, e.g., Williams v. Binance*, 96 F.4th 129, 136 (2d Cir. 2024); *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 62 (2d Cir. 2012).

redress past wrongs but "to prevent future violations." *Id*. Therefore, to obtain injunctive relief against TFL, the SEC bears the burden to prove a "substantial likelihood" that TFL will engage in "future violations of federal securities laws." *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998); *see also SEC v. Bausch & Lomb, Inc*., 565 F.2d 8, 18 (2d Cir. 1977). When conducting this analysis, courts in this Circuit look to the *Cavanagh* factors: (1) the fact that a defendant has been found liable for illegal conduct; (2) the degree of scienter involved; (3) whether the infraction is an isolated occurrence; (4) whether the defendant continues to maintain that his past conduct was blameless; and (5) whether the defendant might be in a position where future violations could be anticipated. *See Cavanagh*, 155 F.3d at 135.

Here, all five *Cavanagh* factors weigh against the issuance of an injunction against TFL. Regarding factors (1), (3), and (4), the liability findings against TFL were limited in scope because the conduct at issue occurred overwhelmingly outside of the U.S. Moreover, to the extent that TFL's violation may have involved a limited number of domestic transactions, an injunction is not appropriate because at the time of those transactions, the state of the law governing the application of the federal securities laws to cryptocurrencies was unsettled. Cryptocurrency token sales between April 2018 and October 2020 (*see* Amani Decl. Ex. A) should not be judged based on this Court's finding years later that UST, LUNA, wLUNA, and MIR are securities. *See SEC v. Terraform Labs Pte. Ltd.*, No. 23-CV-1346 (JSR), 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023), at *15-16. The statutory definition of "security" does not include cryptocurrency. *See* 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). And there is still substantial judicial disagreement as to whether and under what circumstances cryptocurrencies can qualify as "investment contracts" given that they are not contracts at all. *Compare Terraform*, 2023 WL 8944860 at *15-16, *with SEC v. Ripple Labs, Inc.*, No. 20-CV-10832 (AT), 2023 WL 4507900

(S.D.N.Y. July 13, 2023) at 11-13. The SEC cannot show that TFL set out to violate the U.S.

securities laws, and was not instead operating under a sincerely held, good-faith belief that its

products and conduct were outside the substantive and territorial scope of SEC regulation.[5]

Indeed, the disclaimers and lock-ups in the token sale agreements reflect a good-faith effort by

TFL and TLL to satisfy registration exemptions in Regulation S, Regulation D, and Rule 144 in

the event LUNA and MIR were deemed to be securities. *See, e.g.*, PX-9; PX-32; ECF No. 30-11;

ECF No. 102-31. Nor would injunctive relief be warranted based on TFL's good-faith intention

to appeal the liability findings against it based on an unsettled issue of law.

Regarding factor (2) (scienter), the jury expressly found that TFL's conduct was reckless,

not intentional. *See* Verdict (ECF No. 229). Courts in this Circuit regularly deny injunctive relief

when the SEC establishes liability based on recklessness.[6]

*Cavanagh* factor (5) (whether future violations should be anticipated) also militates

against an injunction, in light of the substantial changes in the company's management and

---

[5] *SEC v. Torr*, 87 F.2d 446, 450 (2d Cir. 1937) (denying injunction where there was evidence that defendants for good cause thought that they were not in violation of the law); *SEC v. Texas International Co.*, 498 F. Supp. 1231, 1254 (N.D. Ill. 1980) (denying injunction where the question of whether defendants violated securities laws was a "a legal issue of genuine uncertainty and unique complexity"); *SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77, 90 (S.D.N.Y. 1970) (denying injunction against defendants who could not have anticipated the extension of the "materiality" test to apply to their conduct at the time of their violations).

