UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TERRAFORM LABS PTE. LTD. and DO HYEONG KWON,<br><br>　　　　　　Defendants. | Civil Action No. 23-cv-1346 (JSR)<br><br>Hon. Jed S. Rakoff |

**MEMORANDUM OF DEFENDANT TERRAFORM LABS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL JUDGMENT**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)..................................................................................................2

*In re Braniff Int'l Airlines*,
  164 B.R. 820 (Bankr. E.D.N.Y. 1994)..................................................................................8

*City of Pontiac v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)...............................................................................................1, 2

*In re Coram Healthcare Corp.*,
  No. 00-3299 (MFW), 2003 WL 22948234 (Bankr. D. Del. Dec. 12, 2003) ............................8

*Field* v. *Mans*,
  516 U.S. 59 (1995)...............................................................................................................8

*In re Hawker Beechcraft, Inc.*,
  515 B.R. 416 (S.D.N.Y. 2014)..............................................................................................8

*Liu v. SEC*,
  140 S. Ct. 1936 (2020).........................................................................................................5

*MidOil USA, LLC v. Astra Project Fin. Pty Ltd.*,
  No. 12 CIV. 8484 PAC KNF, 2013 WL 4400825 (S.D.N.Y. Aug. 15, 2013),
  *aff'd on other grounds*, 594 F. App'x 48 (2d Cir. 2015) .........................................................6

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)...................................................................................................... passim

*Oppenheimer & Co. Inc. v. Deutsche Bank AG*,
  No. 09 CIV. 8154(LAP), 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010) ................................6, 7

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
  763 F.3d 198 (2d Cir. 2014)..................................................................................................2

*In re Petrobras Secs.*,
  862 F.3d 250 (2d Cir. 2017)...............................................................................................1, 2

*SEC v. American Bd. of Trade, Inc.*,
  751 F.2d 529 (2d Cir. 1984)..................................................................................................4

*SEC v. Cavanagh*,
  155 F.3d 129 (2d Cir. 1998)...............................................................................................2, 5

*SEC v. Global Investment Strategy UK Ltd.*,
    No. 20CV10838, 2021 WL 9037799 (S.D.N.Y. May 7, 2021) ................................................. 1

*SEC v. Govil*,
    86 F.4th 89 (2d Cir. 2023) ................................................................................................... 5

*SEC v. Lee*,
    No. 23CV00125, 2023 WL 7198068 (D. Conn. Feb. 1, 2023) ................................................ 1

*SEC v. McDermott*,
    No. 19-4229-KSM, 2022 U.S. Dist. LEXIS 196349 (E.D. Pa. Oct. 28, 2022) ......................... 4

*SEC v. Ripple Labs, Inc.*,
    No. 20 Civ. 10832 (AT) (SN), 2022 WL 762966 (S.D.N.Y. Mar. 11, 2022) ............................ 1

*SEC v. Terraform Labs Pte. Ltd.*,
    2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ....................................................................... 3

*In re TK Holdings Inc.*,
    17 No. 11375, 2018 WL 903980 (Bankr. D. Del. Feb. 14, 2018) (Shannon, J.),
    *vacated after settlement*, 2018 WL 7051669 (Bankr. D. Del. Apr. 9, 2019) ......................... 8

*Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*,
    No. 18-CV-11449 (JGK), 2020 WL 3051768 (S.D.N.Y. June 8, 2020) .................................. 6

*Williams v. Binance*,
    96 F.4th 129 (2d Cir. 2024) ................................................................................................. 2

**Rules and Statutes**

Fed. R. Bankr. P. 4007 ................................................................................................................ 8

National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, §
    6501, 134 Stat. 3388, 4625–26 ........................................................................................... 6

11 U.S.C. § 523(a)(2) .................................................................................................................. 8

11 U.S.C. § 523(a)(19) ................................................................................................................ 8

11 U.S.C. § 523(c) ...................................................................................................................... 8

