UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

TERRAFORM LABS PTE LTD. and
DO HYEONG KWON,

Defendants.

No. 1:23-cv-1346 (JSR)

---

**REPLY IN SUPPORT OF THE SEC'S
MOTION FOR FINAL JUDGMENT AGAINST DEFENDANTS**

**Table of Contents**

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 3

    I.     All of Defendants' Unlawful Profits are Subject to Disgorgement. ............................ 3

        A.     Defendants' Argument That Investors Were Not Harmed is Meritless ............. 3

        B.     Defendants Are Subject To U.S. Securities Laws for Their Illegal Conduct ...... 5

    II.    Defendants' Arguments Regarding Other Forms of Relief are Similarly Meritless .. 10

Conclusion ........................................................................................................................... 10

# Table of Authorities

## Cases

*Liu v. SEC*, 591 U.S. 71 (2020) ................................................................................... 3, 4, 5

*Meng-Lin Liu v. Siemens A.G.*, 978 F. Supp. 2d 328 (S.D.N.Y. 2013) .......................... 6

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ................................ 6, 9

*SEC v. Ahmed*, 72 F.4th 379 (2d Cir. 2023) ................................................................. 4, 5

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ......................................... 2

*SEC v. Fowler*, 6 F.4th 255 (2d Cir. 2021) ..................................................................... 4

*SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023) .................................................................... 4, 5

*SEC v. Gruss*, 859 F. Supp. 2d 653 (S.D.N.Y. 2012) ..................................................... 6

*SEC v. iFresh, Inc.*, 2024 WL 416709, at *3 (E.D.N.Y. Feb. 5, 2024) ........................... 5

*SEC v. Juno Mother Earth Asset Mgmt., LLC*, 2014 WL 1325912 (S.D.N.Y. Mar. 31, 2014) ...... 4

*SEC v. McNulty*, 137 F.3d 732 (2d Cir.1998) ............................................................... 10

*SEC v. Morrone,* 997 F.3d 52 (1st Cir. 2021) ................................................................. 6

*SEC v. Patel,* 61 F.3d 137 (2d Cir. 1995) ................................................................... 2, 8

*SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019) ............................................................ 6

*SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ........... 8

*SEC v. Zubkis*, 2000 WL 218393 (S.D.N.Y. Feb. 23, 2000) ......................................... 10

*Williams v. Binance*, 96 F.4th 129 (2d Cir. 2024) ......................................................... 9

## Statutes

15 U.S.C. § 78aa(b) .......................................................................................................... 6

15 U.S.C. § 78u ................................................................................................................. 3

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply in support of its Motion for Final Judgment Against Defendants Terraform Labs ("Terraform") and Do Hyeong Kwon ("Kwon," collectively, "Defendants") (ECF No. 232 ("Motion")).

<u>INTRODUCTION</u>

The massive collapse of Defendants' fraudulent crypto empire wiped out $40 billion in market value, including $14 billion in UST deposited in the Anchor Protocol alone. *See* Trial Tr. 237 (detailing LUNA's collapse); PX 81 (showing over $14 billion deposited into Anchor Protocol as of early May 2022). The SEC called investor witnesses at trial to attest to the harm they suffered, including losses by U.S. investors like Nader George, Arash Vakil, and Republic Capital. *See* Motion at 5-6. By contrast, Defendants received over $4 billion of ill-gotten gains by selling UST and LUNA to investors while defrauding the public about those securities.

In their motion for remedies (ECF No. 235 ("Def. Br.")), Defendants offer no evidence of legitimate business expenses or an inability to pay significant civil penalties. More tellingly, they accept no responsibility for these catastrophic losses and show no signs of remorse for their misconduct. Defendants contend that notwithstanding their massive gains they should pay *no disgorgement* because, contrary to all evidence, no one really suffered pecuniary harm due to Defendants' conduct. Def. Br. at 8.[1] Yet the trial evidence established that the entire Terra ecosystem, including the UST and LUNA that Defendants touted and sold to investors, collapsed in value in May 2022, following Defendants' fraudulent statements. Defendants also wrongly suggest that the SEC must trace ill-gotten gains to specific transactions or losses in the U.S. and parse the percentage of Defendants' fraudulent conduct that took place in the U.S.

---

[1] Kwon simply adopts Terraform's arguments and contends that no disgorgement or injunctions should be imposed upon him and that he should pay a trivial penalty. *See* ECF No. 237.

