**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 23-cv-1346 (JSR) |
| Plaintiff, | |
| v. | |
| TERRAFORM LABS PTE. LTD. and DO HYEONG KWON, | Hon. Jed S. Rakoff |
| Defendants. | |

**SUPPLEMENTAL MEMORANDUM OF DEFENDANT TERRAFORM LABS**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL JUDGMENT**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burke v. China Aviation Oil (Singapore) Corp.*,
   421 F. Supp. 2d 649 (S.D.N.Y. 2005).........................................................................................3

*City of Edinburgh Council v. Vodafone Grp. Pub. Co.*,
   No. 07 CIV. 9921 (PKC), 2008 WL 5062669 (S.D.N.Y. Nov. 24, 2008)................................5

*Clay v. United States*,
   537 U.S. 522 (2003)..................................................................................................................1

*Copeland v. Fortis*,
   685 F. Supp. 2d 498 (S.D.N.Y. 2010).......................................................................................5

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)......................................................................................................... *passim*

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   583 U.S. 109 (2018)..................................................................................................................1

*Oklahoma v. Castro-Huerta*,
   597 U.S. 629 (2022)..................................................................................................................2

*Orix Fin. Servs., Inc. v. Brewer*,
   No. 03CIV.2957(RLC)(FM), 2001 WL 34629830 (S.D.N.Y. Aug. 2, 2001) ..........................4

*Parks v. Fairfax Fin. Holding Ltd.*,
   No. 06 CV 2820 (GBD), 2010 WL 1372537 (S.D.N.Y. Mar. 29, 2010)..................................3

*In re SCOR Holding (Switzerland) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008).......................................................................................4

*SEC v. Berger*,
   322 F.3d 187 (2d Cir. 2003)......................................................................................................3

*SEC v. Brown*,
   No. 14 C 6130, 2015 WL 1010510 (N.D. Ill. Mar. 4, 2015) ....................................................1

*SEC v. Chicago Convention Ctr., LLC*,
   961 F. Supp. 2d 905 (N.D. Ill. 2013) .......................................................................................1

*SEC v. Scoville*,
   913 F.3d 1204 (10th Cir. 2019) ................................................................................................2

*United States* v. *Wells*,
    519 U. S. 482 (1997).................................................................................................1

**Statutes**

15 U.S.C. § 77v(c)................................................................................................1

15 U.S.C. § 77v(c)(1)........................................................................................3, 4

15 U.S.C. § 77v(c)(2)...........................................................................................4

15 U.S.C. § 78aa(b)..............................................................................................1

15 U.S.C. § 78aa(b)(1)......................................................................................3, 4

15 U.S.C. § 78j(b)................................................................................................1

**Other Authorities**

Bd. of Governors, Fed. Res. Sys. (June 23, 2023),
    https://doi.org/10.17016/2380-7172.3334; ...........................................................4

The SEC has made no attempt to prove that more than a small number (at most) of TFL's sales of UST, LUNA, or MIR might qualify as domestic under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010). *See* SEC Reply, Apr. 26, 2024, ECF No. 240. Instead, the SEC argues that Congress "overrode *Morrison* in part" in Section 929P(b) of the Dodd-Frank Act. *Id.* at 6. But Section 929P(b)'s unambiguous text refutes that position. *See, e.g.*, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (when the text of a statute is "unambiguous," the court's "inquiry begins with the statutory text, and ends there as well").

Titled "*Jurisdiction* of offenses and suits," Section 929P(b) provides that federal courts "shall have *jurisdiction*" over government securities fraud actions involving extraterritorial conduct meeting the "conduct and effects" test. 15 U.S.C. §§ 77v(c), 78aa(b) (emphasis added). In *Morrison*, by contrast, the Supreme Court interpreted the *substantive* scope of Section 10(b), which it held was a "merits question," and, correcting a "threshold error," explicitly rejected the Second Circuit's view that the territorial reach of the statute was a jurisdictional question. 561 U.S. at 253–4. Section 929(b) must be interpreted "in conformity with" that threshold ruling because the statute was enacted after *Morrison* was decided. *Clay v. United States*, 537 U.S. 522, 527 (2003) (courts "presume that Congress expects its statutes to be read in conformity with [Supreme Court] precedents") (quoting *United States* v. *Wells*, 519 U. S. 482, 495 (1997)).

