UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

    v.

TERRAFORM LABS PTE LTD. and
DO HYEONG KWON,

                Defendants.

No. 1:23-cv-1346 (JSR)

**SUPPLEMENTAL BRIEF IN SUPPORT OF THE SEC'S
MOTION FOR FINAL JUDGMENT AGAINST DEFENDANTS**

**Table of Contents**

*Morrison* Does Not Limit Disgorgement for Defendants' Illegal Conduct.................................... 1

The SEC has Accounted for Defendants' Criticism of the Disgorgement Calculation .................. 6

Conclusion ..................................................................................................................................... 7

## Table of Authorities

### Cases

*Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006) .................................................................................. 1

*Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir.) *amended*, 890 F.2d 569 (2d Cir. 1989) .................................................................................................................................. 6

*In re Vivendi Universal, S.A.*, 2004 WL 2375830 (S.D.N.Y. Oct. 22, 2004) ................................ 5

*Kiobel v. Royal Dutch Petroleum Co.,* 569 U.S. 108 (2013) ........................................................... 3

*Liu v. SEC*, 591 U.S. 71 (2020) ....................................................................................................... 7

*Meng-Lin Liu v. Siemens A.G.*, 978 F. Supp. 2d 325 (S.D.N.Y. 2013) .......................................... 3

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ......................................... passim

*RJR Nabisco, Inc. v. Eur. Cmty.,* 579 U.S. 325 (2016) .................................................................... 3

*SEC v. Brown*, 2015 WL 1010510 (N.D. Ill. Mar. 4, 2015) ........................................................... 3

*SEC v. Chicago Convention Ctr., LLC*, 961 F. Supp. 2d 905 (N.D. Ill. 2013) ............................... 3

*SEC v. Fowler*, 6 F.4th 255 (2d Cir. 2021) ................................................................................. 6, 7

*SEC v. Gruss*, 859 F. Supp. 2d 653 (S.D.N.Y. 2012) .................................................................... 3

*SEC v. Morrone,* 997 F.3d 52 (1st Cir. 2021) ................................................................................. 3

*SEC v. Scoville*, 913 F.3d 1204 (!0th Cir. 2019) ........................................................................ 3, 4

*SEC v. Traffic Monsoon, LLC,* 245 F. Supp. 3d 1275 (D. Utah 2017) ........................................... 4

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ..................................................................................... 4

*Williams v. Binance*, 96 F.4th 129 (2d Cir. 2024) ......................................................................... 6

### Statutes and Congressional Material

124 Stat. 1376 ................................................................................................................................ 2

15 U.S.C. § 78aa(b) .............................................................................................................. 2, 3, 4, 5

H.R. Rep. No. 111-687(I) (2010) ................................................................................................... 2

### Rules

Fed. R. Civ. P. 12(h)(2) ................................................................................................................... 1

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this supplemental brief in response to the supplemental briefs of Terraform (ECF No. 244) ("Def. Supp.") and Kwon, who adopts Terraform's arguments by reference (ECF No. 245).

## I.     *Morrison* Does Not Limit Disgorgement for Defendants' Illegal Conduct

Defendants have never previously argued that this case involves the impermissible extraterritorial application of federal securities laws.[1] Now, after having been held liable, Defendants belatedly assert that the *remedies* the Court should impose for their violations of U.S. law must be essentially extinguished due to the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). Defendants' arguments lack merit as they rely on a misapplication of the law and misstatement of the relevant facts. Congress overrode *Morrison* in part, to ensure that the SEC could pursue those who, like Defendants, commit securities fraud with substantial effects in the United States or who engage in fraudulent conduct in the United States even if relevant securities transactions occur abroad.

*Morrison* considered the extraterritorial reach of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Before *Morrison*, courts had used two tests to determine whether particular conduct was actionable under the U.S. securities laws. The "effects test" examined "whether the wrongful conduct had a substantial effect in the United States or upon United States citizens," and the "conduct test" examined "whether the wrongful conduct occurred in the United

---

[1] Federal Rule of Civil Procedure 12(h) provides that—aside from in a motion to dismiss—a failure to state a claim upon which relief can be granted defense can be raised in the answer, a motion for judgment on the pleadings, or at trial. 1. Defendants asserted extraterritoriality as a defense in their answer but never pursued that defense on summary judgment or at trial and only raised their *Morrison* argument at the remedies stage. *See Arbaugh v. Y&H Corp.,* 546 U.S. 500, 507 (2006) ("The objection that a complaint fails to state a claim upon which relief can be granted, Rule 12(b)(6), may not be asserted post-trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits.") (cleaned up).

States." *Morrison*, 561 U.S. at 257 (cleaned up). Before *Morrison*, courts considered these so-called "conducts and effects" tests to be jurisdictional. *Id*. at 253-54.

