

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF ENFORCEMENT

<u>Via ECF</u>　　　　　　　　　　　　　　　　　　　　　　　　　　　　June 12, 2024

The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

　　　　　　　　Re:　*SEC v. Terraform Labs et al.*, No. 1:23-cv-1346 (JSR)

Dear Judge Rakoff:

　　　　Pursuant to the Court's May 29, 2024 order, Plaintiff Securities and Exchange Commission ("SEC") respectfully seeks approval of the proposed final consent judgment as to Defendants Terraform Labs PTE Ltd. ("Terraform") and Do Hyeong Kwon ("Kwon," collectively, "Defendants"), filed contemporaneously herewith. A jury found Kwon and Terraform liable for intentionally and recklessly orchestrating one of the largest securities frauds in U.S. history. The proposed consent judgment both addresses the magnitude of this fraud by imposing significant remedial, punitive, and deterrent remedies, including a multi-billion dollar judgment against Defendants, and provides for meaningful and speedy recovery for investor victims that collectively lost billions when Defendants' scheme collapsed. If approved, the proposed judgment will send an unmistakable deterrent message to not only those who engage in brazen misconduct, but also to all those who seek to evade the requirements of the federal securities laws by crafting new standards of behavior for crypto assets that fall under the purview of the federal securities laws.

　　　　To settle this action, Terraform agrees to provide the SEC with all the relief it sought from the Court. The settlement as to Kwon provides the SEC with nearly all the relief it sought against Kwon but also specifically provides that Kwon will transfer hundreds of millions in assets to satisfy his monetary obligations under the terms of the settlement. Specifically, the proposed judgment would: (i) enjoin Defendants from violating the antifraud provisions of the federal securities laws that the jury found they violated, as well as the registration requirements of Section 5 of the Securities Act that the Court ruled they violated; (ii) impose conduct-based injunctions prohibiting Defendants from engaging in crypto asset securities transactions or taking steps to induce others to do so; (iii) require Terraform to pay total monetary remedies of $4,473,828,306 (consisting of $3,586,875,883 in disgorgement, $466,952,423 in prejudgment interest, and a $420,000,000 civil penalty); (iv) require Kwon to pay monetary relief totaling $204,320,196 (consisting of $110,000,000 in disgorgement, $14,320,196 in prejudgment interest, and an $80,000,000 civil penalty); (v) require Kwon to transfer at least $204,320,196 to the Terraform bankruptcy estate for distribution to harmed investors; (vi) prohibit Kwon from

serving as an officer or director of any public company; and (vii) require Terraform to agree to seek approval of a Chapter 11 liquidation plan in its bankruptcy case, *In re Terraform Labs Pte. Ltd.*, Case No. 24-10070 (Bankr. D. Del.), subject to certain required conditions, including replacement of Terraform directors and the appointment of a trustee or estate representative to use Terraform's remaining assets to pay creditors and harmed investors. The entry of this judgment would ensure the maximal return of funds to harmed investors and put Terraform out of business for good.

Thus, this proposed judgment is fair, reasonable, and in the public interest. *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014).

### I. The Relevant Allegations, the Jury's Verdict and the Court's Summary Judgment Holdings

Defendants' schemes began with the minting of their own crypto asset tokens. They launched the "Terra blockchain" in April 2019, creating 1 billion units of a crypto asset called LUNA as the building block of Defendants' so-called "ecosystem" of crypto-related suites and products. Defendants then created other crypto assets, including: LUNA on the Ethereum blockchain called wrapped Luna ("wLUNA"); a so-called "algorithmic stablecoin" known as Terra USD ("UST") that Defendants marketed as paying 19-20% interest through Terraform's "Anchor Protocol"; and "MIR." Defendants sold these crypto assets as securities, promising investors that they would profit if Defendants' efforts as to the Terra ecosystem were successful. Defendants did not register any of these offers or sales with the SEC, and no exemption from registration was available.

To make their crypto assets appear more successful and to deceive investors, Defendants engaged in two long-running, massive fraudulent schemes as to LUNA, wLUNA and UST. First, Terraform, for an extended period of time, copied transaction data onto the Terra blockchain to make it appear as if a popular Korean payment application called Chai was using the Terra blockchain to process payments, even though those transactions were actually processed through traditional payments means. Defendants then made dozens of false and misleading statements to investors touting this so-called "real world use" of the Terra blockchain. Investors bought in, believing that Defendants had, as one investor put it at trial, achieved the "holy grail" of blockchain technology by demonstrating an actual use for crypto assets. Second, Defendants misled investors about the stability of UST, which they called the "lynchpin" of the Terra ecosystem. Specifically, when UST dropped briefly from its $1 price (or de-pegged) in May 2021, Defendants secretly arranged for a high frequency trading firm called Jump Trading, LLC to intervene to support the price of UST. Defendants then flooded the public with false and misleading statements, suggesting that UST's price had "self-healed" due to Terraform's proprietary algorithm.