[6] *See, e.g.*, *SEC v. Aragon Capital Mgmt.*, 672 F. Supp. 2d 421, 436 (S.D.N.Y. 2009) (denying injunction against one defendant whose conduct was only reckless and not intentional), *vacated in part on other grounds sub nom. SEC v. Rosenthal*, 650 F.3d 156 (2d Cir. 2011), 426 Fed. Appx. 1 (2d Cir. 2011); *SEC v. Bangor Punta Corp.*, 331 F. Supp. 1154, 1161–62 (S.D.N.Y. 1971) (denying injunction where defendants did not "intentionally or purposefully mislead" stockholders or investing public); *SEC v. Jean R. Veditz Co.*, No. 125-393, 1957 U.S. Dist. LEXIS 4148, at *1 (S.D.N.Y. Nov. 19, 1957) (denying preliminary injunction because violation was non-willful).

business operations since the time of the conduct at issue.[7] That conduct ended, at the latest, with the last sale of a token to a purchaser identified as a U.S. resident in October 2020. TFL is now a different company with new leadership and a new business plan. Chris Amani replaced Do Kwon as Chief Executive Officer of TFL in March 2023. *See* Amani Decl. ¶ 2. TFL does not currently produce or create any cryptocurrency assets, nor does TFL sell any cryptocurrency assets, other than selling assets in its treasury (not UST, LUNA, or MIR) to pay its operating expenses. *Id.* ¶4. Rather, TFL's current operations are focused on developing and maintaining the Terra blockchain and other blockchains. *Id*. ¶ 3. TFL's current business activities do not involve purchases or sales of tokens and thus do not implicate the U.S. federal securities laws, even under the SEC's stated broad view of their scope. There is thus no cognizable risk of a recurrent violation.

Moreover, there is no evidence that TFL violated the federal securities laws in the nearly three and a half years since the last token sale to a purchaser identified as a U.S. resident. This fact further undercuts any claim that TFL poses a continuing risk to U.S. investors.[8]

---

[7] *See, e.g.*, *SEC v. Westport Capital Mkts.*, LLC, 547 F. Supp. 3d 157, 166 (D. Conn. 2021) (denying injunction in part because former chief compliance officer, president, and owner would "no longer be in the same type of position of authority"); *SEC v. ClearOne Communs., Inc.*, No. 2:03CV55K, 2003 U.S. Dist. LEXIS 28743, at \*25-26 (D. Utah Mar. 14, 2003) (denying preliminary injunction because there was not a substantial and reasonable likelihood of future securities laws violations where defendant corporation implemented significant changes to its business operations and management); *SEC v. John Adams Trust Corp.*, 697 F. Supp. 573, 578–79, n.5 (D. Mass. 1988) (denying injunction against corporate defendant based on the "substantial body of SEC injunction case law" holding injunctive relief to be unnecessary when the individual actors are no longer in a position to continue improper activity and the circumstances of the corporation's continued existence have changed).

[8] *See SEC v. DiBella*, No. 3:04cv1342 (EBB), 2008 U.S. Dist. LEXIS 109378, at \*42 (D. Conn. Mar. 13, 2008) (denying permanent injunction and noting that "[a] permanent injunction is 'a drastic remedy,'" and it "should not be granted lightly, especially when the conduct has ceased"); *Westport Capital Mkts.*, LLC, 547 F. Supp. 3d at 166–68 (denying permanent injunction where

The Amended Complaint seeks not only a statutory "obey the law" injunction prohibiting TFL from committing future violations of certain securities laws, but also a "conduct based" injunction prohibiting it from "(i) participating, directly or indirectly, in the purchase, offer, or sale of any crypto asset security, or (ii) engaging in activities for purposes of inducing or attempting to induce the purchase, offer, or sale of any crypto asset security by others." ECF No. 25, at 54. Any injunction is a "drastic remedy" that does not "automatically" follow a liability determination. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006); *Aaron v. SEC*, 446 U.S. 680, 703 (1980) (Burger, J., concurring). The SEC must make an even more persuasive showing to obtain a conduct-based injunction, which would by definition be more onerous than an "obey the law" injunction because it would preclude TFL from engaging in conduct that would otherwise be entirely legal. *See, e.g.*, *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990).

To the extent that the Court determines that the SEC has met its burden of proof to justify any form of injunctive relief against TFL, the scope of the injunction should be expressly limited to offers or sales of UST, LUNA, or MIR tokens by TFL *in the U.S.* and should exempt TFL's current operations. The territorial limitation is particularly important in light of the international comity concerns emphasized by the Supreme Court in *Morrison*. *See* 561 U.S. at 269.