11 U.S.C. § 1141(a)(2) ................................................................................................................ 8

11 U.S.C. § 1141(d)(6) ................................................................................................................ 8

15 U.S.C. § 77t(d)(2) .................................................................................................................. 7

15 U.S.C. § 78u .......................................................................................................................... 5

15 U.S.C. § 78u(d)(3)(A)(ii) .................................................................................................5, 6

15 U.S.C. § 78u(d)(3)(B) ............................................................................................................7

15 U.S.C. § 78u(d)(7) ..................................................................................................................6

The SEC has failed to prove that it is entitled to the expansive injunction and monetary sanctions it seeks against TFL. Among other failures of proof, the SEC has submitted *no* evidence that more than a small number of sales of LUNA, UST, or MIR by TFL or TLL, were domestic as required by *Morrison*. The SEC has thus established, at most, isolated violations by TFL. The SEC's failure to even discuss *Morrison* is no mere oversight, as the SEC (including at least one of the attorneys in this case) has briefed *Morrison* issues in other crypto-related enforcement actions.[1]

The trial record suggests that at most only a small number of token purchases may qualify as domestic under *Morrison*.[2] Otherwise, the SEC has not proved that any TFL token sales satisfy *Morrison*. *First*, in its motion for final judgment, the SEC submitted no proof that TFL listed and sold any tokens on a U.S. exchange.[3] The SEC's motion refers to sales of UST on three crypto exchanges, *see* SEC Remedies Mem., Apr. 19, 2024, at 12; Battle Decl., Apr. 19, 2024, ¶¶19–23, but ignores that (1) those exchanges are not based in the U.S.; (2) two of the exchanges expressly prohibited trading by purchasers based in the U.S.; and (3) none of the trading on Binance.com

---

[1] *See, e.g.*, *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT) (SN), 2022 WL 762966, at *11 (S.D.N.Y. Mar. 11, 2022); *SEC v. Lee*, No. 23CV00125, 2023 WL 7198068 (D. Conn. Feb. 1, 2023) (SEC brief); *SEC v. Global Investment Strategy UK Ltd.*, No. 20CV10838, 2021 WL 9037799 (S.D.N.Y. May 7, 2021) (SEC brief).

[2] Arash Vakil testified that he was in New York when he purchased UST on third-party exchanges, including one U.S. exchange (Gemini). *See* Trial Tr. 103:8–21 149:16–150:12. Nader George is a California resident, but there is no evidence in the record of his physical location when he purchased UST or the location or even name of the swapping application he used to make the purchase. *See* Trial Tr. 967:7–9; George Decl., ECF No. 85. Boris Revsin is a Massachusetts resident, but the record does not show the location of the relevant Republic Capital personnel when they negotiated and executed the token purchase agreement with LFG on behalf of a Cayman Islands entity (which the agreement expressly identifies as a non-U.S. Person). *See* Trial Tr. 238:4–5; PX-32. Jonathan Kol testified that he met with Do Kwon in the U.S. on behalf of both Passport Capital and Galaxy Digital, but the record does not reflect the whereabouts of the relevant Passport and Galaxy personnel when they purchased LUNA (in Galaxy's case, on behalf of a Hong Kong entity identified as not a U.S. Person). *See* Trial Tr. 342:3–23, 343:2–11; PX-9.

[3] *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); *In re Petrobras Secs.*, 862 F.3d 250, 262 (2d Cir. 2017); *City of Pontiac v. UBS AG*, 752 F.3d 173, 179–81 (2d Cir. 2014).

was shown to have occurred on Binance US, the separate exchange Binance operated specifically for use by U.S. market participants. *See* Amani Decl., Apr. 26, 2024, Exs. C-D.