In inventing these new requirements, Defendants ignore the "primary purpose of disgorgement" is to "deprive violators of their ill-gotten gains." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). The law only requires that the amounts ordered disgorged be "a reasonable approximation of profits causally connected to the violation." *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) (citations omitted). Here, the $4.2 billion that Defendants received as a result of their violations of U.S. law, including from selling UST and LUNA to investors following false and misleading statements, are unquestionably proper disgorgement. In any event, Defendants failed to demonstrate at any stage of the proceedings regarding liability that their conduct fell outside the scope of U.S. securities laws and cannot now argue the same conduct for which they have already been held liable under U.S. law instead occurred outside the United States.

Worse yet, Defendants' arguments rest entirely on the fiction that Defendants did not engage in fraudulent conduct in the U.S. and did not cause foreseeable substantial effects in the U.S. This overlooks or misstates overwhelming record evidence. Terra's fraudulent empire was built upon a token—Terra USD ("UST")—that was named after the U.S. dollar, was purportedly linked to it, and had an American flag emblazoned on its logo. *See* "Announcing TerraUSD (UST)—the Interchain Stablecoin," (Sept. 21, 2020), *https://medium.com/terra-money/announcing-terrausd-ust-the-interchain-stablecoin-53eab0f8f0ac*. Defendants' fraud, moreover, occurred in the United States. They used dozens of U.S.-based employees (two of whom testified at trial, while another invoked his Fifth Amendment rights); the May 2021 false and misleading statements were issued from inside the U.S.; Defendants specifically and actively targeted and solicited investments from U.S. persons including by advertising in a prominent

U.S. sports stadium; and Defendants orchestrated a secret agreement at the heart of this case with Jump Trading, a Chicago investment firm.

The jury's verdict, Defendants' additional mendacity about the overwhelming evidence in the record, and their failure to accept responsibility highlights the urgent need to impose the remedies the SEC seeks. Defendants should be ordered to disgorge their ill-gotten gains jointly and severally, pay $420 million and $100 million in penalties—amounts commensurate with their egregious fraud—and be permanently enjoined from further securities law violations.

<u>ARGUMENT</u>

I.    <u>All of Defendants' Unlawful Profits are Subject to Disgorgement.</u>

    A.    <u>Defendants' Argument That Investors Were Not Harmed is Meritless</u>

Despite the undisputed evidence of investor harm, and Terraform's CEO's testimony that "a lot of money was lost" and that there were too many people harmed for Terraform to help them individually (*see* Trial Tr. 1468), Defendants claim that there is no evidence that anyone suffered any losses and therefore they should pay no disgorgement. *See* Def. Br. 8-9.

As an initial matter, disgorgement is about wrongdoers forfeiting their unlawful gains— not quantifying investor harm. Sections 21(d)(3) and (7) of the Securities Exchange Act of 1934 ("Exchange Act") permit the Court to require disgorgement of "any unjust enrichment by the person who received such unjust enrichment as a result of such violation." 15 U.S.C. §§ 78u(d)(3), (7). Disgorgement is also permissible equitable relief under Section 21(d)(5) of the Exchange Act. *Liu v. SEC*, 591 U.S. 71, 75 (2020). Disgorgement is a "'profit-based measure of unjust enrichment'" that is "measured by the defendant's wrongful gain." *Id*. at 79 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51, cmt. a, at 204). Disgorgement thus aims to return the violator to the "status quo." *Id.* at 80 (citation omitted). To return to the

status quo, Defendants must give up the net profits they received from their illegal acts. *Id.* at 79

("Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity.").

Yet, under Defendants' disgorgement theory, the SEC must specifically trace each dollar

of disgorgement to a particular harmed investor that testifies at trial. *See* Def. Br. 8-9. In support,

Defendants point to the Second Circuit's decision in *SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023)

and the Supreme Court's decision in *Liu* itself. Defendants misread the law. "The amount of

disgorgement ordered need only be a reasonable approximation of *profits*." *SEC v. Ahmed*, 72

F.4th 379, 407 (2d Cir. 2023), *petition for cert. docketed* (U.S. Mar. 11, 2024) (No, 23-987)

(cleaned up) (emphasis added). Once the SEC has presented a reasonable approximation of

profits causally connected to the violation, "the burden shifts to the defendant[ ] to contest the …

calculations." *SEC v. Juno Mother Earth Asset Mgmt., LLC*, 2014 WL 1325912, at *2 (S.D.N.Y.