Thus, Dodd-Frank's *jurisdictional* amendment neither overruled *Morrison* nor expanded the substantive territorial scope of the securities laws. *See SEC v. Chicago Convention Ctr., LLC*, 961 F. Supp. 2d 905, 911 (N.D. Ill. 2013) ("Section 929P(b), on its face, merely addresses subject-matter jurisdiction—a question which the Supreme Court previously resolved in *Morrison*—rather than the substantive reach of Section 10(b) of the Exchange Act."); *SEC v. Brown,* No. 14 C 6130, 2015 WL 1010510, at *4–5 (N.D. Ill. Mar. 4, 2015) ("[C]onstruing the Dodd–Frank Act to

supersede *Morrison* may be problematic."). Even the SEC acknowledged the jurisdictional and non-substantive nature of Section 929P(b) by quoting it in its pleadings in this case as a basis for "personal jurisdiction," but not as a basis for the SEC's claims for relief. *See* Am. Compl., ECF No. 25, ¶¶19, 174-191, A-F.

The SEC relies on *SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019), and cases citing it. *See* SEC Reply at 6. But *Scoville* is wrong for the simple reason that it departed from the statute's plain text. The Tenth Circuit did not identify any ambiguity in the language of Section 929P(b) or in Congress's "placement of the Dodd-Frank amendments in the jurisdictional provisions of the securities acts." *Scoville*, 913 F.3d at 1218. Instead, *Scoville* relied on its assessment of "the context and historical background surrounding Congress's enactment of those amendments," discussing the movement of the bills through various committees and even citing floor statements by legislators. *See id.* at 1216–18. But "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022).[1]

Regardless of whether the Dodd-Frank amendments applied to the SEC's fraud claims, *Morrison* unquestionably applies to its registration claims. Any remedy based on those claims may rest only on direct token sales that the SEC has proved were domestic under *Morrison*. *See* TFL Remedies Opp., ECF No. 238, at 1-2. Nor could the conduct-and-effects test be used to establish a fraud violation based on any offer or sale that took place before June 21, 2019—the date of the first purportedly actionable statement alleged by the SEC. *See* ECF No. 217, at 21.

Moreover, even if the Dodd-Frank amendments were deemed (incorrectly) to have

---

[1] For these and other reasons, five of the nation's leading securities law scholars have argued that *Scoville* was wrongly decided. *See* Amicus Brief of Securities Law Scholars, *Scoville*, 2019 WL 3338157 (U.S. Jul. 22, 2019).

overruled *Morrison* in government securities fraud actions, the SEC has not met its burden to justify the sweeping relief it seeks under either prong of the conduct-and-effects test. *First*, the SEC has not established that TFL engaged in "conduct within the United States that constitutes significant steps in furtherance of the [alleged] violation." 15 U.S.C. §§ 77v(c)(1), 78aa(b)(1). This test requires proof that (1) the defendant's activities in the U.S. were more than "merely preparatory" to a securities fraud conducted elsewhere and (2) the activities or culpable failures to act within the U.S. "directly caused" the claimed losses. *SEC v. Berger*, 322 F.3d 187, 193 (2d Cir. 2003) (internal quotation marks omitted).[2]

Here, the evidence demonstrates that the conduct at issue occurred overwhelmingly in Singapore and Korea. Mr. Kwon—who according to the SEC was the "leader" of the alleged fraud and "direct[ed] his employees to make all [the alleged false] statements," Trial Tr. 1746:17-1747-2—worked in Singapore and Korea during the relevant period, as did other members of TFL senior management.[3] TFL's development and maintenance of the Terra blockchain, and its creation and operation of protocols and websites, took place primarily in Singapore and Korea.[4] The Chai claim is based on a mobile payment application used by customers and merchants *only* in Korea. *See* ECF No. 25, ¶123; Trial Tr. 49:11-21. Most important, TFL's offers and sales of tokens occurred

---

[2] This jurisdictional loss-causation requirement applies to the SEC even though investor loss is not a required substantive element in an SEC securities-fraud claim. *See Berger*, 322 F.3d at 193.

[3] *See Berger*, 322 F.3d 193 (conduct test satisfied when "the fraudulent scheme was masterminded and implemented … in the United States").

[4] *See, e.g., Parks v. Fairfax Fin. Holding Ltd.*, No. 06 CV 2820 (GBD), 2010 WL 1372537, at *4 (S.D.N.Y. Mar. 29, 2010) (conduct test not met in part because plaintiff did not allege that the individual defendants worked out of the U.S. offices of a foreign issuer or its subsidiaries, or that the issuer's "most crucial departments, or for that matter … any of its departments or units[,] were contained in the United States."); *Burke v. China Aviation Oil (Singapore) Corp.*, 421 F. Supp. 2d 649, 653 (S.D.N.Y. 2005) (conduct test not met by alleged false and misleading statements made on a website maintained outside the U.S., even if "U.S. investors in clicking on the … website took the action which could cause the information to be transmitted to the United States").

almost entirely outside the U.S., *see* Amani Decl., Apr. 19, 2024, Ex. A, and the SEC has submitted

no evidence that Defendants' limited activities in the U.S. directly caused any losses, much less

the billions the SEC seeks in disgorgement. In fact, Jonathan Kol, with whom Mr. Kwon met in

the U.S. on behalf of both Passport Capital and Galaxy Digital, testified that he thought Passport's

purchase of LUNA was profitable, and the SEC notably did not question Mr. Kol or offer any

evidence regarding the profitability of Galaxy's LUNA purchase. *See* Trial Tr. 381:4-6; 343:20-

345:24; 349:17-374:12.