*Morrison* first explained that the extraterritorial application of the Exchange Act was not a matter of jurisdiction, but simply an issue about the scope of the Act. *Id.* It then rejected the "conducts and effects" test and held that Section 10(b) applies only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id*. at 267. While *Morrison* was before the Supreme Court, Congress was considering legislation to amend the securities laws. That legislation became Dodd-Frank, which was signed into law in July 2010, one month after *Morrison* was decided. Section 929P(b) of the act addressed the extraterritorial application of both the Securities Act of 1933 ("Securities Act") and the Exchange Act. 124 Stat. 1376, 1864-1865; *see also* 15 U.S.C. § 78aa(b). The provision codified for SEC enforcement actions the longstanding court of appeals precedent that district courts have subject-matter jurisdiction over securities frauds that satisfy the conduct-and-effects test. *Id.*[2]

These amendments were not merely addressing subject matter jurisdiction—they clearly intended to expand the reach of these acts in SEC actions beyond that which had been prescribed by *Morrison*.[3] Defendants' argument, that Section 929P of Dodd-Frank failed to codify the conduct-and-effects test for SEC enforcement actions because it was supposedly mislabeled as a "jurisdictional" provision, makes no sense. In *Morrison* itself, the Court had clarified that a federal statute is presumed to apply only domestically unless there is an "affirmative indication" that the statute "applies extraterritorially." 561 U.S. at 265. The "affirmative indication" required

---

[2] S*ee also* H.R. Rep. No. 111-687(I) (2010) at 80.

[3] The text and structure of the section at issue reinforce that understanding. Its title, "Strengthening Enforcement By The Commission," indicates that Congress intended to define the substantive scope of *the SEC's* enforcement powers, not merely the jurisdiction of the courts. 124 Stat. 1862.

to rebut the presumption, however, need not come in the form of a "'clear statement.'" *Id*. That is, there is no "requirement that a statute say 'this law applies abroad.'" *Id.* (citation omitted); *see RJR Nabisco, Inc. v. Eur. Cmty.,* 579 U.S. 325, 340 (2016) ("[A]n express statement of extraterritoriality is not essential."). Instead, the "affirmative indication" can come through inferences from "context" or other "sources of statutory meaning." *Morrison*, 561 U.S. at 265.

In *SEC v. Scoville*, the Tenth Circuit held that in enacting Section 78aa(b), "Congress has 'affirmatively and unmistakably' indicated that the antifraud provisions of the federal securities acts apply extraterritorially when the statutory conduct-and-effects test is met." 913 F.3d 1204, 1218 (10th Cir. 2019). *Scoville* rejected the same argument that Defendants make here based on "the specific context in which Congress enacted the 2010 jurisdictional amendments as part of the Dodd-Frank Act." *Id*. at 1215-16. As the Supreme Court has held, "it is true that Congress, even in a jurisdictional provision, can indicate that it intends federal law to apply to conduct occurring abroad." *Kiobel v. Royal Dutch Petroleum Co.,* 569 U.S. 108, 117, (2013).[4]

Thus, Defendants' argument that "*Scoville* is wrong for the simple reason that it departed from the statute's plain text," Def. Supp. at 2, is itself wrong. *Scoville* did not ignore the text—it concluded from the statute's text what Congress meant to do. And it held that, in determining

---

[4] *See also SEC v. Morrone,* 997 F.3d 52, 60 n.7 (1st Cir. 2021) (recognizing *Scoville*'s holding); *Meng-Lin Liu v. Siemens A.G.*, 978 F. Supp. 2d 325, 328 (S.D.N.Y. 2013), *aff'd sub nom Liu Meng-Lin v. Siemens AG,* 763 F.3d 175 (2d Cir. 2014) (recognizing that Section 78aa(b) "permits the SEC to bring enforcement actions for certain conduct or transactions outside the United States"); *SEC v. Gruss*, 859 F. Supp. 2d 653, 664 (S.D.N.Y. 2012) (Section 78aa(b) permits the SEC to bring civil "actions extraterritorially in certain cases."). Defendants cite two district court cases for the proposition that Dodd-Frank did not overrule *Morrison*. Def. Supp. at 1-2. Yet, neither case reached such a conclusion. *See SEC v. Chicago Convention Ctr., LLC*, 961 F. Supp. 2d 905, 916-17 (N.D. Ill. 2013) (ruling that the Court did not need to resolve the question because the SEC's complaint survived under either *Morrison* or the conduct-and-effects test); *SEC v. Brown*, 2015 WL 1010510, at *5 (N.D. Ill. Mar. 4, 2015) (same).