These lies and deceptions misled investors into pouring tens of billions of dollars into LUNA and UST. In May 2022, UST again de-pegged from the U.S. dollar, this time collapsing in value to nearly $0, and the price of LUNA—previously trading as high as $119—also plummeted to nearly $0. In total, over $40 billion in value was wiped out, including investor deposits into the Anchor Protocol that formed the lynchpin of Defendants' touting of UST as an

investment. See PX 81 (showing over $14 billion deposited into the Anchor Protocol in May 2022).

Numerous institutional investors incurred millions of dollars of write-downs, and many retail investors, including working families like those that testified at trial, lost their life savings. Defendants, on the other hand, retained hundreds of millions of dollars from the Terra ecosystem that they still control, including in accounts nominally held by a Terraform alter ego entity that Defendants created and control called the "Luna Foundation Guard" ("LFG").

After a nine-day trial, a jury unanimously found Kwon and Terraform liable for intentionally and recklessly orchestrating these frauds. Prior to trial, the Court also ruled that Defendants violated the registration requirements of the federal securities laws with respect to their unregistered offers and sales of LUNA and MIR. *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 at * 16 (S.D.N.Y. Dec. 28, 2023).

**II. The Proposed Consent Judgments Are Fair and Reasonable and the Proposed Relief Does Not Disserve the Public Interest.**

In reviewing a consent judgment, a court should ask whether it is "fair and reasonable, with the additional requirement that the 'public interest would not be disserved,' … in the event that the consent decree includes injunctive relief." *Citigroup*, 752 F.3d at 294 (citation omitted). The Second Circuit has explained that a district court evaluating the fairness and reasonableness of an SEC consent judgment should assess at least four factors: (1) "the basic legality of the decree"; (2) "whether the terms of the decree, including its enforcement mechanism, are clear"; (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294–95 (citations omitted).

### A. The Proposed Consent Degree is Proper Under the Law.

The proposed judgments satisfy all four *Citigroup* factors. First, the injunctions, civil penalties and officer-and-director bars are authorized by law. *See* 15 U.S.C. §§ 77t(b), (d), (e); 15 U.S.C. §§ 78u(d)(1), (d)(2), (d)(3). With respect to injunctive relief, the proposed obey-the-law and conduct-based injunctions will help protect the public by ensuring that Defendants will not be in a position to engage in securities fraud or flout the registration requirements of the federal securities laws, lest they and their agents face the contempt powers of this Court. Indeed, as part of its consent to the proposed judgment, Terraform has agreed to wind down its business as soon as practicable, and within 30 days of the entry of judgment, to replace both of its non-independent directors, including Chris Amani, the current Terraform CEO who testified at trial and who was head of operations during Terraform's fraud and collapse. The only disposition of Defendants' crypto assets that the judgment permits is of those transferred to the Terraform bankruptcy estate pursuant to the terms of the judgment. Otherwise, the judgment requires the Defendants to burn or destroy private keys in Terraform's possession to wallets or blockchain assets holding UST, MIR, LUNA, wLUNA, and LUNA 2.0 ("Terraform Crypto Assets"), protecting investors from additional unregistered offers and sales of securities.

The proposed civil penalties are legal and will deter others that might consider the ill-fated path chosen by the Defendants. Civil penalties are intended to "achieve 'the dual goals of

punishment of the individual violator and deterrence of future violations.'" *SEC v. Coates*, 137 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2011) (citation omitted). There are three tiers of penalties, with the highest tier proper where, as here, the violation involved fraud and substantial losses to other persons. *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013) (citing 15 U.S.C. §§ 77t(d), 78u(d)(3)). A third-tier penalty for each violation can be in an amount up to gross pecuniary gain. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3). To determine an appropriate penalty, courts consider all the facts, including "whether the penalty should be reduced due to the defendant's current and future financial condition." *SEC v. Rajaratnam*, 918 F.3d 36, 44-45 (2d Cir. 2019).