---

there was no evidence that defendants had violated any securities law for the last four years, even though they had continued operating during that time); *SEC v. Petrofunds, Inc.*, 414 F. Supp. 1191, 1197 (S.D.N.Y. 1976) (denying preliminary injunction where alleged misconduct had ceased three years prior); *Texas Gulf Sulphur Co.*, 312 F. Supp. at 87-88 (denying injunction where violation occurred five years prior), *rev'd in part on other grounds*, 446 F.2d 1301 (2d Cir. 1971); *SEC v. Franklin Atlas Corp.*, 171 F. Supp. 711, 718 (S.D.N.Y. 1959) (denying permanent injunction where defendants had not engaged in any securities transactions for a year and a half).

### III.      THE SEC IS NOT ENTITLED TO DISGORGEMENT

The SEC cannot meet two of the Second Circuit's stringent requirements for disgorgement. *First*, disgorgement is available only where a victim suffered "pecuniary harm." *SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023). Pecuniary harm requires an out-of-pocket loss as opposed to an unrealized or hypothetical loss. *See, e.g.*, *Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l Ltd.*, 383 F. Supp. 2d 428, 455 (S.D.N.Y. 2003); *see also Negrete v. Citibank, N.A.*, 759 F. App'x 42, 48 (2d Cir. 2019). *Second*, even if a victim suffered pecuniary harm, the amount of disgorgement is limited to the unjust enrichment actually received by the defendant as a result of a violation of the federal securities laws. *See* 15 U.S.C. § 78u(d)(3)(A)(ii) (authorizing disgorgement "by the person who received such unjust enrichment as a result of such violation"); *Liu*, 140 S. Ct. at 1940. As discussed above, violations are limited to offers and sales of securities in the U.S. *See Morrison*, 561 U.S. at 255.

At trial, the SEC presented evidence concerning only five token purchasers: Arash Vakil, Republic Capital, Passport Capital, Galaxy Digital, and Nader George. None of those purchases provides a basis for disgorgement. TFL did not receive any proceeds from the token purchases by Mr. Vakil, Republic Capital, and Mr. George. *See* Trial Tr. 103:8-13 (Vakil purchased UST from centralized exchanges); PX-32 (Republic Capital Cayman Islands entity purchased LUNA from the Luna Foundation Guard); ECF No. 85 (Mr. George acquired UST from an unidentified crypto swapping platform). Nor is there evidence that Passport Capital or Galaxy Digital sustained pecuniary harm from their token purchases. *See* Trial Tr. 381:4-6 (Jonathan Kol testimony that he thought Passport made a profit on LUNA); *id.* 343:20-345:24; 349:17-374:12 (no testimony concerning Galaxy's profit or loss). And there is no evidence that Galaxy or Republic made a domestic purchase under *Morrison*, especially since both purchases were made by non-U.S.

entities from TLL, a B.V.I. entity. *See* PX-9 (purchase by Hong Kong entity Galaxy Digital Trading HK Limited); PX-32 (purchase by Cayman Islands entity RCAPITAL TERRANOVA).

The trial record also included evidence concerning a purchase of LUNA by Jump Trading subsidiary Tai Mo Shan Ltd. (a Cayman entity) pursuant to an option in a loan agreement with TLL. That transaction also provides no basis for disgorgement, as the SEC has taken the position that Jump Trading was a co-conspirator, not a victim. *See Liu*, 140 S. Ct. at 1940 (holding that disgorgement can be awarded only for "victims"). Moreover, the SEC is bound by its assertion that Jump did not sustain a pecuniary loss on its trading in LUNA because it supposedly made a *profit* of over $1.4 billion. *See* ECF No. 112-1 (Mizrach Report), at 22. In any event, the loan agreement between Tai Mo Shan Ltd. and TLL was not a domestic transaction under *Morrison*.

Outside of the evidence presented at trial, TFL has identified 20 token purchases directly from TFL or TLL by buyers who may have been located in the U.S. *See* Amani Decl. Ex. A. The SEC has the burden to prove whether any of these purchases meet the standard for a domestic transaction and, if so, whether any of the purchasers suffered a loss. In fact, because most of them purchased long before the May 2022 depeg, they may have sold some or all of their tokens at a profit.

## IV.    POTENTIAL CIVIL PENALTY

The Court has discretion to impose a civil penalty only upon a "proper showing" by the SEC. 15 U.S.C. §§ 77t(d), 78u(d)(3). Both the Securities Act and Exchange Act provide that the *maximum* amount of a civil penalty is based on the greater of (i) a fixed amount (which varies by "tier") per violation or (ii) the gross amount of pecuniary gain received as a result of the violation. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). Within the statutory maximum, the Court applies the factors set forth in *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007), to determine an

appropriate penalty amount. The SEC bears the burden of proof on all these factors.