*Second*, the SEC's motion cites no evidence establishing a domestic transaction under *Morrison*, which requires "individualized" proof that irrevocable liability was incurred, or title was transferred, within the U.S.[4] For purposes of *Morrison*, "[a] purchaser's citizenship or residency does not affect where a transaction occurs."[5] The SEC includes in its motion no individualized proof of domesticity, such as evidence of "the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money" in the U.S.[6] Rather, the SEC merely lists the names of various token purchasers and the date and prices of their transactions, without proving their physical location in the U.S. at the time of purchase or providing any other evidence of domesticity. *See* Elbaum Decl., Apr. 19, 2024, Exs. 1–3. The SEC's failure to prove more than at most a few domestic transactions undermines each form of relief it requests:

Injunctive relief. TFL demonstrated in its initial brief that all five *Cavanagh* factors weigh *against* the issuance of an injunction. *See* ECF No. 235 ("TFL Remedies Mem."), at 4–6. The SEC's motion tips the scale even more against injunctive relief because of the absence of evidence of more than a small number of domestic transactions. The SEC points to the Court's summary judgment decision and the jury verdict. *See* SEC Remedies Mem. 3. But the Court expressly stated that it was not addressing remedies and neither the Court nor the jury addressed, much less

---

[4] *In re Petrobras Secs.*, 862 F.3d at 273–74; *see also Morrison,* 561 U.S. at 267; *Williams v. Binance*, 96 F.4th 129, 136 (2d Cir. 2024); *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 212 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto,* 677 F.3d 60, 62 (2d Cir. 2012).
[5] *Absolute Activist,* 677 F.3d at 69; *see also In re Petrobras Secs.*, 862 F.3d at 262.
[6] *Absolute Activist,* 677 F.3d at 70; *see also Binance*, 96 F.4th at 140; *In re Petrobras Secs.*, 862 F.3d at 272; *City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d at 181 n.33.

determined, which if any token sales satisfied *Morrison*. *See SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at *16 (S.D.N.Y. Dec. 28, 2023); Verdict, ECF No. 229.

Equally unavailing is the SEC's criticism of TFL's decision, after the May 2022 depeg, to put to a vote of the Terra community—whose interests the SEC purports to be protecting—whether TFL should liquidate and distribute its assets to them, or launch a new blockchain with a new governance token (LUNA 2.0), which would be allocated to community members. *See* SEC Remedies Mem. 4; Amani Decl., Apr. 26, 2024, ¶¶ 6-11. Citing no evidence, the SEC asserts that the community vote was "self-serving" because it "*presumably*" was dominated by the votes of TFL and Mr. Kwon. SEC Remedies Mem. 4 (emphasis added). In reality, TFL did not vote on the proposal at all and Mr. Kwon's vote constituted just 0.06% of the total "yes" votes; TFL and Mr. Kwon had no effect on the proposal's passage. *See* Amani Decl., Apr. 26, 2024, ¶¶ 7-9.

The SEC attempts to meet the even stricter standard for a conduct-based injunction, *see* TFL Remedies Mem. 7, with the unsupported contention that TFL is "poised to commit further violations—if [it has] not committed them already." SEC Remedies Mem. 4. The SEC points to TFL's provision of LUNA 2.0 to Terra community members *for free* and TFL's provision of liquidity to holders of the new token, in accordance with the community's democratically expressed desire for TFL to continue building the Terra ecosystem. *See id.* at 2, 4. But the SEC offers no evidence or analysis establishing that LUNA 2.0 is a security (which it is not[7]) or that TFL's current activities violate the securities laws, and thus provides no justification for a conduct-based injunction. And a conduct-based injunction should also be denied to avoid potential harm to

---

[7] Airdropping LUNA 2.0 *for no consideration* is not an investment contract because, among other reasons, it involves no investment of money. *See Terraform Labs*, 2023 WL 8944860, at *13. Moreover, although LUNA 2.0 existed when the SEC commenced this case, the SEC never asserted claims based on LUNA 2.0.

third parties—Terra token holders, other Terra community members, and TFL employees—who could suffer financial harm and/or lose their jobs if the injunction were deemed to curtail TFL's lawful activities undertaken to benefit the Terra community at the community's request.[8]