Mar. 31, 2014); *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (post-*Liu* approval of burden

shifting). Here, the calculations presented in the SEC's Motion, which include the amounts

received by Defendants' and their affiliates' bank accounts and crypto wallets, are a more than

reasonable approximation of Defendants' ill-gotten gains. Motion at 9-14. And, despite

disgorgement being focused on a wrongdoer's ill-gotten gains and defendants' burden of

contesting the SEC's calculations, Defendants presented no information whatsoever about their

profits in their own briefs, ECF Nos. 235 and 237.

Defendants' suggestion that *Govil* precludes disgorgement fares no better. *See* Def. Br. at

8. In *Govil*, the Second Circuit held that a district court improperly ordered disgorgement without

finding that the victims of the fraud suffered pecuniary harm. *Govil*, 86 F.4th at 105. There can

be no dispute on this record that the victims of Defendants' fraud, including witnesses who

testified at trial, suffered pecuniary harm. When, as here, the entirety of profits is tainted by a

defendant's misconduct, all ill-gotten gains should be disgorged. *See Ahmed*, 72 F.4th at 397-98 (refusing to offset disgorgement based on argument that victim did not suffer pecuniary harm, because the defendant's "misconduct … was not in misrepresenting the purchase prices but in failing to disclose his conflicts of interest," such that the "transactions were thus entirely tainted" and his entire proceeds were, therefore, the "net profits from wrongdoing").

Contrary to Defendants' suggestion, *Govil* also does not require this Court to parse among transactions to quantify which investor suffered which loss. *See SEC v. iFresh, Inc.*, 2024 WL 416709, at *3 (E.D.N.Y. Feb. 5, 2024) (finding that because liability established "that iFresh's stock prices were artificially inflated," that satisfies "the requisite pecuniary harm" under *Govil*) (citing 86 F.4th at 104)). *Govil* adopts *Liu*'s emphasis that disgorgement aims to "deprive[] wrongdoers of their net profits from unlawful activity," not to compensate victims' losses, 591 U.S. at 79. *Govil* thus similarly acknowledged that disgorgement is ordered not "to compensate victims" but "to prevent wrongdoers from unjustly enriching themselves through violations" and that "disgorgement aims to divest profits" from the wrongdoer. 86 F.4th at 106-08 (cleaned up). Again, once the Court finds that victims suffered pecuniary harm because of a defendant's wrongdoing, disgorgement is measured by the violator's ill-gotten gain, which can be less or more than the victims' losses. *Id*. at 103, n.14; 107-08. In this case, it is undisputed that there were victims who suffered harm due to Defendants' misconduct. *See, e.g.*, Motion at 5-6. In any event, Defendants' arguments are frivolous given the at least $14 billion of specific losses in UST alone, which were wiped out in May 2022 when the Terra ecosystem collapsed, and the UST deposited in Anchor became worthless. PX 81; *see also* Amani Decl. ¶ 17, ECF No. 236.

B.      Defendants Are Subject To U.S. Securities Laws for Their Illegal Conduct

Defendants also contend that disgorgement is limited to harm suffered by U.S. purchasers, arguing that this follows from the limitation on the extraterritorial reach of Exchange

Act Section 10(b) established in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). *See* Def. Br. at 1-3, 8-9. But Defendants ignore that Congress overrode *Morrison* in part, explicitly authorizing a court to exercise jurisdiction over SEC actions alleging a violation of the antifraud provisions of the federal securities laws involving: "(1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors, or (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States." 15 U.S.C. § 78aa(b). Following *Morrison*, "Congress … affirmatively and unmistakably indicated that the antifraud provisions of the federal securities acts apply extraterritorially when the statutory conduct-and-effects test is met." *SEC v. Scoville*, 913 F.3d 1204, 1218 (10th Cir. 2019) (cleaned up); *accord SEC v. Morrone,* 997 F.3d 52, 60 n.7 (1st Cir. 2021) (citing *Scoville*). These provisions now "permit[] the SEC to bring enforcement actions for certain conduct or transactions outside the United States." *Meng-Lin Liu v. Siemens A.G.*, 978 F. Supp. 2d 325, 328 (S.D.N.Y. 2013), *aff'd* 763 F.3d 175 (2d Cir. 2014); *SEC v. Gruss*, 859 F. Supp. 2d 653, 664 (S.D.N.Y. 2012) (SEC can bring actions "extraterritorially in certain cases").