The evidence cited by the SEC, *see* SEC Reply at 2-3 & 5, does not meet the "conduct"

test. UST's peg to the U.S. dollar did not entail transactions in U.S. currency and was not U.S.

"conduct."[5] TFL's supposed "secret agreement" with Chicago-based Jump Trading to restore the

UST peg was not "in furtherance of" the alleged fraud because it allegedly occurred *before* TFL's

statements—which according to the SEC Mr. Kwon orchestrated from abroad—about the May

2021 depeg. *See* SEC 56.1 Statement (ECF No. 72) ¶¶210-11; Trial Tr. 1082:25-1083:6. And the

mere number of U.S.-based TFL employees does not establish "conduct" at all, much less

significant steps in furtherance of the alleged violation. 15 U.S.C. §§ 77v(c)(1), 78aa(b)(1).

*Second*, the SEC also has not proved the alternative "foreseeable substantial effect" prong.

*Id.* §§ 77v(c)(2), 78aa(b)(2). This test focuses on "concrete harm to U.S. investors and markets,"

*In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 562 (S.D.N.Y. 2008), and

---

[5] The vast majority of stablecoins, such as USDC and USDT, are pegged to the dollar, meaning that pegging UST to the dollar merely reflects the dominance of the dollar in global trade. *See* Bertaut *et al*., "*The International Role of the U.S. Dollar*," Bd. of Governors, Fed. Res. Sys. (June 23, 2023), https://doi.org/10.17016/2380-7172.3334; *Orix Fin. Servs., Inc. v. Brewer*, No. 03CIV.2957(RLC)(FM), 2001 WL 34629830, at *2 (S.D.N.Y. Aug. 2, 2001) (taking judicial notice of Federal Reserve release). Pegging an asset to the dollar is thus not "conduct" aimed at the U.S.

requires evidence of more than merely that "*some*" purchasers were U.S. residents and that the alleged fraud had "*some* effect" on U.S. purchasers and the U.S. securities market, *Copeland v. Fortis*, 685 F. Supp. 2d 498, 506 (S.D.N.Y. 2010) (emphasis in original). Thus, in light of the at most small number of domestic purchases proved by the SEC, displaying TFL's logo at a baseball stadium in Washington, D.C., did not have a substantial effect within the U.S. And the sporadic and insubstantial U.S. contacts cited by the SEC, such as Mr. Kwon's appearance at a conference in New York and meetings with Jonathan Kol in San Francisco and New York, *see* SEC Reply at 7, are also insufficient.[6]

Finally, as discussed in TFL's prior briefs, no injunctive relief is warranted against TFL based on the *Cavanagh* factors and the potential damage that a conduct-based injunction would inflict on third parties. *See* ECF No. 235, at 3-7; ECF No. 238, at 3-4. TFL reads the SEC's proposed injunction, which is silent as to its territorial scope, as limited in light of *Morrison* to domestic offers and transactions. Similarly, if the Court were to hold that Dodd-Frank extended the reach of the antifraud provisions, TFL would read the SEC's proposed injunction as territorially limited by the conduct-and-effects test in Section 929P(b). For greater clarity, if the Court enters any injunction, TFL requests that it expressly state the extent of its territorial application. Regardless of the Court's ruling regarding Section 929P(b), there is no basis for a territorially unlimited injunction. TFL also requests that it be given 30 days to bring purely foreign conduct into compliance without causing damage to token holders and users and/or to take an emergency appeal.

---

[6] *See, e.g., City of Edinburgh Council v. Vodafone Grp. Pub. Co.*, No. 07 CIV. 9921 (PKC), 2008 WL 5062669, at *6 (S.D.N.Y. Nov. 24, 2008) (investor presentations in the U.S. were insufficient to establish a substantial effect in the U.S.).

Date: May 1, 2024

Respectfully submitted,

*/s/Douglas W. Henkin*

**DENTONS US LLP**
Douglas W. Henkin
David L. Kornblau
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com

Mark G. Califano
1900 K Street, NW
Washington, DC 20006
Tel: (202) 496-7500
mark.califano@dentons.com

*Counsel for Defendant Terraform Labs Pte. Ltd.*

**CERTIFICATE OF SERVICE**

I, Douglas W. Henkin, certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF system on May 1, 2024.

*/s/ Douglas W. Henkin*
Douglas W. Henkin