3

whether current law imposes liability for securities fraud in connection with foreign transactions, Section 78aa(b) provides a more reliable and specific indication of congressional intent than does the general presumption against extraterritoriality. 913 F.3d at 1215-16.

Defendants' argument makes no sense for additional reasons. In *Morrison*, the Court held that district courts *already had* subject matter jurisdiction to adjudicate whether Section 10(b) applies to "particular extraterritorial conduct." 561 U.S. at 254. Under Defendants' theory, Section 78aa(b) added nothing to the jurisdiction that federal courts already possessed—Congress instead enacted a statutory provision that had no practical effect at all.[5]

Defendants next attempt to claim that, even if the Court were to apply the conduct-and-effects test of Section 78aa(b), their U.S.-based conduct did not "constitute significant steps in furtherance" of their violations and that their "conduct occurring outside the United States" did not have "a foreseeable substantial effect within the United States." *See* Def. Supp. Br. at 2-5. This fallback argument ignores substantial record evidence going to both tests. For example, Terraform's then-head of communications, Brian Curran, a U.S. employee who worked from California, posted a series of false and misleading tweets at Kwon's direction that credited UST's recovery of its $1 peg to its algorithm. These false statements misleadingly omitted the

---

[5] Moreover, Section 78aa(b)(1) explicitly applies to conduct "even if the securities transaction occurs outside the United States and involves only foreign investors." But such conduct is the very conduct that *Morrison* held *did not* violate the securities laws. Giving the district courts jurisdiction over a class of suits that could not have been brought anyway (as Defendants would have it) would make no sense. *See SEC v. Traffic Monsoon, LLC,* 245 F. Supp. 3d 1275, 1293 (D. Utah 2017) ("It would be pointless to clarify that district courts had jurisdiction to hear Section 10(b) and 17(a) claims based on certain extraterritorial transactions unless Congress also intended that these statutes be applied extraterritorially"), *aff'd sub nom. Scoville,* 913 F.3d at 1204. It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up)

secret role that an agreement with a U.S.-based firm (Jump) played in the peg's restoration. *See* SEC Reply at 6-7 (ECF No. 240);[6] *see also In re Vivendi Universal, S.A.*, 2004 WL 2375830, at *4 (S.D.N.Y. Oct. 22, 2004) (conducts test satisfied when press releases alleged to have been false and misleading were issued from New York). Moreover, when Terra's ecosystem collapsed and $14 billion in UST deposited in the Anchor Protocol alone was wiped out, *see* SEC Resp. at 1, the U.S.-based falsehoods directly caused harm to the U.S.-based investors who held UST.[7]

Incredibly, Defendants also claim that their secret agreement with Jump—a U.S. based company—"was not 'in furtherance of' the alleged fraud" because it predated Defendants' false statements about the agreement. Def. Supp. at 4. As a matter of logic, the concealed agreement obviously occurred before Defendants issued false statements about the agreement. However, it defies reason to suggest that this agreement, designed to hide that the so-called "automatically self-heal[ing]"" algorithm (PX 59b) did not work, and thereby encourage investors to buy UST and LUNA, was not in furtherance of the fraud. It was the centerpiece of the fraud.

Defendants also ignore the substantial foreseeable effects that their conduct had in the

---

[6] Bizarrely, Defendants suggest that because Kwon was in Korea when he directed Curran to post these false statements on Twitter that the conduct occurred "abroad." Def. Supp. at 4.

[7] Defendants also claim (at 3-5) that their other activities in the U.S., including Kwon lying to Jonathan Kol, a U.S. resident, about Chai's supposed use of Terraform's blockchain to facilitate payments, Trial Tr. 349-50; Tr. 356-58; Tr. 360-362 do not constitute wrongful conduct in the U.S. under the conduct test. But Kol's testimony that Kwon's (false) representations about Chai were important in his company's decision to purchase millions of dollars in LUNA from Terraform alone meets the test. *Id*.; Tr. 372-373. And this is to say nothing of Kwon's touting of UST at an investor conference in New York in September 2021, four months after Defendants began misrepresenting the circumstances of the May 2021 depeg, Landsman MSJ Decl. Ex. 112 (ECF No. 75-3 at 24). Kwon's false and misleading statements made in U.S. media to U.S. investors, *see, e.g.,* PX 100 (Kwon false statements regarding Chai in an interview with U.S.-based media publication, the Tokenist), also further establishes the conduct prong of Section 78aa(b). By broadcasting their fraudulent statements through mediums such as Twitter, Medium, and Discord they were broadcasting their statements to potential investors in the U.S. *See generally*, Amended Pretrial Order at 21-24 (ECF No. 217).