The penalties proposed here, $420 million and $80 million, against Terraform and Kwon, respectively, are well within the statutory limits, as trading records show that the gross amount of Terraform's sales of UST, MIR, and LUNA during just the June 1, 2021 to May 31, 2022 period was over $33 billion. *See* ECF No. 246 at 7; ECF No. 247 at ¶¶ 11-12. Moreover, they will send a clear deterrent message to those who might be contemplating similar fraudulent schemes: no matter what get-rich-quick profits they might achieve in the short-term, ultimately, they will be held to account. And these significant penalties are particularly warranted given the evidence at trial of the devastating losses to investors that resulted from Defendants' fraudulent conduct. Nader George—who was convinced by Defendants' reassurances to take out a $400,000 loan to invest—lost almost everything. *See* Trial Tr. 973-974. Arash Vakil lost $175,000 based on Defendants' false representations regarding the stability of UST. *Id.* at 133-135. And Boris Revsin's company, Republic Capital, lost the majority of the $35.9 million it invested based on Defendants' lies. *Id.* at 276. Terraform's collapse was so devastating that even though Terraform claims to have spent $3 billion trying to save the peg (and its own empire) it was unable to do so. *Id.* at 1583-85.

Congress has similarly authorized courts to order disgorgement of a defendant's ill-gotten gains. *See* 15 U.S.C. §§ 78u(d)(3), 78u(d)(5), 78u(d)(7); *see also Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) ("[A] disgorgement order that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)."). The "primary purpose of disgorgement … is to deprive violators of their ill-gotten gains." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). The disgorgement figures in the proposed judgment will erase the profits Defendants realized from their massive fraud and thus will ensure that disgorgement's equitable goal of making securities fraud unprofitable is met.

"In general, the amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (cleaned up). The $3,586,875,883 in disgorgement sought from Terraform represents a reasonable approximation of Terraform's ill-gotten gains as calculated by the SEC and is accordingly proper for the reasons set forth in the SEC's moving papers. *See* ECF No. 232 at 8-14; ECF No. 246 at 6-7. In brief and as laid out in that briefing and the supporting declarations, the disgorgement amount is comprised of four components: (i) $65,215,692, the ill-gotten gains from Defendants' unregistered offers and sales of LUNA to institutional investors, through Terraform and its wholly owned subsidiary, Terraform Labs Limited; (ii) $4,270,000, the ill-gotten gains from unregistered offers sales of MIR to institutional investors, through Terraform and Terraform Labs Limited; (iii) $1,833,388,886, the ill-gotten gains from

Defendants' sales of LUNA and UST through the LFG (an entity controlled by Defendants), further broken down into $847,400,000 in sales via various contracts and $985,988,886 via an LFG contract with Genesis Asia Pacific PTE LTD; and (iv) $1,684,001,305 in *net* sales of UST to investors by Terraform on crypto asset trading platforms from June 2021 to May 2022. *See* ECF No. 232 at 8-14; ECF No. 246 at 6-7.

      The SEC is mandated to protect investors. The proposed consent judgment helps to ensure that the SEC is meeting this mandate by providing that harmed investors will receive the maximum possible benefits from Terraform's bankruptcy estate, rather than Terraform continuing to spend its dwindling funds on legal fees litigating this matter. In particular, the proposed judgment provides that the more than $4.4 billion in monetary relief will be treated as an allowed general secured claim of the SEC against Terraform. Under the liquidation terms of the Chapter 11 Plan that Terraform is required to propose, the SEC will recover on its claim after harmed investors and other general unsecured creditors recover in full. If all Terraform's assets are distributed pursuant to such a plan, the SEC's monetary remedies will be deemed satisfied. Finally, if no such plan is in effect by October 31, 2024, the SEC is entitled to enforce the judgment against Terraform.

      The monetary remedies against Kwon are likewise fair and reasonable, and are consistent with the SEC's mandate because they increase the amount of assets actually available for distribution to harmed investors. Specifically, the proposed judgment provides that Kwon's payment of monetary remedies shall be deemed satisfied provided that all transfers by Kwon to the SEC and the Terraform bankruptcy estate total no less than $204,320,196. Kwon has consented under the proposed judgment to make an initial $4.7 million transfer to an escrow account within 30 days of the entry of judgment and to transfer $2.3 million in assets from his Swiss bank account to an escrow account within the same time period.[1] To ensure the maximum recovery for harmed investors, Kwon has also agreed to transfer to the Terraform bankruptcy estate within 30 days all crypto assets of LFG and his ownership interest in all PYTH crypto asset tokens that Kwon obtained pursuant to a 2021 token grant agreement. All assets transferred by Kwon to the bankruptcy estate are to be distributed to harmed investors pursuant to a confirmed Chapter 11 plan. If the transfers are not made within the required 30-day period, the SEC is entitled to enforce the Court's judgment using all collection procedures authorized by law. Notably, these transfers by Kwon to the Terraform bankruptcy estate of LFG's crypto assets and his ownership interest in crypto asset tokens held in wallets under his control would be difficult to obtain in the absence of his consent.[2]

---

[1] We understand from Kwon's counsel that Kwon was unable to arrange for notarization of the consent due to his current detention in Montenegro. Kwon's counsel has provided the SEC with written assurance that Kwon signed the consent.