## A.   PENALTY AMOUNT "PER VIOLATION"

The relevant fixed amount "per violation" depends on the "tier" of the violation. The registration violations found by the Court are first-tier violations because they did not involve fraud, deceit, or manipulation, and because there is no finding or evidence that they involved reckless disregard of a regulatory requirement. *See* 15 U.S.C. § 77t(d)(2). The fixed amount per first-tier violation for an entity such as TFL is $115,231. *See* Adjustments to Civil Monetary Penalty Amounts, 89 Fed. Reg. 1970 (Jan. 11, 2024).

The fraud violations are second-tier violations, because by definition they involved fraud. *See* 15 U.S.C. §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii). The fixed amount for a second-tier violation is $576,158 for an entity. *See* 89 Fed. Reg. 1970 (Jan. 11, 2024). The fraud violations are not third-tier violations because there has been no finding that TFL's conduct "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). On the contrary, the trial evidence showed that TFL clearly disclosed the risk that token purchasers could sustain losses and that actual losses arising from the May 2022 depeg were caused by an intentional shorting attack, not TFL's conduct. DX-4 at 15; Trial Tr. 384:1-389:12; *Id.* at 1512:6, 1515:2, 1517:8, 1517:15 (video of Gaevoy Depo. Tr. 93:22-95:7, 95:9, 95:22-96:1); *Id.* at 1582:5-24.

Because the securities statutes do not specify how to count the number of violations for purposes of calculating the amount of a civil penalty, courts have used a number of different methodologies. *See, e.g.*, *SEC v. Reserve Mgmt. Co.*, No. 9 Civ. 4346, 2013 U.S. Dist. LEXIS 141018, at *66 (S.D.N.Y. Sept. 30, 2013) (describing various methodologies). These methodologies result in a range of maximum potential penalties:

*Number of Statutory Violations.* The Court found that TFL violated two statutory provisions concerning registration (Sections 5(a) and 5(c) of the Securities Act), *see Terraform*, 2023 WL 8944860, at *15-16, and the jury found two statutory fraud violations (Section 17 of the Securities Act and Rule 10b-5 under Section 10(b) of the Exchange Act), *see* Verdict (ECF No. 229). This approach would therefore result in two tier-one amounts (2 x $115,231) plus two tier-two amounts (2 x $576,158), for a total maximum potential penalty of $1,382,778.

*Number of Violative Transactions.* As discussed above, violative transactions must be limited to domestic offers and sales of tokens by TFL or TLL.[9] TFL has identified only 20 token sales by TFL or TLL to purchasers that may have occurred in the U.S. *See* Amani Decl. Ex. A. If the SEC establishes that each of these 20 purchases meets the *Morrison* standard for domestic transactions, the resulting maximum potential penalty (based on the tier-one amount of $115,231 per registration violation) would be $2,304,620.

The tier-two penalty amount for fraud violations does not apply to these token sales, because the SEC cannot prove that any of them fell within the jury's fraud determination. Five of the sales involved MIR tokens, which are not the subject of the SEC's fraud claims. The rest were sales of LUNA, but it is impossible to determine from the verdict form whether the jury based its fraud liability finding on the SEC's Chai-related fraud claim (which may have involved LUNA),

---

[9] This Court's holding that TFL did not comply with Regulation S for the purposes of being exempt from registration, *see Terraform*, 2023 WL 8944860, at *16, does not establish a domestic sale. *Morrison*—not Regulation S—"determines what constitutes domestic offers and sales under Section 5." *SEC v. Ripple Labs, Inc.*, 2022 WL 762966, at *11 (S.D.N.Y. Mar. 11, 2022). Regulation S merely provides "safe harbors," and "[a] transaction not within either of the safe harbors may still be outside of the United States within the meaning of 17 C.F.R. 230.901." *Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 125 (2d Cir. 1998), *abrogated on other grounds by Morrison*, 561 U.S. 247. Moreover, the SEC promulgated Regulation S before *Morrison*, and the SEC cannot override the Supreme Court's interpretation of the statute.

the SEC's Jump-related claim (which involved UST, not LUNA), or both. Moreover, five of the LUNA sales were clearly unrelated to any fraud finding because they occurred before June 21, 2019, the date of the first alleged misstatement in the Amended Joint Pretrial Consent Order (ECF 217, at 21). In addition, the SEC has not introduced evidence of any sales of UST by TFL or TLL at any time.[10]