Lacking evidence to support an injunction, the SEC resorts to overheated and empty rhetoric, calling TFL's fully disclosed business plans "likely recidivism" and the candid trial testimony of its current CEO "a stunning display of chutzpah." SEC Remedies Mem. 2, 4. If there is chutzpah in this case, it is the SEC's effort to lay claim to non-existent global regulatory power to penalize blockchain-related innovation everywhere in the world, without regard for the scope of its Congressional authorization or whether its enforcement actions conflict with the policies and laws of other sovereign nations. *See generally Morrison*, 561 U.S. at 269–70.

TFL reads the SEC's proposed injunction (ECF No. 232-1), which is silent as to its territorial scope, as limited to domestic offers and transactions. For greater clarity, if the Court were to enter any injunction, TFL requests that it *expressly* provide that it is limited to domestic offers and transactions, as required by *Morrison*. If the Court enters any injunction with extraterritorial application, TFL requests that it be given 30 days to bring purely foreign conduct into compliance without causing damage to token holders and users and/or to take an emergency appeal. In addition, any injunction should also be expressly restricted to offers of and transactions in tokens that this Court has adjudicated to be securities (UST, LUNA, and MIR), and should expressly exclude LUNA 2.0 and TFL's current operations, which the SEC has not shown to be unlawful.

---

[8] *See, e.g.*, *SEC v. American Bd. of Trade, Inc.*, 751 F.2d 529, 543 (2d Cir. 1984) (vacating preliminary injunction in part because of harm to third parties); *SEC v. McDermott*, No. 19-4229-KSM, 2022 U.S. Dist. LEXIS 196349, at *20–21 (E.D. Pa. Oct. 28, 2022).

Disgorgement. TFL has already demonstrated that the SEC is not entitled to disgorgement relating to the five token purchases for which it presented evidence at trial. *See* TFL Remedies Mem. 8. With respect to the additional token sales referenced in the motion for final judgment, *see* Elbaum Decl. Exs. 1–3, the SEC has failed to prove that any of them satisfy *Morrison*. They therefore are not violations of the federal securities laws and do not provide a basis for disgorgement.[9] Nor has the SEC even attempted to prove that any purchasers in those transactions suffered "pecuniary harm"—an independent reason why disgorgement must be denied.[10]

The SEC's request for disgorgement from the Luna Foundation Guard ("LFG"), a non-party, must be rejected for additional reasons as well.[11] To pursue disgorgement from LFG, the SEC was required to name LFG as a defendant or relief defendant, which it did not do. Courts developed the concept of relief defendants specifically to enable the SEC to seek disgorgement from persons or entities not accused of violating the securities laws when they have allegedly received ill-gotten funds to which they do not have a legitimate claim.[12] The SEC may not circumvent its failure to comply with these well-established processes through a disgorgement claim in the remedies phase based on the theory that LFG is an alter ego of TFL. Effective January 1, 2021, Congress amended Section 21(d) of the Exchange Act to expressly authorize the SEC to seek, and federal courts to impose, disgorgement of unjust enrichment—but only from "the person

---

[9] *See* 15 U.S.C. § 78u(d)(3)(A)(ii); *see also Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020) (disgorgement must be "tethered to a wrongdoer's net *unlawful* profits") (emphasis added)).
[10] *SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023); *see* TFL Remedies Mem. 8–9.
[11] A disgorgement award against LFG would also result in double-dipping, because the bulk of LFG's assets have already been distributed to UST holders through interest payments to Anchor depositors and UST purchases made to defend the May 2022 depeg. *See* ECF No. 236, Amani Decl., April 19, 2024, ¶ 13; Amani Decl., April 26, 2024, ¶ 5.
[12] *See, e.g., SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998).

who received such unjust enrichment … ."[13] This statute bars an order against TFL to disgorge LFG funds because TFL did not receive them. Those funds belong to LFG, not TFL, and the token sales from which they arose were conducted by LFG.[14]