Defendants make no argument—nor could they—that the SEC failed to show that their violations of the federal securities laws involved "conduct within the United States that constitutes significant steps in furtherance of the violation." Jump Trading, the firm with whom Defendants struck a secret deal to prop up the UST peg in May 2021, is headquartered in Chicago, Illinois. Trial Tr. 845. On May 24, 2021, Terraform posted a series of false and misleading tweets that credited UST's recovery of its $1 peg to its algorithm, which it described as "more effective than faxes and suits in meetings," while never disclosing Jump's role in the restoration. PX57. These false and misleading statements were posted by Terraform's then-head

of communications, Brian Curran, a U.S. employee who worked from his apartment in California. *See* Trial Tr. 1040, 1075-76. Moreover, Terraform had at least 42 U.S.-based employees, *See* SEC 56.1 Statement at 4-5 (ECF No. 72).

To the extent Defendants engaged in fraudulent acts overseas, they cannot plausibly claim that these acts did not have a foreseeable, substantial effect within the United States. Defendants specifically targeted U.S. investors with their securities offerings, including one conference in New York at which Kwon whipped the crowd into chanting, "UST, UST." *See* Landsman MSJ Decl. Ex. 112 (ECF No. 75-3 at 24). Individual investors like Arash Vakil from New York (Trial Tr. 102-03) bought their UST in the United States from crypto asset trading platforms through which Terraform sold UST and LUNA. Jonathan Kol also testified that Kwon flew to San Francisco to meet with him regarding a potential investment in Terraform. Trial Tr. 342-343. Kol also met with Kwon in New York, *id*. 343, and Kwon lied to Kol about Chai's supposed use of Terraform's blockchain to facilitate payments. *Id*. 349-50. In fact, Terraform so wanted to ingratiate itself into American society that it paid more than $38 million to prominently display its logo at a ballpark where America's favorite pastime is played in America's capital city. *See* Landsman MSJ Decl. Ex. 99 (ECF No. 73-10 at 84). Thus, the effects test is also satisfied in this case.

Simply put, there was nothing foreign about this fraud. Defendants' fraudulent conduct either occurred in the U.S. or had "a foreseeable substantial effect within the United States." 15 U.S.C. § 78aa(b)). Satisfying the conduct-and-effects test covers more than $4.12 billion (components (iii) and (iv)) of the $4.2 billion in disgorgement the SEC seeks. Motion at 9-12.

Defendants' Section 5 violations subject them to disgorgement for most of the approximately $69.5 million in LUNA and MIR sales in components (i) and (ii) of the SEC's

calculation. *See id.* at 9-10. The Court has already held that these offers and sales, including those involving purchases Defendants now characterize as foreign, violated Securities Act Section 5. *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860, at \*15-16 (S.D.N.Y. Dec. 28, 2023). The proceeds of those illegal sales are "causally connected to the violation" and thus proper disgorgement. *Patel*, 61 F.3d at 139. In fact, when imposing Section 5 liability, the Court specifically held that Defendants failed to adduce evidence showing that their offerings were exempt under Regulation S. *Terraform*, 2023 WL 8944860, at \*16.[2]

Further, the Court also found that Terraform sold "both LUNA and MIR tokens to secondary market purchasers on Binance and other crypto trading exchanges" and that there was "no evidence that Terraform took steps to determine whether those trading platforms were available to U.S. investors." *Id*. Indeed, between June 1, 2021 and May 31, 2022, a net value of at least $1.7 billion UST traded on Binance, and $449 million UST traded on KuCoin, both crypto asset platforms that accepted U.S. investors. *See* Battle Decl. ¶ 23 (ECF No. 234); Trial Tr. 102-03 (U.S. investor Arash Vakil testifying that he purchased UST on KuCoin from New York); Binance Plea Agreement, *United States v. Binance*, No. 23-178RAJ (W.D. Wash. Nov. 21, 2023) at 41 (detailing the availability of Binance's platform in the U.S.) (attached as Exhibit 1). Moreover, Defendants used the U.S. market to raise U.S. venture capital, advertised and touted their securities inside the U.S., thereby creating a market for securities in an illegal unregistered offering. All proceeds connected to Defendants' illegal offerings that the Court held violated Section 5 should be disgorged.