U.S., which are detailed in the SEC's Remedies Reply. SEC Reply at 5-8. The Second Circuit has recognized under the "effects test" that, even if a relatively small number of U.S. investors purchased securities in connection with a fraud, that can constitute substantial effects, especially if misleading offering statements are transmitted to the U.S. *See Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir.) (cleaned up), *amended*, 890 F.2d 569 (2d Cir. 1989).

Terraform sold more than net $1.1 billion in UST to investors on Binance and $449 million on KuCoin, crypto trading platforms available to U.S. investors, during the June 2021 to May 2022 period that Defendants were making misstatements in the U.S. about the stability of UST. Supplemental Declaration of Donald Battle ("Battle Suppl. Decl.") ¶¶ 7, 10.[8] The disgorgement of these profits is indisputably "a reasonable approximation of profits causally connected to the violation." *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (cleaned up).

## II.    The SEC has Accounted for Defendants' Criticism of the Disgorgement Calculation

Defendants have also challenged the SEC's calculation of one of the four components of disgorgement, Terraform's sales of UST to investors through crypto asset trading platforms. Def. Opp. Br. 7 (ECF No. 238); James Eastman Decl. ("Eastman Decl.") ECF No. 241 at ¶¶ 9, 11. The SEC agrees with the two changes to its calculations suggested by Defendants.[9]

These two changes had the effect of *increasing* the gross amount of UST sold by

---

[8] Finally, even if the Court concluded that the conducts-and-effects test does not apply to this case, with respect to the SEC's Securities Act Section 5 claims, the record evidence shows domestic offers and sales under *Morrison*, as interpreted by the Second Circuit in *Williams*. *See Williams v. Binance*, 96 F.4th 129, 133 (2d Cir. 2024); SEC Reply at 7-10. Defendants' argument that their conduct is beyond the reach of the U.S. securities laws is entirely meritless.

[9] The two changes involved incorporating transactions from fields in the trading data mislabeled as "cancelled" or "expired" when, in fact, at least a portion of those orders were filled; and removing transactions that one crypto asset trading platform labeled "UST" even though it corresponded to transactions in another crypto asset. *See generally* Battle Suppl. Decl. ¶¶ 4-9; Eastman Decl. ¶¶ 4, 5.

Terraform, from $4,286,435,254 to $5,101,336,797. Battle Supp. Decl. ¶ 11. They also have the effect of *decreasing* the net sales of UST to $1,684,001,305, given Terraform's purchases of UST. As explained previously (ECF No. 232 at 13), Terraform's own purchases do not qualify as legitimate business expenses that should be deduced from disgorgement under *Liu v. SEC*, 591 U.S. 71, 84-85 (2020) and, despite having the burden of proof on the issue of proper deductions *Fowler*, 6 F.4th at 267, Defendants fail to argue otherwise. They instead assert, with no basis in law, that Terraform's purchases of *LUNA* and *MIR* should be deducted from their ill-gotten *UST* sales. Def. Opp. Br. at 7. The Court would be therefore fully justified in ordering as disgorgement the increased gross amount of Terraform's sales of UST ($5,101,336,797) and MIR and LUNA (over $28 billion). Battle Supp. Decl. ¶¶ 11-12.[10]

The SEC nevertheless seeks only the *net* UST sales, despite *Liu* supporting a larger disgorgement order. For the foregoing reasons, and those in our prior briefing, the Court should find Defendants jointly and severally liable for $1,684,001,305 in ill-gotten gains from Defendants' net sales of UST (Battle Suppl. Decl. ¶ 11) and total revised disgorgement of $3,586,875,883. *See* ECF No. 232 at 9 (describing three other components of disgorgement).[11]

## CONCLUSION

For the foregoing reasons, and those in our opening and reply briefs, the Court should grant the SEC's Motion for Final Judgment against Defendants.

---

[10] Defendants oddly argue that "the SEC fails to identify any UST sales that occurred during Anchor's operation," Def. Opp. Br. 7 n.19, but the UST sales that the SEC seeks as disgorgement occurred from June 1, 2021 through May 2022, all times that the Anchor Protocol was operational. Battle Supp. Decl. ¶ 11; PX 225 (showing Anchor launched in March 2021); PX 81.

[11] The SEC will submit a revised prejudgment interest calculation after the Court determines the appropriate disgorgement amount.

7

| | |
|---|---|
| Dated:  May 6, 2024 | Respectfully submitted, |

/s/ Christopher J. Carney
Christopher J. Carney
James P. Connor, admitted *pro hac vice*
Carina A. Cuellar, admitted *pro hac vice*
Roger J. Landsman, admitted *pro hac vice*
Laura E. Meehan
Devon L. Staren, admitted *pro hac vice*
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Tel: (202) 551-2379
Email: carneyc@sec.gov

Of Counsel:

Alistaire Bambach
Michael Kelly
Therese A. Scheuer
William M. Uptegrove