[2] While the ultimate disposition of these crypto assets is not yet certain and depends on numerous factors presently unknown to the SEC, their disposition will be handled in the bankruptcy case under the supervision of the bankruptcy court and with an opportunity for interested stakeholders, including the SEC and other creditors, to weigh in on any proposal for disposition.

Finally, the provisions in the judgment regarding bankruptcy exceptions to discharge are legal because they track the applicable statutory language of the Bankruptcy Code, and the proposed Chapter 11 liquidation plan will be subject to bankruptcy court approval.

### B. The Remaining *Citigroup* Factors are Satisfied.

The second *Citigroup* factor, "whether the terms of the decree, including its enforcement mechanism, are clear," is satisfied here. The injunctions and the officer-and-director bar and their enforcement mechanisms are clear, as are the provisions for payment of disgorgement and civil penalties. As long as Terraform and Kwon do not engage in unlawful conduct, or participate directly or indirectly, in the purchase, offer, or sale of crypto asset securities, including but not limited to Terraform Crypto Assets, or engage in activities for purposes of inducing or attempting to induce the purchase, offer, or sale of any crypto asset securities, by others, and Kwon does not become an officer or director of a public company, then they will not have violated the injunctions or bar. With respect to monetary relief, the proposed judgment is clear on the amounts to be paid, how they shall be paid, and provides that the Court will retain judgment to enforce the terms. Likewise, the proposed judgment is clear as to both the steps Terraform has agreed to take in the bankruptcy proceedings, as well as how the monetary relief owed by Defendants will be treated for purposes of applicable exceptions to discharge set forth in the Bankruptcy Code.

The proposed judgment also satisfies the third *Citigroup* factor, "whether the consent decree reflects a resolution of the actual claims in the complaint." Here, the Court ruled that Defendants violated Section 5 of the Securities Act with respect to its unregistered offers and sales of LUNA and MIR, and a jury found Defendants liable for violating the antifraud provisions of the federal securities laws. The only remaining issues to be decided at this stage are the remedies to be imposed on Defendants for those violations. The proposed judgment resolves those issues. Likewise, the proposed settlement does not concern the fourth *Citigroup* factor, "whether the consent decree is tainted by improper collusion or corruption of some kind," because the parties have reached these resolutions through arm's length negotiations and there has been no collusion between the SEC and Defendants.

Finally, in *Citigroup*, the Second Circuit held that "when a proposed consent decree contains injunctive relief, a district court must also consider the public interest in deciding whether to grant the injunction." 752 F.3d at 296. Permanent injunctions are warranted to protect the investing public from additional violations of the federal securities laws by these Defendants, who engaged in a massive fraud involving unregistered offers and sales of securities. *See, e.g., SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1101 (2d Cir. 1972) ("'The courts have an obligation, once a violation has been established, to protect the public from a continuation of the harmful and unlawful activities.'") (quoting *United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960)); *SEC v. Kinnucan*, 9 F. Supp. 3d 370, 375-376 (S.D.N.Y. 2014) (imposing a permanent injunction after defendant's criminal conviction for insider trading).

Similarly, an officer-and-director bar is warranted to protect the investing public given that the wrongdoing took place while Kwon was at the helm of Terraform. *See SEC v. Bankosky*,

716 F.3d 45, 47 (2d Cir. 2013) (affirming officer-and-director bar imposed by district court in consent judgment and noting that "[t]he district court has substantial discretion in deciding whether to impose a bar to employment in a public company.") (cleaned up).

### III. Conclusion

The proposed consent judgment is fair, reasonable, and in the public interest. This settlement sends a clear message that the sort of brazen misconduct and flouting of the federal securities laws that took place here will not be tolerated. Just as importantly, the proposed judgment ensures that those innocent investors who trusted Defendants' lies and were harmed will receive the maximum recovery possible. For these reasons, the Court should approve the proposed final consent judgments as to Terraform and Kwon.

Respectfully submitted,

/s/ Christopher J. Carney
Christopher J. Carney
James P. Connor, admitted *pro hac vice*
Carina A. Cuellar, admitted *pro hac vice*
Roger J. Landsman, admitted *pro hac vice*
Laura E. Meehan
Devon L. Staren, admitted *pro hac vice*
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Tel: (202) 551-2379 (Carney)
Email: carneyc@sec.gov

cc (by ECF):   All defense counsel