*Number of Months of Violative Conduct.* This approach looks at the number of months that violative activity occurred. *See SEC v. Lek Secs. Corp.*, 612 F. Supp. 3d 287, 299 (S.D.N.Y. 2020), *aff'd sub nom. SEC v. Vali Mgmt. Partners*, 2022 U.S. App. LEXIS 16518 (2d Cir. June 15, 2022). Again, the SEC bears the burden of proof to establish the time frame of violative conduct within the geographical scope of the relevant U.S. securities statutes. Approximately 30 months elapsed between the first (April 2018) and last (October 2020) token sales by TFL or TLL to purchasers that appear to have been located in the U.S. *See* Amani Decl. Ex. A. If the SEC proved that each of those transactions was a violation and satisfied *Morrison*, this methodology (based on the tier-one amount of $115,231 per violation) would result in a maximum potential penalty of $3,456,930.

## B.    PENALTY AMOUNT BASED ON GROSS PECUNIARY GAIN

The penalty statutes provide that the maximum civil penalty is the greater of the "per violation" amount (discussed above) or the gross amount of pecuniary gain received "as a result of the violation." 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). The SEC bears the burden to prove the

---

[10] Even if the SEC tried to introduce such evidence after trial, violations could not be predicated on offers or sales of UST that occurred before the launch of the Anchor Protocol in March 2021. Even under this Court's interpretation of "investment contract" (with which TFL respectfully disagrees), UST was not a security until after March 2021. *See Terraform*, 2023 WL 8944860, at *14 ("UST *in combination with the Anchor Protocol* constituted an investment contract") (emphasis added); Amani Decl. ¶¶8-10. UST was created programmatically by burning LUNA (not sold by TFL pursuant to token sale agreements), and in any event TFL made no domestic sales of any token after October 2020.

gross amount of pecuniary gain received by TFL as a result of violations. TFL received gross proceeds of approximately $1.7 million from sales of LUNA and MIR tokens to purchasers identified as residing in the U.S. *See* Amani Decl. Ex. A. If the SEC were to prove that all of those transactions were violations and met the *Morrison* criteria, the gross proceeds (approximately $1.7 million) would be greater than the maximum potential penalties arising from the "number of statutory violations," and less than the "number of violative transactions" and "number of months of violative conduct" methodologies discussed above. Thus, the maximum potential civil penalty against TFL would be between approximately $1.78 million and $3.5 million.

### C.   THE HALIGIANNIS FACTORS WEIGH IN FAVOR OF A LOWER PENALTY

The potential penalty amounts discussed above are *maximum* penalties permitted under the statutes. In determining the appropriate penalty amount subject to the maximum, the Court applies the *Haligiannis* factors:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Haligiannis*, 470 F. Supp. 2d at 386.

These factors counsel in favor of a penalty for TFL well below the statutory maximum. The maximum scope of TFL's potentially domestic token sales was small and ended at least three and a half years ago. The jury found that TFL acted recklessly, not intentionally, and there is no evidence in the record that any purchasers in potentially domestic transactions sustained a loss. Finally, the amount of the penalty should take into account the extent of TFL's assets disclosed in its pending bankruptcy proceeding.

## V.       CONCLUSION

For the foregoing reasons, the Court should not grant injunctive relief or disgorgement against TFL, and may assess an appropriate civil penalty based on the criteria discussed above as applied to any domestic token sales the SEC proves were violations.

Date: April 19, 2024                                Respectfully submitted,

                                                    */s/Douglas W. Henkin*

                                                    **DENTONS US LLP**
                                                    Douglas W. Henkin
                                                    David L. Kornblau
                                                    1221 Avenue of the Americas
                                                    New York, New York 10020
                                                    Tel: (212) 768-6700
                                                    douglas.henkin@dentons.com

                                                    Mark G. Califano
                                                    1900 K Street, NW
                                                    Washington, DC 20006
                                                    Tel: (202) 496-7500
                                                    mark.califano@dentons.com

                                                    *Counsel for Defendant Terraform Labs Pte. Ltd.*

CERTIFICATE OF SERVICE

I, Douglas W. Henkin, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on April 19, 2024.


*/s/ Douglas W. Henkin*
Douglas W. Henkin