Nor is there any basis to conclude that LFG and TFL were alter egos. Singapore law controls this issue, because TFL and LFG are both Singaporean companies whose relationship is governed by a Master Services Agreement ("MSA") with a Singapore governing law clause. *See* Amani Decl., April 26, 2024, Ex. B, at ¶ 11.4.[15] The SEC fails to discuss Singapore law, but even under New York law the SEC has not met its "heavy burden" to prove alter ego by showing that TFL "complete[ly] dominated" LFG.[16] LFG is an independent nonprofit organization, which was created to hold a reserve of cryptocurrencies (such as Bitcoin) to defend the UST peg. *See* Amani Decl., April 26, 2024, Ex. A. The SEC does not point to any evidence establishing the factors that New York courts evaluate for alter ego, such as disregard of corporate formalities and undercapitalization.[17] TFL has never been a director or owner of LFG. *See* Amani Decl., Apr. 26, 2024, ¶ 4. And the MSA expressly provides that the two entities are *not* each others' agents, partners, or joint venturers, and that neither party has any authority to assume any obligations or to make any representations or warranties on behalf of the other. *See id*., Ex. B, at ¶ 11.6.

---

[13] National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4625–26 (codified at 15 U.S.C. §§ 78u(d)(3)(A)(ii), 78u(d)(7)).

[14] The cases cited by the SEC on this issue (SEC Remedies Mem. 12) are not good law because they either pre-dated or did not consider the now-controlling statutory requirement.

[15] *See MidOil USA, LLC v. Astra Project Fin. Pty Ltd.*, No. 12 CIV. 8484 PAC KNF, 2013 WL 4400825, at *4 n.6 (S.D.N.Y. Aug. 15, 2013), *aff'd on other grounds*, 594 F. App'x 48 (2d Cir. 2015).

[16] *See, e.g.*, *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *7 (S.D.N.Y. June 8, 2020).

[17] *See id.*; *Oppenheimer & Co. Inc. v. Deutsche Bank AG*, No. 09 CIV. 8154(LAP), 2010 WL 743915, at *4–5 (S.D.N.Y. Mar. 2, 2010).

Contrary to the SEC's argument, *see* SEC Remedies Mem. 11, no alter ego relationship can reasonably be inferred from TFL's deployment of LFG funds to defend UST's peg in May 2022, because TFL could not do so unilaterally. Under the MSA, TFL was contractually authorized to take that specific action at the direction of LFG. *See* Amani Decl., April 26, 2024, Ex. B, at 11. Moreover, TFL's deployment of LFG funds in May 2022 is irrelevant to the SEC's disgorgement claim, which is based on proceeds of token sales *before* May 2022.[18]

The SEC's claim for disgorgement based on TFL's trading on non-U.S. exchanges should be also rejected for additional reasons. The SEC bases this claim on a calculation of TFL's net proceeds from trading only in UST. *See* SEC Remedies Mem. 12. The SEC's calculation, however, excludes TFL's trading in LUNA and MIR, and does not correctly count even the UST orders it purports to address. *See* Eastman Decl., Apr. 26, ¶¶3-4. Correcting these errors, TFL actually *lost* over $3.1 billion, *see id.* ¶¶10-12, meaning there cannot be disgorgement.[19]

Civil Penalty. The SEC seeks a $420 million penalty against TFL (multiples of its current assets disclosed in its pending Chapter 11 proceeding) based on TFL's purported gross pecuniary gain. *See* SEC Remedies Mem. 5–6. But the SEC has not established more than a modest pecuniary gain received by TFL "as a result of [a] violation" of the federal securities laws. 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B). The SEC has submitted evidence of at most a few domestic sales under *Morrison*, and TFL did not receive the proceeds of many of those transactions, which were executed on third-party trading platforms. *See supra* note 2. Because of the isolated nature of

---

[18] *See id.* (party asserting alter ego must show complete domination "in respect to the transaction attacked").