---

[2] The $69.5 million includes Terraform's sales to U.S. purchasers, like $26 million to Chicago-based Jump Trading and the $3 million to California-based Polychain Capital. *See* SEC 56.1 Statement, ¶¶ 51, 117-128; *see also Terraform*, 2023 WL 8944860, at \*16.

Beyond asserting the incorrect standard for evaluating extraterritoriality, Defendants merely urge that "international comity concerns" are "critical in this case." Def. Br. at 2. However, Congress was surely well aware of such concerns when it enacted the Dodd-Frank Act, explicitly allowing this Court to exercise jurisdiction in cases like this with U.S. conduct and massive U.S. effects. Further, aside from a passing reference to Singapore—Terraform's place of incorporation—they do not explain which jurisdiction has at least an equal interest in this matter or why, much less one whose securities regulation regime applies to them. And while downplaying their extensive conduct and effects in the U.S. to avoid disgorging their ill-gotten gains, Defendants are simultaneously availing themselves of U.S. law to reorganize their debts in federal bankruptcy court in Delaware. And indeed, the Second Circuit recently reversed a decision from another court in this District that had dismissed a private putative class's claims seeking damages arising from the sale of unregistered crypto assets on the grounds that the claims were impermissibly extraterritorial. *See Williams v. Binance*, 96 F.4th 129, 133 (2d Cir. 2024). In doing so, the Court held that where a defendant "notoriously denies the applicability of any other country's securities regulation regime" then "the application of United States securities law here does not risk incompatibility with the applicable laws of other countries." *Id*. at 139 (cleaned up). [3]

Moreover, contrary to their suggestion, *Morrison* does not support Defendants' position that the SEC must trace disgorgement to specific U.S. transactions. *Morrison* addressed whether Section 10(b) "provides a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges." 561 U.S.

---

[3] Nor can Defendants assert that disgorgement in this case would be unfair to foreign investors. When feasible and warranted, if the SEC distributes disgorgement it has collected to harmed investors it can identify, it does not limit such distributions to U.S. investors.

at 250-51. Remedies and disgorgement are not addressed in *Morrison* and Defendants offer no support for their assertion that *Morrison* limits the remedies available once a cause of action is found to exist. Once a defendant's conduct is found to violate the U.S. securities laws—as it was here—*Morrison* imposes no limit on the disgorgement a defendant must pay for those violations of U.S. law. The SEC's request for disgorgement is supported by the law and should be granted.

II.   Defendants' Arguments Regarding Other Forms of Relief are Similarly Meritless

Defendants' arguments against injunctive relief and civil penalties are similarly premised on the fiction that their violative conduct did not result in investor harm and had no ties to the United States. *See* Def. Br. at 3-7, 10-13. Those arguments should be similarly rejected.

Likewise, Terraform's argument that it should not be subject to injunctive relief because it only committed fraud recklessly is without merit. A "reckless disregard for the truth" is sufficient for imposing injunctive relief. *See SEC v. Zubkis*, 2000 WL 218393, at *6 (S.D.N.Y. Feb. 23, 2000) (quoting *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir.1998)). The injunctive relief is particularly urgent here as Defendants continue to essentially cast themselves as blameless, fail to accept responsibility or show remorse, and blatantly acknowledge their continued disregard for U.S. securities laws. Terraform CEO, Amani, submitted a declaration acknowledging that Terraform continues to sell crypto assets, likely including LUNA 2.0, "to pay its operating expenses." Decl. of Amani, ¶ 4 (ECF No. 236).

CONCLUSION

For the foregoing reasons, and those in our opening brief, the Court should grant the SEC's Motion for Final Judgment against Defendants.

10

Dated:  April 26, 2024                     Respectfully submitted,

                                           /s/ Christopher J. Carney
                                           Christopher J. Carney
                                           James P. Connor, admitted *pro hac vice*
                                           Carina A. Cuellar, admitted *pro hac vice*
                                           Roger J. Landsman, admitted *pro hac vice*
                                           Laura E. Meehan
                                           Devon L. Staren, admitted *pro hac vice*
                                           Attorneys for Plaintiff
                                           U.S. SECURITIES AND EXCHANGE
                                           COMMISSION
                                           100 F Street NE
                                           Washington, DC 20549
                                           Tel: (202) 551-2379
                                           Email: carneyc@sec.gov

Of Counsel:

Alistaire Bambach
Michael Kelly
Therese A. Scheuer
William M. Uptegrove