[19] Additionally, the SEC fails to identify any UST sales that occurred during Anchor's operation. This lack of temporal overlap dooms the SEC's claim that TFL reaped pecuniary gains *from UST* by virtue of that alleged product pairing.

7

TFL's even arguably domestic transactions, the *Haligiannis* factors indicate a civil penalty well below the statutory maximum. *See* TFL Remedies Mem. 13. As the "number of statutory violations" methodology results in a maximum potential civil penalty of $1,382,778, *see id.* at 11, TFL suggests that a $1 million civil penalty would be far more appropriate than the SEC's request.

Dischargeability. This Court should not decide whether fraud-related portions of the judgment are nondischargeable under 11 U.S.C. §§ 523(a)(2) and 1141(d)(6). "[T]he court in which the bankruptcy case is pending" presumptively decides bankruptcy questions. *In re Coram Healthcare Corp.*, No. 00-3299 (MFW), 2003 WL 22948234, at *2 (Bankr. D. Del. Dec. 12, 2003). And under 11 U.S.C. § 523(c), "the court" hearing the bankruptcy is the exclusive forum for deciding whether Section 523(a)(2) applies: Bankruptcy courts exercise "exclusive jurisdiction to determine dischargeability of [debts set out in § 523(a)(2)]." Fed. R. Bankr. P. 4007 Advisory Committee Note. "If a governmental unit believes it has claims against a corporate debtor that are nondischargeable" pursuant to § 523(a)(2), it "must file a complaint" in the bankruptcy. 8 Collier on Bankruptcy ¶ 1141.05[1][b][i] (16th ed. 2024). The SEC has not done so.[20]

Section 523(a)(2) is also inapplicable. A fraud "perpetrated not upon the government but on citizens and consumers" does not fit.[21] Under 11 U.S.C. § 523(a)(19), debts in SEC enforcement actions are non-dischargeable for *individuals*, but that subsection does not apply to corporations in Chapter 11. *See* 11 U.S.C. § 1141(d)(6) (incorporating only subsection (a)(2)). Section 523(a)(2) applies to fraud claims that are based on reliance, loss causation, and damages, *see Field* v. *Mans*,

---

[20] The SEC relies on *In re Braniff Int'l Airlines*, 164 B.R. 820 (Bankr. E.D.N.Y. 1994), and *In re Hawker Beechcraft, Inc.*, 515 B.R. 416 (S.D.N.Y. 2014). But *Braniff* is a bankruptcy court decision that does not mention discharge, and *Hawker* is an appeal from bankruptcy court. Neither is a district court decision on dischargeability for a bankruptcy case that was pending elsewhere.
[21] *In re TK Holdings Inc.*, 17 No. 11375, 2018 WL 903980 at *7 (Bankr. D. Del. Feb. 14, 2018) (Shannon, J.), *vacated after settlement*, 2018 WL 7051669 (Bankr. D. Del. Apr. 9, 2019).

516 U.S. 59, 69 (1995), none of which were part of this case. The jury instructions do not mention those elements; the SEC did not prove them as to the purchasers who testified, much less for *any other* purchasers; and the SEC neither argues that it has proved reliance nor explains how it could do so for any specific purchaser or group of purchasers.

In conclusion, the Court should not grant any injunctive relief or disgorgement, and should impose at most a $1 million civil penalty against TFL.

| | |
|---|---|
| Date: April 26, 2024 | Respectfully submitted, |

*/s/Douglas W. Henkin*

**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com

Mark G. Califano
1900 K Street, NW
Washington, DC 20006
Tel: (202) 496-7500
mark.califano@dentons.com

*Counsel for Defendant Terraform Labs Pte. Ltd.*

**CERTIFICATE OF SERVICE**

I, Douglas W. Henkin, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on April 26, 2024.

*/s/ Douglas W. Henkin*
Douglas W. Henkin
